**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

FRANCISCAN ALLIANCE, INC., *et al.*,

*Plaintiffs*,

v.

SYLVIA BURWELL, *et al.*,

*Defendants*.

NO. 7:16-CV-00108-O

**Response to Putative Intervenors' Motion to Stay Briefing on Plaintiffs' Dispositive Motions and Reset Deadlines for Responding to Motion to Intervene**

## INTRODUCTION

Putative intervenors seek to bring this case to a halt until the Court resolves their motion to intervene. But there is no legal basis for doing so. Under controlling Fifth Circuit precedent—which putative intervenors never cite—a party seeking a stay "bears a heavy burden" to show that there is "something close to genuine necessity" for a stay. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985). Putative intervenors cannot make that showing here.

First, a stay is unnecessary because putative intervenors can fully participate in summary judgment proceedings as *amici*. Second, a stay would severely prejudice Plaintiffs by making it impossible to adjudicate their claims in the next 70 days—which is when they must either violate their religious beliefs regarding coverage and harm their sovereign authority to control employee benefits or face large financial penalties. Indeed, a stay will only exacerbate the harm already being inflicted on the States' authority to regulate healthcare and protect the physician-patient relationship, as well as the harm Plaintiffs face from pressure to violate their medical judg-

ment or religious beliefs regarding medical services. Finally, a stay is inefficient, because it forces the parties to brief the motion to intervene before Defendants have taken any position in the case.

## ARGUMENT

Putative intervenors offer no authority for their motion to stay. They cite no statute, rule, or case authorizing their stay request, and they mention no legal standard for evaluating it. That is because the controlling legal standard is unfavorable to their request.

The Court can grant a stay under its inherent authority "to regulate its flow of cases." *Coastal*, 761 F.2d at 203 n.6 (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)). This authority "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. But this power "must not be abused." *Coastal*, 761 F.2d at 203 n.6. Thus, "the moving party bears a heavy burden to show why a stay should be granted." *Id.* "Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation." *Id.*; *see also Bunch v. Alladin Mollabashy*, M.D., No. 3:13-CV-1075-G-BH, 2016 WL 874747, at *2 (N.D. Tex. Feb. 12, 2016) ("heavy burden" of showing "genuine necessity"); *Sierra Club v. Fed. Emergency Mgmt. Agency*, No. CIV. A. H-07-0608, 2008 WL 2414333, at *7 (S.D. Tex. June 11, 2008) (same). Putative intervenors have not come close to carrying their "heavy burden" of demonstrating "genuine necessity."

First, putative intervenors argue that Plaintiffs engaged in a "bait and switch" by asking to brief the motion to intervene after Defendants responded to the Complaint, "and then filing preemptive motions for summary judgment." ECF No. 27 at 5. But there was no bait and switch. Plaintiffs clearly stated that "the litigation will soon move forward." ECF No. 17 at 2. The point is that there is no use speculating about the nature of Defendants' representation or the precise next steps in the case when

Defendants have not yet responded to the lawsuit, and that putative intervenors will suffer no prejudice in the meantime, because they "can offer their legal arguments in an amicus brief (to which Plaintiffs will consent)." *Id.*

Putative intervenors still fail to demonstrate any prejudice—much less "genuine necessity"—in light of their ability to participate as *amici*. They say that they want to "participate equally in status conferences, depositions, or any other pre-hearing discovery." ECF No. 27 at 6. But no such conferences, depositions, or discovery have been scheduled, and putative intervenors offer no basis for concluding that the United States' performance will be deficient. They also say they want to "vigorously contest" the "common understanding . . . regarding the meaning of sex . . . [and] the medical necessity of treatments for gender dysphoria and abortions." ECF No. 27 at 5-6. But the common meaning of the statutory term "sex" is a purely legal question, and it is abundantly clear that Defendants—which issued the Rule—share putative intervenors' views on both the definition of 'sex' and the supposed medical justifications for the rule. Beyond that, putative intervenors can fully address both issues in an *amicus* brief. Indeed, Plaintiffs have repeatedly informed putative intervenors in writing that they will consent to an *amicus* brief. Yet putative intervenors do not even attempt to explain why participating as *amici* will result in prejudice.

By contrast, staying all proceedings on the motions for summary judgment will prejudice Plaintiffs. On January 1—in less than 70 days—Plaintiffs' insurance plans will become "unlawful on [their] face," because they exclude coverage for gender transitions. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31376, 31429 (May 18, 2016) (codified at 45 C.F.R. pt. 92). Moreover, some aspects of the new Rule have already begun to kick in, further justifying expedient consideration of Plaintiffs' motions. *See* 45 C.F.R. § 92.1 ("The effective date of this part shall be July 18, 2016"). Thus, Plaintiffs' face a stark choice: They must either make significant, expensive, and (for some Plaintiffs) religiously forbidden changes to insurance plans

covering tens of thousands of employees, or face massive financial penalties under the new Rule. To stave off this impossible choice, they have asked for expedited consideration of their motions for summary judgment or a preliminary injunction. ECF No. 25 at 47-48 & No. 23 at 24–25. But putative intervenors would bring that process to a halt until their motion to intervene is resolved—which would take at least 28 to 52 days (the time allowed for briefing under putative intervenors' proposals), plus whatever time the Court needs to issue a ruling. In short, putative intervenors would force Plaintiffs to the brink of severe financial penalties, and force this Court into an extremely compressed timeline, to satisfy their own speculative and ideological interests—interests they can fully defend as *amici*.

Finally, putative intervenors' proposal would waste judicial resources. Again, the key question on the motion to intervene is the adequacy of the government's representation. But the government has said nothing about the merits of the lawsuit. Thus, putative intervenors' first proposal—to "stay briefing on the Motions for Partial Summary Judgment" and require Plaintiffs to respond to the motion to intervene in 14 days (ECF No. 27 at 2)—would force the parties and the Court to address the issue in the dark. This Court already rejected that proposal once, ECF No. 20, and it should do so again.

Putative intervenors' second proposal—to stay further action on the motions for summary judgment, and to require Plaintiffs to respond to the motion to intervene 14 days after Defendants file their opposition to the motions for summary judgment (ECF No. 27 at 2)—fares no better. That, too, will force the parties and the Court to address the issue of adequacy of representation with only partial information. In particular, Defendants are under no obligation to reveal their affirmative defenses in response to a motion for summary judgment, just as they were under no obligation to reveal their affirmative defenses in response to the motion to intervene—despite putative intervenors' confident (and incorrect) prediction that they would (ECF No. 16

at 2) ("Defendants' response to the intervention motion will inform the Court whether they intend to raise the same defenses."). The full extent of Defendants' defenses will become apparent only when the Defendant answers the Complaint or files a motion to dismiss—which will happen, at most, just 12 days after their response to summary judgment is due.[1] It is far more efficient to wait a very short time to address the motion to intervene with full information. Even more importantly, putative intervenors' second proposal would make it virtually impossible to resolve the motions for summary judgment until after January 1—when Plaintiffs face significant financial penalties.

The simplest and fairest approach is to maintain the current briefing schedule. Under that schedule, Plaintiffs will respond to the motion to intervene 14 days after Defendants respond to the Complaint; putative intervenors can participate in the summary judgment proceedings by "filing [an *amicus* brief] on the same schedule as Defendants" (ECF No. 27 at 6-7); and both motions can move forward expeditiously.

Other courts routinely proceed on dispositive motions in a case while a motion to intervene is pending, rather than staying the case until resolving a motion to intervene.[2] For example, in one case where a court received a motion to intervene, the

---

[1] Defendants' response to the motions for summary judgment is currently due on November 14. Defendants acknowledge their answer or response to the Complaint is due only 12 days later on November 25, 2016. *See* ECF No 28 at 2.

[2] *See, e.g.*:

- *WRR Industries, Inc. v. Prologis*, No. 3:04-cv-2544-L, Dkt. Nos. 42, 52, 72 (N.D. Tex. 2006) (proceeding on dispositive motions despite pending motion to intervene);
- *XTO Energy, Inc. v. ATD, LLC*, No. 1:14-cv-01021-JB-SCY, Dkt. Nos. 32, 42, 68, 72, 82, 89 (D.N.M. 2016) (same);
- *Ansley v. Warren*, No. 1:16-cv-54, Dkt. Nos. 8, 38, 46, 61, 67 (W.D.N.C. 2016) (same);
- *Testa v. Hoban*, No. 3:16-cv-00055-FLW-DEA, Dkt. Nos. 38, 39, 44, 114 (D.N.J. 2016) (same);

court allowed briefing and argument on a motion for summary judgment to continue, and the court even granted summary judgment in part before the court ultimately denied the pending motion to intervene. *XTO Energy, Inc. v. ATD, LLC*, No. 1:14-cv-01021-JB-SCY, Dkt. Nos. 32, 42, 68, 72, 82, 89 (D.N.M. 2016). That court allowed the pending intervenor to file a position paper on the summary judgment motion, *id.* at Dk. 77, as putative intervenors could certainly do in this case. In yet another case, a motion to dismiss was filed shortly after a motion to intervene, yet the court allowed briefing on the motion to dismiss to be completed and ruled on the motion to dismiss the same day it denied the motion to intervene. *Testa v. Hoban*, No. 3:16-cv-00055-FLW-DEA, Dkt. Nos. 38, 39, 44, 114 (D.N.J. 2016).

Alternatively, the Court could order Plaintiffs to respond to the motion to intervene 14 days after Defendants respond to the motions for summary judgment, as suggested in putative intervenors' alternative proposal. But if the Court adopts this approach, Plaintiffs would respectfully request that the briefing and resolution of the motion for summary judgment not be delayed until after resolution of the motion to intervene. Such a delay would inflict severe prejudice on Plaintiffs and serve no purpose. Instead, putative intervenors can participate in the summary judgment proceedings by filing an *amicus* brief "on the same schedule as Defendants." *Id.* In addition, if the Court decides to proceed in this manner, the Plaintiffs would also respectfully request an opportunity to file a supplemental response to the motion to intervene 14 days after Defendants respond to the Complaint. This would allow Plaintiffs to address the adequacy of Defendants' full set of arguments once the Defendants present them in response to the Complaint, and it would allow the Court the benefit

- *Atlantic Sea Island Group, LLC v. Connaughton*, No. 1:08-cv-00259-RWR, Dkt. Nos. 10, 12, 46 (D.D.C. Mar. 11, 2008) (same);
- *Aristotle Int'l, Inc. v. NGP Software, Inc.*, No. 1:05-cv-01700-TFH, Dkts. Nos. 75, 76, 89, 110, 112, 115, 117 (D.D.C. 2010) (same).

of full information before it rules on the issue.

**CONCLUSION**

Putative intervenors have an ideological interest in this litigation that is already fully represented by the United States. They can also participate in summary judgment proceedings as an *amicus*. Thus, there is no justification for halting this case—particularly when doing so would inflict severe prejudice on Plaintiffs. The Court should keep the same briefing schedule and issue an order allowing putative intervenors to file an amicus brief "on the same schedule as Defendants." *Id.*

Respectfully submitted this the 28th day of October, 2016.


/s/ Luke W. Goodrich¶
Luke W. Goodrich
Bar No. 977736DC
Eric C. Rassbach*
Mark L. Rienzi*
Stephanie H. Barclay*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090
lgoodrich@becketfund.org

*Counsel for Plaintiffs Christian Medical & Dental Associations, Franciscan Alliance, Inc., Specialty Physicians of Illinois, LLC*

* admission pending

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General

ANDREW D. LEONIE
Associate Deputy Attorney General

/s/ Austin R. Nimocks
AUSTIN R. NIMOCKS
Associate Deputy Attorney General
Texas Bar No. 24002695
austin.nimocks@oag.texas.gov

MICHAEL C. TOTH
Senior Counsel

Office of Special Litigation
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548

*ATTORNEYS FOR PLAINTIFF STATES*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2016, the foregoing brief was served on all parties via ECF.

/s/ Luke W. Goodrich

Luke W. Goodrich