# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC.; SPECIALTY PHYSICIANS OF ILLINOIS, LLC,; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; <br><br> - and - <br><br> STATE OF TEXAS; STATE OF WISCONSIN; STATE OF NEBRASKA; COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF ARIZONA; and STATE OF MISSISSIPPI, by and through Governor Phil Bryant, <br><br> *Plaintiffs*, <br><br> v. <br><br> SYLVIA BURWELL, Secretary of the United States Department of Health and Human Services; and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> *Defendants*. | **SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> Civ. Action No. 7:16-cv-00108-O |

## INTRODUCTION

Plaintiffs submit this supplemental brief in support of their motion for a preliminary injunction. A preliminary injunction is appropriate because Plaintiffs have shown (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) their threatened injury outweighs any alleged injury to HHS, and (4) an injunction is in the public interest. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974); *Texas v. United States*, No. 7:16-cv-00054-O, 2016 WL 4426495, at *3 (N.D. Tex. Aug. 21, 2016). Plaintiffs' previous briefing addressed their likelihood of success on the merits, which is a lower bar than the summary judgment standard. *See* ECF Nos. 23, 25; *see also Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009) ("A plaintiff is not required to prove its entitlement to summary judgment in order to establish 'a substantial likelihood of success on the merit' for preliminary injunction purposes.") (citation omitted). This supplemental brief therefore focuses only upon factors 2–4.

## ARGUMENT

### I. Plaintiffs Are Suffering Irreparable Harm.

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Callaway*, 489 F.2d at 576. Here, the Rule imposes significant, irreparable harm.

Absent a preliminary injunction, the private Plaintiffs will lose their religious liberty, freedom of speech, and due process rights and be forced to provide services and engage in speech that violates their medical and religious judgment. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). "This same principle applies" to violations of RFRA. *Opulent Life Church v. City of Holly Springs,* 697 F.3d 279, 295 (5th Cir. 2012). The same principle applies to the

harm to Plaintiffs from the government's violations of the Administrative Procedure Act, Due Process Clause, and Spending Clause. Absent an injunction, they must either violate their faith and suffer the substantial costs of complying with an invalid Rule, *see* 81 Fed. Reg. 31455–57 (estimating costs), or violate the Rule and face large financial penalties, 45 C.F.R. § 92.301. Those harms cannot be compensated by damages; they can only be prevented. *Cf. Texas v. E.P.A.*, 829 F.3d 405, 434 (5th Cir. 2016) (finding irreparable harm because "No mechanism here exists for [plaintiffs] to recover the compliance costs they will incur if the Final Rule is invalidated on the merits.").

The sovereign Plaintiffs also are suffering irreparable injury because the new Rule prevents them from enforcing their own laws and policies. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Texas*, 2016 WL 4426495, at *16 (citation omitted). The Rule causes irreparable injury to the sovereign Plaintiffs by disabling them from following their own healthcare laws and policies; imposing new compliance costs; and forcing them into a Hobson's choice of either accommodating their employees' religious liberty under state and federal employment laws and violating the Rule, or denying employees those protections and following the Rule. In analogous litigation, this Court ruled that a similar conflict between federal guidelines and sovereign plaintiffs' policies and practices constituted irreparable injury. *Id.*

Texas law, for example, zealously protects the physician-patient relationship and the "independent medical judgment" of doctors. *See* TEX. OCC. CODE § 162.0022 (mandating that medical organizations permit physicians to exercise "independent medical judgment when providing care to patients"); *Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex. 2003) (per curiam) (recognizing faculty member's role as a treating physician at state-run science center entitled him to independent medical judgment); *Garcia v. Texas State Bd. of Med. Exam'rs*, 384 F. Supp. 434, 439 (W.D. Tex. 1974)

(upholding regulations designed to preserve the "vitally important doctor-patient relationship"). The Rule, however, supplants a physician's independent medical judgment with that of federal rule-makers who deem a physician's decision to advise against abortion or gender transition procedures as a newly conceived form of discrimination. Thus, the Rule forces physicians who accept federal funds to ignore their state legal obligations to exercise independent and proper medical judgment when treating patients.

The Rule also requires government healthcare facilities to offer transition and abortion procedures, post new patient notices concerning what Defendants now declare discrimination, and train employees on their obligations under the Rule. The sovereigns will be forced to allocate personnel, resources, facilities, and finances to accommodate the transition and abortion services, and open sex-separated showers, locker rooms, and other facilities. The sovereign Plaintiffs did not accede to these extra costs when they chose to participate in Medicare and Medicaid decades ago.

The sovereigns fare no better under the Rule as employers. Federal statutes, like Title VII, prohibit employment discrimination based on religion. Employers must reasonably accommodate employees' religious beliefs, observances, or practices. If those beliefs mean abstaining from participation in transition and abortion procedures, then the sovereigns as employers must (and can) reasonably accommodate the employees that possess a conflict. But under the Rule, the sovereign medical providers must provide or refer for transition and abortion procedures even when doing so would violate their employees' religious beliefs.

All of the Plaintiffs, acting as employers, also offer covered health benefits to hundreds of thousands of employees. The Rule pressures them to change their health benefits by providing coverage for transition and abortion procedures beginning January 1, 2017. *See* 45 C.F.R. § 92.1 (noting effective date).

Plaintiffs filed this lawsuit only one month after the earliest portions of the Rule began to take effect, amended their complaint to add additional sovereign plaintiffs a month later, and moved for injunctive relief a few days after that amendment. Given that this case includes eleven plaintiffs—three private entities and eight sovereigns—the Plaintiffs acted with alacrity in challenging the Rule. *See ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 699 (N.D. Tex. 2015) (examining merits of claims excused eight month delay in filing suit); *Encyclopedia Britannica Educ. Corp. v. Crooks*, 447 F. Supp. 243, 252 (W.D.N.Y. 1978) (excusing ten month delay in filing lawsuit because it involved "multiple plaintiffs and substantial legal claims"). Moreover, if any party delayed, it was Defendants, who waited six years after the passage of the ACA to propose and implement the Rule.

The Rule, as currently in effect, requires all Plaintiffs to change their health benefit plans. It requires the private Plaintiffs to abandon their religious freedom, free speech, and other core Constitutional rights. And it requires the sovereign Plaintiffs to violate their own sovereign control over the healthcare profession; to offer transition and abortion procedures, which include modifying their facilities, training their staff, and updating all publications and notices; and choose between abiding by Title VII or the Rule. Thus, Plaintiffs are suffering irreparable injuries.

## II. Plaintiffs' Injuries Outweigh Any Alleged Harm to Defendants.

An injunction also is warranted because, when balancing the hardships between the parties, the scale clearly tips in Plaintiffs' favor. "Although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met." *Callaway*, 489 F.2d at 576. Since Plaintiffs are likely to succeed on the merits of the case, Defendants must "present powerful evidence of harms to [their] interests" to prevent Plaintiffs from

4

meeting the balancing requirement. *Opulent Life*, 697 F.3d at 297. Defendants cannot meet this high standard.

Plaintiffs face the loss of critical Medicare and Medicaid funding if they fail to comply with the Rule. This could force some private and state healthcare providers either out of business or to discontinue social services all together. The Rule requires Plaintiffs to alter their health benefits in contravention of internal or state policy. The sovereign Plaintiffs also face intrusion into their regulation of the practice of medicine and their provision of medical care to citizens and employees.

All Plaintiffs face legal liability if the Rule is not enjoined. First, if Plaintiffs do not follow the Rule's requirements, they face lawsuits from individuals seeking required procedures and from employees seeking required insurance coverage. Second, if Plaintiffs do comply with the Rule, they face employment discrimination lawsuits from employees seeking religious accommodations from participating in transition and abortion procedures. Third, if Plaintiffs provide care that conflicts with their professional medical judgment, then they expose themselves to malpractice lawsuits.

By contrast, an injunction inflicts no meaningful injury on Defendants. Defendants waited over six years to propose and promulgate the Rule. Such delay belies any argument that immediate enforcement of the Rule is necessary. And Defendants do not even require their own health insurance programs—programs that cover millions of poor, disabled, and elderly Americans—to comply with the Rule. ECF No. 25 at 39. The federal government should not be permitted to claim harm from the delayed enforcement upon others of what it will not enforce upon itself. Thus, the balance of harms clearly tips in favor of granting injunctive relief.

### III.   The Public Interest Favors Granting the Injunction.

The public interest "factor overlaps considerably with the previous one [balancing the harms], and most of the same analysis applies." *Texas v. United States*, 809 F.3d

5

134, 187 (5th Cir. 2015), *aff'd*, 136 S. Ct. 2271 (2016). Just as the balance of harms favors Plaintiffs, the public interest is safeguarded by protecting Plaintiffs while the Court weighs the validity of the underlying Rule. This is particularly true since several of Plaintiffs' claims involve the deprivation of First and Tenth Amendment rights. "[I]njunctions protecting [constitutional] freedoms are always in the public interest." *Texans for Free Enter.,* 732 F.3d at 539 (quoting *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006)).

Plus, disqualifying Plaintiffs as Medicare and Medicaid recipients not only hurts Plaintiffs and their ability to fulfil their mission, but hurts the public even more. Many individuals rely primarily, and exclusively in many instances, on the viability of Medicare and Medicaid to pay for crucial health services.[1] To permit the Rule to take full effect places the Medicare and Medicaid reliant public into the crosshairs of harm. That should weigh heavily in favor of enjoining the Rule.

Given the gravity of the changes proposed in the Rule, the medical debate on the propriety of these procedures, the widespread impact on private and public entities, the harm posed to individuals that rely upon Medicare and Medicaid for medical treatment, and the intrusion into sovereignty, the public interest favors an injunction.

## CONCLUSION

Plaintiffs respectfully request the Court issue a preliminary injunction against the definition of "on the basis of sex" in the Rule, 45 C.F.R. § 92.4.

---

[1] More than 55 million people are enrolled in Medicare. *See* Kaiser Family Found., *Total Number of Medicare Beneficiaries* (2015) (last visited Nov. 9, 2016), *at* http://kff.org/medicare/state-indicator/total-medicare-beneficiaries/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D. More than 73 million people are enrolled in Medicaid. *See* Kaiser Family Found., *Total Monthly Medicaid and CHIP Enrollment* (Aug. 2016) (last visited Nov. 9, 2016), *at* http://kff.org/health-reform/state-indicator/total-monthly-medicaid-and-chip-enrollment/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22 %7D.

Respectfully submitted this the 9th day of November, 2016.

/s/ Luke W. Goodrich
Luke W. Goodrich
DC Bar No. 977736
Eric C. Rassbach (admission pending)
Mark L. Rienzi (admission pending)
Stephanie H. Barclay (admission pending)
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036
(202) 955-0095
(202) 955-0090
lgoodrich@becketfund.org

*Counsel for Plaintiffs Christian Medical & Dental Associations, Franciscan Alliance, Inc., Specialty Physicians of Illinois, LLC*

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY D. STARR
Deputy First Assistant Attorney General

PRERAK SHAH
Senior Counsel to the Attorney General

ANDREW D. LEONIE
Associate Deputy Attorney General

*/s/ Austin R. Nimocks*
AUSTIN R. NIMOCKS
Associate Deputy Attorney General
Texas Bar No. 24002695
austin.nimocks@oag.texas.gov

MICHAEL C. TOTH
Senior Counsel

JOEL STONEDALE
Counsel

Office of Special Litigation
ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Mail Code 009
Austin, Texas 78711-2548
(512) 936-1414

*ATTORNEYS FOR PLAINTIFFS STATE OF TEXAS; STATE OF WISCONSIN; STATE OF NEBRASKA; COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin; STATE OF KANSAS; STATE OF LOUISIANA, STATE OF ARIZONA, and STATE OF MISSISSIPPI, by and through Governor Phil Bryant*

7

## CERTIFICATE OF SERVICE

      I hereby certify that on November 9, 2016, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

                                              */s/ Austin R. Nimocks*  
                                              AUSTIN R. NIMOCKS