**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | |
| SYLVIA BURWELL, Secretary of the United States Department of Health and Human Services, *et al.*, | Civil Action No. 7:16-cv-00108-O |
| *Defendants*. | |

## PROPOSED INTERVENORS' MOTION FOR RULING ON INTERVENTION AND STAY OF PRELIMINARY INJUNCTION PENDING APPEAL

### INTRODUCTION

On December 31, 2016, this Court issued a nationwide preliminary injunction, prohibiting Defendants from enforcing regulatory provisions that prohibit federally-funded healthcare entities from discriminating based on gender identity and termination of pregnancy. Order at 46, ECF No. 62. The rights of Proposed Intervenors' members are now being irreparably impaired pursuant to judicial proceedings in which Proposed Intervenors were denied the right to participate as real parties in interest, or even to have their timely motion to intervene expressly adjudicated.

Proposed Intervenors now respectfully request that the Court issue an explicit ruling on intervention, in order to facilitate appellate review. Proposed Intervenors also request that the Court stay its preliminary injunction order pending appeal. If the Court grants the motion to intervene, Proposed Intervenors will file a notice of appeal from the preliminary injunction order. If the Court denies the motion to intervene, Proposed Intervenors will appeal the denial. In the

absence of an explicit ruling, Proposed Intervenors will appeal from the constructive denial of intervention and seek appropriate relief through a petition for writ of mandamus. Given the injunction and the harm it imposes on Proposed Intervenors' members, Proposed Intervenors intend to seek relief from the U.S. Court of Appeals for the Fifth Circuit on January 20.

## ARGUMENT

### I.        Proposed Intervenors Request An Express Ruling on Intervention.

Despite their best efforts, Proposed Intervenors have been completely shut out of preliminary injunction proceedings. Now, the Court has issued a nationwide preliminary injunction, leaving Proposed Intervenors in exactly the position they sought to avoid when filing a timely motion for intervention—subject to the irreparable harm imposed by the preliminary injunction, but without the status and attendant procedural rights of parties, or even so much as a ruling on their motion to intervene. The preliminary injunction is currently imposing irreparable harm on Proposed Intervenors' members, and countless others like them, by restraining Defendants from enforcing the Final Rule to prohibit discrimination against transgender people and women who seek or have obtained certain reproductive care. By preventing Proposed Intervenors from asserting their rights as real parties in interest at a critical stage of the litigation, the Court has constructively denied the motion to intervene. *See* Mot. for Reconsideration at 5–6, ECF No. 38.

The need for a formal ruling on intervention is particularly urgent, as it is now readily apparent that Defendants will not adequately represent the interests of Proposed Intervenors' members. Defendants have informed Proposed Intervenors that they are unable to provide assurances that they will appeal the preliminary injunction or that they will seek a stay of the preliminary injunction pending appeal. Moreover, as Proposed Intervenors have already pointed

out, they intend to raise defenses under the Establishment Clause, Equal Protection Clause, and EMTALA—arguments that Defendants did not raise in opposing Plaintiffs' motions for preliminary injunction, and which the Court did not consider in granting the preliminary injunction. *Compare* Mem. Supp. Mot. to Intervene at 20–23, ECF No. 8; Amici Br. at 9–16, ECF No. 53 *with* Defs.' Opp. to Pls.' Mot. for PI, ECF No. 50; Order, ECF No. 62. Finally, the impending change in Administration has made it abundantly clear that Defendants will not adequately represent the interests of Proposed Intervenors' members. President-Elect Donald Trump has promised to repeal the Affordable Care Act and to "[p]rotect individual conscience in healthcare." Kimberly Leonard, *Donald Trump Provides Details of Health Care Policies*, U.S News & World Report (Nov. 11, 2016).[1]

The clock is now ticking on the deadline to appeal the preliminary injunction. Proposed Intervenors therefore seek an explicit ruling on intervention, in order to facilitate timely appellate review of their request for intervention and, ultimately, the preliminary injunction.

## II.     Proposed Intervenors Satisfy the Requirements for a Stay of the Preliminary Injunction.

If the Court grants intervention, it should also stay the preliminary injunction pending appeal, pursuant to Federal Rule of Civil Procedure 62. Courts consider four factors in deciding whether to stay an injunction pending appeal: (1) whether the movant is likely to succeed on the merits; (2) whether the movant would likely suffer irreparable injury from the denial of a stay; (3) whether the other parties will not be substantially harmed by the grant of a stay; and (4) whether a stay is in the public interest. *See, e.g.*, *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013). A movant "need only present a

---

[1] http://www.usnews.com/news/articles/2016-11-11/donald-trump-provides-details-of-health-care-policies.

substantial case on the merits when a serious legal question is involved" and "the balance of equities weighs heavily in favor of a stay." *United States v. Baylor Univ. Med. Ctr.*, 711 F.2d 38, 39 (5th Cir. 1983). Under either standard, a stay of proceedings is justified here: Proposed Intervenors are likely to succeed on the merits, or at least present a substantial case on the serious legal questions raised by the Court's ruling; the injunction imposes irreparable harm on Proposed Intervenors' members and the public; and Plaintiffs will not be irreparably harmed by a stay of the preliminary injunction pending appeal.

### A. Proposed Intervenors Are Likely to Succeed on the Merits, or at Least Present a Substantial Case on the Serious Legal Questions at Stake.

Even if the Court disagrees whether Proposed Intervenors are likely to succeed on the merits in appealing the preliminary injunction order, Proposed Intervenors at the very least present a substantial case on the serious legal questions raised by the Court's ruling. Several of these issues are presented here:

First, Proposed Intervenors maintain that the Court erred in holding that Section 1557's prohibition against sex discrimination unambiguously applies only to discrimination based on "biological differences" between men and women. Order at 32–38, ECF No. 62. In so holding, the Court suggested that the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)—holding that discrimination based on failure to conform to sex stereotypes constitutes sex discrimination—does not apply to either Title IX or Section 1557. ECF No. 62 at 35 n.28. To the contrary, the Supreme Court has consistently held that the definition of "sex" under Title IX is the same as the definition of "sex" under Title VII. *See, e.g.*, *Franklin v. Gwinnett Cty. Pub. Sch.*, 503 U.S. 60, 75 (1992).

The Court also asserted that, "[p]rior to the passage of the ACA . . . no federal court or agency had concluded sex should be defined to include gender identity." ECF No. 62 at 35. But

that is simply not true. *See, e.g.*, *Schroer v. Billington*, 577 F. Supp. 2d 293, 305 (D.D.C. 2008) (concluding that "discrimination on the basis of gender identity is literally 'because of . . . sex'"); *see also Smith v. City of Salem*, 378 F.3d 566, 574–75 (6th Cir. 2004); *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000).

As a result of its interpretation of Section 1557 and the applicable law, the Court facially enjoined the Final Rule's prohibition against discrimination on the basis of gender identity. Order at 45–46, ECF No. 62. This decision goes well beyond Plaintiffs' objection to providing transition-related care and coverage. As a result of the Court's ruling, Defendants are restrained from taking any action to enforce Section 1557 against a covered healthcare provider that discriminates against, or even harasses, a transgender person simply because of who they are.

Second, Proposed Intervenors maintain that the Court erred in suggesting that Title IX's abortion language conflicts with the Final Rule's prohibition against discrimination "on the basis of . . . termination of pregnancy," 45 C.F.R. §92.4. *See* Order at 37, ECF No. 62. Quite the opposite: Title IX's abortion provision explicitly states that "[n]othing in this section shall be construed to permit a penalty to be imposed on any person or individual because such a person or individual is seeking or has received any benefit or service related to a legal abortion." 20 U.S.C. § 1688. Indeed, the Final Rule's language is not in conflict with—but rather identical to—Title IX's implementing regulations, which prohibit discrimination based on "termination of pregnancy." *See, e.g.*, 34 C.F.R. § 106.21(c). The ruling is thus in error.

The error infects the injunction. The Court enjoined Defendant's from enforcing the Final Rule's provision prohibiting discrimination based on "termination of pregnancy," apparently on the ground that this language requires provision of abortion. *See* Order at 37 n.31, ECF No. 62. But in Section 1557, as in Title IX, the prohibition against discrimination based on termination

of pregnancy bars covered healthcare entities from refusing to provide healthcare services or coverage to a patient *because* the patient has sought or obtained an abortion. *See, e.g.*, 34 C.F.R. § 106.21(c)(3) (stating that covered educational institutions shall not discriminate in admissions with respect to "termination of pregnancy"). Without such protections, a covered healthcare entity might refuse to provide even routine healthcare to a woman because she had previously obtained an abortion. These sorts of practices are plainly sex discriminatory. *See Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996) (holding that discrimination based on an employee's decision to have an abortion constitutes sex discrimination).

Third, the court's RFRA ruling rested on the its holding that "the government has failed to prove the Rule employs the least restrictive means" because "the government has numerous less restrictive means available to provide access and coverage for transition and abortion procedures." Order at 41, 42, ECF No. 62. There is, however, a substantial legal questions whether it is a less restrictive alternative for the government to create an entirely new government program to "assist transgender individuals in finding and paying for transition procedures available from the growing number of healthcare providers who offer and specialize in those services." *Id.*; *see also* Amici Br. at 33, ECF No. 53. Practical concerns aside, such alternatives fail to address the government's compelling interest in ensuring that people are able to access healthcare *on a non-discriminatory basis*. 81 Fed. Reg. at 31,380. Prohibitions on discrimination in healthcare are the least restrictive means for advancing this compelling interest, just as prohibitions on employment discrimination are the least restrictive means for ensuring that people are able to access employment on a nondiscriminatory basis. No one would suggest that the federal government should not enforce Title VII because it could simply match victims of employment discrimination with new, nondiscriminatory employers. So too, here, requiring

the federal government to match transgender people and women with nondiscriminatory healthcare providers is not a satisfactory alternative to enforcement of anti-discrimination protections.

In addition, in its RFRA analysis, the Court asserted that "the government's own health insurance programs, Medicare and Medicaid, do not mandate coverage for transition surgeries," and that "the military's health insurance program, TRICARE, specifically excludes coverage for transition surgeries." Order at 41, ECF No. 62. As Proposed Intervenors pointed out in their *amici* brief, however, these government programs do, in fact, cover transition-related healthcare when determined to be medically necessary on an individualized basis. *See* Amici Br. at 31–33, ECF No. 53.[2]

Fourth, in balancing the equities and assessing the public interest, the Court stated summarily that "HHS will suffer no harm from delaying implementation of the challenged portion of the Final Rule" because "[t]he injunction would merely maintain the status quo." Order at 44, ECF No. 62. That, however, is not correct. In fact, the preliminary injunction significantly alters the status quo by removing federal legal protections—including protections against discrimination in access to healthcare services and facilities, as well as health care plan benefit implementation—that have been in place since July 18, 2016. 45 C.F.R. § 92.1. Only one part of the Final Rule, its plan benefit design provisions, had yet to take effect when the Court issued the injunction on December 31, 2016. Moreover, the Court did not address the harm the

---

[2] The Department of Defense has also announced that it will provide transition surgeries to active-duty service members where medically necessary to treat the individual's gender dysphoria. Corey Dickstein, *Pentagon to Pay for Some Sex-Change Operations for Transgender Troop*, Stars & Stripes (Sept. 21, 2016), http://www.military.com/daily-news/2016/09/21/ pentagon-pay-for-some-sex-change-operations-transgender-troops.html.

preliminary injunction imposes on Proposed Intervenors' members, as well as thousands of other transgender people and women throughout the country.

**B. A Stay Is Necessary to Prevent Irreparable Harm to Proposed Intervenors' Members, and the Public.**

The balance of the harms and the public interest weigh heavily in favor of staying the nationwide preliminary injunction. *See* Amici Br. at 46–48, ECF No. 53. "[M]any women and transgender individuals continue to experience discrimination in the health care context, which can lead to denials of adequate health care and increases in existing health disparities in underserved communities." 81 Fed. Reg. at 31,460. The Final Rule was meant to ensure that these vulnerable populations are able to access healthcare on a non-discriminatory basis.

The nationwide preliminary injunction restrains Defendants from investigating and enforcing Section 1557 with respect to any instance of discrimination against transgender people. It also prevents Defendants from investigating and enforcing Section 1557 with respect to any instance of discrimination against a woman who has sought or obtained an abortion. As a result, Defendants are powerless to protect transgender people and women seeking certain reproductive care against discrimination in healthcare, and the serious harms such discrimination imposes. The injunction thus fundamentally impairs the civil rights of Proposed Intervenors' members and similarly situated individuals. *See* Amici Br. at 46–48, ECF No. 53; *United States v. Hayes Int'l Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969).[3]

**C. Plaintiffs Will Not Be Irreparably Harmed by a Stay.**

---

[3] The preliminary injunction also irreparably harms Proposed Intervenors' members by infringing their Establishment Clause and Equal Protection Clause rights. *See* Amici Br. at 9–16, ECF No. 53; *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. Unit B 1981)

A stay of the preliminary injunction pending appeal would not irreparably harm Plaintiffs. As Defendants stated in their opposition to Plaintiffs' motions for preliminary injunction: "Plaintiffs have not identified *any* enforcement action against them under the Rule, whether by HHS or a private litigant, where a finding of unlawful discrimination and a termination of funding or a damages award are imminent." ECF No. 50 at 22 (emphasis added).[4] This is the case even though significant parts of the Final Rule have been in effect since July. 45 C.F.R. § 92.1.

Should Defendants initiate an investigation, Plaintiffs would be entitled to extensive pre-enforcement administrative and judicial process before any penalty would issue. Thus, if proceedings against Texas or any other Plaintiff become imminent, the Court could lift the stay with respect to that party upon application.

Even if the Court concludes that Plaintiffs would be irreparably harmed by a stay, however, it should at least grant a stay with respect to non-parties. Only Plaintiffs to this lawsuit have asserted irreparable harm. Moreover, given that other healthcare providers are differently situated from Plaintiffs—and many do not share Plaintiffs' objections to the Final Rule—there is no reason to believe that a stay of the preliminary injunction pending appeal would impose irreparable harm on all covered healthcare entities throughout the country.[5]

---

[4] The Court noted that the State of Texas "is already being forced to comply with an investigation by HHS's Office of Civil Rights and stands to lose more than $42.4 billion in healthcare funding." Order at 11, 18 n.15, 43, ECF No. 62. But the documents submitted by State Plaintiffs to substantiate this allegation—which were submitted together with their reply brief—state explicitly that the HHS investigation "is not against the administration of the Texas Medicaid program." Declaration of Doneshia Ates, Exhibit 2, ECF No. 56-1. At the very least, it is unclear whether Defendants are investigating the State of Texas for violating the Final Rule.

[5] Even as to the parties, there is a question as to the standing of Plaintiff Christian Medical and Dental Association (CMDA), and thus to its entitlement to relief. CMDA asserts standing based on the Declaration of Dr. Hoffman. Order at 19–20, ECF No. 62. But there is no indication that Dr. Hoffman—who is currently serving as the Program Director of the Pediatric, Endocrinology,

**CONCLUSION**

For the foregoing reasons, the Court should issue a decision on intervention. The Court should also stay the preliminary injunction pending appeal.

---

Diabetes, and Metabolism Division at Nationwide Children's Hospital, App. 463—is a covered healthcare entity subject to the Final Rule. *See* Amici Br. at 5, ECF No. 53. If Dr. Hoffman is not subject to the Final Rule, then CMDA has not demonstrated that any of its members has individual standing sufficient to support its membership standing.

Respectfully submitted this 9th day of January, 2017.

Rebecca L. Robertson                  /s/ Brian Hauss
AMERICAN CIVIL LIBERTIES              Brian Hauss
UNION OF TEXAS                        Joshua Block
P.O. Box 8306                         Brigitte Amiri
Houston, TX 77288                     James D. Esseks
(713) 942-8146                        Louise Melling
                                      AMERICAN CIVIL LIBERTIES
Kali Cohn                             UNION FOUNDATION
AMERICAN CIVIL LIBERTIES              125 Broad Street, 18th Floor
UNION OF TEXAS                        New York, NY 10004
P.O. Box 600169                       (212) 549-2500
Dallas, TX 75360
(214) 346-6577

Daniel Mach*                          Amy Miller*
AMERICAN CIVIL LIBERTIES              AMERICAN CIVIL LIBERTIES
UNION FOUNDATION                      UNION OF NEBRASKA
915 15th Street, N.W.                 134 S. 13th St., #1010
Washington, D.C. 20005                Lincoln, NE 68508
(202) 548-6604                        (402) 476-8091


Counsel for Proposed Intervenors

*Application for admission pending.

## **CERTIFICATE OF CONFERENCE**

On January 6, 2017, I informed Sheila Lieber, Adam Grogg, Emily Nestler, Bailey Heaps, counsel for Defendants, via email that Proposed Intervenors planned to file this Motion for Ruling on Intervention and Stay of Preliminary Injunction Pending Appeal. I asked Defendants' position on the instant motion. On January 6, Mr. Grogg responded that Defendants take no position on the motion.

On January 6, 2017, I informed Austin R. Nimocks and Luke Goodrich, counsel for Plaintiffs, via e-mail that Proposed Intervenors planned to file this Motion for Ruling on Intervention and Stay of Preliminary Injunction Pending Appeal. I asked Plaintiffs' position on the instant motion. On January 6, Mr. Nimocks responded that State Plaintiffs oppose the motion. On January 9, Mr. Goodrich responded that Private Plaintiffs oppose the motion.

/s/ Brian Hauss

Brian Hauss

<u>**CERTIFICATE OF SERVICE**</u>

On January 9, 2017, I electronically submitted the foregoing **MOTION FOR RULING ON INTERVENTION AND STAY OF PRELIMINARY INJUNCTION PENDING APPEAL** to the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served counsel of record for all parties through the Court's ECF system.


/s/ Brian Hauss

Brian Hauss