IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SYLVIA BURWELL, *et al.*, <br><br> *Defendants*. | No. 7:16-CV-00108 <br><br> **PLAINTIFFS' RESPONSE TO PROPOSED INTERVENORS' MOTION FOR RULING ON INTERVENTION AND STAY OF PRELIMINARY INJUNCTION PENDING APPEAL** |

Putative intervenors seek two things: an immediate ruling on their motion to intervene and a stay of the preliminary injunction pending appeal. If they don't get what they want by January 20, they threaten mandamus. But this Court has already set a sensible briefing schedule for the motion to intervene, which will be resolved in due course. And the request for a stay is both premature and meritless. Thus, putative intervenors' motion should be denied.

**I. The Motion to Intervene should be resolved in accordance with the Court's orderly briefing schedule.**

This is now the fourth time putative intervenors have tried to force a premature ruling on their motion to intervene. ECF Nos. 16, 27, 38, 63. As this Court has repeatedly explained, a key and indispensable factor in adjudicating the motion to intervene is whether the existing parties adequately represent putative intervenors' interests. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014); Order 3, ECF No. 20. But the parties cannot fully brief this factor, and the Court cannot knowledgably assess it, until *after* Defendants answer Plaintiffs' complaint. Thus, the Court rightly ordered Plaintiffs to respond to the motion to intervene fourteen days after Defendants answer the complaint. Order 3, ECF No. 20; *see also* Order 6, ECF No. 32

1

(quoting Order 3, ECF No. 20) ("[C]onsidering the motion to intervene after Defendants file their answer will 'provide the Court with enough information to determine whether the Putative Intervenors have met their burden to show that their interests are inadequately represented.'"). There is no basis for disturbing these rulings.

That is particularly true now that Defendants' deadline for responding to the Complaint—January 25—is just days away. ECF No. 40. Assuming Defendants answer the Complaint,[1] Plaintiffs must respond to the Motion to Intervene by February 8, 2017. The Motion to Intervene would then be fully briefed well before the deadline for appeal, which is March 1. *See* Fed. R. App. P. 4(a)(1)(B). This is a sensible schedule that provides ample time for a ruling on the Motion to Intervene before the deadline for appeal. Putative intervenors' demand for an immediate ruling—and its threat of mandamus if it doesn't get it—is baseless.[2]

## II. The demand for a stay is both premature and meritless.

Putative intervenors' request for a stay pending appeal fails for two reasons: It is both premature and meritless. It is premature because putative intervenors are not a party to the case. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). Although "there may be exceptions to this general rule, . . . the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." *Id.* (citation omitted); *see also EEOC v. Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1442–43 (5th Cir. 1995) ("A person who is not a party to the proceedings below generally cannot appeal the court's

---

[1] Defendants have notified Plaintiffs of their intent to seek an extension of time to answer the Complaint. Plaintiffs take no position on that request.

[2] Should the Court decide to expedite a ruling on the Motion to Intervene, Plaintiffs request at least 7 days' notice to prepare a response.

judgment."). Putative intervenors, of course, have sought intervention; and once the Court resolves the motion to intervene, it will be clear whether they have standing to appeal and to seek a stay pending that appeal.

Even assuming putative intervenors have standing to appeal and to seek a stay, their arguments are meritless. As the Fifth Circuit has explained: "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 427 (2009)). In deciding whether to stay a preliminary injunction, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (citing *Nken,* 556 U.S. at 426). Here, none of the factors favor putative intervenors.

***Success on the merits.*** First, putative intervenors are not likely to succeed on the merits. Putative intervenors do not contest this Court's ruling that the Department of Health and Human Services' (HHS) interpretation of "sex" is contrary to the plain meaning of Title IX as understood at the time of its enactment. Instead, they claim that this Court's ruling on Plaintiffs' APA claim cannot be reconciled with *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). Motion 4, ECF No. 63. But as this Court correctly noted, *Price Waterhouse* simply held that "sex" discrimination includes "disparate treatment of men and women resulting from sex stereotypes," while recognizing "the binary nature of sex." Order 35 n.28, ECF No. 62. And the Supreme Court later reaffirmed the moorings of federal law regarding the binary nature of sex in *United States v. Virginia*, 518 U.S. 515, 550 n.19 (1996) (concluding that providing equal opportunity for women still means that we must "afford members of each sex privacy from the other sex.").

3

Putative intervenors also misstate this Court's ruling regarding "termination of pregnancy," arguing that government may prevent discrimination against women who have received an abortion in the past. Motion 5–6, ECF No. 63. But this Court did not hold that such discrimination could never be prohibited. It simply held that HHS's rule was contrary to law because HHS incorporated Title IX's prohibition on sex discrimination in a way that could require coverage and provision of abortion services, while simultaneously refusing to incorporate Title IX's clear exemption related to abortion. Order 37, ECF No. 62. Indeed, putative intervenors omit half of Title IX's provision regarding abortion, which states that "Nothing in this chapter shall be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion." 20 U.S.C.A. § 1688. HHS refused to incorporate this same exemption into its rule, when it was incorporated into the "grounds prohibited" under Section 1557 by Congress. HHS similarly refused to incorporate Title IX's clear religious exemption related to "sex" discrimination, which states that Title IX "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681. This Court thus correctly held that "[f]ailure to incorporate Title IX's religious and abortion exemptions nullifies Congress's specific direction to prohibit only the ground proscribed by Title IX. That is not permitted." Order 37, ECF No. 62.

On Plaintiffs' claim under the Religious Freedom Restoration Act, Putative intervenors do not contest that Private Plaintiffs have sincerely held religious beliefs that prevent them from performing or covering gender transition or abortion procedures. Nor do putative intervenors disagree that HHS's rule substantially burdens Private Plaintiffs' religious exercise. Nor do putative intervenors offer any response to the argument that the government cannot have a compelling government interest in requiring private doctors to perform procedures the government exempts

its own military doctors from performing,[3] and that the government itself recognizes can be harmful for patients.[4]

Instead, putative intervenors simply argue that less restrictive alternatives recognized by this Court don't address the government's interest in ensuring access to healthcare "*on a non-discriminatory basis.*" Motion 6, ECF No. 63 (emphasis in original). In other words, putative intervenors argue that the government has a compelling government interest in requiring unwilling conscientious objectors to provide specific medical procedures, regardless of other sources for obtaining those services, because anything short of that would allow unlawful discrimination. But labelling someone else's religious exercise "unlawful discrimination" does not automatically satisfy strict scrutiny. If it did, every government policy that alleged any anti-discrimination interest would automatically survive strict scrutiny. The Supreme Court has repeatedly refused to give the government a blank check when enforcing anti-discrimination laws that conflict with other rights triggering heightened scrutiny. *See, e.g.*, *Snyder v. Phelps*, 562 U.S. 443, 448 (2011) (protecting harassing and discriminatory speech of funeral protesters); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557 (1995) (unanimously protecting a group's exclusion of LGBT messages despite conflicting anti-discrimination laws).[5]

---

[3] Putative intervenors argue that TRICARE does cover some transition-related healthcare. Motion 7, ECF No. 63. But putative intervenors fail to address the generous conscience protections offered to military doctors in the TRICARE context—conscience protections that are inexplicably absent from HHS's new rule. *See, e.g.*, TRICARE; Mental Health and Substance Use Disorder Treatment, 81 Fed. Reg. 61068, 61074 (Sept. 2, 2016) (codified at 32 C.F.R. Part 199) ("[T]here is nothing in this rule that requires providers to render care against their beliefs. Existing policies allow DoD providers who, as a matter of conscience or moral principle, do not wish to provide psychotherapy, psychopharmacological, or hormone treatment, to request excusal from any such involvement."). Thus, regardless of the transition-related care required in the military context—the scope of which is more limited than under the new HHS rule—there is nothing in the military context that compels objecting doctors to perform medical procedures against their conscience in the same way HHS's rule does.

[4] *See* Pls.' Br. in Supp. of Mot. for Prelim. Inj. 27, ECF No. 25.

[5] Indeed, putative intervenors submitted an entire brief to the Supreme Court in the *Hobby Lobby* case arguing that the Court should rule against the religious parties in that case because putative

Even under anti-discrimination statutes like Title VII, Congress has itself recognized the wisdom of providing carve-outs to anti-discrimination norms to protect the constitutional and statutory rights of religious organizations. 42 U.S.C. § 2000e-1(a). And of course, as the Court recognized, Congress's incorporation of Title IX in the Affordable Care Act cannot be understood without including Title IX's express protection for religious organizations. Order 37, ECF No. 62. This demonstrates that the government can and does accomplish its interest of pursing anti-discrimination norms without steamrolling religious liberty and conscience protections.

*Irreparable injury.* Second, putative intervenors have not demonstrated an irreparable injury from the denial of a stay. They claim generally that "many women and transgender individuals continue to experience discrimination in the health care context." Motion 8, ECF No. 63. But the mere "possibility of irreparable injury" is insufficient. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation and internal quotation marks omitted). The injury must be real, substantial, and immediate. Putative intervenor's alleged injuries fall far short of this standard.

*Harm to Plaintiffs.* By contrast, this Court correctly held that Plaintiffs *would* be irreparably harmed by the grant of a stay based on ongoing investigation faced by a State Plaintiff, mounting lawsuits against organizations similarly situated to Private Plaintiffs, and the present conflicts between the Rule and state law. Order 43, ECF No. 62; *see also* Pls.' Reply in Supp. of Mot. for Prelim. Inj. 1–7, ECF No. 57.

*Public interest.* Finally, a stay is not in the public interest. The Supreme Court has found that public interest weighed in favor of denying a stay pending appeal when denying the stay was necessary to "avoid disrupting" the "status quo." *Dayton Bd. of*

---

intervenors labeled the religious behavior "discriminatory." *See* Amicus Br. of Julian Bond, the Am. Civil Liberties Union, et al., at 7, *Hobby Lobby v. Burwell,* 134 S. Ct. 2751 (2014) ("[T]he elimination of discrimination – in the marketplace and outside the realm of constitutionally protected associations, religious or otherwise – has long been recognized as a state interest of the highest order. That is what is at stake in this case given that the contraception rule addresses a vestige of gender discrimination."). The Court did not accept that argument.

6

*Educ. v. Brinkman*, 439 U.S. 1358, 1358 (1978). Here, this Court correctly noted that the injunction "would merely maintain the status quo—allowing HHS to prohibit sex discrimination in healthcare services as defined by Title IX and incorporated by Section 1557." Order 44, ECF No. 62. It will also stay the concrete and imminent injury threatened against Plaintiffs regarding private lawsuits, public enforcement proceedings, and False Claims Act liability. *See* Pls.' Br. in Supp. of Mot. for Prelim. Inj. 25, ECF No. 25.

Further, this Court correctly determined that nation-wide relief is in the public interest. Order 45–46, ECF No. 62. Putative intervenors argue that relief should be limited to named plaintiffs. Motion 9, ECF No. 63. But courts have recognized that if an agency rule is invalid, nationwide relief is in the public interest where, as here, "refusal to sustain a broad injunction is likely merely to generate a flood of duplicative litigation." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998). Similarly, a broad nation-wide injunction of a facially invalid rule encourages "agency reformulation of its policy," which is "is the preferable next step in dealing with" invalid agency rules. *Harmon v. Thornburgh*, 878 F.2d 484, 495 (D.C. Cir. 1989). Here, the public interest would be benefited if HHS revised its rule to actually comply with (rather than thumb its nose at) statutory and constitutional requirements.

Because putative intervenors have failed to demonstrate any of the four factors justifying a stay of injunction pending appeal, this court should deny putative intervenors' request.

## CONCLUSION

Putative intervenor's motion should be denied.

Respectfully submitted this 17th day of January, 2017.

| | |
|---|---|
| */s/ Luke W. Goodrich*<br>Luke W. Goodrich<br>Bar No. 977736DC<br>Mark L. Rienzi<br>Stephanie H. Barclay<br>The Becket Fund for Religious Liberty<br>1200 New Hampshire Ave. NW<br>Suite 700<br>Washington, DC 20036<br>(202) 955-0095<br>lgoodrich@becketfund.org<br><br>*Counsel for Plaintiffs Christian Medical & Dental Associations, Franciscan Alliance, Inc., Specialty Physicians of Illinois, LLC* | KEN PAXTON<br>Attorney General of Texas<br><br>JEFFREY C. MATEER<br>First Assistant Attorney General<br><br>BRANTLEY D. STARR<br>Deputy First Assistant Attorney General<br><br>PRERAK SHAH<br>Senior Counsel to the Attorney General<br><br>ANDREW D. LEONIE<br>Associate Deputy Attorney General<br><br>*/s/ Austin R. Nimocks*<br>AUSTIN R. NIMOCKS<br>Associate Deputy Attorney General<br>Texas Bar No. 24002695<br>austin.nimocks@oag.texas.gov<br><br>MICHAEL C. TOTH<br>Senior Counsel<br><br>JOEL STONEDALE<br>Counsel<br><br>Office of Special Litigation<br>ATTORNEY GENERAL OF TEXAS<br>P.O. Box 12548, Mail Code 009<br>Austin, Texas 78711-2548<br>(512) 936-1414<br><br>*Counsel for Plaintiff States* |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2017, the foregoing motion was served on all parties via ECF.

                                                                   */s/ Luke W. Goodrich*
                                                                   Luke W. Goodrich