IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| FRANCISCAN ALLIANCE, INC. et al., | § | |
| | § | |
|   Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 7:16-cv-00108-O |
| | § | |
| SYLVIA BURWELL, Secretary of the United States Department of Health and Human Services; and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | § § § § § § | |
| | § | |
|   Defendants. | § | |

## ORDER

Before the Court is Defendants' Motion for Extension of Time to Answer or Otherwise Respond to the Complaint (ECF No. 66), filed January 17, 2017; and Putative Intervenors' Motion for Ruling on Intervention and Stay of Preliminary Injunction Pending Appeal (ECF No. 63), filed January 9, 2017. Defendants request an extension of their deadline to file an answer to Plaintiffs' operative complaint from January 25, 2017 to March 1, 2017 in order to coincide with Defendants' deadline to notice any appeal of the Court's Order granting Plaintiffs' motions for preliminary injunction. Defs.' Mot. 1, ECF No. 66.

For the following reasons, Defendants' Motion for Extension of Time is **GRANTED**. Putative Intervenors' Motion for Ruling on Intervention is **GRANTED in part**; and Putative Intervenors' Motion to Stay the Court's Preliminary Injunction is **DENIED**.

**I.    BACKGROUND**

Plaintiffs brought the above-styled action against Defendants on August 23, 2016, challenging the legality of 45 C.F.R. § 92 (the "Rule"). *See generally* Compl., ECF No. 1. The

American Civil Liberties Union of Texas and River City Gender Alliance (collectively, "Putative Intervenors") filed a motion to intervene on September 16, 2016. Put. Int. Mot. Intervene, ECF No. 7. According to the Court's schedule, Plaintiffs' response to the motion to intervene is due 14 days after Defendants file their responsive pleading to Plaintiffs' complaint, which is due on January 25, 2017.[1] Oct. 7, 2016 Order 3, ECF No. 20. On October 21, 2016, Plaintiffs filed motions for preliminary injunction, requesting a decision before the Rule's challenged insurance provisions went into effect on January 1, 2017. *See* Pls.' Mots., ECF Nos. 22, 24. In order to give the preliminary injunction motions expedited consideration, the Court issued a briefing schedule and reserved consideration of the motion to intervene until after Defendants file their answer.[2] The Court allowed Putative Intervenors to participate in all proceedings as amici curiae, and considered their filings in its order granting Plaintiffs' motions for preliminary injunction. Nov. 1, 2016 Order 6, ECF No. 32; Dec. 31, 2016 Order ("Inj. Order") 41 n.34, ECF No. 62.

The Court granted Plaintiffs' motions for preliminary injunction on December 31, 2016, enjoining the portion of the definition of sex discrimination the Court found was contrary to law and exceeded statutory authority. Inj. Order 46, ECF No. 62. Putative Intervenors now seek a ruling on their motion to intervene and a stay of the Court's preliminary injunction. Put. Int. Mot. 1, ECF No. 63. Defendants request an extension of their time to respond to Plaintiffs' operative

---

[1] On November 15, 2016, the Court granted Defendants' consent motion for extension of time to respond to complaint (ECF No. 39), making "Defendants' answer to Plaintiffs' operative complaint [] due 25 days after the Court issues its ruling on Plaintiffs' preliminary injunction motions." Nov. 15, 2016 Order 1, ECF No. 40. Because the Court issued its ruling on Plaintiffs' preliminary injunction motions on December 31, 2016, Defendants' answer to Plaintiffs' operative complaint is presently due on January 25, 2017. Inj. Order, ECF No. 62.

[2] "[C]onsidering the motion to intervene after Defendants file their answer will 'provide the Court with enough information to determine whether the Putative Intervenors have met their burden to show that their interests are inadequately represented.'" Nov. 1, 2016 Order 6, ECF No. 32 (quoting Oct. 7, 2016 Order, ECF No. 20).

complaint, until March 1, 2017, in order to coincide with their deadline to notice any appeal of the Court's preliminary injunction. Defs.' Mot. 1, ECF No. 66.

## II.  LEGAL STANDARDS

### A.  Intervention as of Right

Rule 24 of the Federal Rules of Civil Procedure governs intervention. Rule 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Accordingly, to intervene of right under Rule 24(a)(2), the Fifth Circuit requires that:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. & State of La.*, 493 F.3d 570, 578 (5th Cir. 2007); *see also Taylor Commc'ns Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 387 (5th Cir. 1999). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis*, 493 F.3d at 578; *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

### B.  Permissive Intervention

Rule 24(b)(1)(B) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Accordingly, permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements

of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Frazier v. Wireline Solutions, LLC*, No. C-10-3, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010).

Whether a motion to intervene is timely depends on four factors: (1) the length of time the applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by the applicants' delay; (3) prejudice to the applicants if their motion is denied; and (4) any unusual circumstances. *United States v. Covington Cty. Sch. Dist.*, 499 F.3d 464, 465–66 (5th Cir. 2007) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977)) (affirming finding that motion to intervene fifteen weeks after consent decree was untimely and prejudicial, especially since intervenor should have known of its interest in case for months); *accord Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 560–61 (5th Cir. 2003).

C. **Stay of Proceedings**

"The district court has a general discretionary power to stay proceedings before it in the control of its docket and in the interests of justice." *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254. District courts are to "weigh competing interests and maintain an even balance" in deciding whether to issue a stay. *Id.* "[T]he moving party bears a heavy burden to

4

show why a stay should be granted." *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.*, 761 F.2d 198, 203 n.6 (5th Cir. 1985).

## III. ANALYSIS

### A. Motion to Intervene

On September 16, 2016, Putative Intervenors moved to intervene in the present action as defendants of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Rule 24(b)(1)(B), and now seek a ruling on their request to intervene. Put. Int. Mot. Intervene 1, ECF No. 7; Put. Int. Mot. 1, ECF No. 63. Defendants oppose intervention as of right and take no position on permissive intervention. Defs.' Resp. 1, ECF No. 19. Plaintiffs argue any ruling on the motion to intervene before Defendants have answered Plaintiffs' complaint would be premature.[3] Pls.' Resp. 1, ECF No. 67.

#### 1. Intervention as of Right

To intervene as of right, Putative Intervenors must show: (1) their intervention application is timely; (2) they have an interest relating to the property that is the subject of the action; (3) they are situated so that disposition may, as a practical matter, impair or impede their ability to protect that interest; and (4) their interest is inadequately represented by the existing parties. *Haspel & Davis*, 493 F.3d at 578. "Failure to satisfy any one requirement precludes intervention of right." *Id.* at 578. The Court finds that the intervention application was timely, as it was filed just 24 days after Plaintiffs filed their original Complaint and before any major events in the litigation. *See* Put. Int. Mot. Intervene, ECF No. 7; *Haspel & Davis*, 493 F.3d at 578. The Court further finds that Putative Intervenors have a legally protectable interest in the proceedings and that disposition

---

[3] Plaintiffs' response to the motion to intervene is not due until 14 days after Defendants file their answer to the operative complaint. Oct. 7, 2016 Order 3, ECF No. 20.

5

of this action will impair their ability to protect members' interests if not allowed to intervene, as several of their members wish to avail themselves of rights provided under the Rule. Put. Int. Mot. Intervene 2–4, ECF No. 7.

Thus, the key factor in adjudicating the motion to intervene is the final prong of intervention as of right: whether the existing parties adequately represent Putative Intervenors' interests. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014); Order 3, ECF No. 20. Putative Intervenors present three arguments in support of their claim that Defendants will not adequately represent their interests. Put. Int. Mot. 2–3, ECF No. 63. First, Putative Intervenors point out Defendants have not provided assurances that they will appeal or seek a stay of the Court's preliminary injunction. Put. Int. Mot. 2, ECF No. 63. Defendants have stated only that decisions as to whether, and to what extent, they appeal "will be made by the Solicitor General." Defs.' Resp. 1, ECF No. 65. Putative Intervenors also claim Defendants will not adequately represent their interests because they raised defenses as amici that Defendants did not present to the Court. Put. Int. Mot. 2–3, ECF No. 63. Finally, Putative Intervenors argue that the change of authority in the executive branch demonstrates that Defendants will not adequately represent their interests because President Trump has "promised to repeal the Affordable Care Act and to '[p]rotect individual conscience in healthcare.'" Put. Int. Mot. 3, ECF No. 63 (quoting Kimberly Leonard, *Donald Trump Provides Details of Health Care Policies*, U.S. News & World Report (Nov. 11, 2016)).

"An intervention applicant satisfies the final prong by showing that his interest 'may be' inadequately represented." *Aransas Project v. Shaw*, 404 Fed. App'x 937, 940 (5th Cir. 2010) (quoting *Sierra Club*, 18 F.3d at 1207). But when an intervention applicant shares "the same ultimate objective as a party to the suit, the existing party is presumed to adequately represent the

party seeking to intervene unless that party demonstrates adversity of interest, collusion, or nonfeasance." *Id.* at 940 (quoting *Haspel & Davis*, 493 F.3d at 578–79).

Here, Putative Intervenors share the same ultimate objective as Defendants—namely, a finding that the Rule is lawful. Defendants have demonstrated no adversity of interest, collusion, or nonfeasance, and the Court finds Putative Intervenors' remaining arguments unpersuasive. First, Defendants need not give assurances they will seek a stay or appeal the preliminary injunction in order to adequately represent Putative Intervenors' interests. Up to this point, Defendants have taken no action out of step with their original position that remains in line with Putative Intervenors' objective: an order that the Rule is lawful. Secondly, contrary to Putative Intervenors' assertion, the Court considered all defenses raised by Putative Intervenors in their filings as amici curiae. Inj. Order 41 n.34, ECF No. 62. Finally, from the Court's perspective, an administrative change in the executive branch does not indicate a shift in position with respect to a particular case. Putative Intervenors' reference to an outline of health care proposals from the incoming administration that promised to "[p]rotect individual conscience in healthcare" is wholly insufficient to demonstrate a change in position by Defendants.[4] The Court makes no speculation as to future policy positions of any administration based on media reports. As of this Order, Defendants have taken no action inconsistent with Putative Intervenors' objective to demonstrate the Rule's legality.

Because it is not yet clear whether Defendants will adequately represent Putative Intervenors' interests, Putative Intervenors may not presently intervene as of right for "failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis*, 493 F.3d at 578.

---

[4] Put. Int. Mot. 3, ECF No. 63 (quoting Kimberly Leonard, *Donald Trump Provides Details of Health Care Policies*, U.S. News & World Report (Nov. 11, 2016)).

7

2. <u>Permissive Intervention</u>

Putative Intervenors also seek permissive intervention under Rule 24(b)(1). Put. Int. Mot. Intervene 6, ECF No. 7. While Putative Intervenors' application is timely and presents common questions of law or fact, the final prong of permissive intervention—whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties—cannot be fully evaluated until Plaintiffs respond to the motion to intervene. Unlike intervention as of right, evaluating Putative Intervenors' request for permissive intervention does not center on whether their interests are adequately represented by the existing parties, and therefore can be resolved before Defendants file their answer to Plaintiffs' operative complaint. While Defendants have noted they "take no position on permissive intervention under Rule 24(b)," they have not addressed whether granting Putative Intervenors' request for permissive intervention would cause them any potential prejudice or delay. Defs.' Resp. Mot. Intervene 1, ECF No. 19.

Accordingly, Plaintiffs and Defendants are hereby **ORDERED** to file a pleading responsive to Putative Intervenors' request for permissive intervention on or before **February 8, 2017**. Putative Intervenors may file a reply on or before **February 15, 2017**. The Court defers any ruling on Putative Intervenors' request for permissive intervention until the parties have fully briefed the issue.

B. **Motion for Stay of Preliminary Injunction**

In addition to a ruling on their motion to intervene, Putative Intervenors seek a stay of the Court's preliminary injunction order. Put. Int. Mot. 3, ECF No. 63. A party seeking stay of an injunction bears the burden of demonstrating: (1) likelihood of success on the merits; (2) likelihood the applicant will be irreparably injured absent a stay; (3) that issuance of a stay will not substantially injure the other parties; and (4) that the stay is in the public interest. *See Texas v.*

8

*United States*, 787 F.3d 733, 746–47 (5th Cir. 2015) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). The first two factors "are the most critical." *Nken*, 556 U.S. at 434.

"A stay is not a matter of right, even if irreparable injury might otherwise result," and the propriety of issuing a stay depends on the circumstances of the particular case. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 410 (5th Cir. 2013) (quoting *Nken*, 556 U.S. at 427). The decision to grant or deny a stay is committed to the trial court's sound discretion. *Nken*, 556 U.S. at 433.

In their attempt to demonstrate irreparable injury and a likelihood of success on the merits, Putative Intervenors misstate the scope and application of the Court's preliminary injunction order. The Court's Order did not purport to alter any statutory protections for women or transgender individuals outside of the challenged portion of the Rule. The Order did not enjoin the entirety of sex discrimination prohibited by the Rule, but enjoined only the portion of the Rule that defined prohibited sex discrimination in a way that exceeded Defendants' authority under the incorporated statute: Title IX.[5] The Court's Order does not permit a healthcare provider to refuse routine healthcare to a women because she previously had an abortion. Indeed, as Putative Intervenors point out, "th[o]se sorts of practices are plainly *sex* discriminatory." Put. Int. Mot. 6, ECF No. 63 (emphasis added). Discrimination on the basis of sex is still clearly prohibited and unaffected by the Court's Order, which enjoined only the new and unauthorized portion of the Rule, which defined prohibited sex discrimination to include: "gender identity" and "termination of pregnancy." Inj. Order 46, ECF No. 62.

---

[5] "Only the Rule's command this Court finds is contrary to law and exceeds statutory authority—the prohibition of discrimination on the basis of 'gender identity' and 'termination of pregnancy'—is hereby enjoined." Inj. Order 46, ECF No. 62.

Further, the Court's Order did not purport to alter any statutory duties outside the challenged portion of the Rule at issue that may compel a governmental agency to investigate or prosecute instances of harassment or discrimination. The Court's Order was limited to the Rule's new provision defining sex discrimination as including gender identity and termination of pregnancy, which had never been articulated or applied in the healthcare context, and were found contrary to law. Inj. Order 36, 46, ECF No. 62. All discriminatory defenses and non-discriminatory obligations that protected patients and bound healthcare providers on July 17, 2016 remain in full effect and are unencumbered by the Court's preliminary injunction order.[6]

Putative Intervenors are unable to cite any binding authority that Title IX sex discrimination is no different than Title VII sex discrimination or any case mandating Title IX be invariably interpreted in accordance with Title VII.[7] While Title VII's interpretation of sex discrimination may conform to Putative Intervenors' view of the term, it does not change the Court's previous analysis of Title IX and the plain meaning of sex discrimination as incorporated

---

[6] The Rule was promulgated as final on May 18, 2016, and became effective on July 18, 2016, except for the rule provisions affecting health insurance or group health benefit design, which were set to become effective on January 1, 2017. 45 C.F.R. § 92.1. Discriminatory defenses and non-discriminatory obligations enacted outside the challenged Rule are also unaffected by the Court's preliminary injunction.

[7] Putative Intervenors cite *Franklin v. Gwinnett Cty. Pub. Sch.* for the assertion that "the Supreme Court has consistently held that the definition of 'sex' under Title IX is the same as the definition of 'sex' under Title VII." Put. Int. Mot. 4, ECF No. 63 (citing 503 U.S. 60, 75 (1992)). *Gwinnett* mentions Title VII in two footnotes, but declines to reach "whether Title VII analysis should apply to an action under Titles VI or IX." 503 U.S. at 65 nn.4–5.

*Gwinnett* focuses primarily on the remedies available under Title IX and the portion cited by Putative Intervenors makes no mention of Title VII. *See* 503 U.S. 60. While *Gwinnett* noted the "analysis of Title IX and Title VI . . . has developed along similar lines." 503 U.S. at 64. *Gwinnett* does not discuss any similarities between Title IX and Title VII, much less assert they share the same definition of "sex."

Although *Gwinnett* does not address the meaning of Title IX sex discrimination, the Supreme Court may soon resolve the issue in its resolution of *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd*. 822 F.3d 709, 723, 734 (4th Cir. 2016), *recalling mandate & issuing stay*, 136 S. Ct. 2442 (2016), *cert. granted*, 2016 WL 4565643 (U.S. Oct. 28, 2016) (No. 16-273).

by Section 1557—the statute passed by Congress, authorizing HHS to promulgate the Rule. Inj. Order 31, ECF No. 62.

The final two factors, whether a stay would substantially injure the other parties or advance the public interest, were analyzed at length in the Court's Order. Inj. Order 42–44, ECF No. 62. The Court remains convinced that the public interest weighs in favor of an injunction and Plaintiffs would suffer irreparable injury in the absence of an injunction. *See* Inj. Order 42–44, ECF No. 62; *see also Nken*, 556 U.S. at 434 (holding the first two factors in considering a stay—applicant's likelihood of success on the merits and threat of irreparable injury—are "the most critical").

Further, Putative Intervenors failed to present concrete evidence of irreparable injury, claiming broadly that "many women and transgender individuals continue to experience discrimination in the health care context, which can lead to denials of adequate health care and increases in existing health disparities in underserved communities." Such an assertion, with no further demonstration of the immediacy of the harm, does not establish irreparable injury in favor of a stay. *See Nken*, 556 U.S. at 418, 434 (holding the mere "possibility of irreparable injury" fails to demonstrate irreparable injury). The Court also finds Defendants' six-year delay in promulgating the Rule since the Affordable Care Act's enactment demonstrates the public interest would suffer no irreparable injury in the absence of a stay, allowing the injunction to maintain the status quo pending resolution on the merits.[8] *See* Inj. Order 44, ECF No. 62.

---

[8] Putative Intervenors consider the time since the Rule's enactment as the status quo that should be protected. Put. Int. Mot. 7, ECF No. 63. But the Court is not persuaded that any change in the law between July 18, 2016 and December 31, 2016, while this litigation proceeded, was sufficient to override the status quo that prevailed for six years between the Affordable Care Act's enactment and the Rule's publication.

### C. Motion for Extension of Time to File Answer

Also before the Court is Defendants' motion for extension of time to answer or otherwise respond to Plaintiffs' operative complaint. Defs.' Mot. 1, ECF No. 66. Defendants request the Court extend their current deadline to file an answer, from January 25, 2017 to March 1, 2017, in order to coincide with their deadline to notice an appeal of the Court's preliminary injunction order. *Id.* Defendants claim, and the Court agrees, that such an extension would "make the most efficient use of the parties' and the Court's resources." *Id.* Therefore, Defendants are hereby permitted an extension of their deadline to answer or otherwise respond to Plaintiffs' operative complaint until March 1, 2017.

### IV. CONCLUSION

The Court finds that Defendants' Motion for Extension of Time (ECF No. 66) should be and is hereby **GRANTED**. Accordingly, Defendants' answer to Plaintiffs' operative complaint shall be due on or before **March 1, 2017**. Putative Intervenors' Motion for Ruling on Intervention (ECF No. 63) is **GRANTED in part**; and Putative Intervenors' Motion to Stay the Court's Preliminary Injunction (ECF No. 63) is **DENIED**.

**SO ORDERED** on this **24th day** of **January, 2017**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**