**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

FRANCISCAN ALLIANCE, INC., *et al.*,

        *Plaintiffs*,

        v.

ALEX M. AZAR II, Secretary
of Health and Human Services, *et al.*.,

        *Defendants*.

No. 7:16-cv-00108

<u>**DEFENDANTS' MEMORANDUM**</u>
<u>**IN RESPONSE TO PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

I.   Statutory And Regulatory Background....................................................................................2

II.  Procedural Background............................................................................................................3

ARGUMENT ..............................................................................................................................5

I.   THE RULE'S DEFINITION OF SEX DISCRIMINATION IS CONTRARY TO LAW. .......6

   A.  Section 1557's Prohibition on Sex Discrimination Excludes Discrimination on the Basis of
      Gender Identity. ................................................................................................................6

   B.  Section 1557's Prohibition on Sex Discrimination Includes Title IX's Exemptions. .........9

II.  THE COURT SHOULD NOT ADDRESS PLAINTIFFS' REMAINING CLAIMS.............11

III. THIS COURT SHOULD POSTPONE OR, AT A MINIMUM, LIMIT ANY RULING.......11

CONCLUSION..........................................................................................................................13

# TABLE OF AUTHORITIES

**CASES**                                                      **PAGE(S)**

*Abbott Labs. v. Gardner*,
    387 U.S. 136 (1967)......................................................................................................... 12

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) .......................................................................................... 11

*Carder v. Cont'l Airlines, Inc.*,
    636 F.3d 172 (5th Cir. 2011) ............................................................................................ 8

*Doe 2 v. Shanahan*,
    917 F.3d 694 (D.C. Cir. 2019) ......................................................................................... 7

*Franciscan All., Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ...................................................................... *passim*

*Franklin v. Gwinnett Cty. Pub. Schs.*,
    503 U.S. 60 (1992)............................................................................................................ 8

*G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*,
    822 F.3d 709 (4th Cir. 2016), *vacated and remanded,*
    137 S. Ct. 1239 (2017).................................................................................................. 6, 7

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018)................................................................................................... 12

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944)....................................................................................................... 12

*Hively v. Ivy Tech Cmty. Coll. of Ind.*,
    853 F.3d 339 (7th Cir. 2017) ........................................................................................... 7

*Jean v. Nelson*,
    472 U.S. 846 (1985)....................................................................................................... 11

*Jespersen* v. *Harrah's Operating Co.*,
    444 F.3d 1104 (9th Cir. 2006) ......................................................................................... 8

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ......................................................................................... 11

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986).......................................................................................................... 8

*Olmstead v. L.C. ex rel. Zimring*,
    527 U.S. 581 (1999).......................................................................................................... 8

*Oncale* v. *Sundowner Offshore Servs., Inc.*,
    523 U.S. 75 (1998) .................................................................................................. 7, 8

*Price Waterhouse v. Hopkins*,
    490 U.S. 228 (1989) ...................................................................................................... 8

*Sandifer v. U.S. Steel Corp.*,
    571 U.S. 220 (2014) ...................................................................................................... 6

*Texas v. United States*,
    352 F. Supp. 3d 665 (N.D. Tex. 2018) ...................................................................... 10

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ................................................................................................ 12

*Va. Soc'y for Human Life, Inc. v. FEC*,
    263 F.3d 379 (4th Cir. 2001) ...................................................................................... 11

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) .................................................................................................... 12

*Wittmer v. Phillips 66 Co.*,
    915 F.3d 328 (5th Cir. 2019) ........................................................................................ 8

**Statutes**

5 U.S.C. § 703 ................................................................................................................... 12

5 U.S.C. § 706(2) ............................................................................................................. 12

18 U.S.C. § 249(a)(2)(A) .................................................................................................... 7

18 U.S.C. § 249(c)(4) .......................................................................................................... 7

20 U.S.C. § 1681 ............................................................................................................. 2, 9

20 U.S.C. § 1681(a) ........................................................................................................ 2, 6

20 U.S.C. § 1681(a)(3) .................................................................................................. 2, 6, 9

20 U.S.C. § 1688 .......................................................................................................... 3, 6, 9

29 U.S.C. § 794 ............................................................................................................. 2, 10

34 U.S.C. § 12291(b)(13)(A) .............................................................................................. 7

42 U.S.C. § 2000d ......................................................................................................... 2, 9

42 U.S.C. § 6101 ........................................................................................................... 2, 9

42 U.S.C. § 18116 ................................................................................................ 1, 9, 10

42 U.S.C. § 18116(a) ................................................................................................ 2, 6

42 U.S.C. § 18116(c) ..................................................................................................... 3

**Regulations**

45 C.F.R. § 80.3(d) ...................................................................................................... 10

45 C.F.R. § 92.101(c) ................................................................................................ 3, 10

45 C.F.R. § 92.2(c) ......................................................................................................... 4

45 C.F.R. § 92.4 .......................................................................................................... 3, 7

81 Fed. Reg. 31,375 (May 18, 2016) ............................................................................. 3

**Other Authorities**

Attorney General Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act* (Oct. 4, 2017), https://www.justice.gov/ag/page/file/1006981/download ........................................... 1

*Webster's New Int'l Ditionary 2296* (2d ed. 1958) ....................................................... 6

# INTRODUCTION[1]

Plaintiffs challenge a Rule issued by the Department of Health and Human Services (HHS) in 2016 that, among other things, construes Section 1557 of the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 18116, to prohibit discrimination on the basis of gender identity and, without incorporating statutory protections relating to religious conscience and abortion, termination of pregnancy.   Plaintiffs contend that these aspects of the Rule violate the Administrative Procedure Act (APA) and other statutory and constitutional provisions.

Defendants agree with Plaintiffs and the Court that the Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively unlawful under the APA.   Since the Rule was issued, the United States has returned to its longstanding position that the term "sex" in Title VII does not refer to gender identity, and there is no reason why Section 1557, which incorporates Title IX's analogous prohibition on "sex" discrimination, should be treated differently.[2]   The Rule also fails to incorporate Title IX's exemptions despite Section 1557's directive to the contrary, thereby prohibiting conduct the statute permits.   Plaintiffs thus are entitled to summary judgment on their APA claim, and there is no need for this Court to resolve any other claim to provide them with the relief they seek.

---

[1] In filing this response to Plaintiffs' Motions for Summary Judgment, Defendants withdraw their Motion for an Extension filed on April 4, 2019 (ECF No. 151).

[2] *See* Attorney General Memorandum, *Revised Treatment of Transgender Employment Discrimination Claims Under Title VII of the Civil Rights Act* (Oct. 4, 2017), *available at*: https://www.justice.gov/ag/page/file/1006981/download; Br. of Fed. Resp't in Opp'n to Cert. at 16-23, *R.G. & G.R. Harris Funeral Homes, Inc. v. EEOC*, No. 18-107 (U.S. Oct. 24, 2018); Br. in Supp. of Defs.' Mot. to Dismiss at 2-6, *U.S. Pastor Council v. EEOC*, No. 4:18-cv-00824-O (N.D. Tex. Dec. 17, 2018) (ECF 8).

Defendants nevertheless ask the Court to postpone ruling on Plaintiffs' summary judgment motions to allow Defendants to complete their ongoing efforts to amend the Rule. Defendants expect to be able to publish a proposed rule soon, which, if finalized, may moot this case. The Court should avoid issuing a decision that will likely be overtaken by events, particularly as any delay will not harm Plaintiffs given that the Rule's challenged prohibitions have already been preliminarily enjoined nationwide, and Defendants are conscientiously complying with that injunction. If the Court decides the pending motions, however, it should limit any relief to redressing the injuries of the named Plaintiffs.

## BACKGROUND

### I. Statutory And Regulatory Background

Section 1557 incorporates four federal anti-discrimination laws into the ACA: Title VI, Title IX, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act. Specifically, Section 1557 directs that

> [e]xcept as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of the ACA] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 504, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

Title IX in turn provides that "[n]o person . . . shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added).

Title IX's prohibition on sex discrimination is limited by various exemptions and rules of construction, two of which are relevant here. First, it does "not apply to an educational institution which is controlled by a religious organization if the application of [the provision] would not be consistent with the religious tenets of such organization." *Id*. § 1681(a)(3). Second, it shall not be "construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion." *Id*. § 1688.

Acting under its statutory authority to "promulgate regulations to implement" Section 1557, 42 U.S.C. § 18116(c), HHS issued the challenged Rule in May 2016. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) (codified at 45 C.F.R. § 92.4). As relevant here, the Rule construes Section 1557's prohibition on sex discrimination to "include[] . . . discrimination on the basis of pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions, sex stereotyping, and gender identity." 45 C.F.R. § 92.4. The Rule in turn defines "gender identity" as "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female, and which may be different from an individual's sex assigned at birth." *Id.* Although the Rule incorporates the various exemptions under Title VI, the Age Act, and Section 504, 45 C.F.R. § 92.101(c), it does not incorporate Title IX's exemptions, or rules of construction, including those addressing religion and abortion, *see* 81 Fed. Reg. at 31,379-80, 31,388.

## II. Procedural Background

Plaintiffs, several private healthcare providers and a coalition of states, challenged the Rule and sought partial summary judgment or, in the alternative, a preliminary injunction. On December 31, 2016, the Court issued a nationwide preliminary injunction barring HHS from enforcing the Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy. *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 696 (N.D. Tex. 2016). The

3

Court held that the challenged prohibitions were substantively unlawful under the APA because "the meaning of sex in Title IX unambiguously refers to the biological and anatomical differences between male and female students as determined at their birth," *id.* at 687, and by "not including" Title IX's religious and abortion exemptions, the Rule "expanded the 'ground prohibited under' Title IX that Section 1557 explicitly incorporated," *id.* at 691.  The Court also concluded that the Private Plaintiffs were likely to succeed on the merits of their claim under the Religious Freedom Restoration Act (RFRA) because the Rule could be read to require them to perform gender-transition surgeries or abortions in violation of their sincere religious beliefs.  *Id.* at 691-93.[3]

Defendants did not appeal the preliminary injunction.  In March 2017, Plaintiffs moved for summary judgment.  In response, Defendants sought a stay of the litigation and a voluntary remand to HHS to reconsider the reasonableness, necessity, and efficacy of the Rule.  ECF No. 92.  The Court granted a stay and required Defendants to file a status report every 60 days providing updates on the reconsideration of the Rule.  ECF No. 105.  As Defendants explained in their most recent status report on December 14, 2018, HHS continues to work on a new rule to replace the Rule challenged here, ECF No. 124, and Defendants expect to be able to publish a proposed rule soon.

In December 2018, the parties filed a motion to lift the stay, which the Court granted.  ECF Nos. 125, 126.  Plaintiffs then renewed their motions for summary judgment.  ECF Nos. 132, 135. The State Plaintiffs seek summary judgment under (1) the APA, (2) Title VII, (3) the Spending Clause, (4) the Tenth Amendment, and (5) the Eleventh Amendment.  The Private Plaintiffs seek summary judgment under (1) the APA, (2) RFRA, and (3) the Free Exercise Clause.  Plaintiffs

---

[3] A district court in North Dakota subsequently entered a preliminary injunction against the Rule limited to the plaintiffs before it.  *North Dakota v. Burwell*, No. 3:16-cv-386 (D.N.D. Jan. 23, 2017); *Catholic Benefits Ass'n v. Burwell*, No. 3:16-cv-432 (D.N.D. Injunction Orders of January 23, 2017).  HHS remains subject to this injunction, and that litigation is currently stayed.

challenge only the Rule's prohibition of discrimination on the basis of gender identity and termination of pregnancy, and the Rule contains a severability provision, 45 C.F.R. § 92.2(c).

## ARGUMENT

This Court has already ruled, as a matter of law, that the Rule's prohibitions of discrimination on the basis of gender identity and, without the accompanying statutory protections, termination of pregnancy are substantively unlawful under the APA. Defendants agree. The ordinary meaning of "sex" within Title IX does not encompass gender identity, and by failing to incorporate Title IX's exemptions, the Rule prohibits conduct that Title IX and, thus, Section 1557 permits. Plaintiffs, therefore, are entitled to summary judgment on their substantive APA claim (as the government recognizes that this Court ruled that it has jurisdiction for purposes of its preliminary-injunction order and nothing has changed that would call that holding into question). Because resolution of this claim is sufficient to afford Plaintiffs the relief they seek, the Court should not address the remaining statutory or constitutional claims.[4]

Defendants nevertheless respectfully request that the Court postpone ruling on Plaintiffs' motions for summary judgment. HHS currently is engaged in efforts to amend the challenged Rule, which may moot the case. In the meantime, the challenged portions of the Rule remain enjoined nationwide by this Court's preliminary injunction. Accordingly, the Court should refrain from deciding the instant motions until HHS has had time to publish a new rule for public notice

---

[4] Of course, Plaintiffs must establish jurisdiction to obtain summary judgment. Defendants acknowledge, but respectfully disagree with, the Court's earlier ruling that it has jurisdiction and incorporate their arguments on this question by reference. *See Franciscan All.*, 227 F. Supp. 3d at 678–84; ECF No. 50, at 22-32. This brief, however, accepts that this Court ruled that it had jurisdiction for purposes of its preliminary-injunction order and nothing has changed that would call that holding into question.

and comment.  If the Court nonetheless rules on the pending motions, it should limit any relief to redressing any cognizable injuries of the named Plaintiffs.

## I.  THE RULE'S DEFINITION OF SEX DISCRIMINATION IS CONTRARY TO LAW.

Defendants agree with Plaintiffs and the Court that the Rule's definition of sex discrimination contravenes Section 1557 in at least two respects.  Section 1557's prohibition on sex discrimination (1) unambiguously excludes discrimination on the basis of gender identity and (2) unambiguously includes Title IX's exemptions, including those addressing religion and abortion, 20 U.S.C. §§ 1681(a)(3), 1688.  Because the Rule's definition of sex discrimination departs from Section 1557 in both respects, it is substantively unlawful under the APA.

### A.  Section 1557's Prohibition on Sex Discrimination Excludes Discrimination on the Basis of Gender Identity.

Section 1557 provides that "an individual shall not, on the ground prohibited under … title IX of the Education Amendments of 1972 . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 18116(a).  Title IX in turn prohibits discrimination "on the basis of sex."  20 U.S.C. § 1681(a).  Title IX does not define the term "sex," so the term should "be interpreted as taking [its] ordinary, contemporary, common meaning." *Sandifer v. U.S. Steel Corp*., 571 U.S. 220, 227 (2014).  When Title IX was enacted in 1972, "sex" meant biological sex; it "refer[red] to [the] physiological distinction[ ]" between "male and female." *Webster's New Int'l Dictionary* 2296 (2d ed. 1958); *see id.* ("One of the two divisions of organisms formed on the distinction of male and female; males or females collectively"; "The sum of the peculiarities of structure and function that distinguish a male from a female organism"; the character of being male or female, or of pertaining to the distinctive function of the male or female in reproduction"; "SEX refers to physiological distinctions; GENDER, to distinctions in

grammar"); *see also G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 736-37 (4th Cir. 2016) (Niemeyer, J., dissenting) (collecting dictionaries), *vacated and remanded*, 137 S. Ct. 1239 (2017); *Franciscan All.*, 227 F. Supp. 3d at 688 n.24 (same).[5]

Title IX therefore does not apply to discrimination on the basis of "gender identity," which the Rule defines as one's "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female, and which may be different from an individual's sex assigned at birth."  45 C.F.R. § 92.4.  Congress has prohibited discrimination based on "gender identity" in other statutes, as a separate protected category in addition to "sex" or "gender."  *See, e.g.*, 18 U.S.C. § 249(a)(2)(A) & (c)(4) (Matthew Sheperd and James Byrd, Jr. Hate Crimes Prevention Act) (prohibiting acts or attempts to cause bodily injury to any person "because of the actual or perceived religion, national origin, *gender*, sexual orientation, *gender identity*, or disability of any person," and defining "gender identity" as "actual or perceived gender-related characteristics" (emphasis added)); 34 U.S.C. § 12291(b)(13)(A) (Violence Against Women Act) (prohibiting discrimination in certain federally funded programs "on the basis of actual or perceived race, color, religion, national origin, *sex*, *gender identity* (as defined in [18 U.S.C. § 249(c)(4)]), sexual orientation, or disability" (emphases added)).  Congress has not included similar language in Title IX as originally enacted in 1972 or in any amendment in the 47 years since.  And Congress chose to incorporate, into Section 1557, the prohibition on the basis prohibited under Title IX, but not on the bases prohibited under the Matthew Sheperd and James Byrd, Jr. Hate Crimes Prevention Act or the Violence Against Women Act.

---

[5] The ordinary meaning of "sex" was the same when the ACA was enacted in 2010.  *Franciscan All.*, 227 F. Supp. 3d at 688-89 & n.26; *see also Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 363 (7th Cir. 2017) (en banc) (Sykes, J., dissenting) (collecting contemporary dictionaries); *Doe 2 v. Shanahan*, 917 F.3d 694, 725 & n.6 (D.C. Cir. 2019) (Williams, J., concurring in the result) (addressing similar question with respect to laws enacted in 1998).

In addition, the Supreme Court has explained that Title VII's analogous prohibition "is directed only at '*discrimination* because of sex.'" *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (brackets and ellipses omitted). "The critical issue" in determining whether an employer has engaged in discrimination, as "Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (citation omitted). To be sure, the plurality opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), concluded that, "in forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." *Id.* at 251 (brackets and citation omitted). Thus, under that principle, an employer that treats a male or female employee disadvantageously based on a "sex stereotype[]" may violate Title VII, and evidence that an employer engaged in "sex stereotyping" may indicate that sex "played a motivating part in an employment decision." *Id.* at 250-51. But the statute is not properly construed to proscribe employment practices that take account of the sex of employees but do not impose different burdens on similarly situated members of each sex—such as sex-specific dress codes, *cf., e.g.*, *Jespersen* v. *Harrah's Operating Co.*, 444 F.3d 1104, 1109-10 (9th Cir. 2006) (en banc), or sex-specific restrooms.

There is no reason why Title IX's prohibition on sex discrimination should sweep more broadly than its Title VII counterpart. Both the Supreme Court and the Fifth Circuit have looked to Title VII precedents in construing Title IX's prohibition, and there is no basis for taking a different approach here. *See, e.g., Franklin v. Gwinnett Cty. Pub. Schs.,* 503 U.S. 60, 75 (1992) (relying on *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986), in addressing Title IX sexual-harassment claims); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616-17 & n.1 (1999)

8

(Thomas, J., dissenting) ("This Court has also looked to its Title VII interpretations of discrimination in illuminating Title IX"); *Carder v. Cont'l Airlines, Inc.*, 636 F.3d 172, 180 (5th Cir. 2011) ("[T]his court has interpreted Title IX as being intended to prohibit a wide spectrum of discrimination against women in the same manner as Title VII."); *see also Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 337-38 (5th Cir. 2019) (Ho, J., concurring) ("[B]ecause federal statutes governing educational institutions employ language indistinguishable from Title VII, th[e] debate [over whether sex discrimination under Title VII includes gender-identity discrimination] "affects virtually every school, college, dormitory, athletic activity, and locker room in America.").

In short, the relevant provisions of Title IX and Section 1557 unambiguously exclude gender-identity discrimination.   The Rule's definition of sex discrimination to include discrimination on the basis of gender identity cannot stand under the APA.

**B.  Section 1557's Prohibition on Sex Discrimination Includes Title IX's Exemptions.**

Section 1557's prohibition on sex discrimination is also limited by Title IX's exemptions, including its religious exemption—which provides that Title IX's prohibition on sex discrimination "shall not apply to an educational institution which is controlled by a religious organization if the application of this subsection would not be consistent with the religious tenets of such organization," 20 U.S.C. § 1681(a)(3)—and the abortion rule of construction—which provides that Title IX shall not "be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion," *id.* § 1688.  Notably, Section 1557 forbids discrimination "on the ground prohibited under . . . title IX of the Education Amendments of 1972 (20 U.S.C. 1681 *et seq.*)."  42 U.S.C. § 18116 (emphasis added).  As this Court explained, Congress's decision to "include[] the signal

'et seq.' … after the citation to Title IX can only mean Congress intended to incorporate the entire statutory structure, including [Title IX's] exemptions." *Franciscan All.*, 227 F. Supp. 3d at 690.

In confirmation of this fact, Section 1557 also prohibits discrimination on "the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d *et seq.*), … the Age Discrimination Act of 1975 (42 U.S.C. 6101 *et seq.*), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)," 42 U.S.C. § 18116 (emphases added), and the Rule explicitly confirms that those statutes' exemptions apply, *see* 45 C.F.R. § 92.101(c) ("The exceptions applicable to Title VI apply to discrimination on the basis of race, color, or national origin under this part. The exceptions applicable to Section 504 apply to discrimination on the basis of disability under this part. The exceptions applicable to the Age Act apply to discrimination on the basis of age under this part."). Thus, Section 1557's prohibition on racial discrimination, for instance, does not extend to "exclusion from benefits limited by Federal law to individuals of a particular race." 45 C.F.R. § 80.3(d) (titled "Indian Health and Cuban Refugee Services"). Nothing in Section 1557 justifies singling out Title IX's exemptions and rules of construction for disfavored treatment. Just as Section 1557's prohibitions on racial, disability, and age discrimination are limited by the exemptions in those anti-discrimination laws, so its prohibition on sex discrimination is limited by the exemptions in Title IX, including those dealing with religion and abortion. And those statutory provisions are particularly critical to understanding the scope of any prohibition on discrimination on the basis of termination of pregnancy. The Rule's failure to incorporate these provisions in its definition of sex discrimination is therefore contrary to law.[6]

---

[6] This Court has ruled in another case that the individual mandate is both unconstitutional and inseverable from the remainder of the ACA (and has stayed that decision pending appeal). *See Texas v. United States*, 352 F. Supp. 3d 665 (N.D. Tex. 2018). Plaintiffs in this case have not pressed that theory for challenging the Rule, and thus, for purposes of this case, the Court should

## II.  THE COURT SHOULD NOT ADDRESS PLAINTIFFS' REMAINING CLAIMS.

Because resolution of Plaintiffs' APA claim is sufficient to afford Plaintiffs the relief they seek, the Court need not—and should not—address Plaintiffs' remaining statutory and constitutional claims.  As this Court recognized at the preliminary-injunction stage, "[b]oth parties agree that if the Court resolves the APA or RFRA claim, there is no need to reach the remaining constitutional issues."  *Franciscan All.*, 227 F. Supp. 3d at 691 n.32.  That consensus reflects the longstanding principle that "'[p]rior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision.'"  *Jean v. Nelson*, 472 U.S. 846, 854 (1985).  And because resolution of the substantive APA claim will provide complete relief to all Plaintiffs, there is no need to resolve the Private Plaintiffs' RFRA claim or the State Plaintiffs' Title VII claim.

## III.  THIS COURT SHOULD POSTPONE OR, AT A MINIMUM, LIMIT ANY RULING.

Although Defendants agree with Plaintiffs that the Rule's definition of sex discrimination cannot stand under the APA, the Court should postpone ruling on Plaintiffs' summary judgment motions.  Defendants expect to be able to publish a proposed rule soon, which, if finalized, may moot this case.  The Court should avoid issuing a decision that will likely be overtaken by events, especially as any delay in ruling will not harm Plaintiffs given that the preliminary nationwide injunction against the Rule's challenged prohibition remains in place and Defendants are conscientiously complying with the injunction.[7]

---

simply rule that the Rule's challenged prohibition is contrary to the terms of Section 1557 of the ACA, the statutory provision under which the Rule was promulgated.

[7] Defendants previously agreed that the stay in this case could be lifted because they did not know how long it would take to "reevaluat[e] the reasonableness, necessity, and efficacy of the Rule." ECF No. 125.  But Defendants now expect a new proposed rule to be issued soon, and thus, the reason for lifting the stay and briefing summary judgment has disappeared.

If this Court does rule in Plaintiffs' favor, however, any relief should be limited in scope to redressing any cognizable injuries of the Plaintiffs before the Court. Although Defendants acknowledge that the Court's preliminary injunction was nationwide in scope, *see Franciscan All.*, 227 F. Supp. 3d at 695, Defendants continue to maintain that nationwide injunctions that go beyond redressing any cognizable injuries of Plaintiffs are inappropriate under both Article III and equitable principles. *See* ECF 50, at 49-50; *see also Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury.").

The fact that this case involves the APA makes no difference, as the APA does not compel courts to abandon established equitable principles, including those governing nationwide relief. *See, e.g.*, *California v. Azar*, 911 F.3d 558, 582-85 (9th Cir. 2018) (vacating district court's grant of nationwide injunction in APA case); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664-65 (9th Cir. 2011) (same); *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) (same), *overruled on other grounds by Real Truth about Abortion v. FEC*, 681 F.3d 544 (4th Cir. 2012). A court "do[es] not lightly assume that Congress has intended to depart from established principles" regarding equitable discretion, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and the APA's general instruction that unlawful agency action "shall" be "set aside," 5 U.S.C. § 706(2), is insufficient to mandate such a departure. Indeed, the Supreme Court held that not even a provision directing that an injunction "shall be granted" with respect to a threatened or completed violation of a particular statute was sufficient to displace traditional principles of equitable discretion, *Hecht Co. v. Bowles*, 321 U.S. 321, 328-30 (1944), and Congress is presumed to have been aware of that holding when it enacted the APA's "shall" be "set aside" language two years later. In fact, the APA expressly confirms that, absent a special review statute, "[t]he form of proceeding for judicial review" is simply the traditional "form[s] of legal action,

including actions for declaratory judgments or writs of prohibitory or mandatory injunction," 5 U.S.C. § 703, and that the statutory right of review does not affect "the power or duty of the court to . . . deny relief on any . . . appropriate legal or equitable ground," *id.* § 702(1). The Supreme Court therefore has confirmed that, even in an APA case, "equitable defenses may be interposed." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967).  Accordingly, the Court should construe the "set aside" language in Section 706(2) as applying only to the named Plaintiffs, especially as no federal court had issued a nationwide injunction before Congress's enactment of the APA in 1946, nor would do so for more than fifteen years thereafter, *see Trump v. Hawaii*, 138 S. Ct. 2392, 2426 (2018) (Thomas, J., concurring).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court postpone ruling on Plaintiffs' motions for summary judgment.  If the Court decides those motions, it should limit any relief to redressing any cognizable injuries of the named Plaintiffs.


Dated:   April 5, 2019

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

*/s/ Rhett P. Martin*
_____
RHETT P. MARTIN
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC  20005
phone: (202) 305-7538
fax: (202) 616-8470
email: rhett.martin@usdoj.gov
*Counsel for Defendants*