IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>ALEX M. AZAR, II, *et al.*,<br><br>*Defendants.* | No. 7:16-CV-00108-O<br><br>**Plaintiffs' Response to HHS's Notice Regarding Issuance of Notice of Proposed Rulemaking to Amend Challenged Regulations** |

On May 24, HHS issued a proposed rule conceding that the Rule challenged in this case is unlawful and proposing ways to fix it. *See* ECF Nos. 159, 159-1. The proposed rule confirms what Plaintiffs have said all along: the Rule at issue in this case is unlawful, and Plaintiffs are entitled to summary judgment. ECF Nos. 132, 135.

HHS doesn't disagree. Instead, it asks the Court to "postpone ruling on Plaintiffs' summary judgment motions" while it considers the proposed rule. ECF No. 159 at 1-2. But courts have repeatedly rejected this kind of delay, concluding that the mere existence of a "proposed rule" doesn't excuse a court from granting "effectual relief . . . to the prevailing party" against a rule that "remains on the books." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 627 n.5 (2018). And a delay would be particularly inappropriate here, given that (1) this case involves a purely legal question, (2) HHS has confessed error, (3) further delay may subject Plaintiffs to conflicting legal obligations due to litigation in other jurisdictions, (4) the proposed rule might never be finalized, (5) even if the proposed rule is finalized, it might not grant Plaintiffs any relief, and (6) Intervenors have vowed to challenge the proposed rule if it is ever finalized. In short, the controversy is live and the law is clear. Plaintiffs have already been waiting for a final ruling for two and a half years, and they shouldn't have to

wait years more while HHS decides what path to take. The Court should grant Plaintiffs' motions for summary judgment and enter a permanent injunction.

## I. The proposed rule re-confirms that the final Rule is unlawful.

This Court held over two years ago that the 2016 final Rule "violates the Administrative Procedure Act ("APA") by contradicting" the text of the ACA and Title IX and "exceeding [HHS's] statutory authority." ECF No. 62 at 2. HHS has now twice conceded the Court was right: first in its summary-judgment briefing, ECF No. 154, and now in the proposed rule.

The proposed rule confirms this Court's analysis in two key respects. First, the proposed rule concedes that interpreting "sex" in Title IX to mean "gender identity" was a "novel legal theory" that "was not, and has not been, endorsed by the Supreme Court," and is contrary to the text of Title IX, Congressional action, HHS's own prior regulations, and the regulations of other agencies. ECF No. 159-1 at 29-43; *compare* ECF No. 62 at 34-35. Second, the proposed rule acknowledges that refusing to include Title IX's abortion and religious exemptions in the final Rule was unlawful, and that "any enforcement" of Section 1557 "must be constrained by the statutory contours of Title IX, which include its abortion and religion exemptions." ECF No. 159-1 at 99-100; *compare* ECF No. 62 at 37. The proposed rule proposes to fix these problems by eliminating the definition of "sex" and by prohibiting any application of the regulation that "would violate, depart from, or contradict . . . exemptions" provided by various statutes, including Title IX. ECF No. 159-1 at 43, 77-78.

As HHS's repeated concessions recognize, Plaintiffs have demonstrated success on the merits, and the Court should enter a permanent injunction.

## II. A final ruling is needed now.

A permanent injunction should also be issued *now*—not "postpone[d]" while HHS considers the proposed rule. ECF No. 159 at 1. When the Government has conceded error in a challenged regulation, the ordinary course is for the court to proceed to

2

judgment, not to "permit[] an agency to escape review . . . solely by the instigation of new rulemaking proceedings which may or may not" fix the problem. *El Paso Elec. Co. v. F.E.R.C.*, 667 F.2d 462, 467 (5th Cir. 1982). Indeed, that is exactly what this Court did just yesterday with respect to HHS's contraceptive mandate promulgated under the ACA. *See* Order, *DeOtte v. Azar*, No. 4:18-cv-00825 (N.D. Tex. June 5, 2019), ECF No. 76. There, HHS conceded that the contraceptive mandate violated RFRA and issued a new final rule amending the mandate to exempt religious objectors. *Id.* at 6. When that rule was enjoined by another district court, objectors sued in this Court, seeking a permanent injunction against the mandate. *Id.* at 6-7. If the new rule were allowed to take effect, the mandate's legal flaws would be addressed. But rather than wait to see whether the new rule would ever take effect, the Court—joining more than a dozen other district courts around the country[1]—entered a permanent injunction against the previous version of the mandate. *Id.* at 27-35. The Court should take the same approach here. Indeed, this case is even easier, since unlike the final rule amending the contraceptive mandate, the proposed rule here is "simply a proposal" that HHS might never finalize at all. *Long Island Care at Home,*

---

[1] *See* Order, *Ass'n of Christian Schs. v. Azar*, No. 1:14-cv-02966 (D. Colo. Dec. 10, 2018), ECF No. 49; Order, *Ave Maria Sch. of Law v. Sebelius*, No. 2:13-cv-00795 (M.D. Fla. July 11, 2018), ECF No. 68; Order, *Ave Maria Univ. v. Sebelius*, No. 2:13-cv-00630 (M.D. Fla. July 11, 2018), ECF No. 72; Order, *Catholic Benefits Ass'n LCA v. Hargan*, No. 5:14-cv-00240 (W.D. Okla. Mar. 7, 2018), ECF No. 184; Order, *Colo. Christian Univ. v. HHS*, No. 1:13-cv-02105 (D. Colo. July 11, 2018), ECF No. 84; Order, *Dordt Coll. v. Sebelius*, No. 5:13-cv-04100 (N.D. Iowa June 12, 2018), ECF No. 85; Permanent Injunction, *Geneva Coll. v. Sebelius*, No. 2:12-cv-00207 (W.D. Pa. July 5, 2018), ECF No. 153; Permanent Injunction, *Grace Schs. v. Sebelius*, No. 3:12-cv-00459 (N.D. Ind. June 1, 2018), ECF No. 114; Order, *Little Sisters of the Poor v. Hargan*, No. 1:13-cv-02611 (D. Colo. May 29, 2018), ECF No. 82; Permanent Injunction, *Reaching Souls Int'l Inc. v. Azar*, No. 5:13-cv-01092 (W.D. Okla. Mar. 15, 2018), ECF No. 95; Permanent Injunction, *Sharpe Holdings, Inc. v. HHS*, No. 2:12-cv-00092 (E.D. Mo. Mar. 28, 2018), ECF No. 161; Order, *S. Nazarene Univ. v. Hargan*, No. 5:13-cv-01015 (W.D. Okla. May 15, 2018), ECF No. 109; Permanent Injunction, *Wheaton Coll. v. Azar*, No. 1:13-v-08910 (N.D. Ill. Feb. 22, 2018), ECF No. 119.

*Ltd. v. Coke*, 551 U.S. 158, 175 (2007).

Even assuming the proposed rule were finalized—as it was in the contraceptive-mandate case—there would be no grounds for delaying this case. As discussed below, Intervenors have vowed to challenge the proposed revision of the disputed 2016 Rule, and their promise of litigation militates against postponing a final ruling. This is similar to the litigation over the executive orders creating and then rescinding the Deferred Action for Childhood Arrivals (DACA) program. There, the Southern District of Texas explained that the challenge to an Executive Branch program should proceed despite pending litigation over the rescission of the same program. Because the creation and rescission of a federal regulation involve different records, the court reasoned that "each ultimate ruling could also be different." *Texas v. United States*, 328 F. Supp. 3d 662, 682 (S.D. Tex. 2018) (Hanen, J.). Similarly, if the rule that HHS recently proposed is finalized, it is safe to assume that the rule will be challenged on grounds not asserted here. It is therefore entirely appropriate for this Court to reach a final judgment on the issues that have remained pending for more than two years in this case. Since other district and appellate courts are likely to weigh in on any modification of the disputed rule, a final ruling on the unique issues before this Court will facilitate the "percolation among the [courts]" of the proper scope of the conscience exemptions required under Title IX. Harold Leventhal, *A Modest Proposal for a Multi-Circuit Court of Appeals*, 24 AM. U. L. REV. 881, 907 (1975).

Indeed, earlier this week, the Sixth Circuit struck down another portion of the *same final Rule* at issue here—regarding private rights of action for disparate impact discrimination—despite the fact that the proposed rule proposes to fix the same problem. *Doe v. BlueCross BlueShield of Tenn., Inc.*, No. 18-5897, 2019 WL 2353207, at *3 (6th Cir. June 4, 2019); ECF No. 159-1 at 21-25 (conceding that "the final Rule improperly blended substantive requirements and enforcement mechanisms of the underlying statutes" (some capitalization omitted)). In an opinion by Judge Sutton,

4

the unanimous court said that "[t]here is just one permissible interpretation of this [statutory] language, and the agency failed to respect it," so "[i]ts contrary agency interpretation counts for naught." *Doe*, 2019 WL 2353207, at *3. The court did not postpone ruling on this issue due to the existence of the proposed rule.

The posture of this case also weighs heavily in favor of a swift dispositive ruling by the Court. The Court's preliminary-injunction decision already confronted the arguments now raised in the parties' and Intervenors' summary-judgment briefs. Binding precedent from the Fifth Circuit now supports the Court's earlier decision, and none of the facts of the case have changed. The Court is not confronting legal questions of first impression, but those it has already ruled upon. Thus, the Court should convert its preliminary injunction into a permanent one, and set aside the 2016 Rule.

Further, as Plaintiffs have explained, there are numerous reasons why delay would be especially inappropriate here, including that (1) this case involves purely legal questions; (2) finalizing a proposed rule typically takes over a year, often longer in election years like 2020; (3) absent final relief, Plaintiffs could face conflicting legal requirements because of the numerous ongoing suits in other jurisdictions seeking rulings that Section 1557 itself requires entities like Plaintiffs to perform or cover gender-transition procedures; and (4) if the proposed rule is ever finalized, it too will likely be challenged in litigation, protracting Plaintiffs' legal uncertainty still further. ECF No. 158 at 13-16. HHS disputes none of this. Instead, HHS offers only that "if" the proposed rule is finalized, this case would "likely" become moot. ECF No. 159 at 2. But as Plaintiffs already pointed out, even the (far-from-certain) final "repeal of the objectionable" portions of the final Rule would simply be an example of voluntary cessation insufficient to create mootness. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982); ECF No. 158 at 14. In any event, this same objection could have been made in the context of the new contraceptive-mandate rule, too—but there,

5

the Court correctly declined to postpone its ruling on the previous version of the mandate while litigation over the new rule played out and instead proceeded to summary judgment in the ordinary course. *DeOtte*, *supra*.

Beyond that, the proposed rule itself—and events since—further strengthen the case for issuing a final decision now. *First*, while the proposed rule would repeal the Rule's definition of "sex" (including the "gender identity" provision), it wouldn't replace it with any new definition limited to biological sex. ECF No. 159-1 at 43. According to Intervenors' theory—which has been incorrectly accepted by some district courts—the statutory term "sex" *itself* includes the concept of "gender identity." ECF No. 155 at 19-20. On this theory, then, the proposed rule—even if finalized—would offer Plaintiffs no relief; Plaintiffs would still be required by Section 1557 to cover or perform gender-transition services contrary to their religious beliefs and medical judgment. This is all the more reason for the Court to finalize its ruling that "sex" as incorporated in Section 1557 means "the biological and anatomical differences between male[s] and female[s] . . . as determined at their birth," ECF No. 62 at 31; and that in any event RFRA protects Private Plaintiffs from being required "to perform, refer for, or cover transitions or abortions" contrary to their sincerely held religious beliefs. *Id.* at 39.

*Second*, the proposed rule relies heavily on this Court's preliminary-injunction order throughout. *See* ECF No. 159-1 at 9-12, 15-16, 39-44, 76-77, 98-103. A final ruling from this Court would thus provide necessary guidance to HHS in formulating the final rule. It would also offer additional judicial consideration of the question whether the term "sex" in Title IX includes "gender identity," which may assist the Supreme Court's review in the cases in which it has recently granted review of that question under Title VII. *See* ECF No. 158 at 14-15.

*Third*, if this Court issues a final ruling, HHS will have to decide, in conjunction with the Office of the Solicitor General, whether to appeal that ruling to the Fifth

Circuit. *See* Department of Justice, Justice Manual at § 2-2.121. Given the tenor of the new rule, HHS and the Department of Justice may jointly decide that there are no non-frivolous grounds to appeal. That would in turn leave this Court's permanent injunction as final guidance on the Rule in question.

*Finally*, immediately after issuance of the proposed rule, Intervenor ACLU and other organizations vowed to challenge the proposal if it becomes final. *See* ACLU, *ACLU Responds to Proposed Changes to Health Care Rights Law*, http://bit.ly/2QL74Ar (May 24, 2019) ("Should HHS finalize this discriminatory rule, we will see them in court."); Lambda Legal, *Trump Administration Assault on LGBT People Continues with New ACA Regulation*, http://bit.ly/2In8tte (May 24, 2019) ("This latest assault on our rights will not go unchallenged."); National Center for Transgender Equality, *New Trump Proposal Could Limit Health Care Access for Two Million Transgender Americans*, http://bit.ly/2Z6NRwc (May 24, 2019) ("If a final rule issued in the coming months is similar to today's proposal, it is certain to draw legal challenges . . . ."). These reactions only confirm Plaintiffs' point that, absent a final ruling from this Court, Plaintiffs will face years of additional uncertainty and burdensome litigation. That outcome can be avoided if the Court does what the law requires: because Plaintiffs have succeeded on the merits of their claims, they are entitled to summary judgment and final relief.

Respectfully submitted this the 6th day of June, 2019.

*/s/ Luke W. Goodrich*
Luke W. Goodrich
Bar No. 977736DC
Eric C. Rassbach (admission pending)
Mark L. Rienzi
Bar No. 648377MA
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW
Suite 700
Washington, DC 20036
(202) 955-0095
mrienzi@becketlaw.org

*Counsel for Plaintiffs Christian Medical & Dental Associations, Franciscan Health, Inc., Specialty Physicians of Illinois, LLC*

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy Attorney General for Legal Counsel

*/s/ David J. Hacker*
DAVID J. HACKER
Special Counsel for Civil Litigation
Texas Bar No. 24103323
david.hacker@oag.texas.gov

MICHAEL C. TOTH
Special Counsel for Civil Litigation

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Mail Code 001
Austin, Texas 78711
(512) 936-1414

*ATTORNEYS FOR PLAINTIFFS STATE OF TEXAS; STATE OF NEBRASKA; COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF ARIZONA; and STATE OF MISSISSIPPI, by and through Governor Phil Bryant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2019, the foregoing was served on all parties via ECF.

/s/ Luke W. Goodrich
Luke W. Goodrich