## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **FRANCISCAN ALLIANCE, INC., et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:16-cv-00108-O** |
| | § | |
| **ALEX M. AZAR II, Secretary of the** | § | |
| **United States Department of Health and** | § | |
| **Human Services; and UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Putative Intervenors American Civil Liberties Union of Texas's and River City Gender Alliance's (collectively, "Putative Intervenors") Renewed Motion to Intervene, Brief in Support, and Appendix in Support (ECF Nos. 129–31), filed February 1, 2019; Plaintiffs' Response (ECF No. 140), filed February 25, 2019; Defendants' Response (ECF No. 141), filed February 25, 2019; and Putative Intervenors' Reply (ECF No. 144), filed March 11, 2019. Also before the Court are Plaintiff States' Renewed Motion for Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 132–34), filed February 4, 2019; Private Plaintiffs' Renewed Motion for Partial Summary Judgment, Brief in Support, and Appendix in Support (ECF Nos. 135–37), filed February 4, 2019; Defendants' Response (ECF No. 154), filed April 5, 2019; Putative Intervenors' Response (ECF No. 155), filed April 5, 2019; Plaintiff States' Reply (ECF No. 157), filed May 3, 2019; and Private Plaintiffs' Reply (ECF No. 158), filed May 3, 2019.

## I.       BACKGROUND

In its December 31, 2016 Order granting Plaintiffs' motions for a preliminary injunction and applying the injunction throughout the country, the Court set forth the extensive statutory, regulatory, and procedural background to this case. *See* Order 1–12, ECF No. 62. Since that time, there have been several important procedural developments. On January 24, 2017, the Court deferred ruling on Putative Intervenors' original motion to intervene because it was not yet clear whether Defendants would adequately represent Putative Intervenors' interest. Order 7, ECF No. 69. On March 15, 2017, Plaintiffs filed a motion for summary judgment. Pls.' Mot. Summ. J., ECF No. 82. On March 27, 2017, Putative Intervenors filed a motion to stay proceedings pending appeal of the Court's denial of their motion to intervene. Putative Intervenors' Mot. Stay, ECF No. 85. On May 2, 2017, Defendants filed a motion to remand and stay litigation pending the United States Department of Health and Human Services' ("HHS") reconsideration of the regulation at issue, entitled Nondiscrimination in Health Programs & Activities ("the Rule"), 81 Fed. Reg. 31376 (May 18, 2016), codified at 45 C.F.R. § 92. Defs.' Mot. Remand & Stay, ECF No. 92. On June 30, 2017, the Fifth Circuit declined to rule on Putative Intervenors' motion to intervene as of right because this Court had not yet ruled on the motion for permissive intervention. Fifth Circuit's J., ECF No. 104. On July 10, 2017, after a hearing, the Court stayed the case in order to allow HHS to review the Rule. Order, ECF No. 105. The Court deferred ruling on Putative Intervenors' pending motion to intervene based on Defendants' contention that a change to the Rule could moot the case and on Putative Intervenors' own concerns cited in their motion to stay. *Id.* On December 17, 2018, Plaintiffs and Defendants filed a joint motion to lift the stay and set a briefing schedule.[1]

---

[1] On April 5, 2019, Defendants changed their position and asked the Court to postpone ruling on the motions to intervene and for summary judgment. *See* Defs.' Resp. 1–2, ECF No. 154. Defendants requested more time to complete the ongoing efforts to amend the Rule. *Id.* Defendants asked that, alternatively, any relief would be limited to redressing the injuries of the named Plaintiffs. *Id.*

Joint Mot. Lift Stay, ECF No. 125. The Court granted the parties' requests, lifting the stay and setting a briefing schedule for Putative Intervenors' renewed motion to intervene, as well as the parties' renewed motions for summary judgment. Order, ECF No. 126. Those motions are now fully briefed and ripe for ruling. The Court granted HHS two years to complete its review and amend the Rule at issue. Despite HHS's better efforts, the rule remains on the books. 45 C.F.R. § 92 (2016). Accordingly, the Court finds that principles of equity and judicial economy favor ruling on the pending motions, allowing the other parties in this case to conclude two years of litigation on these issues.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) permits a party to seek intervention as of right, while Rule 24(b) allows a party to seek permissive intervention. FED. R. CIV. P. 24. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citation omitted). "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)) (internal quotation marks omitted).

### A.    Intervention as of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that:

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A proposed intervenor is entitled to intervene if all the following elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action;

3

(3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co. (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007); *see also Espy*, 18 F.3d at 1205.

### B.    Permissive Intervention

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Frazier v. Wireline Sols., LLC*, No. C-10-3, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010) (citation omitted); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 131 (S.D. Tex. 2005).

4

### C.    Summary Judgment

Summary judgment is proper when the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material-fact issues. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must resolve all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. And if there appears to be some support for the disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion for summary judgment. *Id.* at 250.

### D.    Vacatur

When reviewing an agency action, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. Further, the court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* at § 706(2)(A). Because Congress "provided vacatur as a standard remedy for APA violations," courts typically "invalidate—without

qualification—unlawful administrative rules as a matter of course, leaving their predecessors in place until the agencies can take further action." *Pennsylvania v. President United States*, 930 F.3d 543, 575 (3d Cir. 2019).

## III.   ANALYSIS

### A.   Intervention

In its Order staying proceedings and remanding to HHS for reconsideration of the Rule, the Court stated that it would "rule on the motion for permissive intervention, as necessary, after the stay is lifted and before consideration of Plaintiffs' motion for summary judgment." Order 9 n.9, ECF No. 105. The Court also stated that, upon lifting the stay, it would "allow the parties an opportunity to brief the issue" of whether the Court correctly found that "Putative Intervenors have a legally protectable interest in the proceedings as the intended beneficiaries of the Rule." *Id.* at 3 n.5 (internal citation omitted). Furthermore, Defendants recently declined to defend the Rule, which forces the Court to also reconsider the forth prong of intervention as of right: whether Putative Intervenors' interest is inadequately represented by the existing parties. *See* Defs.' Resp. 1–2, ECF No. 154. Accordingly, the Court now considers whether Putative Intervenors may intervene under Rule 24(a) or (b).

#### 1.   Intervention as of Right

Unlike in their original motion to intervene, Putative Intervenors no longer ask to intervene permissively. *Compare* Putative Intervenors' Br. Supp. Mot. Int. 23–24, ECF No. 8, *with* Putative Intervenors' Br. Supp. Mot. Int. 7–11, ECF No. 130. Instead, they ask the Court to "reconsider its earlier denial of intervention as of right and grant [Putative] Intervenors' renewed request to intervene in light of the government's subsequent actions." Putative Intervenors' Br. Supp. Mot. Int. 8, ECF No. 130. Thus, the Court first addresses whether Putative Intervenors are entitled to

intervene as of right under Rule 24(a). FED. R. CIV. P. 24. To intervene as of right, Putative Intervenors must show: (1) their intervention application is timely; (2) they have an interest relating to the property or transaction that is the subject of the action; (3) they are situated so that disposition may, as a practical matter, impair or impede their ability to protect that interest; and (4) their interest is inadequately represented by the existing parties. *Haspel & Davis*, 493 F.3d at 578. "Failure to satisfy any one requirement precludes intervention of right." *Id.* The Court finds that Putative Intervenors now satisfy each of the four prongs and are entitled to intervene.

### a.    *Inadequate Representation*

The Court previously denied Putative Intervenors' request based on the fourth prong. *See* Order 7, ECF No. 69. Though the Court found that (1) the intervention application was timely, (2) Putative Intervenors had a legally protectable interest in the proceedings, and (3) the disposition of this action would impair their ability to protect members' interests if not allowed to intervene, there was no indication that Defendants would (4) inadequately represent Putative Intervenors' interest. *Id.* at 5–7. Indeed, the Court noted that "Putative Intervenors share[d] the same ultimate objective as Defendants—namely, a finding that the Rule is lawful." *Id.* at 7. Defendants had "demonstrated no adversity of interest, collusion, or nonfeasance." *Id.* And "[u]p to th[at] point, Defendants ha[d] taken no action out of step with their original position . . . that the Rule is lawful." *Id.* Thus, the Court denied the motion, stating, "Putative Intervenors may not presently intervene as of right." *Id.*

Two years later, Defendants *have* taken actions out of step with their original position, demonstrating they will not adequately represent Putative Intervenors' interests. Defendants now "agree with Plaintiffs and the Court that the Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively

unlawful under the APA." Defs.' Resp. 1, ECF No. 154. In fact, Defendants argue that Plaintiffs "are entitled to summary judgment on their APA claim," but urge the Court not to resolve any other claim. *Id.* And importantly, Defendants "do not oppose the [Putative] Intervenors' renewed Motion to Intervene." Defs.' Resp. 1, ECF No. 141. Under the reasoning of the Court's January 24, 2017 Order, Defendants' actions now clearly allow Putative Intervenors to satisfy the forth prong and presumably entitle Putative Intervenors to intervene as of right.

> ### b.    *Legally Protectable Interest*

Inadequate representation aside, Plaintiffs still contend that Putative Intervenors are not entitled to intervene as of right. Specifically, Plaintiffs argue that Putative Intervenors do not have the "legally protectable interest" needed to satisfy the second and third prongs. Pls.' Resp. 5, ECF No. 140.[2] What the Court stated in its January 2017 order, it now reiterates in response: "Putative Intervenors have a legally protectable interest in the proceedings and . . . disposition in this action will impair their ability to protect members' interests if not allowed to intervene, as several of their members wish to avail themselves of rights provided under the Rule." Order 5–6, ECF No. 69.

Plaintiffs provide two reasons why the Court should reconsider this conclusion. First, they claim that the evidence included in Putative Intervenors' motion to intervene "lacks a proper evidentiary foundation, is speculative, and is based on inadmissible hearsay." Pls.' Resp. 6, ECF No. 140. Second, Plaintiffs argue that "even if the Court considers the evidence, it shows that intervenors lack a legally protectable interest in the legality and constitutionality of the Rule and are attempting to assert the rights of others." *Id.* Rather than asserting a "direct, substantial, legally protectable interest," *id.* at 5 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir.

---

[2] Plaintiffs concede that Putative Intervenors' motion was timely. Pls.' Br. Opp'n Mot. Int. 5, ECF No. 140 ("While their motion was timely, Order 3, ECF No. 20, they lack a legally protectable interest that may be impaired by an adverse ruling, and it remains unclear whether their interests are inadequately represented by the federal defendants.").

1996)), Plaintiffs allege that Putative Intervenors "assert only 'ideological, economic, or precedential' interests that are insufficient for intervention." *Id.* at 9 (quoting *Texas*, 805 F.3d at 657–58). The Court addresses each contention in turn.

First, the facts asserted in Putative Intervenors' declarations are admissible at the intervention stage. As Putative Intervenors correctly note, "the Federal Rules of Evidence do not apply to motions to intervene." Putative Intervenors' Reply 1, ECF No. 144. Rather, motions to intervene are judged under the liberal pleading standard, and all "allegations are accepted as true." *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977); *see also* 7C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1914 (3d ed. 2007) ("The general rules on testing a pleading are applicable here. The pleading is construed liberally in favor of the pleader-intervenor and the court will accept as true the well-pleaded allegations in the pleading."). Though the case itself has progressed well beyond the pleading stage, Putative Intervenors have been stuck in a three-year limbo—participating in real time as amici, but all the while awaiting resolution of their motions to intervene. Accordingly, the Court must analytically return to the pleading stage, considering the facts alleged in Putative Intervenors' renewed motion to intervene as if they were included in the original parties' pleadings.

Putative Intervenors' motion to intervene includes declarations from leaders of each organization. *See* App. Supp. Putative Intervenors' Mot. Int., ECF No. 131. The deputy director of the ACLU of Texas claims to have members seeking transition surgeries and abortions, and she refers to one unnamed member seeking each procedure. *Id.* at 2. Likewise, the president of the River City Gender Alliance claims to have members also seeking transition services, and she too refers to one unnamed individual. *Id.* at 5. Because these statements come from leadership rather than the organizations' allegedly harmed members, Plaintiffs assert that the statements are

inadmissible hearsay. Pls.' Resp. 6, ECF No. 140. But at the pleading stage, this is not true. *See* 7C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1914 (3d ed. 2007). The Court finds that Putative Intervenors' declarations plead sufficient facts to establish that "the disposition of the action 'may' impair or impede their ability to protect their interests," to the extent necessary at the motion-to-intervene stage. *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).

When taking these declarations as true, the Court finds that Putative Intervenors' have shown a "direct, substantial, legally protectable interest" in the outcome of the case, as they have alleged specific harm to particular members. *Edwards*, 78 F.3d at 1004. Plaintiffs argue that this cannot be true because "[t]he Rule does not regulate the conduct of the ACLU of Texas or the River City Gender Alliance." Pls.' Resp. 8, ECF No. 140. Plaintiffs point the Court to *NOPSI*, 732 F.2d 452, and *Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323 (6th Cir. 2007), both of which the Court finds distinguishable.

In *NOPSI*, the Fifth Circuit held that "an economic interest alone is insufficient, as a legally protectable interest is required for intervention under Rule 24(a)(2)." 732 F.2d at 466. Here, Putative Intervenors do not allege an economic interest at all, much less a solely economic interest. Rather, they claim to have an interest "as the intended beneficiary of a government regulatory system." Putative Intervenors' Br. Supp. Mot. Int. 10, ECF No. 130 (quoting *Wal-Mart Stores,* 834 F.3d at 569). They assert that, if HHS is prevented from enforcing the Rule, Putative Intervenors' members will be denied access to healthcare. *Id.* at 5.

Factually, *Northland Family Planning Clinic* is more similar. There, STOPP, a public-interest group "created and continu[ing] to exist only for the purposes of advocating the passage and continued viability" of Michigan's Legal Birth Definition Act, sought to intervene to defend the Act. *Northland Family Planning Clinic*, 487 F.3d at 344. The Sixth Circuit upheld the district

court's denial of intervention because "the organization had 'only an ideological interest in the litigation, and the lawsuit d[id] not involve the regulation of [the organization's] conduct in any respect.'" *Texas*, 805 F.3d at 658 (quoting *Northland Family Planning Clinic*, 487 F.3d at 343). Appearing on behalf of their organizational entities, Putative Intervenors would also have only an ideological interest. But unlike STOPP, they "do not seek to intervene in their capacity as advocacy groups." Putative Intervenors' Br. Supp. Mot. Int. 11, ECF No. 130 (internal citation omitted). Instead, "they seek to intervene based on their associational standing to assert the 'concrete, particularized, and legally protectable' interests of their individual members." *Id.* (citing *Texas*, 805 F.3d at 657–58). Since the Court must take the facts alleged in Putative Intervenors' declarations as true, it finds that Putative Intervenors have pleaded sufficient facts to demonstrate a "legally protectable interest" such that they are entitled to intervene as of right.

However, this is *not* to say that Putative Intervenors have pleaded sufficient facts to prove standing to assert claims on behalf of their members. Indeed, should Putative Intervenors seek to appeal, they will need to show more than just a sufficiently pleaded legally protectable interest in the case; they will need to prove they have Article III standing. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("As the Court has repeatedly recognized, to appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing."); *Diamond v. Charles*, 476 U.S. 54, 68 (1986) ("Diamond's status as an intervenor below, whether permissive or as of right, does not confer standing sufficient to keep the case alive in the absence of the State on this appeal."). Putative Intervenors already claim to satisfy this requirement under the theory of associational standing. Putative Intervenors' Br. Supp. Mot. Int. 14, ECF No. 130. In order to demonstrate associational standing, Putative Intervenors must prove three elements: "(1) the association[s'] members would independently meet the Article III standing

requirements; (2) the interests the association[s] seek[] to protect are germane to the purpose of the organization[s]; and (3) neither the claim asserted nor the relief requested requires participation of individual members." *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019) (internal citation omitted). But because they do not "seek relief" at this stage of the litigation, the Court need not address whether they have associational standing.[3]

---

[3] Following the Supreme Court's opinion in *Town of Chester v. Laroe County Estates, Inc.*, 137 S. Ct. 1645 (2017), the Court noted in its July 10, 2017 Order that, once the stay was lifted, it would consider *Town of Chester*'s application to this case. *See* Order 3 n.5, ECF No. 105. On August 7, 2019, Court ordered briefing, and on September 16, 2019, it held a hearing. Order, ECF No. 164; Order, ECF No. 168. Specifically, the Court asked the parties to address whether Putative Intervenors, as defendant-intervenors, were "pursu[ing]" or "seeking relief" such that they must demonstrate standing. Order 2, ECF No. 164; Hr'g Tr. The Court now concludes that Putative Intervenors do not seek relief and need not demonstrate standing at this stage of the litigation.

In *Town of Chester*, the Supreme Court stated, "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." 137 S. Ct. at 1651. Addressing the plaintiff-intervenor's claim that it was entitled to intervene irrespective of its standing, the Supreme Court held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Id.* Though the Supreme Court purported to resolve a circuit split involving both intervenor-plaintiffs, *see, e.g.*, *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980 (7th Cir. 2011), and intervenor-defendants, *see, e.g.*, *King v. Governor of the State of New Jersey*, 767 F.3d 216 (3d Cir. 2014), it appears that the holding applies only to intervenor-plaintiffs. *See Town of Chester*, 137 S. Ct. at 1650 ("[a]cknowledging a division among the Courts of Appeals on whether an intervenor of right must meet the requirements of Article III"). In *DeOtte v. Azar*, the Court concluded the opposite: that any intervenor, regardless of the side it intends to join, must establish standing if no existing party seeks the same relief. *See* No. 4:18-cv-00825-O, 2019 WL 3796432, at *2 (N.D. Tex. July 29, 2019) (denying the State of Nevada's motion to intervene as of right after finding that it did not have standing). After further briefing and oral arguments in this case—neither of which occurred in *DeOtte*—the Court has determined that defendant-intervenors need not establish standing because they generally do not "pursue relief" within the meaning of *Town of Chester*. 137 S. Ct. at 1651. However, this Court agrees with the parties and with other courts that have found that the opinion applies in both the intervention-as-of-right and permissive-intervention contexts. *See* Pls.' Suppl. Br. Resp. Ct.'s Order 2, ECF No. 165; Defs.' Resp. Order Ct. 1, ECF No. 166; Putative Intervenors' Suppl. Br. Supp. Mot. Int. 1, ECF No. 167; *United States v. Bayer Cropscience LP*, No. 15-13331, 2018 WL 3553413 (S.D. W. Va. July 24, 2018); *Seneca Res. Corp. v. Highland Twp.*, No. 16-289, 2017 WL 4171703 (W.D. Pa. Sept. 20, 2017); *but see Vazzo v. City of Tampa*, No. 17-2896, 2018 WL 1629216 (M.D. Fla. Mar. 15, 2018).

For three reasons, this Court now concludes that Putative Intervenors, as defendant-intervenors, do not "seek relief" and therefore do not need to demonstrate standing in this case. First, the term "relief" is linked to affirmative claims, not defenses. Black's Law Dictionary defines relief as "redress or benefit . . . that a party asks of the court" and synonymizes it to a "remedy." *Relief*, BLACK'S LAW DICTIONARY 606 (3d Pocket ed. 1996). One type of relief is "affirmative relief," which is defined as "the relief sought by a defendant by raising a counterclaim or cross-claim that could have been maintained independently of the plaintiff's action." *Id.* Here, Plaintiffs ask the Court to issue declaratory judgments that declare the Rule

Putative Intervenors have shown that (1) their intervention application is timely; (2) they have an interest relating to the property or transaction that is the subject of the action; (3) they are situated so that disposition may, as a practical matter, impair or impede their ability to protect that interest; and (4) their interest is inadequately represented by the existing parties. *Haspel & Davis*, 493 F.3d at 578. Accordingly, the Court **GRANTS** their motion to intervene as of right.

---

invalid and to permanently enjoin Defendants from enforcing the Rule. State Pls.' Mot. Summ. J. 2, ECF No. 132; Private Pls.' Mot. Partial Summ. J. 2, ECF No. 135. This is a form of redress or remedy. Putative Intervenors, on the other hand, do not ask the Court to do anything; they do not raise a counterclaim, cross-claim, or any other claim for relief. Rather, they state that their "objective [is] defending the lawfulness of the regulation." Putative Intervenors' Br. Supp. Mot. Int. 1–2, ECF No. 130. The Federal Rules of Civil Procedure's differentiation between "claim[s] for relief" and "defenses" further enforces this distinction. FED. R. CIV. P. 8. In this case, all claims for relief have been pleaded by Plaintiffs, leaving Defendants—or, instead, Putative Intervenors—to defend the Rule against those claims.

Second, plaintiffs, not defendants, generally must demonstrate standing. "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester*, 137 S. Ct. at 1650 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). Accordingly, plaintiffs must "alleg[e] such a personal stake in the outcome of the controversy as to . . . justify [the] exercise of the court's remedial powers on [their] behalf." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38 (1976)); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). *Town of Chester* does not seem to depart from this longstanding principle. *See* 137 S. Ct. at 1651 ("At least one plaintiff must have standing to seek each form of relief requested in the complaint.").

Finally, *Town of Chester* can be read in conjunction with Fifth Circuit precedent. "[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." *Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (citing *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)). Here, the Supreme Court opinion does not seem to "explicitly or implicitly overrul[e]" the Fifth Circuit's seminal case. *United States v. Short*, 181 F.3d 620, 624 (5th Cir. 1999). In *Ruiz v. Estelle*, the Fifth Circuit joined the pre-*Town of Chester* circuit split by concluding the intervenors need not establish standing. *Ruiz v. Estelle*, 161 F.3d 814 (5th Cir. 1998). Undoubtedly, *Town of Chester* abrogated *Ruiz* in part, insofar as it clarified that plaintiff-intervenors must establish standing in order to intervene as of right when seeking different relief than the existing parties. *See Town of Chester*, 137 S. Ct at 1651. But the opinion keeps intact the Fifth Circuit's pronouncement that "Article III does not require intervenors to independently possess standing where *the intervention is into a subsisting and continuing Article III case or controversy* and *the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so*." *Ruiz*, 161 F.3d at 380 (emphasis added). Accordingly, if Putative Intervenors sought relief that was not being sought by another party with standing, they would be required to demonstrate their own standing. But because Plaintiffs retain standing to bring their claims for injunctive relief, there is still a "subsisting and continuing Article III case or controversy." *Id.* Putative Intervenors may join in defense. And as long as they do not also intend to add an affirmative claim for relief during the district court proceedings, Putative Intervenors need not establish standing to intervene.

13

2.    Permissive Intervention

Even if Putative Intervenors could not establish that they are entitled to intervene as of right, the Court would allow them to intervene permissively under Rule 24(b). FED. R. CIV. P. 24(b). "[T]he court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). This decision is "wholly discretionary with the court," *Kneeland*, 806 F.2d at 1289, but "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

Here, Putative Intervenors have a "defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). Indeed, Putative Intervenors' defense is directly related to the underlying controversy, especially at the current summary-judgment stage, where Putative Intervenors respond directly to Plaintiffs' arguments. *See generally* Putative Intervenors' Br. Opp'n Mots. Summ. J., ECF No. 155. Further, as discussed above, Putative Intervenors' interest is no longer "adequately represented by other parties." *NOPSI*, 732 F.2d at 472. And now that Defendants do not defend the Rule, Putative Intervenors' arguments will "significantly contribute" to the development of the issues. *Id.*

Moreover, the parties agree to Putative Intervenors' permissive intervention. Defendants "do not oppose [Putative] Intervenors' renewed Motion to Intervene." Defs.' Resp. 1, ECF No. 141. And though Plaintiffs do not "conced[e] their satisfaction of the requirements for permissive intervention," they are "willing . . . to consent to permissive intervention provided that the Court prevents [P]utative [I]ntervenors from conducting discovery, moving to stay the litigation or the preliminary injunction, and disrupting the dispositive motion schedule." Pls.' Resp. 1, 5, ECF No.

14

140. Essentially, no party objects to Putative Intervenors' involvement; Plaintiffs just ask that the intervention not bring the case back to square one. This request aligns with Rule 24's guidelines. When determining whether to permit a prospective party to intervene, the Court is required to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). If it determines that intervention would cause such undue delay or prejudice, "a federal district court is able to impose almost any condition, including the limitation of discovery." *Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 469 (4th Cir. 1992); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987) ("refus[ing] to find that the grant of permissive intervention, even though subject to conditions, should be treated as a complete denial of the right to participate" when the intervenor could still raise its claims on post-judgment appeal). But importantly, a court may also place reasonable conditions on intervenors as of right. *See Beauregard v. Sword Servs., LLC*, 107 F.3d 351, 352– 53 (5th Cir. 1997).

### 3.   Limitations on Intervention

Though the Court finds that Putative Intervenors are entitled to intervene as of right, it finds that reasonable limitations are necessary to avoid a further delay in litigation. *See id.* ("[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right."); FED. R. CIV. P. 24(a) advisory committee's note to 1966 amendment ("An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."). Here, Plaintiffs and Putative Intervenors agree that the issues in this case are primarily legal. *See* Pls.' Resp. 12, ECF No. 140; Putative Intervenors' Br. Supp. Mot. Int. 3, ECF No. 130. Accordingly, there is no need for factual discovery. Furthermore, because Putative

Intervenors have been allowed to participate in nearly every stage of the litigation, including in the current summary-judgment stage, there is no need for further briefing. *See, e.g.*, Putative Intervenors' Answer, ECF No. 10; Putative Intervenors' Mot. Stay, ECF No. 27; Putative Intervenors' Mot. Expedited Recons., ECF No. 38; Putative Intervenors' Br. Opp'n Mots. Summ. J, ECF No. 53; Putative Intervenors' Mot. Ruling Int. & Stay, ECF No. 63; Notice of Appeal, ECF No. 72; Putative Intervenors' Mot. Stay, ECF No. 85; Putative Intervenors' Resp. Pls.' Mot. Status Conference, ECF No. 122; Putative Intervenors' Mot. Int., ECF No. 129; Putative Intervenors' Opp'n Mots. Summ. J., ECF No. 155; Putative Intervenors' Suppl. Br. Supp. Mot. Int., ECF No. 167. As a result, the Court is ready to rule on Plaintiffs' motions for summary judgment.

### B.      Summary Judgment

Plaintiffs ask the Court to vacate the Rule and convert its previously entered preliminary injunction to a permanent injunction. State Pls.' Br. Supp. Mot. Summ. J. 37, ECF No. 133; Private Pls.' Br. Supp. Mot. Summ. J. 50, ECF No. 136. Given how little the parties' legal claims have changed, the Court is inclined to do so. But Plaintiffs must show they are entitled to judgment as a matter of law, and the Court must assess whether Putative Intervenors' arguments compel reconsideration of its original analysis and determine the appropriate remedy for this stage of the litigation.

### 1.      Merits

Individual Plaintiffs argue they are entitled to judgment as a matter of law on their (1) APA claim; (2) RFRA claim; and (3) Free Exercise claim. *See* Private Pls.' Br. Supp. Mot. Summ. J., ECF No. 136. State Plaintiffs argue they are entitled to judgment as a matter of law on their APA claim or, alternatively, their stand-alone constitutional claims. *See* State Pls.' Br. Supp. Mot. Summ. J., ECF No. 133.  Defendants concede these points but ask the Court to go no further than

ruling on Plaintiffs' APA claim.[4] *See* Defs.' Resp., ECF No. 154. Putative Intervenors—now defending the Rule as parties to the case—argue that Plaintiffs have not proved an injury in fact and therefore cannot succeed on their claims.[5] Putative Intervenors' Br. Opp'n Mots. Summ. J. 1–3, ECF No. 155.

When the Court granted the preliminary injunction, it found that Plaintiffs (1) proved that the Rule violates the APA and (2) demonstrated that the Rule likely violates RFRA. Order 2, ECF No. 62. The Court finds no reason to depart from its analysis on the APA claim. *See id.* at 27–38 (holding that the Rule is "contrary to law" under the APA due to its conflict with Title IX, its incorporated statute). But because it previously only concluded that Private Plaintiffs' demonstrated a "substantial likelihood of success on their [RFRA] claims," the Court must now address whether Plaintiffs have proved that the Rule, as applied to them, also violates RFRA.[6] *Id.* at 42.

---

[4] No matter Defendants' position, whether Plaintiffs are entitled to the judgment they seek is a decision that rests with the Court. "A motion for summary judgment cannot be granted simply because there is no opposition," but "a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Day v. Wells Fargo Bank Nat. Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (unpublished) (quoting *Hibernia Nat. Bank v. Administracion Cent. S.A.*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[5] Putative Intervenors' arguments defending the Rule and opposing Plaintiffs' request for a permanent injunction are largely consistent with arguments Defendants originally raised when defending the rule and opposing the request for preliminary injunction. *Compare* Defs.' Response, ECF No. 50, *with* Putative Intervenors' Opp'n Mots. Summ. J., ECF No. 155. The Court has already addressed most of these arguments. *See* Order, ECF No. 62. To the extent that the Court has not addressed Putative Intervenors' arguments, the issues are not pertinent to the Court's conclusion. *See, e.g.*, Putative Intervenors' Opp'n Mots. Summ. J. 27–32, 35–37, ECF No. 155 (arguing that the Rule does not violate state sovereignty or the Free Exercise Clause).

[6] Putative Intervenors assert that the Court must review the administrative record to adjudicate Plaintiffs' claims. Putative Intervenors' Opp'n Mots. Summ. J. 4, 33–34, ECF No. 155. The Court disagrees. The Court need not consider the record on the APA claim because it requires a purely legal statutory-interpretation analysis. As State Plaintiffs correctly note, "[s]ex discrimination in section 1557 either includes gender identity and termination of pregnancy as a matter of law, or it does not." State Pls.' Reply 8, ECF No. 157. Further, the Court need not consider the record on the RFRA claim because the APA's "record rule does not apply to RFRA claims." *N. Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1211 (D. Wyo. 2012); *see also O Centro Espirita Beneficiente Uniao do Vegetal v. Duke*, 286 F. Supp. 3d 1239,

Congress—noting that "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution" and that "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise," 42 U.S.C. § 2000bb(a)(1), (2)—enacted RFRA "to provide a claim or defense to persons whose religious exercise is substantially burdened by government." 42 U.S.C. § 2000bb(b)(2). RFRA reinstated "the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972)," which Congress deemed "a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(5), (b)(1). When applying RFRA's test to a federal agency rule, a court must first determine whether the rule "imposes a substantial burden on the exercise of religion." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726 (2014). If so, the court applies the two-prong compelling interest test. It asks whether the government "has shown that the [rule] both '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Id.* (quoting 42 U.S.C. § 2000bb–1(b)). "RFRA thus applies strict scrutiny to government regulations that substantially burden a person's religious exercise." *Tagore v. United States*, 735 F.3d 324, 330 (5th Cir. 2013). Importantly, "a 'categorical approach'" to RFRA's strict-scrutiny analysis "is insufficient." *Id.* at 331 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430–37 (2006)). Instead, the government must analyze RFRA claims on a case-by-case basis and must "explain how applying the statutory burden 'to the person' whose sincere exercise of religion is

---

1260–62 (D.N.M. 2017) (distinguishing APA claims and RFRA claims, and concluding that "the APA's procedural requirements, including the record rule, do not apply" to RFRA claims); *S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, No. 3:08-cv-616-LRH-RAM, 2009 WL 73257, at *1–3 (D. Nev. Jan. 7, 2009) (concluding that "limiting [the court's] review of the RFRA claim to the administrative record [wa]s inappropriate").

being seriously impaired furthers the compelling governmental interest." *Tagore*, 735 F.3d at 330–31 (citing *Gonzales*, 546 U.S. at 430–31).

In its December 31, 2016 Order, the Court concluded that "the Rule imposes a substantial burden on Private Plaintiffs' religious exercise." Order 40, ECF No. 62. After explaining that "the Court is careful not to weigh or evaluate the relevant doctrines of faith," the Court concluded that "Private Plaintiffs' refusal to perform, refer for, or cover transitions or abortions is a sincere religious exercise." *Id.* at 39. Because the Rule "[1] places substantial pressure on Plaintiffs to perform and cover transition and abortion procedures . . . [2] forces Plaintiffs to provide the federal government a nondiscriminatory and 'exceedingly persuasive justification' for their refusal to perform or cover such procedures [and] . . . [3] requires them to remove the categorical exclusion of transitions and abortions," the Rule substantially burdens Private Plaintiffs' religious exercise by making the practice of religion more expensive in the business context. *Id.* at 39–40 (citing *Hobby Lobby*, 573 U.S. at 710).

Accordingly, the Court applied strict scrutiny based on Defendants' briefing. *Id.* at 40–42. First, the Court noted that "Defendants d[id] not provide a compelling interest in their briefing and Private Plaintiffs dispute[d] that one exists." *Id.* at 40; *see also id.* at 38 ("Defendants did not address Plaintiffs' RFRA claim in their briefing but asserted at the hearing that more factual development was necessary to evaluate the claim."). Nevertheless, the Court stated that, even if Defendants had a compelling interest, they "failed to prove the Rule employs the least restrictive means." *Id.* at 41. The Court provided examples of other less restrictive means the government could use to ensure access to transition procedures and abortions, including assisting individuals seeking such procedures by finding healthcare providers who offer those services and then

assuming the cost. *Id.* at 41–42. Accordingly, the Court determined that Private Plaintiffs successfully demonstrated a substantial likelihood of success on their RFRA claim. *Id.*

Once again, Defendants have failed to address Private Plaintiffs' RFRA claim. *See generally* Defs.' Resp., ECF No. 154. However, Putative Intervenors urge the Court to find for Defendants a compelling interest in the preamble to the Rule, which states, "the government has a compelling interest in ensuring that individuals have nondiscriminatory access to health care and health coverage." Putative Intervenors' Resp. 33, ECF No. 155 (citing 81 Fed. Reg. at 31380). Putative Intervenors also reject Private Plaintiffs' and the Court's previously stated alternative means to achieve this interest. *Id.* at 34 n.7. However, RFRA's text and this Court's binding precedent make clear that Putative Intervenors cannot carry Defendants' burden; the "[g]overnment may substantially burden a person's exercise of religion only if *it* demonstrates that application of the burden to the person" satisfies strict scrutiny. 42 U.S.C. § 2000bb–1(b) (emphasis added); *see also Hobby Lobby*, 573 U.S. at 721 (refusing to consider RFRA arguments raised by parties other than the government).

Regardless, the Court considered and rejected these arguments in its December 31, 2016 Order. *See* Order 40–41, ECF No. 62. And the Court's analysis—like Private Plaintiffs' claims and Defendants' lack of response—has not changed. Though the preamble's broadly stated purpose, implemented through universal application of the Rule, could arguably satisfy a categorical application of strict scrutiny, it cannot satisfy RFRA's "more focused" inquiry. *Gonzales*, 546 U.S. at 430. Defendants, the only parties fit to carry the government's burden, have twice failed to demonstrate that applying the Rule to Private Plaintiffs, "the particular claimant[s] whose sincere exercise of religion is being substantially burdened," would achieve a compelling governmental interest through the least restrictive means. *Id.* at 430–31. Indeed, though the Rule

states that any "explicit, categorical (or automatic) exclusion or limitation of coverage" for these procedures is "unlawful on its face," 81 Fed. Reg. at 31429, Defendants have asserted no "harm [in] granting *specific* exemptions" to Private Plaintiffs. *Hobby Lobby*, 573 U.S. at 726–27 (emphasis added). Accordingly, the Court holds that the Rule, which expressly prohibits religious exemptions, substantially burdens Private Plaintiffs' religious exercise in violation of RFRA.

Settling this dispute requires resolving questions of law. Plaintiffs have already presented their legal arguments to the Court and, notably, explained why they were entitled to not only a preliminary injunction but also judgment as a matter of law. *See* Private Pls.' Reply, ECF No. 158. Now, they support those arguments with more evidence. *See* App. Supp. State Pls.' Mot. Summ. J., ECF No. 134; App. Supp. Private Pls.' Mot. Summ. J., ECF No. 137. Defendants do not object to the relevant facts, arguments, or evidence. *See* Defs.' Response, ECF No. 154. And though Putative Intervenors' do object, their arguments are largely duplicative of those the Court has already addressed. *Compare* Order, ECF No. 62, *with* Putative Intervenors' Opp'n Mots. Summ. J., ECF No. 155. Accordingly, the Court finds that Plaintiffs' motions for partial summary judgment should be and are hereby **GRANTED in part**.

## 2.   Relief

Plaintiffs request two forms of relief: (1) vacatur of the Rule and (2) a permanent injunction enjoining Defendants from applying the Rule nationwide. *See* State Pls.' Br. Supp. Mot. Summ. J. 37, ECF No. 133; Private Pls.' Br. Supp. Mot. Summ. J. 50, ECF No. 136. Though the Court maintains that Plaintiffs were entitled to the preliminary injunction granted in its December 31, 2016 Order, it now concludes that the proper remedy at this stage is vacatur of the Rule, not a permanent injunction.

Under Section 706 of the APA, 5 U.S.C. § 706, when a reviewing court finds that an agency rule violates the APA, it "'shall'—not may—'hold unlawful and set aside' [the] agency action." *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1022 (5th Cir. 2019) (citing *Checkosky v.  SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994)) [hereinafter *Southwestern*]. When a court "hold[s] unlawful and set[s] aside" agency rules that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (citation omitted). The Fifth Circuit has applied Section 706 and accordingly vacated agency rules both in whole and in part. For example, where "the comprehensive regulatory package [wa]s plainly not amenable to severance," the Fifth Circuit concluded that a Department of Labor rule's "overreaching definition" and "conflict[] with the plain text" of ERISA—among other flaws—required vacatur of the rule "*in toto.*" *Chamber of Commerce v. U.S. Dep't of Labor*, 885 F.3d 360, 379, 388 (5th Cir. 2018). In contrast, the Fifth Circuit vacated and remanded only severable portions of an Environmental Protection Agency rule enacted through arbitrary and capricious rulemaking. *Southwestern*, 920 F.3d at 1022.[7] Section 706 is not limited to appellate courts; district courts have a duty to vacate unlawful agency actions as well. *See Nio v. United States*, 385 F. Supp. 3d 44, 68–69 (D.D.C. 2019) (vacating arbitrary and capricious Department of Defense requirements rather than issuing

---

[7] "'[T]he agency action . . . found to be in excess of statutory authority,' 5 U.S.C. § 706(2)(C), can encompass only 'a part of an agency rule.' And courts may 'set aside' only the part of a rule found to be invalid—for that is the only 'agency action' that exceeds statutory authority. It would, therefore, exceed the statutory scope of review for a court to set aside an entire rule where only a part is invalid, and where the remaining portion may sensibly be given independent life." *Catholic Soc. Serv. v. Shalala*, 12 F.3d 1123, 1128 (D.C. Cir. 1994). As the Court noted in its December 31, 2016 Order, "the Rule includes a severability provision," which allowed the Court to enjoin only the challenged provisions. Order 45–46, ECF No. 62 (citing 45 C.F.R. § 92.2(c)). Now, the Court **VACATES** only the portions of the Rule that are unlawful under the APA and RFRA.

a permanent injunction, and stating that "[g]enerally, when a court finds that a challenged action is arbitrary and capricious, the remedy is vacatur"); *Am. Stewards of Liberty v. Dep't of Interior*, 370 F. Supp. 3d 711, 728 (W.D. Tex. 2019) (vacating a Department of the Interior conclusion that did not follow Congress's set standard, and noting that "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking" (quoting *Judulang v. Holder*, 565 U.S. 42, 53 (2011)); *AquAlliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 880 (E.D. Cal. 2018) (vacating an agency report that violated the National Environmental Policy Act, and stating that vacatur is the "presumptive remedy" for unlawful agency action).

Since the Court concludes that "the Rule's conflict with its incorporated statute—Title IX—renders it contrary to law under the APA," the appropriate remedy is vacatur. Order 38, ECF No. 62. Accordingly, the Court **VACATES and REMANDS** the unlawful portions of the Rule for Defendants' further consideration in light of this opinion and the Court's December 31, 2016 Order.

Finally, though "[i]t is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction," these circumstances do not justify such a remedy. *Texas*, 809 F.3d at 188. Rather, vacatur redresses both the APA violation and the RFRA violation. The Third Circuit discussed the distinctions between nationwide injunctions and vacatur in *Pennsylvania v. President United States*, 930 F.3d 543. There, the circuit court affirmed a district court's order granting a preliminary nationwide injunction against the enforcement of final rules the district court found *likely* violated the APA and *likely* were not authorized by nor required by the ACA or RFRA. *Id.* at 556. In upholding the remedy, however, the circuit emphasized that the nationwide injunction was issued "not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Id.* at 575 (quoting *Trump v. Int'l Refugee Assistance*

*Project*, 137 S. Ct. 2080, 2087 (2017)). Indeed, "[w]hile vacatur [wa]s the ultimate remedy the States s[ought]," the preliminary injunction merely provided temporary relief until the rules' validity could be "finally adjudicated." *Id.* at 575–76. But because "Congress . . . provided vacatur as a standard remedy for APA violations," the circuit clarified that courts in similar situations ultimately "invalidate—without qualification—unlawful administrative rules as a matter of course, leaving their predecessors in place until the agencies can take further action." *Id.* at 575.

The District Court for the District of Columbia encountered the issue this Court now faces: whether, after vacatur of an unlawful rule, "issuance of an injunction is also warranted." *O.A. v. Trump*, No. 18-2838, 2019 WL 3536334, at *29 (D.D.C. Aug. 2, 2019). The D.C. district court determined it was not. *Id.* It first noted that "[t]he Supreme Court has cautioned that a district court vacating an agency action under the APA should not issue an injunction unless doing so would 'have [a] meaningful practical effect independent of its vacatur.' *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)." *O.A.*, 2019 WL 3536334, at *29. It also noted that the defendants had "represented that they w[ould] abide by th[e c]ourt's order." *Id.* Accordingly, the court denied the plaintiffs' request for issuance of an injunction, but it also stated that the plaintiffs were "free, however, to return to the [c]ourt for further relief if warranted." *Id.*

Because the Court finds the circumstances here similar and the D.C. district court's analysis persuasive, the Court follows suit—vacating the Rule and inviting Plaintiffs to return if further relief independent of vacature is later warranted. There is currently no indication that, once the Rule is vacated, Defendants will defy the Court's order and attempt to apply the Rule against Plaintiffs or similarly situated non-parties. Rather, Defendants now "agree with Plaintiffs and the Court that the Rule's prohibitions on discrimination on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively unlawful under the APA."

Defs.' Resp. 1, ECF No. 154. Defendants correctly state that they have been "conscientiously complying with the injunction" and ask the Court to postpone ruling due to their "ongoing efforts to amend the Rule." *Id.* at 2. Considering Defendants' prior actions and current statements, the Court concludes that issuance of an injunction would not have a "meaningful practical effect independent of its vacatur" because vacatur and remand will likely prevent Defendants from applying the Rule. *Monsanto*, 561 U.S. at 165. However, should Defendants attempt to apply the vacated Rule—in violation of the APA, RFRA, and this Court's Order—Plaintiffs may return to the Court for redress. As it stands, neither Plaintiffs nor similarly situated non-parties need injunctive relief from the vacated Rule.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Putative Intervenors' Motion to Intervene (ECF No. 129) should be and is hereby **GRANTED**. The Court also finds that Plaintiffs' Motions for Summary Judgment and Permanent Injunction (ECF Nos. 132, 135) should be and are hereby **GRANTED in part**. The Court **SEVERS** Plaintiffs' APA and RFRA claims from their Title VII, Spending Clause, First Amendment, Tenth Amendment, and Eleventh Amendment claims. The Court **ADOPTS** its prior reasoning from the preliminary injunction (ECF No. 62) and now **HOLDS** that the Rule violates the APA and RFRA. Accordingly, the Court **VACATES and REMANDS** the Rule for further consideration.

**SO ORDERED** on this **15th day** of **October, 2019**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**