# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.,* | |
| *Plaintiffs,* | No. 7:16-CV-00108-O |
| v. | |
| XAVIER BECERRA, *et al.,* | |
| *Defendants.* | **PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMAND** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ................................................................................................... 1

BACKGROUND ....................................................................................................... 2

ARGUMENT ........................................................................................................... 9

   I.  Plaintiffs are entitled to a permanent injunction. ............................... 9

   II. Plaintiffs' request for injunctive relief isn't moot and
      was preserved. .......................................................................................... 21

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Adams v. Sch. Bd. of St. Johns Cnty.*,
   968 F.3d 1286 (11th Cir. 2020) ............................................................................. 20

*Ass'n of Christian Schs. v. Azar*,
   No. 14-2966 (D. Colo. Dec. 10, 2018)...................................................................... 11

*Ave Maria Sch. of Law v. Sebelius*,
   No. 13-795 (M.D. Fla. July 11, 2018)....................................................................... 11

*Ave Maria Univ. v. Sebelius*,
   No. 13-630 (M.D. Fla. July 11, 2018)....................................................................... 11

*A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*,
   611 F.3d 248 (5th Cir. 2010) .................................................................................. 11

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. HHS*,
   No. 20-11297 (D. Mass. filed July 9, 2020)............................................ 6, 17-18, 23

*Bostock v. Clayton County*,
   140 S. Ct. 1731 (2020) ...................................................................................*passim*

*Burwell v. Hobby Lobby Stores, Inc.*,
   573 U.S. 682 (2014) ............................................................................. 1, 10, 11, 13

*Califano v. Yamasaki*,
   442 U.S. 682 (1970) ............................................................................................... 15

*Campbell-Ewald Co. v. Gomez*,
   577 U.S. 153 (2016) ......................................................................................... 22, 23

*Catholic Benefits Ass'n LCA v. Hargan*,
   No. 14-240 (W.D. Okla. Mar. 7, 2018) .................................................................... 11

*Christian Emp'rs All. v. Azar*,
   No. 16-309, 2019 WL 2130142 (D.N.D. May 15, 2019) ......................................... 11

*Colo. Christian Univ. v. HHS*,
   No. 13-2105 (D. Colo. July 11, 2018) ...................................................................... 11

*Conestoga Wood Specialties Corp. v. Burwell*,
   No. 12-6744 (E.D. Pa. Oct. 2, 2014) ....................................................................... 11

*Cruz v. Zucker*,
116 F. Supp. 3d 334 (S.D.N.Y. 2015) ....................................................................... 3

*DeOtte v. Azar*,
393 F. Supp. 3d 490 (N.D. Tex. 2019) ............................................................*passim*

*Dierlam v. Trump*,
977 F.3d 471 (5th Cir. 2020) ........................................................................ 22, 23

*Dobson v. Azar*,
No. 13-3326, 2019 WL 9513153 (D. Colo. Mar. 26, 2019) .................................... 11

*Dordt Coll. v. Azar*,
No. 13-4100 (N.D. Iowa June 14, 2018) ................................................................ 11

*Dresser-Rand Co. v. Virtual Automation, Inc.*,
361 F.3d 831 (5th Cir. 2004) .................................................................................. 9

*E. Tex. Baptist Univ. v. Azar*,
No. 12-3009 (S.D. Tex. Aug. 10, 2020) ............................................................ 11, 12

*Flack v. Wis. Dep't of Health Servs.*,
328 F. Supp. 3d 931 (W.D. Wis. 2018) .................................................................. 16

*Franciscan All., Inc. v. Becerra*,
843 F. App'x 662 (5th Cir. 2021) .....................................................................*passim*

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) ............................................................................................ 15

*Geneva Coll. v. Sebelius*,
No. 12-207 (W.D. Pa. July 5, 2018) ...................................................................... 11

*Grace Schs. v. Azar*,
No. 12-459, 2018 WL 8755890 (N.D. Ind. June 1, 2018) ...................................... 11

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ................................................................................ 20

*Hobby Lobby Stores, Inc. v. Sebelius*,
723 F.3d 1114 (10th Cir. 2013) ............................................................................ 10

*Knox v. SEIU*,
567 U.S. 298 (2012) ............................................................................................ 22

*Korte v. HHS*,
No. 12-1072 (S.D. Ill. Nov. 7, 2014) ................................................................ 11-12

iv

*Korte v. Sebelius,*
    735 F.3d 654 (7th Cir. 2013) ................................................................................ 10

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020) ........................................................................................ 11

*Little Sisters of the Poor v. Azar,*
    No. 13-2611 (D. Colo. May 29, 2018) .................................................................. 12

*Med. Ctr. Pharm. v. Holder,*
    634 F.3d 830 (5th Cir. 2011) .................................................................................. 9

*Merced v. Kasson,*
    577 F.3d 578 (5th Cir. 2009) ............................................................................... 11

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ............................................................................................ 14

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville,*
    508 U.S. 656 (1993) ............................................................................................ 23

*New York v. HHS,*
    No. 20-5583 (S.D.N.Y. filed July 20, 2020) ........................................................... 6

*New York v. U.S. Dep't of Com.,*
    351 F. Supp. 3d 502 (S.D.N.Y. 2019) ................................................................... 15

*O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,*
    546 U.S. 418 (2006) ...................................................................................... 10, 11

*O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,*
    389 F.3d 973 (10th Cir. 2004) ............................................................................. 10

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ................................................................... 10, 13, 23

*Perez v. Stephens,*
    784 F.3d 276 (5th Cir. 2015) .................................................................................. 9

*Prescott v. Rady Children's Hosp.-San Diego,*
    265 F. Supp. 3d 1090 (S.D. Cal. 2017) ................................................................ 16

*C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.,*
    No. 20-6145, 2021 WL 1758896 (W.D. Wash. May 4, 2021) ................................ 16

*Reaching Souls Int'l, Inc. v. Azar,*
    No. 13-1092, 2018 WL 1352186 (W.D. Okla. Mar. 15, 2018)................................ 12

*Religious Sisters of Mercy v. Azar,*
 Nos. 16-386 & 16-432, 2021 WL 191009 (D.N.D. Jan. 19, 2021) ..................*passim*

*Roman Catholic Diocese of Brooklyn v. Cuomo,*
 141 S. Ct. 63 (2020) ................................................................................... 10

*S. Nazarene Univ. v. Hargan,*
 No. 13-1015 (W.D. Okla. May 15, 2018) ............................................... 12

*Sapp v. Renfroe,*
 511 F.2d 172 (5th Cir. 1975) ................................................................... 25

*SEC v. Life Partners Holdings, Inc.,*
 854 F.3d 765 (5th Cir. 2017) ............................................................. 15, 16

*Sharpe Holdings, Inc. v. HHS,*
 No. 12-92 (E.D. Mo. Mar. 28, 2018) ...................................................... 12

*Speech First, Inc. v. Fenves,*
 979 F.3d 319 (5th Cir. 2020) ................................................................... 24

*Tovar v. Essentia Health,*
 342 F. Supp. 3d 947 (D. Minn. 2018) ..................................................... 16

*Valentine v. Collier,*
 993 F.3d 270 (5th Cir. 2021) ............................................................... 9, 15

*Veasey v. Abbott,*
 870 F.3d 387 (5th Cir. 2017) ..................................................................... 9

*Veasey v. Abbott,*
 888 F.3d 792 (5th Cir. 2018) ................................................................... 14

*Walker v. Azar,*
 480 F. Supp. 3d 417 (E.D.N.Y. 2020) ................................... 6, 18, 23, 24

*Walker v. Azar,*
 No. 20-2834 (E.D.N.Y. filed June 26, 2020) ................................*passim*

*Washington v. HHS,*
 482 F. Supp. 3d 1104 (W.D. Wash. 2020) ........................................ 6, 17

*Washington v. HHS,*
 No. 20-1105 (W.D. Wash.) .................................................................. 6, 17

*Wheaton Coll. v. Azar,*
 No. 13-8910 (N.D. Ill. Feb. 22, 2018) .................................................... 12

*Whitman-Walker Clinic, Inc. v. HHS,*
   485 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................*passim*

*Whitman-Walker Clinic, Inc. v. HHS,*
   No. 20-1630 (D.D.C. filed June 22, 2020) ....................................................*passim*

*Zubik v. Sebelius,*
   No. 13-1459 (W.D. Pa. Dec. 20, 2013)................................................................. 12

**Statutes**

20 U.S.C. § 1681 ............................................................................................................ 3

42 U.S.C. § 2000bb-1 ................................................................................................... 14

42 U.S.C. § 18116 ...................................................................................................... 3, 15

**Other Authorities**

45 C.F.R. § 86.4 ........................................................................................................... 13

45 C.F.R. § 92.4 ........................................................................................................... 13

81 Fed. Reg. 31,376 (May 18, 2016) ............................................................................. 3

85 Fed. Reg. 37,160 (June 19, 2020) ....................................................... 5, 14, 17, 18

*The Biden Plan to Advance LGBTQ+ Equality in America and*
   *Around the World,* JoeBiden.com ......................................................................... 19

Exec. Order No. 13,988, 86 Fed. Reg. 7,023 (Jan. 20, 2021) ........................ 7-8, 19, 20

Fed. R. Civ. P. 54 ........................................................................................................ 25

HHS, Notification of Interpretation and Enforcement of Section 1557 of the
   Affordable Care Act and Title IX of the Education Amendments of 1972
   (May 10, 2021) ..................................................................................................... 8, 9

Pamela S. Karlan, Principal Deputy Assistant Attorney General, U.S.
   Dep't of Justice, Civil Rights Division, *Memorandum re: Application of*
   Bostock v. Clayton County *to Title IX of the Education Amendments of*
   *1972* (Mar. 26, 2021)........................................................................................ 8, 20

Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2664 (4th ed.) .................................... 25

## INTRODUCTION

RFRA was enacted to "provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693 (2014). It wasn't meant to enmesh religious organizations in years-long games of regulatory whack-a-mole with federal agencies. Yet absent injunctive relief from this Court, that's exactly where Plaintiffs would be—beating back one effort to force them to violate their beliefs only to face the same effort by a new name, burdening their religious exercise the same way.

In 2019, this Court correctly held that HHS violated RFRA when it interpreted Section 1557 of the Affordable Care Act to require Plaintiffs to perform and insure gender transitions and abortions contrary to their religious beliefs and medical judgment. The Court did not, however, enjoin HHS from applying such a requirement. Instead, the Court vacated the portions of the then-effective agency rule imposing it—the portions of HHS's 2016 Rule interpreting Section 1557's prohibition on "sex" discrimination to include "gender identity" and "termination of pregnancy." That solution remedied Plaintiffs' separate claim under the APA. But it left Plaintiffs vulnerable to continued violations of RFRA, since HHS could reimpose the exact same requirement on Plaintiffs through issuance of a new rule, through revival of the 2016 Rule, or simply through application of Section 1557 itself.

And that is exactly what has occurred since this Court's ruling. First, HHS issued a 2020 Rule that, in light of the Supreme Court's recent decision in *Bostock*, HHS now interprets to prohibit "gender identity" discrimination just as much as the 2016 Rule did. Next, multiple courts enjoined parts of the 2020 Rule, in the process purporting to revive the very portions of the 2016 Rule that imposed the RFRA-violating requirement in the first place. Finally, just this week, HHS issued a "Notification of Interpretation and Enforcement" stating that, independent of any rule (2016, 2020, or otherwise), the agency is now interpreting and enforcing Section 1557 *itself* to prohibit "gender identity" discrimination—thus explicitly reinstating the very interpretation

1

that this Court held to violate RFRA.

These developments demonstrate that Plaintiffs "still suffer a substantial threat of irreparable harm" notwithstanding vacatur, and that this case is not "moot"—fully answering the two questions posed by the Fifth Circuit for remand. *Franciscan All., Inc. v. Becerra*, 843 F. App'x 662, 663 (5th Cir. 2021). And that's why Plaintiffs are entitled to injunctive relief—relief protecting them from any effort by HHS to impose the same RFRA-violating burden on their religious exercise, regardless of the particular regulatory means.

That relief wouldn't just comport with RFRA and the analogous contraceptive-mandate litigation, as explained below. It would also have important real-world effects. Plaintiffs are a major hospital system and an association of nearly 20,000 healthcare providers. They need to know—yes or no—whether they face multimillion-dollar penalties for adhering to their beliefs and declining to perform procedures that they hold, in their experienced medical judgment, to be harmful to their patients. Five years and three Administrations is long enough for that Damoclean sword to dangle over their heads. Only a permanent injunction can remove it.

## BACKGROUND

Because the Court is familiar with the factual and procedural background of this case, *see* ECF No. 175 at 2-3; ECF No. 62 at 1-12; Plaintiffs only briefly summarize key facts, focusing on developments postdating summary judgment.

Plaintiffs are a Catholic hospital association and an association of Christian healthcare professionals. Plaintiffs' religious beliefs require them to treat all patients with compassion and respect, and they treat transgender patients "for health issues ranging from common colds to cancer." ECF No. 137 at 32. In accordance with their medical judgment and religious beliefs, Plaintiffs do not participate in gender-transition procedures, which they view as harmful. Nor do they perform abortions. And their insurance plans exclude coverage for both. *See generally* ECF No. 136 at 10-12.

In 2016, HHS attempted to force Plaintiffs to begin performing and insuring these procedures. The basis for its action was Section 1557 of the ACA, which incorporates into the healthcare context Title IX's prohibition on "sex" discrimination. 42 U.S.C. § 18116(a) (Section 1557); *see* 20 U.S.C. § 1681 (Title IX). After Section 1557's enactment, transgender individuals sued hospitals and other providers for declining to perform or cover transition procedures, alleging such conduct amounts to "sex" discrimination under Section 1557. *See, e.g., Cruz v. Zucker*, 116 F. Supp. 3d 334 (S.D.N.Y. 2015). In 2016, HHS agreed and promulgated a regulation ("the 2016 Rule") interpreting Section 1557 to that effect. 81 Fed. Reg. 31,376 (May 18, 2016).

The 2016 Rule defined Section 1557's prohibition on discrimination "on the basis of sex" to include, among other things, "gender identity" and "termination of pregnancy." *Id.* at 31,467. As a result, HHS said, it is unlawful "discrimination" for a provider to decline to perform or insure a procedure (*e.g.*, a hysterectomy) for gender-transition purposes if it would perform or insure the procedure for non-transition purposes (*e.g.*, to treat uterine cancer). *Id.* at 31,455. On the same reasoning, the Rule would require providers who would perform or insure certain procedures for non-abortion purposes to do the same for abortions. *Id.* Those who violated HHS's interpretation of Section 1557 would be subject to loss of federal funding (including Medicare and Medicaid), debarment from doing business with the government, false-claims liability, enforcement proceedings brought by the Department of Justice, and private lawsuits for damages and attorneys' fees. *Id.* at 31,440, 31,471-72.

Plaintiffs filed this lawsuit in August 2016, alleging (*inter alia*) that HHS's interpretation of Section 1557 violated the APA by defining "sex" to mean "gender identity" and "termination of pregnancy" and by refusing to incorporate Title IX's religion and abortion exemptions; and that it violated RFRA by requiring them to perform and insure gender transitions and abortions contrary to their religious beliefs. ECF No.

1.[1] On December 31, 2016, this Court agreed and preliminarily enjoined the "gender identity" and "termination of pregnancy" portions of the Rule. ECF No. 62.

In March 2017, Plaintiffs moved for summary judgment on their APA and RFRA claims. ECF No. 82. In response, HHS—now under the Trump Administration—moved for a "stay" of the litigation and a "voluntary remand" to reconsider the challenged aspects of the Rule, ECF No. 92, which this Court granted, ECF No. 105.

After a long period of agency inaction, the Court reopened the case. ECF No. 126. And in February 2019, Plaintiffs renewed their motion for summary judgment. ECF No. 135. In support, Plaintiffs submitted a proposed order specifying the relief sought. ECF No. 135-1. As a remedy for the APA violation, Plaintiffs sought a nationwide injunction and vacatur of the "gender identity" and "termination of pregnancy" portions of the 2016 Rule. *Id.* at 3-4 & ¶¶(a)-(b). As a remedy for the RFRA violation, Plaintiffs sought to "permanently enjoin[]" HHS from "[c]onstruing Section 1557 to require [them] to provide medical services or insurance coverage related to 'gender identity' or 'termination of pregnancy' in violation of their religious beliefs," *id.* at 3, 4 ¶(f); *accord* ECF No. 82-2 (seeking same relief).

In October 2019, this Court granted summary judgment, finding "no reason to depart from its" preliminary-injunction analysis. ECF No. 175 at 17, 19-21. As for relief, however, the Court declined to enter a permanent injunction. The Court noted that the "standard remedy for APA violations" was "vacatur" of the challenged rule. *Id.* at 22-24 (cleaned up). And because the Court found there was "currently no indication that, once the Rule is vacated, Defendants will … attempt to apply [it] against Plaintiffs," the Court concluded that "injunctive relief from the vacated Rule" was unnecessary. *Id.* at 24-25. The Court did not, however, separately address Plaintiffs' request, corresponding to their RFRA claim, for a plaintiff-specific injunction barring

---

[1] Plaintiffs here were joined as plaintiffs by eight States. The States' claims have been finally resolved and are not subject to the Court's supplemental-briefing order. ECF No. 199.

HHS from construing Section 1557 to require them to violate their religious beliefs. On November 21, 2019, the Court entered a judgment setting out the final terms of its relief: "the Court **VACATES** the [2016] Rule insofar as the Rule defines '*On the basis of sex*' to include gender identity and termination of pregnancy." ECF No. 182 at 2.

Defendants did not appeal this Court's judgment against them—leaving the Court's resolution of the merits final and undisturbed. Plaintiffs, however, appealed the denial of injunctive relief. ECF No. 185. And during their appeal, several important factual developments occurred.

First, on June 12, 2020, HHS issued a new Section 1557 rule ("the 2020 Rule"). 85 Fed. Reg. 37,160 (June 19, 2020). The 2020 Rule repealed the 2016 Rule's definition of "sex" discrimination, but did not replace it with a new definition. Instead, the 2020 Rule reasoned that the Supreme Court's then-forthcoming decision in *Bostock* would "likely have ramifications for the definition of 'on the basis of sex' under Title IX," so repealing the prior definition would permit "application of the [*Bostock*] Court's construction." *Id.* at 37,168, 37,178. The 2020 Rule also stated that it was to be implemented consistent with Title IX's abortion-neutrality exemption, *id.* at 37,162, and it purported to incorporate Title IX's religious exemption by reference, though it suggested that the exemption would cover only "[a]ny *educational operation* of an entity … control[led] by a religious organization," *id.* at 37,207 (emphasis added).

Three days later, the Supreme Court decided *Bostock*. *Bostock v. Clayton County*. 140 S. Ct. 1731 (2020). The Court held that when "an employer … fires someone simply for being homosexual or transgender," the employer has "discriminated against that individual 'because of such individual's sex.'" *Id.* at 1753. The Court explained, however, that it was "deeply concerned with preserving the promise of the free exercise of religion," stating that religious employers might not be liable "in cases like ours" if complying would require them "to violate their religious convictions." *Id.*

5

at 1753-54; *see also id.* at 1754 (describing RFRA as a "super statute" that "might supersede … in appropriate cases" an otherwise-applicable ban on gender-identity discrimination). In dissent, Justices Alito and Thomas explained that application of *Bostock*'s reasoning to Section 1557 could "threaten freedom of religion" by requiring "employers and healthcare providers" like Plaintiffs "to pay for or to perform" "sex reassignment procedures" contrary to "their deeply held religious beliefs." *Id.* at 1778, 1781-82 (Alito, J., dissenting).

*Bostock* triggered multiple lawsuits against HHS, challenging the 2020 Rule and seeking restoration of the 2016 Rule, in whole or in part.[2] In one of those cases, the court dismissed for lack of standing, reasoning that, given *Bostock*, the 2020 Rule may already "in fact, extend protection against discrimination to LGBTQ individuals via the Rule's incorporation of Title IX by reference." *Washington v. HHS*, 482 F. Supp. 3d 1104, 1114-15 (W.D. Wash. 2020).

In two cases, however, the district courts entered "overlapping injunctions," *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020) (cleaned up), preventing the 2020 Rule "from becoming operative" and reinstating portions of the 2016 Rule, *Walker v. Azar*, 480 F. Supp. 3d 417, 420 (E.D.N.Y. 2020).

In *Walker*, the court acknowledged it had "no power to revive a rule vacated" by this Court. *Id.* at 427. Nevertheless, the court "predict[ed] that either the district court or some higher authority w[ould] revisit the vacatur," and then specifically held that portions of the 2016 Rule this Court had vacated—including "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping'"—"remain in effect." *Id.* at 427, 430.

---

[2] *See Whitman-Walker Clinic, Inc. v. HHS*, No. 20-1630 (D.D.C. filed June 22, 2020); *Walker v. Azar*, No. 20-2834 (E.D.N.Y. filed June 26, 2020); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. HHS*, No. 20-11297 (D. Mass. filed July 9, 2020) ("*BAGLY*"); *Washington v. HHS*, No. 20-1105 (W.D. Wash. filed July 16, 2020); *New York v. HHS*, No. 20-5583 (S.D.N.Y. filed July 20, 2020).

The *Whitman-Walker* court indicated that a portion of the 2016 Rule purportedly not vacated by this Court—namely, the provision defining "sex" to include "sex stereotyping"—independently prohibits "[d]iscrimination based on ... gender identity." 485 F. Supp. 3d at 38, 41. The court therefore enjoined the 2020 Rule's repeal of this portion of the 2016 Rule in light of *Bostock*, "le[aving] ... the 2016 Rule's prohibition on ... sex stereotyping" in effect. *Id.* at 26, 64. The *Whitman-Walker* court also enjoined the 2020 Rule's incorporation of Title IX's religious exemption, *id.* at 43-46, even though this Court had held that the 2016 Rule was arbitrary and capricious for *not* incorporating that exemption, ECF No. 62 at 35-38; ECF No. 175 at 17.

Meanwhile, following the *Walker* and *Whitman-Walker* injunctions, Catholic healthcare providers in a case analogous to this one moved for a permanent injunction analogous to the one Plaintiffs seek here—*i.e.*, prohibiting HHS from requiring them to perform and insure gender transitions under Section 1557, regardless of the operative agency rule. *Religious Sisters of Mercy v. Azar*, Nos. 16-386 & 16-432, 2021 WL 191009, at *1-11 (D.N.D. Jan. 19, 2021). There, as here, HHS resisted on justiciability grounds, arguing that this Court's "vacatur of the 2016 Rule and the ensuing promulgation of the 2020 Rule cured the Plaintiffs' injuries" and eliminated any credible threat of enforcement. *Id.* at *15. But on January 19, 2021, the *Sisters of Mercy* court rejected HHS's justiciability arguments and granted permanent injunctive relief, barring HHS "from interpreting or enforcing *Section 1557 of the ACA*, 42 U.S.C. § 18116(a), *or any implementing regulations thereto* against the Catholic Plaintiffs in a manner that would require them to perform or provide insurance coverage for gender-transition procedures." *Id.* at *27 (emphasis added).

On January 20, 2021, the Biden Administration took office. That day, President Biden issued an Executive Order proclaiming the new Administration's view that "[u]nder *Bostock*'s reasoning, laws that prohibit sex discrimination" generally "prohibit discrimination on the basis of gender identity." Exec. Order No. 13,988, 86 Fed.

Reg. 7,023 (Jan. 20, 2021). On March 26, a Department of Justice memorandum confirmed the Administration's view that this reasoning applied to Title IX.[3]

The Fifth Circuit on April 15 issued its opinion in this case. 843 F. App'x 662. Recounting the events described above, the court stated that "the legal landscape has shifted significantly" since this Court denied injunctive relief. *Id.* at 662-63. The Fifth Circuit noted that Plaintiffs argued that this Court "should have granted them injunctive relief against the 2016 rule and the underlying statute, that they still suffer a substantial threat of irreparable harm under the 2016 rule, and that the subsequent developments have only made it clear that an injunction should have been granted in the first place." *Id.* at 663. Meanwhile, HHS "contend[ed] that th[is] case is moot and that the providers never asked the district court for relief against the underlying statute." *Id.* The court remanded the case to this Court to "consider these issues." *Id.* And on April 23, this Court set a briefing schedule on remand. ECF No. 199.

On May 10, HHS issued a "Notification of Interpretation and Enforcement" stating that, "beginning today," HHS "will interpret and enforce Section 1557[]" to prohibit "discrimination on the basis of gender identity."[4] HHS noted that it would enforce this prohibition via "Title IX's enforcement procedures." Notification of Interpretation at 4. Those procedures include "revo[cation of] federal funding," "civil enforcement proceedings, debarment from doing business with the federal government, lawsuits under the False Claims Act, and even criminal penalties." *Sisters of Mercy*, 2021 WL 191009, at *2 & n.1. And HHS concluded by inviting members of the public

---

[3] Pamela S. Karlan, Principal Deputy Assistant Attorney General, U.S. Dep't of Justice, Civil Rights Division, *Memorandum re: Application of* Bostock v. Clayton County *to Title IX of the Education Amendments of 1972* (Mar. 26, 2021) ("DOJ Memo"), at 2-3.

[4] HHS, Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972 at 1, 3 (May 10, 2021), https://www.hhs.gov/sites/default/files/ocr-bostock-notification.pdf.

who "believe that a covered entity violated" the prohibition on gender-identity discrimination to "file a complaint" with HHS. Notification of Interpretation at 4.

## ARGUMENT

The Fifth Circuit's "mandate rule requires a district court on remand to effect our mandate and to do nothing else." *Veasey v. Abbott*, 870 F.3d 387, 390 n.2 (5th Cir. 2017) (cleaned up). Under this rule, "an issue that could have been but was *not* raised on appeal is forfeited and may not be revisited by the district court on remand." *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (collecting cases); *see also, e.g., Perez v. Stephens*, 784 F.3d 276, 282 (5th Cir. 2015). Here, by declining to appeal, HHS and ACLU have forfeited any dispute over the merits of Plaintiffs' claims or the propriety of the Court's vacatur. Thus, the only questions before the Court are those identified by the Fifth Circuit for remand: whether, in light of Plaintiffs' meritorious RFRA claim, Plaintiffs are entitled to "injunctive relief against the 2016 rule and the underlying statute," or, alternatively, whether a request for such relief is moot or waived. *Franciscan*, 843 F. App'x at 663. Plaintiffs are entitled to an injunction, and their request is neither moot nor waived.

## I. Plaintiffs are entitled to a permanent injunction.

**1.** "[T]he standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). Thus, a permanent injunction is proper if the plaintiff shows: "(1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021).

In RFRA cases, as this Court has recognized, the injunctive-relief analysis typically "begins and ends" with "success on the merits." *Korte v. Sebelius*, 735 F.3d 654,

666 (7th Cir. 2013); *see DeOtte v. Azar*, 393 F. Supp. 3d 490, 511-12 (N.D. Tex. 2019). This is because when a RFRA plaintiff has prevailed on the merits, the other injunctive-relief factors typically follow "as a matter of law." *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 294-96 (5th Cir. 2012); *see also Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013) (en banc), *aff'd*, 573 U.S. 682 (2014).

Specifically, a successful RFRA plaintiff easily demonstrates irreparable injury, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (internal quotation marks omitted)). And "[t]his principle applies with equal force" to RFRA, because RFRA "enforces First Amendment freedoms." *Opulent Life Church*, 697 F.3d at 295. Similarly, the balance of equities by definition favors a successful RFRA plaintiff, because RFRA itself "express[es Congress's] view of the proper balance between" religious liberty and governmental interests. *O Centro Espirita Beneficente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1025-29 (10th Cir. 2004) (en banc) (McConnell, J., concurring), *aff'd*, 546 U.S. 418 (2006). Thus, when the government fails to satisfy strict scrutiny in the merits analysis, "the balance of harms ... also favor[s] protecting the moving party's burdened rights." *Id.* at 1027. And "[i]njunctions protecting First Amendment freedoms are always in the public interest"—a principle that "applies equally to injunctions protecting" RFRA rights. *Opulent Life Church*, 697 F.3d at 298 (cleaned up).

Thus, when a plaintiff prevails on the merits of a RFRA claim, the plaintiff is "entitled to an exemption" from the religion-burdening requirement. *Hobby Lobby,* 573 U.S. at 694-95. Here, that means Plaintiffs are entitled to a permanent injunction barring HHS from applying Section 1557 to force *them* to perform or insure gender transitions or abortions in violation of their beliefs—regardless of whether HHS could validly impose that requirement on anyone else.

This is the standard analysis in RFRA cases. Indeed, in *every* case in which the

Supreme Court or Fifth Circuit has found a meritorious RFRA claim (under the federal RFRA or its Texas analogue), the result has been an injunction like the one Plaintiffs seek here—*i.e.*, one "prohibiting the Government from" taking the challenged action "with respect to" the plaintiff's religious exercise. *O Centro*, 546 U.S. at 427.[5]

So too in the widespread RFRA litigation involving the "contraceptive mandate"—which is on all fours with this case. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2372-73 (2020). As this Court is aware, the contraceptive mandate was another attempt by HHS to apply the ACA to require the coverage of controversial medical procedures—there, contraceptives and abortifacients. *See DeOtte*, 393 F. Supp. 3d 490. As with HHS's attempt to require the provision of gender-transition procedures here, many courts (this Court included) held that the requirement violated RFRA as applied to religious objectors. *E.g.*, *id.* at 501-11. And at least *twenty* courts (again, this one included) remedied that violation by entering permanent injunctions.[6] Importantly, every one of these injunctions—like the one

---

[5] *See Hobby Lobby*, 573 U.S. at 692, 701-04 (plaintiffs sought "to enjoin application of ACA's contraceptive mandate insofar as it requires them to provide [objectionable] health-insurance coverage"); *O Centro*, 546 U.S. at 427 (affirming "preliminary injunction prohibiting the Government from enforcing the Controlled Substances Act with respect to [plaintiff's] importation and use of *hoasca*"); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 257 (5th Cir. 2010) (affirming "permanent injunction against the District preventing the grooming policy's application to A.A."); *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) ("Merced is entitled … to an injunction preventing Euless from enforcing its ordinances that burden his religious practice of sacrificing animals.").

[6] *See* Order, *Ass'n of Christian Schs. v. Azar*, No. 14-2966 (D. Colo. Dec. 10, 2018), ECF 49; Order, *Ave Maria Sch. of Law v. Sebelius*, No. 13-795 (M.D. Fla. July 11, 2018), ECF 68; Order, *Ave Maria Univ. v. Sebelius*, No. 13-630 (M.D. Fla. July 11, 2018), ECF 72; Order, *Catholic Benefits Ass'n LCA v. Hargan*, No. 14-240 (W.D. Okla. Mar. 7, 2018), ECF 184; *Christian Emp'rs All. v. Azar*, No. 16-309, 2019 WL 2130142 (D.N.D. May 15, 2019); Order, *Colo. Christian Univ. v. HHS*, No. 13-2105 (D. Colo. July 11, 2018), ECF 84; Order, *Conestoga Wood Specialties Corp. v. Burwell*, No. 12-6744 (E.D. Pa. Oct. 2, 2014), ECF 82; *DeOtte*, 393 F. Supp. 3d 490; *Dobson v. Azar*, No. 13-3326, 2019 WL 9513153 (D. Colo. Mar. 26, 2019); Order, *Dordt Coll. v. Azar*, No. 13-4100 (N.D. Iowa June 14, 2018), ECF 89; Order Amending Injunction, *E. Tex. Baptist Univ. v. Azar*, No. 12-3009 (S.D. Tex. Aug. 10, 2020), ECF 163; Order, *Geneva Coll. v. Sebelius*, No. 12-207 (W.D. Pa. July 5, 2018), ECF 153; *Grace Schs. v. Azar*, No. 12-459, 2018 WL 8755890 (N.D. Ind. June 1, 2018); Order of Injunction, *Korte v.*

Plaintiffs seek here—prohibited HHS from applying not only its own *regulations* imposing the contraceptive mandate, but also the underlying *statute* authorizing it, to require the plaintiffs to provide the objectionable procedures. *E.g.*, Order Amending Injunction at 2, *E. Tex. Baptist Univ.*, No. 12-3009 (S.D. Tex. Aug. 10, 2020), ECF 163 (enjoining HHS from "any effort to apply or enforce the substantive requirements imposed *in 42 U.S.C. § 300gg-13(a)(4)* as those requirements relate to provision of contraceptive coverage services which violate [plaintiffs'] conscience" (emphasis added)); *see also DeOtte*, 393 F. Supp. 3d at 514 (enjoining HHS from "enforcing the Contraceptive Mandate, codified at *42 U.S.C. § 300gg-13(a)(4)*" (emphasis added)).

Finally, *Sisters of Mercy* further illustrates the point. There, as here, religious healthcare providers asserted that HHS violated RFRA by interpreting Section 1557 to require them to perform and insure gender-transition procedures. 2021 WL 191009, at *1. Although this Court had already vacated the "gender identity" portions of the 2016 Rule and HHS had promulgated the 2020 Rule, the *Sisters of Mercy* court held the plaintiffs continued to face "a credible threat of enforcement for refusal to provide or insure gender-transition procedures." *Id.* at *12. And the court agreed with this Court that that requirement violated RFRA. *Id.* at *21-23. The court therefore entered an injunction—one that, like the contraceptive-mandate injunctions, wasn't limited to any particular agency rule (2016, 2020, or otherwise), but rather prohibited HHS from "interpreting or enforcing *Section 1557 of the ACA* … or any implementing regulations thereto against the" plaintiffs in "in a manner that would require them to perform or provide insurance coverage for" the objectionable procedures. *Id.* at *27

---

*HHS*, No. 12-1072 (S.D. Ill. Nov. 7, 2014), ECF 89; Order, *Little Sisters of the Poor v. Azar*, No. 13-2611 (D. Colo. May 29, 2018), ECF 82; *Reaching Souls Int'l, Inc. v. Azar*, No. 13-1092, 2018 WL 1352186 (W.D. Okla. Mar. 15, 2018); Judgment Order, *Sharpe Holdings, Inc. v. HHS*, No. 12-92 (E.D. Mo. Mar. 28, 2018), ECF 161; Order, *S. Nazarene Univ. v. Hargan*, No. 13-1015 (W.D. Okla. May 15, 2018), ECF 109; Order, *Wheaton Coll. v. Azar*, No. 13-8910 (N.D. Ill. Feb. 22, 2018), ECF 119; Order, *Zubik v. Sebelius*, No. 13-1459 (W.D. Pa. Dec. 20, 2013), ECF 81.

(emphasis added).

That is exactly the relief Plaintiffs are seeking here. Thus, all this Court needs to do to resolve the issues on remand is to follow the path taken by every Supreme Court and Fifth Circuit case finding a meritorious RFRA claim, by at least twenty contraceptive-mandate cases litigated in jurisdictions across the country (including in this Court), and by the *Sisters of Mercy* case raising the same questions presented here. And that path is to provide injunctive relief. Indeed, denying injunctive relief here would be unprecedented—transforming RFRA's "very broad protection" for religious liberty (*Hobby Lobby*, 573 U.S. at 693) into a merely temporary reprieve, lasting only as long as it takes the government to think up another regulatory mechanism for imposing the same burden on the plaintiff's religious beliefs.

**2.** Even "assuming *arguendo* that [this Court] were required to consider the specific evidence" on the injunctive-relief factors, it "would still find" those factors met. *Opulent Life Church*, 697 F.3d at 296. Absent an injunction, Plaintiffs would be forced to choose between performing gender transitions and abortions contrary to their religious beliefs and carrying out their mission of serving the needy, *see* ECF 137 at 10-11, 20-21—a quintessential irreparable harm. Moreover, the harm Plaintiffs face isn't static but *increasing* as this case drags on. Plaintiffs have to certify their compliance with Section 1557 on a rolling basis, *see* 45 C.F.R. §§ 86.4, 92.4—and every certification HHS later decides to treat as "false" will trigger false-claims liability, "exposing [them] to civil penalties," treble damages, and the possibility of "up to five years' imprisonment." *Sisters of Mercy*, 2021 WL 191009, at *2 n.1. Plaintiffs can't just sit back and twiddle their thumbs until HHS decides to enforce. *Cf. DeOtte*, 393 F. Supp. 3d at 512 ("Plaintiffs rights will be violated day after day.").

The balance of equities likewise supports Plaintiffs, since HHS has numerous other ways to advance its supposed interests. ECF 62 at 41-42. And (as HHS itself explained in the 2020 Rule) the public interest is best served by leaving healthcare

"providers … generally free to use their best medical judgment, consistent with their understanding of medical ethics," to treat gender dysphoria—not by conscripting unwilling providers to place ideology over medicine. 85 Fed. Reg. at 37,187.

**3.** In previously declining to enter a permanent injunction, this Court didn't question whether Plaintiffs had shown irreparable harm or otherwise satisfied the injunctive-relief factors. Instead, the Court noted that it had granted "vacatur" of the offending portions of the 2016 Rule, which is the "standard remedy for APA violations." ECF No. 175 at 22-24 (cleaned up). Given that relief, the Court said, enjoining the 2016 Rule wouldn't "have a meaningful practical effect independent of … vacatur." *Id.* at 24-25 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)).

Respectfully, however, this analysis overlooked important aspects of the relief Plaintiffs sought. Plaintiffs did, indeed, seek vacatur of offending portions of the 2016 Rule. This relief corresponded to Plaintiffs' APA claim, under which the unlawful government action was promulgation of the 2016 Rule. But Plaintiffs also sought a plaintiff-specific injunction barring HHS from applying Section 1557 (via the 2016 Rule or otherwise) to require them to perform or insure gender transitions and abortions. ECF 135-1 at 4 ¶(f). That relief corresponded to Plaintiffs' RFRA claim, under which the unlawful government action wasn't promulgation of the 2016 Rule as such but rather the *substantial burden on their religious exercise* HHS had imposed—*i.e.*, putting them to the choice between performing and insuring gender transitions and abortions or incurring penalties under Section 1557. 42 U.S.C. § 2000bb-1(b); *see Veasey v. Abbott*, 888 F.3d 792, 800 (5th Cir. 2018) ("the nature of the violation determines the scope of the remedy" (cleaned up)).

Focusing on *that* portion of Plaintiffs' request, the meaningful practical difference between vacatur and injunction is clear. Vacatur would prevent HHS from applying *the vacated portions of the 2016 Rule* to require Plaintiffs to perform and insure gender transitions and abortions. But unlike an injunction, it does *not* prevent HHS from

imposing the same requirement by *other means*—such as by applying the 2020 Rule to require that result, applying the 2016 Rule as revived by other courts, or simply enforcing Section 1557 itself, as HHS has vowed to do. Indeed, as another district court has since pointed out, "nothing in *Franciscan Alliance* prevented HHS from re-promulgating the very provisions that the court vacated." *Whitman-Walker*, 485 F. Supp. 3d at 41.

That difference matters. A remedy that leaves the defendant free to reimpose an unlawful burden is not "complete relief" for the initial violation. *Califano v. Yamasaki*, 442 U.S. 682, 702 (1970); *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185-86 (2000) ("It can scarcely be doubted that, for a plaintiff who … faces the threat of future injury due to illegal conduct ongoing at the time of suit, a sanction that effectively abates that conduct *and prevents its recurrence* provides a form of redress." (emphasis added)). To the contrary, even when a defendant has ceased the unlawful conduct for now, a permanent injunction preventing its recurrence is "appropriate" so long as, "in light of present circumstances, there is a 'reasonable likelihood' of future transgressions." *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017); *accord Valentine*, 993 F.3d at 280; *see also New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 676 (S.D.N.Y. 2019) (*Monsanto* doesn't apply where the defendant "could theoretically reinstate his decision by simply re-issuing [it] or … changing [it] in some immaterial way"), *aff'd in part, rev'd in part on other grounds*, 139 S. Ct. 2551 (2019).

Here, the reasonable likelihood of HHS's reimposing the burden is clear. HHS doesn't need the 2016 Rule (or any other rule) to enforce Section 1557; it can interpret and enforce the statute itself. *See* 42 U.S.C. § 18116(c). Even before *Bostock*, other courts had interpreted Section 1557 to cover "gender identity" discrimination, and thus to penalize healthcare providers for refusing to offer gender-transition proce-

dures.[7] These decisions weren't "based on the" 2016 Rule but "grounded in the language of the statute." *Prescott*, 265 F. Supp. 3d at 1098. And in HHS's view, they are *correct* interpretations of the statute, with or without the 2016 Rule.

Similar decisions postdating this Court's decision only underscore the threat. Just last week, another court held that Section 1557 could be used to punish the refusal to pay for gender-transition procedures in a Catholic organization's health plan—there, a mastectomy, "chest reconstruction surgery," and puberty-blocking hormones for a 15-year-old biological girl. *C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, No. 20-6145, 2021 WL 1758896, at *1-2, 4-5 (W.D. Wash. May 4, 2021). Regardless of which HHS rule is currently in effect, the court emphasized: "A claim of discrimination in violation of Section 1557 does not depend on an HHS rule." *Id.* at *4.

More importantly, far from demonstrating just a "reasonable likelihood" that HHS might reimpose the same requirement on Plaintiffs, *Life Partners*, 854 F.3d at 784, recent events demonstrate that this requirement has *already been reimposed*. Specifically: (1) HHS has issued the 2020 Rule, which, under its own interpretation of *Bostock*, prohibits "gender identity" and "termination of pregnancy" discrimination just as much as the 2016 Rule did; (2) other courts, in litigation over the 2020 Rule, have purported to revive the RFRA-violating portions of the 2016 Rule itself; and (3) HHS has expressly stated that notwithstanding this Court's vacatur of the *2016 Rule's* "gender identity" portions, it is currently interpreting and enforcing *Section 1557* to prohibit "gender identity" discrimination, thus threatening Plaintiffs with the same substantial burden this Court already held to violate RFRA. These events mean that despite this Court's vacatur, "HHS's interpretation of Section 1557" continues to "provoke[] a credible threat of enforcement" against entities like Plaintiffs, justifying an

---

[7] *See Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 952-53 (D. Minn. 2018); *Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 947-48 (W.D. Wis. 2018); *Prescott v. Rady Children's Hosp.-San Diego*, 265 F. Supp. 3d 1090, 1098-1100 (S.D. Cal. 2017).

injunction providing lasting relief against the statute itself. *Sisters of Mercy*, 2021 WL 191009, at *12, 27.

**The 2020 Rule and Bostock.** First, although HHS issued the 2020 Rule in response to this Court's order, Plaintiffs "face potential consequences from the 2020 Rule" itself. *Id.* at *15. That is because the 2020 Rule (under HHS's interpretation of *Bostock*) prohibits "gender identity" discrimination just like the 2016 Rule did—thus reimposing on Plaintiffs the same RFRA-violating burden.

Specifically, although the 2020 Rule eliminated the 2016 Rule's definition of "sex," it didn't offer a replacement definition. Instead, the 2020 Rule cited the then-forthcoming *Bostock* decision, stating that the Court's ruling "on the meaning of 'on the basis of sex' under Title VII will likely have ramifications for the definition" under Title IX and Section 1557. 85 Fed. Reg. at 37,168. *Bostock*, meanwhile, held that "sex" discrimination under Title VII *does* include discrimination based on transgender status. 140 S. Ct. at 1737. Thus, under HHS's interpretation of *Bostock*, the 2020 Rule now prohibits "gender identity" discrimination—and so tracks the 2016 Rule in "requiring" employers and healthcare providers like Plaintiffs "to pay for or to perform" "sex reassignment procedures" in violation of "their deeply held religious beliefs." *Id.* at 1782 (Alito, J., dissenting).

And indeed, HHS's position in the cases challenging the 2020 Rule has confirmed this continuing threat. HHS defended the 2020 Rule on the ground that "in light of *Bostock*," covered entities may interpret the 2020 Rule to impose the same "sex"-discrimination requirements as the 2016 Rule. Resp. to Show Cause Order at 6-7, *Washington v. HHS*, No. 20-1105 (W.D. Wash. Aug. 28, 2020), ECF 71; *see Washington*, 482 F. Supp. 3d at 1114-15 (agreeing). HHS even maintains that efforts to apply Section 1557 to prohibit "gender identity" and "termination of pregnancy" discrimination are "*more likely* to bear fruit under the 2020 Rule than under the 2016 Rule." Mem. in Supp. of Mot. to Dismiss at 14, *BAGLY*, No. 20-11297 (D. Mass. Oct. 14, 2020),

ECF 22 ("*BAGLY* Memo.").

Nor does the 2020 Rule's alleged incorporation of the Title IX religious exemption change any of this. *Cf.* 85 Fed. Reg. at 37,205. For one thing, as this Court has explained, the Title IX religious exemption, as incorporated into Section 1557, exempts "religious organization[s]," ECF 62 at 35-38—yet the 2020 Rule's exemption appears to cover only such organizations' "educational operation[s]," leaving all of Plaintiffs' non-educational operations fully exposed. 85 Fed. Reg. at 37,207-08. In any event, even this limited exemption was enjoined nationwide in *Whitman-Walker*—and "a regulatory interpretation that another court has enjoined" can't foreclose injunctive relief. *Sisters of Mercy*, 2021 WL 191009, at *16.

**Litigation reviving the 2016 Rule**. 2020 Rule aside, Plaintiffs also face a continuing threat because multiple district courts have purported to undo this Court's vacatur and "restore" the very "provisions of the 2016 [R]ule" that required Plaintiffs to violate their beliefs. *Franciscan*, 843 F. App'x at 663. Immediately after *Bostock*, numerous states and interest groups challenged the 2020 Rule, and two courts agreed with the challengers—resuscitating the substance of the 2016 Rule and thus negating in practical terms the sole relief Plaintiffs initially obtained from this Court.

First, the *Walker* court held that HHS likely violated the APA by repealing the 2016 Rule's definition of "sex" in the 2020 Rule, reasoning that HHS's "premise" for doing so "was effectively rejected by" *Bostock*. 480 F. Supp. 3d at 429. The court thus enjoined "the repeal of the 2016 definition of discrimination on the basis of sex." *Id.* at 430. "As a result," the court said, "the definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping'" from the 2016 Rule "will remain in effect." *Id.*

*Whitman-Walker* likewise held that, given *Bostock*, the 2020 Rule's repeal of the 2016 Rule's definition of "sex" discrimination violated the APA. 485 F. Supp. 3d at 37-43. The court stated that because this Court "vacated the 'gender identity' portion of this definition," that portion couldn't be brought back. *Id.* at 25-26. But the court

18

reasoned that it *could* order revival of the 2016 Rule's definition of "sex" discrimination to include "sex stereotyping," *id.* at 26-27—which, it said, would have the same effect, since "[d]iscrimination based on transgender status—*i.e.*, gender identity—often cannot be meaningfully separated from discrimination based on "sex stereotyping." *Id.* at 38. It therefore did just that. *Id.* at 64.

*Walker* and *Whitman-Walker* demonstrate the continued threat to Plaintiffs' religious exercise. The premise of this Court's decision was that vacatur alone would suffice to "prevent Defendants from applying the Rule." ECF No. 175 at 25. But with multiple courts having now purported to "reinstate" the relevant portions of the 2016 Rule, "a clear path for the Plaintiffs to incur liability" remains. *Sisters of Mercy*, 2021 WL 191009, at *14.

**The new Administration's interpretation of Section 1557**. Finally, the continued threat to Plaintiffs' religious exercise has been rendered unmistakable by the new Administration's interpretations of *Bostock* and Section 1557. HHS has now stated explicitly that it intends to enforce Section 1557 itself to prohibit "gender identity" discrimination—thus in the plainest possible terms reimposing the substance of the vacated portions of the 2016 Rule under Section 1557 itself.

Beginning on the campaign trail, the new Administration vowed to "[g]uarantee the Affordable Care Act's nondiscrimination protections for the LGBTQ+ community" and "reverse" "religious exemptions" for "medical providers."[8] Thus, on January 20, President Biden issued an Executive Order stating that "[u]nder *Bostock*'s reasoning, laws that prohibit sex discrimination—including Title IX …, along with their respective implementing regulations—prohibit discrimination on the basis of gender identity …, so long as the laws do not contain sufficient indications to the contrary." Exec. Order No. 13,988. The Order specified it was the Administration's "policy" that this

---

[8] *The Biden Plan to Advance LGBTQ+ Equality in America and Around the World*, JoeBiden.com, https://joebiden.com/lgbtq-policy/.

prohibition extend to "access [to] healthcare." *Id*.

Two months later, DOJ weighed in on whether Title IX contained "sufficient indications to the contrary" under the Executive Order, such that it would fall outside of *Bostock*. DOJ Memo 1. The DOJ Memo concluded it does not. DOJ stated that it agreed with post-*Bostock* decisions from the Fourth and Eleventh Circuits holding that *Bostock* applies to Title IX, and disagreed with those cases' dissents and "the concerns raised in the dissents in *Bostock*." DOJ Memo 2-3.[9] According to DOJ, then, "the best reading of Title IX's prohibition on discrimination 'on the basis of sex' is that it includes discrimination on the basis of gender identity." *Id*. at 2. And DOJ "specifically instruct[ed] federal agencies," including HHS, "to apply [this] definition of sex discrimination to Title IX." *Franciscan*, 843 F. App'x at 663; *see* DOJ Memo 3.

Accordingly, just this week, HHS confirmed that, effective immediately, it "will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include … discrimination on the basis of gender identity." Notification of Interpretation, *supra* n.4, at 3. HHS highlighted the "enforcement mechanisms" for violations of this requirement and invited the public to complain about violations. *Id*. at 4.

These actions demonstrate that not only is there a reasonable likelihood that HHS will again reimpose the substantial burden this Court has already held unlawful—it has already done so. It was the 2016 Rule's interpretation of Section 1557 to prohibit "gender identity" discrimination that this Court rightly held to illegally impose a substantial burden on Plaintiffs' religious exercise under RFRA. ECF No. 62 at 38-40. Yet HHS has just announced that it *continues* to interpret Section 1557 to prohibit "gender identity" discrimination, and that it is *currently* enforcing the statute accordingly. So after five years of litigation and a successful RFRA claim, Plaintiffs are right

---

[9] *Cf. Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632-35 (4th Cir. 2020) (Niemeyer, J., dissenting); *Adams v. Sch. Bd. of St. Johns Cnty.*, 968 F.3d 1286, 1319-21 (11th Cir. 2020) (W. Pryor, J., dissenting).

back where they started: subject to HHS's interpretation of Section 1557, which tells them—today—they must choose between their religious beliefs and millions of dollars of federal funding critical for them to serve the needy. *Id.* at 8 n.6.

HHS's passing reference in the Notification of Interpretation (at 3) to "comply[ing] with" RFRA and "applicable court orders" doesn't eliminate the threat of enforcement. As the *Sisters of Mercy* court explained, "HHS is always bound to implement federal law consistent with the RFRA," whether it acknowledges it or not, so "[s]imply repeating what the statute already commands" changes nothing. *Sisters of Mercy*, 2021 WL 191009, at *16. And "comply[ing] with" this Court's order isn't synonymous with *not enforcing Section 1557* against Plaintiffs, since the only relief given in this Court's order was vacatur of the 2016 Rule. Indeed, during oral argument on appeal, HHS repeatedly rejected multiple invitations to disavow potential enforcement against Plaintiffs: "[Q.] [A]re they at risk under the 2016 Rule as we sit here today? [A.] Plaintiffs haven't met their burden to show any risk of enforcement. [Q.] Are you able to tell us that … you're not going to enforce? [A.] No your honor, it's not the government's burden to do so." Oral Arg. at 15:46-19:27 (No. 20-10093). What's going on here is obvious: HHS wants to maximize the *in terrorem* effects of Section 1557 for covered entities across the country by remaining free to enforce it against Plaintiffs and those like them, without being bound to the RFRA holding previously issued by this Court. This only underscores the need for an injunction.

## II. Plaintiffs' request for injunctive relief isn't moot and was preserved.

On appeal, HHS "contend[ed] that the case is moot and that [Plaintiffs'] never asked the district court for relief against the underlying statute." *Franciscan*, 843 F. App'x at 663. Both arguments are meritless; this case remains as live as the day it was filed, and Plaintiffs' plainly sought injunctive relief against the statute.

**1.** HHS's mootness argument turns on this Court's partial vacatur of the 2016 Rule and the promulgation of the 2020 Rule. According to HHS, Plaintiffs' claim is

now moot because this Court "vacated the challenged provisions" of the 2016 Rule and HHS "formally rescinded them and adopted" the 2020 Rule. Defendants-Appellees' Br. at 9, *Franciscan*, No. 20-10093 (Nov. 20, 2020).

But this argument made little sense at the time HHS made it, as *Walker* and *Whitman-Walker* had already enjoined the relevant portions of the 2020 Rule and purported to revive the relevant portions of the 2016 Rule. And it makes even less sense now, as HHS has explicitly "notifi[ed]" the public that it interprets Section 1557 to cover "gender identity" and will begin enforcing the substance of the 2016 Rule effective immediately. Notification of Interpretation, *supra* n.4.

Presumably, HHS intends to seize on the Notification of Interpretation's reference to RFRA to try to salvage its mootness argument. But HHS made exactly the same argument about *the 2016 Rule*'s reference to RFRA, and this Court rejected it, found the case justiciable, and adjudicated it on the merits. *Compare* ECF No. 50 at 14 ("The Rule contemplates addressing such religious objections.") *with* ECF No. 62 at 21-24 (finding case justiciable because "Defendants refuse to indicate whether any of the religious defenses cited by the Rule would allow *Private Plaintiffs* to maintain their categorical exclusions" (emphasis added)). So "the Damocles' sword" continues to dangle over Plaintiffs' heads. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 164 n.5 (2016).

Moreover, settled mootness principles demonstrate that this case isn't moot. "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. SEIU*, 567 U.S. 298, 307 (2012) (cleaned up). "[A]ll that's required" is that the court be "able to imagine a [still-available] form of relief." *Dierlam v. Trump*, 977 F.3d 471, 476-77 (5th Cir. 2020). And this is true even if "it's uncertain whether th[at] relief will have any practical impact on the plaintiff." *Id.* at 477.

Here, it's easy to imagine a form of relief for Plaintiffs' claims—namely, the injunction they now seek from this Court. Moreover, although it isn't necessary, this

relief certainly *would* have a "practical impact." *Id.* The sole relief Plaintiffs already obtained is vacatur of the challenged provisions of the 2016 Rule. But again, two other district courts have held that, notwithstanding this Court's vacatur, those provisions of the 2016 Rule "remain in effect." *Walker*, 480 F. Supp. 3d at 430; *see Whitman-Walker*, 485 F. Supp. 3d at 64. And HHS has unambiguously stated that it interprets Section 1557 to include precisely the same prohibition independent of any administrative rule. Notification of Interpretation, *supra* n.4. So Plaintiffs don't just retain a *residual* stake in this litigation; they have "the same stake … they had at the outset." *Campbell-Ewald*, 577 U.S. at 163; *accord Sisters of Mercy*, 2021 WL 191009, at *15 (rejecting the argument that "the *Franciscan Alliance* court's vacatur of the 2016 Rule and the ensuing promulgation of the 2020 Rule cured the Plaintiffs' injuries").

The same point is demonstrated by voluntary-cessation principles. Under the "voluntary cessation" doctrine, even a government defendant's "repeal of the objectionable language" in a challenged law doesn't moot the case if nothing "would … preclude it from reenacting precisely the same provision" post-litigation. *Opulent Life Church*, 697 F.3d at 285. And this doctrine applies "*a fortiori*" if, during the litigation, the defendant has *already* replaced the repealed law with a new one that "disadvantages the[ plaintiffs] in the same fundamental way." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

This is just such an *a fortiori* case. Here, even if the 2020 Rule had taken effect, that Rule—according to HHS itself—was even "*more likely*" to support claims of "gender identity" and "termination of pregnancy" discrimination than was the 2016 Rule. *BAGLY* Memo at 14. But in fact, HHS never even successfully repealed the relevant portions of the 2016 Rule in the first place, since the *Walker* and *Whitman-Walker* courts enjoined the 2020 Rule's "repeal of the 2016" Rule in part and reinstated portions of the 2016 Rule prohibiting "gender identity" discrimination. *Walker*, 480 F.

23

Supp. 3d at 430; *Whitman-Walker*, 485 F. Supp. 3d at 26, 38, 64. And now, the Administration has stated that it understands Section 1557 itself to include the same prohibition and intends to enforce the statute accordingly, regardless of what rule is in effect. So this case is *a fortiori* multiple times over. *Cf. Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020) ("partial voluntary cessation does not" suffice).

Finally, just as the contraceptive-mandate cases are instructive as to the propriety of Plaintiffs' injunction, they're also on all fours as to mootness. As in this case, after the contraceptive mandate was held to violate RFRA, the Trump Administration attempted to repeal and replace it with a more protective exemption. *DeOtte*, 393 F. Supp. 3d at 495-98. As here, however, the new regulations were themselves enjoined by two other district courts as violating the APA, thus reviving the mandate. *Id.* at 498. In response, religious objectors (like Plaintiffs here) pressed forward for permanent injunctions against the now-restored mandate. Yet their claims weren't dismissed as moot. To the contrary, at least 17 courts across the country—including this one in *DeOtte*—exercised jurisdiction and granted injunctive relief.[10] As the *Sisters of Mercy* court explained, "the similar posture in those cases reinforces the conclusion that" this case isn't moot. 2021 WL 191009, at *16; *see also id.* ("[N]ot one of the district courts that issued RFRA injunctions against the judicially restored contraceptive mandate discovered a lack of jurisdiction.").

**2.** Nor is HHS correct in in arguing that Plaintiffs "never asked" this Court "for relief against the underlying statute." *Franciscan*, 843 F. App'x at 663. Indeed, the argument is demonstrably false. In the proposed injunctions submitted alongside both of their summary-judgment motions, Plaintiffs sought an injunction barring HHS from "[c]onstruing Section 1557 to require [them] to provide medical services or

---

[10] Of the 20 injunctions collected at footnote 7, *supra*, only those in *Conestoga* (E.D. Pa.), *Korte* (S.D. Ill.), and *Zubik* (W.D. Pa.) predated the Trump Administration's attempted repeal of the mandate in 2017.

insurance coverage related to 'gender identity' or 'termination of pregnancy' in violation of their religious beliefs." ECF 135-1 at 4 ¶(f); *see* ECF 82-2 at 3 ¶(f). That is the same relief they sought on appeal and continue to seek here.

Even if (counterfactually) Plaintiffs hadn't sought precisely this relief throughout the case, that *still* wouldn't mean they were barred from seeking it now. Rule 54(c) provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). This rule "has been construed liberally," permitting a party to seek a form of relief for the first time even on appeal. *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975); *see* Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2664 (4th ed.) (it is "the court's duty to grant the relief to which the prevailing party is entitled, whether it has been demanded or not"). So any notion that Plaintiffs failed to preserve their injunction claim is not only contradicted by the record but foreclosed by the Federal Rules.

## CONCLUSION

The Court should enter a permanent injunction as set out in the proposed injunction attached to this brief.

Respectfully submitted this the 14th day of May, 2021.

*/s/ Luke W. Goodrich*

Luke W. Goodrich
DC Bar No. 977736
Eric C. Rassbach
Mark L. Rienzi
Joseph C. Davis
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
lgoodrich@becketlaw.org

*Counsel for Plaintiffs Christian Medical*
*& Dental Associations, Franciscan*
*Alliance, Inc., Specialty Physicians of*
*Illinois, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Luke W. Goodrich*
Luke W. Goodrich