**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC.; SPECIALITY PHYSICIANS OF ILLINOIS, LLC; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS, | |
|   - and - | |
| STATE OF TEXAS; STATE OF NEBRASKA; COMMONWEALTH OF KENTUCKY, by and through Governor Matthew G. Bevin; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF ARIZONA; and STATE OF MISSISSIPPI, by and through Governor Phil Bryant, | Civ. Action No. 7:16-cv-00108-O |
|      *Plaintiffs,* | |
|   v. | |
| XAVIER BECERRA, Secretary of the United States Department of Health and Human Services; and UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, | |
|      *Defendants,* | |
|   - and - | |
| AMERICAN CIVIL LIBERTIES UNION OF TEXAS; and RIVER CITY GENDER ALLIANCE, | |
|      *Intervenors-Defendants.* | |

**INTERVENORS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' SUPPLEMENTAL BRIEF ON REMAND**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    Plaintiffs' Challenge to the 2016 Rule ....................................................................... 2

    This Court's RFRA Holding ....................................................................................... 6

    Appeal and Subsequent Developments ...................................................................... 7

ARGUMENT ................................................................................................................... 9

I.    An Injunction Against the 2016 Rule Is Unnecessary Because the Court's Declaratory Judgment Protects Plaintiffs from Future Enforcement of the 2016 Rule. .......................... 9

II.   The Court Lacks Authority to Enjoin Hypothetical Enforcement of Section 1557 Beyond the 2016 Rule. ............................................................................................... 12

    A.   Plaintiffs Challenged Only the 2016 Rule—Not Section 1557 Itself. ........................ 12

    B.   The Court Lacks Authority Under Federal Rule of Civil Procedure 65 to Issue an Injunction Beyond the Specific Violation That Was Pled and Proven. ...................... 16

    C.   Defendants' Sovereign Immunity Bars the Court from Enjoining Hypothetical Future Enforcement Before Final Agency Action Occurs. ........................................ 18

    D.   The Court Lacks Article III Jurisdiction to Enjoin Hypothetical Future Agency Action. ...................................................................................................................... 20

CONCLUSION .............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Alabama-Coushatta Tribe of Tex. v. United States*,
 757 F.3d 484 (5th Cir. 2014) ........................................................................... 18

*Amoco Prod. Co. v. Vill. of Gambell*,
 480 U.S. 531 (1987) ......................................................................................... 10

*Associated General Contractors of America v. City of Columbus*,
 172 F.3d 411 (6th Cir. 1999) ...................................................................... 20, 21

*Bostock v. Clayton County*,
 140 S. Ct. 1731 (2020) ....................................................................................... 8

*Brackeen v. Bernhardt*,
 937 F.3d 406 (5th Cir. 2019) ............................................................................ 14

*Brackeen v. Haaland*,
 994 F.3d 249 (5th Cir. 2021) .............................................................. 11, 14, 15

*Brackeen v. Zinke*,
 338 F. Supp. 3d 514 (N.D. Tex. 2018) ............................................................. 14

*Califano v. Yamasaki*,
 442 U.S. 682 (1979) ......................................................................................... 16

*City of Richmond v. J.A. Croson Co.*,
 488 U.S. 469 (1989) ......................................................................................... 21

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006) ..................................................................................... 9, 10

*FDIC v. Meyer*,
 510 U.S. 471 (1994) ......................................................................................... 18

*Flast v. Cohen*,
 392 U.S. 83 (1968) ........................................................................................... 22

*Franciscan Alliance v. Becerra*,
 843 Fed. Appx. 662 (5th Cir. 2021) ............................................................... 8, 9

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ................................................................................... 10, 12

*John Doe #1 v. Veneman*,
    380 F.3d 807 (5th Cir. 2004)...................................................................... 16, 19, 20

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ........................................................................................ 18

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ........................................................................... 10, 11, 19

*ODonnell v. Harris Cty.*,
    892 F.3d 147 (5th Cir. 2018)........................................................................ 16

*Opulent Life Church v. City of Holly Springs*,
    697 F.3d 279 (5th Cir. 2012)........................................................................ 10

*Peterson v. Bell Helicopter Textron, Inc.*,
    806 F.3d 335 (5th Cir. 2015)........................................................................ 17

*Portillo v. Cunningham*,
    872 F.3d 728 (5th Cir. 2017)........................................................................ 17

*Religious Sisters of Mercy v. Azar*,
    Nos. 16-cv-00386 & 16-cv-00432, 2021 WL 191009 (D.N.D. Jan. 19, 2021)............. 15, 21, 22

*Rosenbrahn v. Daugaard*
    799 F.3d 918 (8th Cir. 2015)........................................................................ 12

*Sapp v. Renfroe*,
    511 F.2d 172 (5th Cir. 1975)........................................................................ 17

*Walker v. Azar*,
    480 F. Supp. 3d 417 (E.D.N.Y. 2020)........................................................... 8

*Weinberger v. Romero-Barcelo*,
    456 U.S. 305 (1982) ...................................................................................... 10

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*,
    485 F. Supp. 3d 1 (D.D.C. 2020) ................................................................. 8

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .......................................................................................... 10

**Statutes**

20 U.S.C. § 1681 ......................................................................................................... 2

42 U.S.C. § 18116 ........................................................................................................ 2

42 U.S.C. § 2000bb-1 ................................................................................................ 11

5 U.S.C. § 702 ............................................................................................................ 18

5 U.S.C. § 704 ............................................................................................................ 18

**Regulations**

45 C.F.R. § 92.4 .......................................................................................................... 3

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of
   Authority, 85 Fed. Reg. 37 (June 19, 2020) ............................................................ 7

Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016)... 2, 3

**Rules**

Fed. R. Civ. P. 54 ...................................................................................................... 17

Fed. R. Civ. P. 65 ...................................................................................................... 16

**Other Authorities**

Dep't of Health and Hum. Servs., *Notification of Interpretation and Enforcement of Section 1557
   of the Affordable Care Act and Title IX of the Education Amendments of 1972* (May 10, 2021)
   ................................................................................................................................ 9

# INTRODUCTION

Plaintiffs filed this lawsuit five years ago challenging a 2016 Rule from the Department of Health & Human Services ("HHS") implementing Section 1557 of the Affordable Care Act. Plaintiffs argued that the 2016 Rule violated their rights under the Religious Freedom Restoration Act ("RFRA") by requiring Plaintiffs to provide and pay for abortions and medical procedures related to gender transition. This Court agreed that the 2016 Rule violated RFRA because, even assuming that the 2016 Rule advanced a compelling governmental interest, Defendants failed to show that the 2016 Rule was the least restrictive means of advancing that interest. The Court granted Plaintiffs' request for declaratory relief but declined to enter a permanent injunction.

Plaintiffs now assert that they are also entitled to a permanent injunction against the 2016 Rule ***and also*** an injunction against any future hypothetical agency action interpreting Section 1557 in a manner that would require Plaintiffs to perform or pay for abortions or gender-transition procedures. Both requests should be denied. As discussed below, an additional injunction against the 2016 Rule is unnecessary in light of this Court's declaratory judgment, and an injunction against hypothetical future agency action lies beyond the power of this Court to provide.

*First*, an injunction against the 2016 Rule is unnecessary because Plaintiffs have already received a declaratory judgment prohibiting HHS from enforcing the 2016 Rule against Plaintiffs. Although subsequent legal developments may create a credible threat that HHS would enforce the 2016 Rule against *other* covered entities, those developments do not undermine HHS's commitment not to enforce the 2016 Rule against Plaintiffs in this case, in defiance of this Court's binding declaratory judgment. Intervenors agree with Plaintiffs that HHS's compliance with this Court's declaratory judgment does not render the case moot, but HHS's

compliance militates against further injunctive relief.

*Second*, this Court lacks the power to grant Plaintiffs' extraordinary request for an injunction against any future hypothetical agency action interpreting Section 1557. Throughout this litigation—in their complaint, their motions for summary judgment, and their supporting memoranda—Plaintiffs sought declaratory relief and an injunction prohibiting Defendants from enforcing the 2016 Rule. This Court's decision granting summary judgment was similarly limited to determining that Defendants had failed to show that the requirements of the 2016 Rule were the least restrictive means of advancing a compelling governmental interest. That decision does not entitle Plaintiffs to a prophylactic injunction against hypothetical future agency action that seeks to enforce Section 1557 in a less restrictive way. Federal Rule of Civil Procedure 65 limits the Court's authority to issue injunctions beyond the precise legal violation that has been established; the government's waiver of sovereign immunity is limited to final agency action; and courts lack the power under Article III to issue advisory opinions regarding the legality of regulations that have not yet been enacted.

## BACKGROUND

### Plaintiffs' Challenge to the 2016 Rule

Section 1557 of the ACA (codified at 42 U.S.C. § 18116) prohibits a health care entity receiving federal funds from discriminating on the grounds protected by Title IX of the Education Amendments of 1972—the law prohibiting sex discrimination in education. 42 U.S.C. § 18116(a) (citing 20 U.S.C. § 1681 et seq.). On May 18, 2016, the Department of Health and Human Services ("HHS") published the 2016 Rule implementing Section 1557's prohibition on sex discrimination. *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) ("2016 Rule"). The 2016 Rule stated in relevant part that Section 1557's prohibition against sex discrimination includes "discrimination on the basis of pregnancy, false

pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical conditions, sex stereotyping, and gender identity." *Id*. at 31,467 (formerly codified at 45 C.F.R. § 92.4).

On August 23, 2016, Plaintiffs brought this lawsuit against Defendants, claiming that the 2016 Rule's definition of sex discrimination was contrary to law for including discrimination on the basis of gender identity and termination of pregnancy. Compl., Aug. 23, 2016, ECF No. 1 at 2–4. Plaintiffs' operative complaint opens by explaining: "This lawsuit challenges a new Regulation ('Regulation' or 'Rule') issued by the Department of Health and Human Services ('HHS') that seeks to override the medical judgment of healthcare professionals across the country." Am. Compl., Oct. 17, 2016, ECF No. 21 at 2. The Amended Complaint describes the 2016 Rule as the basis for the requirement that healthcare providers perform or refer for transition-related care, *id*. ¶¶ 28–32, that covered employers must offer insurance coverage for transition-related care, *id*. ¶¶ 35–39, and that covered entities may need to provide abortions or health insurance coverage for abortions, *id*. ¶¶ 65, 83–84, 103, 107, among other alleged harms from the Rule.

Plaintiffs' legal claims were directed exclusively at the 2016 regulation—not at the underlying statute. Plaintiffs' RFRA claim alleged that "Plaintiffs' sincerely held religious beliefs prohibit them from deliberately offering services and performing (or referring for) operations or other procedures required by *the Regulation*," and that the "*Regulation* violates the Plaintiffs [sic] rights secured to them by the Religious Freedom Restoration Act." *Id*. ¶¶ 282, 295, 311 (emphasis added). Indeed, all of the alleged harms that form the basis of Plaintiffs'

RFRA claims are allegedly caused by "the Regulation." *Id.* ¶¶ 286–91, 300–07.[1]

The relief that Plaintiffs requested as to their RFRA claims was for the Court to "[d]eclare that the challenged Regulation is invalid under the Religious Freedom Restoration Act"; "[i]ssue a permanent injunction enjoining Defendants from enforcing the challenged Regulations against Plaintiffs"; award Plaintiffs actual and nominal damages, as well as costs and fees; and "[a]ward such other and further relief as it deems equitable and just." *Id.* at 84–85.

On October 21, 2016, Plaintiffs moved for partial summary judgment or, in the alternative, a preliminary injunction against the 2016 Rule. Priv. Pls.' Mot., ECF No. 24 at 1–2. Plaintiffs argued that the 2016 Rule would "coerc[e] Plaintiffs to provide harmful medical procedures or objectionable insurance coverage in direct violation of their faith." Priv. Pls.' Mem., Oct. 21, 2016, ECF No. 25 at 49. As to why the 2016 Rule violated RFRA, Plaintiffs argued that the 2016 Rule's prohibition on discrimination on the basis of "termination of pregnancy" and "gender identity" pressured Plaintiffs to provide and pay for abortions and surgery to treat gender dysphoria, in violation of Plaintiffs' religious beliefs and thus RFRA. *Id.* at 23–30.

On December 31, 2016, this Court issued a nationwide preliminary injunction prohibiting enforcement of the challenged provisions of the 2016 Rule, but did not rule on the requests for partial summary judgment. Order, ECF No. 62 at 45–46.

On February 4, 2019, following an almost two-year stay for the Trump Administration to undertake new rulemaking, Plaintiffs renewed their motion for summary judgment. Priv. Pls.'

---

[1] On March 14, 2017, Plaintiffs dismissed without prejudice counts III–X and XIII–XX, after which only APA and RFRA claims remained. Pls.' Voluntary Dismissal, ECF No. 81 at 2. Although not discussed in detail here, those dismissed claims *also* challenged only the 2016 Rule. Am. Compl., ECF No. 21 ¶¶ 183–280, 312–383.

Renewed Mot., ECF No. 135. Plaintiffs once again told the Court that "[t]his lawsuit challenges a 2016 Rule issued by the Department of Health and Human Services ('HHS')." *Id*. at 2. Plaintiffs then told the Court that they "specifically request the following relief against the Defendants, their officers, agents, employees, and attorneys":

> 1. A declaratory judgment that the Rule is invalid under the Administrative Procedure Act;
> 2. A declaratory judgment that the Rule violates the Religious Freedom Restoration Act;
> 3. A permanent injunction prohibiting Defendants from enforcing the Rule; and
> 4. An order vacating and remanding the unlawful portions of the Rule.

*Id*. Plaintiffs' brief in support of the motion was similarly focused exclusively on the 2016 Rule. *See* Priv. Pls.' Br., Feb. 4, 2019, ECF No. 136. Plaintiffs' "Statement of Facts" repeatedly stated that it is the 2016 Rule that was "at issue in this case," *id.* at 2–9, and described the "Effect of the Rule" on Plaintiffs, *id.* at 11–13. Plaintiffs argued that the 2016 Rule violated RFRA because "Plaintiffs sincerely believe that providing the medical procedures or insurance coverage demanded by the HHS regulations lies on the forbidden side of the line" of their sincere religious beliefs, *id*. at 36 (cleaned up), "[t]he Rule substantially burdens Plaintiffs' religious exercise," *id*., and "[t]he Rule cannot satisfy strict scrutiny," *id*. at 37. As relief, Plaintiffs' brief asked the Court to "vacate the unlawful portions of the Rule, and convert the Court's preliminary injunction"—which only enjoined enforcement of the two challenged provisions of the 2016 Rule—"into a final injunction." *Id*. at 50.

But despite all this, Plaintiffs submitted a *proposed order* with sweeping language that bore little resemblance to the relief "specifically request[ed]" in Plaintiffs' actual motion, or in their supporting memorandum of law. Instead of simply enjoining HHS from "enforcing the Rule," the proposed order also included an injunction against HHS from ever "[c]onstruing Section 1557 to require Private Plaintiffs to provide medical services or insurance coverage

related to 'gender identity' or 'termination of pregnancy' in violation of their religious beliefs." Priv. Pls.' Proposed Order, Feb. 4, 2019, ECF No. 135-1 at 4. No other document filed in this case alleged or argued that Plaintiffs were challenging anything but the 2016 Rule or that Plaintiffs were entitled to an injunction extending beyond the 2016 Rule that they had challenged.

**This Court's RFRA Holding**

On October 15, 2019, the Court granted Plaintiffs' motion for summary judgment in part, holding that the 2016 Rule violates the APA and RFRA. Order, ECF No. 175 at 17, 25. In addressing Plaintiffs' RFRA claim, the Court adopted its prior reasoning from its decision granting a preliminary injunction. *Id*. at 21. The preliminary injunction ruling had found that the 2016 Rule imposes a substantial burden on Plaintiffs. Order, ECF No. 62 at 39–40. And although the Court assumed that "the Rule pursues a compelling interest," the Court concluded that the 2016 Rule was not the least-restrictive-means to advance Defendants' interests. *Id*. at 41–42. Although Intervenors had proffered other compelling governmental interests, the Court did not consider those arguments, reasoning that RFRA does not allow third-parties to satisfy the strict-scrutiny test on the government's behalf. *Id*. at 41 n.34.

The Court adhered to that reasoning on Plaintiffs' motion for summary judgment, noting that the government "twice failed to demonstrate that applying the [2016] Rule to Private Plaintiffs . . . would achieve a compelling governmental interest through the least restrictive means," and declining to consider Intervenors' arguments that the 2016 Rule satisfied RFRA. Order, ECF No. 175 at 20. The Court nonetheless considered whether the preamble to the Rule's "broadly stated purpose, implemented through universal application of the Rule, could arguably satisfy a categorical application of strict scrutiny," but concluded that it could not "satisfy RFRA's 'more focused' inquiry." *Id*. Accordingly, this Court held "that the [2016] Rule, which

expressly prohibits religious exemptions, substantially burdens Private Plaintiffs' religious exercise in violation of RFRA." *Id*. at 21.

The Court then granted three out of four of Plaintiffs' requested forms of relief. *See* Final J., Oct. 15, 2019, ECF No. 176 at 1. The Court's final judgment declared that the Court:

> **HOLDS** that Nondiscrimination in Health Programs & Activities ("the Rule"), 81 Fed. Reg. 31376 (May 18, 2016), codified at 45 C.F.R. § 92, violates the APA and RFRA and enters this Final Judgment on those claims. Accordingly, the Court **VACATES** and **REMANDS** the Rule for further consideration.

*Id*. The Court thus issued the two declaratory judgements that Plaintiffs requested, and the Court vacated the challenged portions of the 2016 Rule as Plaintiffs requested, but the Court did not grant the requested "permanent injunction prohibiting Defendants from enforcing the Rule." Priv. Pls.' Renewed Mot., ECF No. 135 at 2.

The Court explained that "neither Plaintiffs nor similarly situated non-parties need injunctive relief from the vacated Rule," as the government had been complying with the preliminary injunction, and there was no indication that it would attempt to apply the Rule, in defiance of the Court's order. Order, ECF No. 175 at 24–25. The Court also noted that "should Defendants attempt to apply the vacated Rule—in violation of the APA, RFRA, and this Court's Order—Plaintiffs may return to the Court for redress." *Id*. at 25.

**Appeal and Subsequent Developments**

Plaintiffs appealed the denial of a permanent injunction on January 24, 2020. On June 19, 2020, following Plaintiffs' appeal, but before Plaintiffs had filed their opening brief, HHS issued a new rule to implement Section 1557. Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020) ("2020 Rule"). The 2020 Rule eliminated the language Plaintiffs had challenged as it struck the definition of discrimination "on the basis of sex" in its entirety, among other changes. *Id*. at 37,

7

161–62.

Shortly after the new rule was finalized, the Supreme Court held in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), that discrimination on the basis of transgender status *is* a form of discrimination based on sex. *Id.* at 1753. Several lawsuits were filed challenging HHS's new 2020 Rule as contrary to law in light of *Bostock. See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1 (D.D.C. 2020), *appeal docketed*, No. 20-5331 (D.C. Cir. Nov. 9, 2020); *Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020), *sub nom. Walker v. Cochran*, *appeal docketed*, No. 20-3580 (2d Cir. Oct. 16, 2020). Contrary to Plaintiffs' assertions, Priv. Pls.' Supp. Br., May 14, 2021, ECF No. 200 at 19, the courts in *Walker* and *Whitman-Walker* were both careful not to reinstate the portions of the 2016 Rule that Plaintiffs challenged in this suit. *See Whitman-Walker*, 485 F. Supp. 3d at 25–27; *Walker*, 480 F. Supp. 3d at 427 (acknowledging that enjoining or vacating the 2020 Rule "cannot revive the 'gender identity' portion of the 2016 definition vacated by the district court in *Franciscan Alliance*," because they "ha[ve] no power to revive a rule vacated by another district court").[2]

In their opening brief on appeal, filed on September 21, 2020, Plaintiffs argued for the first time that they are entitled to an injunction against the 2016 Rule and also a "permanent injunction enjoining HHS from construing Section 1557 to require Appellants to perform or provide insurance coverage for gender-transition or abortion procedures contrary to their beliefs." Br. of Appellants at 25, *Franciscan Alliance v. Becerra*, 843 Fed. Appx. 662 (5th Cir. 2021) (per curiam) (No. 20-10093). Following briefing by the parties, the Court of Appeals for the Fifth Circuit remanded the case to this Court for further proceedings without reaching the

---

[2] Plaintiffs assert that *Bostock* reinstates the 2016 Rule's prohibition on discrimination based on termination of pregnancy. Priv. Pls.' Supp. Br., ECF 200 at 16. *Bostock* did no such thing, and Plaintiffs offer no explanation to support their contention.

merits of the appeal. *Franciscan Alliance*, 843 Fed. Appx. at 663. The Fifth Circuit identified

divergence among the parties as to what relief this Court granted, and whether Plaintiffs ever

asked this Court for relief against the underlying statute. *Id*. On remand, the Fifth Circuit

identified two issues to be addressed by this Court: "[w]hether the providers are pressing the

same claim before us as they did in the district court," and "the jurisdictional consequences of

the evolving state of the law." *Id*.

In the interim, the new Administration has offered guidance on interpreting *Bostock*. On

May 10, 2021, HHS issued a notice that it will interpret Section 1557 and Title IX to prohibit

discrimination on the basis of sexual orientation and gender identity, consistent with *Bostock*.

Dep't of Health and Hum. Servs., *Notification of Interpretation and Enforcement of Section 1557*

*of the Affordable Care Act and Title IX of the Education Amendments of 1972* (May 10, 2021),

https://www.hhs.gov/sites/default/files/ocr-bostock-notification.pdf. The HHS notice did not

indicate how it intended to apply Section 1557 to religiously affiliated entities or to cases in

which there is a religious objection. HHS made clear that in enforcing Section 1557, it "will

comply with the Religious Freedom Restoration Act" and "with all applicable court orders that

have been issued in litigation involving the Section 1557 regulations," including the Court's

orders in this case. *Id*. at 3–4.

## ARGUMENT

### I.   An Injunction Against the 2016 Rule Is Unnecessary Because the Court's Declaratory Judgment Protects Plaintiffs from Future Enforcement of the 2016 Rule.

"According to well-established principles of equity, a plaintiff seeking a permanent

injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) "A plaintiff must demonstrate: (1) that it has

suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id*. The mere "possibility" of injury is not enough; Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). "If a less drastic remedy . . . [i]s sufficient to redress [plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). In particular, the Supreme Court has stated that when a Defendant has ceased to engage in the challenged conduct, a declaratory judgment may be more appropriate and less drastic remedy than injunctive relief. *See Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 192–93 (2000).

Plaintiffs ask the Court to effectively displace this traditional "four-factor test" with a categorical presumption that a plaintiff is entitled to an injunction "'as a matter of law'"— obviating the need to apply the four-factor test. Priv. Pls.' Supp. Br., ECF No. 200 at 10 (quoting *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 294–96 (5th Cir. 2012)). That argument conflicts with decades of consistent Supreme Court precedent rejecting attempts to replace the traditional "four-factor test" for injunctive relief with categorical presumptions that place a "thumb on the scales" for particular types of claims. *See, e.g.*, *Monsanto*, 561 U.S. at 157; *eBay*, 547 U.S. at 391; *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 544 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982).

Nothing in the text of RFRA indicates that Congress intended to depart from these longstanding principles of equity. *See eBay*, 547 U.S. at 391–92. The text of RFRA simply states

10

that a RFRA claimant may "obtain appropriate relief against a government." 42 U.S.C.

§ 2000bb-1(c). Without any clear textual command to the contrary, there is no basis for courts to

infer that Congress intended to displace the same four-factor test that applies to all other claims.

To the extent that Plaintiffs argue that there is a presumption in favor of granting injunctions for

RFRA violations, "[n]o such thumb on the scales is warranted." *Monsanto*, 561 U.S. at 157.

Plaintiffs must show that the threat of future injury from the 2016 Rule is *likely*, not

merely possible. Plaintiffs assert that they still face a credible threat of harm because other courts

have reinstated portions of the 2016 Rule and HHS has stated that it will interpret Section 1557

to prohibit discrimination based on transgender status. But whether or not *other* covered entities

face a credible threat of enforcement, there is no threat of enforcement in this case because this

Court has already granted Plaintiffs' request for a declaratory judgment and held that applying

the 2016 Rule to these Plaintiffs would violate RFRA. The declaratory judgment fully protects

Plaintiffs from any attempt to enforce the 2016 Rule regarding paying or providing for abortion

and transition-related care. *Cf. Brackeen v. Haaland*, 994 F.3d 249, 373 n.19 (5th Cir. 2021) (en

banc) (opinion of Duncan, J.) ("[A] declaratory judgment against the [agency's] Secretary would

bind her when it comes to enforcing the department's challenged regulations." (cleaned up)).

Defendants have given no indication that they would seek to apply the 2016 Rule to Plaintiffs in

defiance of this Court's order. Indeed, HHS has explicitly stated that it will continue to comply

"with all applicable court orders that have been issued in litigation involving the Section 1557

regulations," including the Court's orders in this case. *Notification of Interpretation* at 3–4.

Intervenors agree with Plaintiffs that the government's compliance with this Court's

declaratory judgment does not technically *moot* Plaintiffs' request for injunctive relief. But it

does mean that Plaintiffs cannot satisfy the requirement to show a likelihood of irreparable harm.

*Cf. Rosenbrahn v. Daugaard*, 799 F.3d 918, 922 (8th Cir. 2015) (per curiam) ("South Dakota's assurances of compliance with *Obergefell* do not moot the case. These assurances may, however, impact the necessity of continued injunctive relief.") (citation omitted); *accord Friends of the Earth*, 528 U.S. at 192–93 (explaining case was not moot but the proper remedy was not an injunction).

## II.   The Court Lacks Authority to Enjoin Hypothetical Enforcement of Section 1557 Beyond the 2016 Rule.

Plaintiffs' request for a prophylactic injunction against other future interpretations of Section 1557 must be denied. In Plaintiffs' pleadings, requests for injunctive relief, and briefing in support of summary judgment, they have challenged only the 2016 Rule, not the underlying statute itself. Federal Rule of Civil Procedure 65 limits the Court's authority to issue injunctions beyond the precise legal violation that has been established; the government's waiver of sovereign immunity is limited to final agency action; and under Article III courts lack the power to issue advisory opinions regarding the legality of regulations that have not yet been enacted.

### A.  Plaintiffs Challenged Only the 2016 Rule—Not Section 1557 Itself.

From the initiation of this lawsuit to their request for summary judgment, Plaintiffs have challenged only the 2016 Rule's interpretation of Section 1557, but not the underlying statute itself. Plaintiffs' Amended Complaint is explicit that the lawsuit challenges the 2016 Rule alone. Am. Compl., ECF No. 21 at 2. The requirements Plaintiffs object to, and the harm they allege they will suffer, all stem from the 2016 Rule. *Id*. ¶¶ 28–32, 35–39, 65, 83–84, 103, 108. And Plaintiffs' claims are clear that it is the 2016 Rule that violates the APA and RFRA—not Section 1557 itself. *See id*. ¶¶ 116–182, 281–311. Indeed, Plaintiffs' APA claim was predicated on the theory that the 2016 Rule was contrary to the statutory text of Section 1557. *Id*. ¶¶ 121–22. And Plaintiffs' RFRA claim was based on their religious objections to "offering services and

performing (or referring for) operations or other procedures *required by the Regulation*." *Id.* ¶ 282 (emphasis added). Plaintiffs further alleged that their religious beliefs prohibit them from offering "gender transition procedures, sterilization procedures, or abortion-related procedures," but that "[u]nder the Regulation"— not Section 1557—excluding insurance coverage for such procedures is "facially invalid." *Id.* ¶¶ 297–302. Finally, the relief that Plaintiffs requested as to their RFRA claims specifically was also against the 2016 Rule, not the underlying statute. *Id.* at 84–85.

In seeking a preliminary injunction and summary judgment, Plaintiffs continued to challenge only the 2016 Rule. Plaintiffs argued that it was the 2016 Rule—not Section 1557 itself—that would "coerc[e] Plaintiffs to provide harmful medical procedures or objectionable insurance coverage in direct violation of their faith." Priv. Pls.' Mem., ECF No. 25 at 49. Plaintiffs did not file a proposed order to accompany their motion, but the motion itself states that "Plaintiffs are entitled to a preliminary injunction *against the Rule*." Priv. Pls.' Mot., ECF No. 24 at 2 (emphasis added). As a result, this Court justified its preliminary injunction on the language and requirements of the 2016 Rule, and enjoined provisions of the 2016 Rule. Order, ECF No. 62.

Plaintiffs' approach was no different when they moved for summary judgment in 2019, again arguing that the 2016 Rule violates RFRA, among other claims. In their renewed motion for partial summary judgment, Plaintiffs stated that they sought the following relief: "1. A declaratory judgment that the Rule is invalid under the Administrative Procedure Act; 2. A declaratory judgment that the Rule violates the Religious Freedom Restoration Act; 3. A permanent injunction prohibiting Defendants from enforcing the Rule; and 4. An order vacating and remanding the unlawful portions of the Rule." Priv. Pls.' Renewed Mot., ECF No. 135 at 2.

Additionally, in their briefing in support of the motion, Plaintiffs' "Statement of Facts" repeatedly states that it is the 2016 Rule that is "at issue in this case," Priv. Pls.' Br., ECF 136 at 2–9, and describes the "Effect of the Rule" on Plaintiffs, *id.* at 11–13. Plaintiffs go on to argue that the 2016 Rule violates RFRA, because "Plaintiffs sincerely believe that providing the medical procedures or insurance coverage demanded by the HHS regulations lies on the forbidden side of the line" of their sincere religious beliefs, *id.* at 36 (cleaned up), "[t]he Rule substantially burdens Plaintiffs' religious exercise," *id.*, and that "[t]he Rule cannot satisfy strict scrutiny," *id.* at 37. As relief, Plaintiffs asked the Court to "vacate the unlawful portions of the Rule, and convert the Court's preliminary injunction"—which only enjoined enforcement of the two challenged provisions of the 2016 Rule—"into a final injunction." *Id.* at 50.

The lawsuit in *Brackeen v. Haaland* is instructive as to how plaintiffs structure a case when they seek to challenge both agency regulations and the underlying statute—there, the Indian Child Welfare Act ("ICWA"). 994 F.3d at 267. In their complaint, plaintiffs explicitly challenged both "the validity of a final rule entitled *Indian Child Welfare Act Proceedings*" as well as "certain provisions of ICWA that the Final Rule purports to interpret and implement"; they laid out what aspects of their claims run against the rule and the statute; and they sought relief against both the ICWA and the regulations. Second Am. Compl. at 4, 57–84, *Brackeen v. Zinke*, 338 F. Supp. 3d 514, 520, 530 (N.D. Tex. 2018), *rev'd sub nom. Brackeen v. Bernhardt*, 937 F.3d 406 (5th Cir. 2019), *aff'd in part, rev'd in part per curiam on reh'g en banc sub nom., Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021), ECF No. 35. When the matter was before this Court on plaintiffs' motions for summary judgment, the Court laid out which claims ran against either the rule or the underlying statute (or both), and analyzed the claims accordingly. *Brackeen*, 338 F. Supp. 3d at 520, 530. Likewise, on appeal, the Fifth Circuit listed out the

claims separately, conducted a separate analysis as to whether Plaintiffs had standing to challenge the statute or the rule, and adjudicated the claims against the statute and rule separately. *Brackeen*, 994 F.3d at 270, 290, 352–3.

The comparison between the plaintiffs' allegations and arguments in *Brackeen* and Plaintiffs' allegations and arguments here is stark. Plaintiffs' operative complaint, multiple requests for injunctive relief, and multiple requests for summary judgment all sought relief against the 2016 Rule, not Section 1557. Plaintiffs' allegations about the harm they will suffer all run against the 2016 Rule, so this Court never determined whether Plaintiffs have standing to challenge the underlying statute. Plaintiffs even acknowledge that their challenge was aimed at the 2016 Rule's interpretation of Section 1557. Priv. Pls.' Supp. Br., ECF No. 200 at 3.

Though Plaintiffs now argue that this Court did not address their request for a plaintiff-specific injunction against enforcement of the statute, the only citation they offer for the premise that they even sought such an injunction is to a single line from their proposed summary judgment order. *Id.* at 14 (citing ECF 135-1 at 4 ¶(f)). But the inclusion of a single line in a proposed order does not convert Plaintiffs' suit against a regulation into a suit against its underlying statute. RFRA may not be a game of "whack-a-mole," *id.* at 1, but it is also not a game of "bait and switch."[3]

---

[3] Plaintiffs contend that the court in *Religious Sisters of Mercy v. Azar*, Nos. 16-cv-386 & 16-cv-432, 2021 WL 191009 (D.N.D. Jan. 19, 2021), granted plaintiffs there "exactly the relief Plaintiffs are seeking" now. Priv. Pls.' Supp. Br., ECF No. 200 at 13. To the extent the court granted such relief, it exceeded its authority, as described below. *See infra* Part II.B–D. But even so, plaintiffs in that case at least went to the trouble of amending their complaint to explicitly seek that relief—whereas that was not the relief Plaintiffs here sought at filing, or in briefing their summary judgment motion. Am. Compl. ¶ 4, *Religious Sisters of Mercy*, Nos. 16-cv-00386 & 16-cv-00432, 2021 WL 191009, ECF No. 95 ("Plaintiffs . . . seek a ruling that HHS's interpretation of Section 1557 is unlawful, as well as an injunction prohibiting HHS from interpreting and enforcing Section 1557 in a way that would force them to perform or pay for

### B. The Court Lacks Authority Under Federal Rule of Civil Procedure 65 to Issue an Injunction Beyond the Specific Violation That Was Pled and Proven.

Under Federal Rule of Civil Procedure 65, federal courts do not have authority to issue broad prophylactic injunctions that extend beyond a plaintiff's alleged injuries. *See* Fed. R. Civ. P. 65(d). "When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'" *ODonnell v. Harris Cty.*, 892 F.3d 147, 163 (5th Cir. 2018) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). A district court "abuses its discretion if it issues an injunction that is not narrowly tailored to remedy the specific action which gives rise to the order as determined by the substantive law at issue." *Id*. at 155 (cleaned up).

As discussed above, this Court's analysis of Plaintiffs' RFRA claims was limited to the 2016 Rule. And in granting summary judgment on Plaintiffs' RFRA claim, this Court found that Plaintiffs had standing to challenge the 2016 Rule, relied on the Defendants' failure to defend the 2016 Rule, and held that the Rule's express prohibition on religious exemptions violated RFRA. Order, ECF No. 175 at 17 n.5, 20–21. This Court's findings were limited to the flaws it identified in the 2016 Rule challenged by Plaintiffs. Any injunction extending beyond the 2016 Rule would "necessarily [be] overbroad because it [would] exceed[] the extent of the violation established." *John Doe #1 v. Veneman*, 380 F.3d 807, 818–19 (5th Cir. 2004); *see also ODonnell*, 892 F.3d at 155, 163.

Plaintiffs contend that even if they had not "precisely" sought a permanent injunction against a future interpretation of Section 1557, "that *still* wouldn't mean they were barred from

_____

gender-transition procedures and abortions in violation of their religious beliefs and medical judgment.").

16

seeking it now," because FRCP 54(c) permits a court to "'grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.'" Priv. Pls.' Supp. Br., ECF 200 at 25 (quoting Fed. R. Civ. P. 54(c)). Plaintiffs are "correct to the extent that Rule 54(c) authorizes district courts to grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but *only where relief is otherwise legally permitted*." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015) (emphasis added). In *Peterson*, the court rejected a plaintiff's request for injunctive relief as it was only raised after judgment. *Id*. at 341. The court observed that *Sapp v. Renfroe*, 511 F.2d 172 (5th Cir. 1975), on which Plaintiffs rely, "carefully qualifies Rule 54(c)'s latitude by referring to the other case pleadings or facts proven at trial" that supported the relief requested, and reaffirms that damages (not even the broad injunctive relief that Plaintiffs here request) would not be permitted if failure to demand them would prejudice the opposing party. *Peterson*, 806 F.3d at 340. Plaintiffs' request here, as in *Peterson*, "is a paradigm of how Rule 54(c) should not have been employed," as Defendants and Intervenors would be "severely prejudiced" by Plaintiffs' post-judgment request for injunctive relief. *Id*. at 340–41; *see also Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) ("Rule 54(c) does not permit unrequested relief when it operates to the prejudice of the opposing party, such as when relief is finally sought at a late stage of the proceedings." (cleaned up)).[4]

---

[4] It did not matter that the plaintiff included in his prayer for relief "'[a]ny further legal and equitable relief to which [plaintiff] may be justly entitled'" if he did not plead and prove support for the relief during the course litigation, as "[t]he discretion afforded by Rule 54(c) [] assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant." *Peterson*, 806 F.3d at 339–40.

### C.  Defendants' Sovereign Immunity Bars the Court from Enjoining Hypothetical Future Enforcement Before Final Agency Action Occurs.

The Administrative Procedure Act's waiver of sovereign immunity is limited to "final agency action," 5 U.S.C. §§ 702, 704. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Section 702 [of the APA] contains two separate requirements for establishing a waiver of sovereign immunity." *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 489 (5th Cir. 2014). First, a plaintiff must identify an "agency action"—such as an agency rule, order, or sanction—affecting the plaintiff. *Id*. The agency action must be final. *Id*. Second, "the plaintiff must show that he has 'suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Id*. (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990)).

Even though there is no likelihood of HHS enforcing the 2016 Rule against them, Plaintiffs nonetheless complain that they need an injunction because there is nothing to "prevent HHS from imposing the same requirement by *other means*," including by "simply enforcing Section 1557 itself." Priv. Pls.' Supp. Br., ECF No. 200 at 14–15. But the Court's review is limited to final agency action. The Court does not have authority to issue injunctions based on speculation about hypothetical actions HHS may or may not decide to take in the future.

In this case, HHS has taken final agency action with respect to whether Section 1557 prohibits discrimination against transgender people. But—in contrast to the 2016 Rule—HHS's *Notification of Interpretation* takes no position on how that prohibition will apply to religious organizations and people with religious objections. And HHS has not taken any final agency action whatsoever as to whether Section 1557 prohibits discrimination based on termination of pregnancy. If and when final agency action occurs, Plaintiffs may challenge it. Until that time,

18

however, this Court lacks the authority to issue the injunction Plaintiffs seek.

The Supreme Court and the Fifth Circuit have both rejected similar attempts to enjoin hypothetical future agency action based on past violations. In *Monsanto,* the Supreme Court vacated a district court's injunction that purported to bar an agency from taking hypothetical future regulatory action. 561 U.S. at 165–66. There, the plaintiffs had sued under the APA to challenge a particular agency order to deregulate genetically modified alfalfa, and the district court held that the order was procedurally defective in violation of NEPA because the agency had not prepared an adequate environmental assessment. *Id*. at 158–59. As a remedy, the district court issued an injunction that not only prohibited the agency from enforcing the particular order challenged in the case, but also enjoined the agency from taking any other agency action to deregulate genetically modified alfalfa until an adequate environmental assessment was conducted. *Id*. The Supreme Court held that the district court abused its discretion in enjoining hypothetical future agency action that had not yet commenced. The Court explained that "a permanent injunction is not now needed to guard against any present or imminent risk of likely irreparable harm" because, if the agency takes new agency action "that arguably runs afoul of NEPA, [plaintiffs] may file a new suit challenging such action and seeking appropriate preliminary relief" at that time. *Id*. at 162. "Until such time as the agency decides whether and how to exercise its regulatory authority, however, the courts have no cause to intervene." *Id*. at 164.

The Fifth Circuit confronted and rejected a similar overbroad injunction to the one Plaintiffs seek in *John Doe #1 v. Veneman*. The plaintiffs in *Doe #1* brought an action under the APA to prevent an agency from releasing personal information about farmers who had applied to the agency for permission to use "livestock protection collars" with pesticides. 380 F.3d at 810–

19

11. After the district court ruled in favor of the plaintiffs, the court issued an injunction that also prohibited the agency more broadly from releasing personal information contained in other agency records regarding "the location where restricted-use pesticides have been, or will be, applied." *Id*. at 819. The court held that the injunction was overbroad because the underlying "complaint [did] not challenge an agency decision to release the locations where restricted-use pesticides have been, or will be, applied." *Id*. "Without an agency decision to release personal information in 'records regarding the location where restricted use pesticides have been, or will be, applied,' an injunction enjoining such a release constitutes an impermissible advisory opinion." *Id*.

Plaintiffs' motion for a prophylactic injunction must be rejected as well. Although Plaintiffs are concerned that the agency "could reimpose the exact same requirement on Plaintiffs through issuance of a new rule," Priv. Pls.' Supp. Br., ECF No. 200 at 1, that has not actually happened, and Plaintiffs cannot justify a permanent injunction on speculation alone.

### D.  The Court Lacks Article III Jurisdiction to Enjoin Hypothetical Future Agency Action.

Plaintiffs seek a permanent injunction "protecting them from any effort by HHS to impose the same RFRA-violating burden on their religious exercise," whether "through issuance of a new rule, through revival of the 2016 Rule, or simply through application of Section 1557 itself." Priv. Pls.' Supp. Br., ECF No. 200 at 1–2. But these are all hypothetical *future* agency actions, which have not yet taken place, and Article III courts lack jurisdiction to issue such a prophylactic injunction.

In the Sixth Circuit's decision in *Associated General Contractors of America v. City of Columbus*, 172 F.3d 411 (6th Cir. 1999) (Batchelder, J.), the plaintiffs successfully challenged a set-aside ordinance for minority-owned businesses as unconstitutional under *City of Richmond v.*

*J.A. Croson Co.*, 488 U.S. 469 (1989). After enjoining the unconstitutional ordinance, the district court purported to retain jurisdiction to ensure that any new city ordinance for minority-owned businesses complies with the requirements of *Croson*. *See Associated Gen. Contractors*, 172 F.3d at 414–15. The plaintiffs contended that continuing jurisdiction was necessary because their "real grievance is not simply with the particular set-aside ordinance; their real contention is that the City cannot, consistent with the requirements of *Croson*, adopt *any* set-aside program." *Id*. at 415.

The Sixth Circuit nevertheless held that Article III courts lack the power to assert jurisdiction over potential future laws: "We are not blind to the efficiency of this approach to determining jurisdiction. It is, however, wrong." *Id*. "[T]he role of the court is to intervene, if at all, only after a legislative enactment has been passed." *Id.* at 415–16 (collecting cases). Until then, federal courts lack the power to issue an "advisory opinion regarding the constitutionality of [a new] ordinance prior to its becoming law." *Id.* at 421.

Like the plaintiffs in *Associated General Contractors*, Plaintiffs' "real grievance" is that HHS could not adopt *any* new rule regarding Section 1557 without violating RFRA. But Article III courts lack jurisdiction to issue such a prophylactic injunction against future hypothetical regulations that do not yet exist. "This language can be read only as a request by [Plaintiffs] for an advisory opinion as to the constitutionality of future legislative action. . . . Such an opinion is beyond the power of a federal court to provide." *Id.* at 421.

The injunctions granted to plaintiffs in *Religious Sisters of Mercy v. Azar*, Nos. 16-386 & 16-432, 2021 WL 191009 (D.N.D. Jan. 19, 2021), and in challenges to the ACA's contraception coverage requirement are insufficient evidence that the Court may issue an injunction against hypothetical future rulemaking here. *See* Priv. Pls.' Supp. Br., ECF No. 200 at 11–13. Both

*Sisters of Mercy* and the contraception coverage cases are district court opinions that have not

been maintained on appeal. The *Sisters of Mercy* and contraception coverage cases are district

court opinions that have not been maintained on appeal. Indeed, in *Sisters of Mercy*, defendants

completely failed to defend the rule on the merits. 2021 WL 191009 at *22. And in the

contraception coverage cases, *see* Priv. Pls.' Supp. Br., ECF No. 200 at 11 n.6, defendants did

not even contest the merits of the injunctions, much less file appeals. Such examples are not

persuasive authority that this Court may issue relief in violation of "the oldest and most

consistent thread in the federal law of justiciability[, ]that the federal courts will not give

advisory opinions." *Flast v. Cohen*, 392 U.S. 83, 96 (1968) (internal quotation marks omitted).

## CONCLUSION

This Court should deny Plaintiffs' request for a permanent injunction.

Dated: June 4, 2021                Respectfully submitted,

                                   /s/ *Lindsey Kaley*
                                   (NY Bar No. 5324983)
                                   Joshua Block
                                   Brigitte Amiri
                                   James D. Esseks
                                   Louise Melling
                                   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                   125 Broad Street, 18th Floor
                                   New York, NY 10004
                                   (212) 549-2500

                                   Daniel Mach
                                   AMERICAN CIVIL LIBERTIES UNION FOUNDATION
                                   915 15th Street, N.W.
                                   Washington, D.C. 20005
                                   (202) 548-6604

                                   Andre Segura
                                   Brian Klosterboer
                                   AMERICAN CIVIL LIBERTIES UNION OF TEXAS

5225 Katy Freeway, Suite 350
Houston, TX 77007
(713) 942-8146

Scout Richters
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
OF NEBRASKA
134 S. 13th St., #1010
Lincoln, NE 68508
(402) 416-2694

*Counsel for Intervenors-Defendants*

23

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of June, 2021, I electronically filed the foregoing with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.

By:     /s/ *Lindsey Kaley*
        LINDSEY KALEY