**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | Case No. 7:16-cv-00108-O |
| v. ) | |
| ) | |
| XAVIER BECERRA, Secretary of Health ) | |
| and Human Services, *et al.*, ) | |
| ) | |
| *Defendants*. ) | |
| ) | |

**DEFENDANTS' SUPPLEMENTAL BRIEF ON REMAND**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

      A.     HHS's 2016 Rule ............................................................................... 2

      B.     Plaintiffs' Challenge to the 2016 Rule ............................................... 3

      C.     The 2020 Rule and Surrounding Litigation ....................................... 6

      D.     Fifth Circuit Proceedings and Subsequent Developments ..................... 8

ARGUMENT ................................................................................................................ 10

I.     PLAINTIFFS ARE NOT ENTITLED TO ANY FURTHER RELIEF. ........................... 10

      A.     Plaintiffs' Claims In This Case Are Moot. ........................................ 11

      B.     Plaintiffs' Alleged Injury Is Not Imminent, But Rather Based on Unripe Claims of Speculative Future Harm ...................................................... 15

CONCLUSION ............................................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>

*Abbott Laboratories v. Gardner,*
    387 U.S. 136 (1967) ............................................................................................... 16

*Alaska v. U.S. EPA,*
    521 F.2d 842 (9th Cir. 1975) ......................................................................... 11, 12

*Asapansa-Johnson Walker v. Azar,*
    480 F. Supp. 3d 417 (E.D.N.Y. 2020) ............................................................ 8, 19

*Bostock v. Clayton County,*
    140 S. Ct. 1731 (2020) ................................................................................... 7, 17

*Chacon v. Granata,*
    515 F.2d 922 (5th Cir. 1975) ................................................................ 16, 17, 18

*Choice Inc. of Texas v. Greenstein,*
    691 F.3d 710 (5th Cir. 2012) ............................................................................. 10

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ...................................................................................... 16, 20

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) .................................................................................... 16, 20

*Colwell v. Dep't of Health & Hum. Servs.,*
    558 F.3d 1112 (9th Cir. 2009) .......................................................................... 20

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ........................................................................................... 10

*Franciscan Alliance, Inc. v. Becerra,*
    843 F. App'x 662 (5th Cir. 2021) .................................................................... 8, 9

*Google, Inc. v. Hood,*
    822 F.3d 212 (5th Cir. 2016) ...................................................................... 16, 17

*Hein v. Freedom from Religion Found.,*
    551 U.S. 587 (2007) ........................................................................................... 10

*Louisiana Envtl. Action Network v. U.S. EPA,*
    382 F.3d 575 (5th Cir. 2004) ............................................................................. 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................... 10

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ..................................................................................... 5, 6

*National Mining Ass'n v. U.S. Dep't of Interior*,
    251 F.3d 1007 (D.C. Cir. 2001) ..................................................................... 11

*New Mexico Health Connections v. U.S. Dep't of Health & Human Servs.*,
    946 F.3d 1138 (10th Cir. 2019) ..................................................................... 14

*Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*,
    508 U.S. 656 (1993) ....................................................................................... 14

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ............................................................... 15

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ......................................................................... 14

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................................... 16

*Pacific Gas & Elec. Co. v. Energy Res. Comm'n*,
    461 U.S. 190 (1983) ....................................................................................... 18

*Pub. Water Supply Dist. No. 8 v. City of Kearney*,
    401 F.3d 930 (8th Cir. 2005) ......................................................................... 15

*Raines v. Byrd*,
    521 U.S. 811 (1997) ....................................................................................... 10

*Religious Sisters of Mercy v. Azar*,
    No. 3:16-cv-00386, 2021 WL 191009 (D.N.D. Jan. 1, 2019) ........................ 15

*Sannon v. United States*,
    631 F.2d 1247 (5th Cir. 1980) ....................................................................... 11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ......................................................................................... 10

*Sossamon v. Lone Star State of Texas*,
    560 F.3d 316 (5th Cir. 2009) ......................................................................... 14

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ........................................................................................... 14

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ....................................................................................... 16

*Tanzin v. Tanvir*,
  141 S. Ct. 486 (2020) ........................................................................... 14, 15

*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................................. 15, 16

*Walker v. Azar*
  No. 20-CV-2834 (FB) (SMG), 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020) ........................ 8

*Whitman-Walker Clinic v. U.S. Dep't of Health & Human Servs.*,
  No. 20-5331 (D.C. Cir. 2020) ................................................................... 8

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*,
  485 F. Supp. 3d 1 (D.D.C. 2020) .............................................................. 8, 19

*Wyoming v. U.S. Dep't of Interior*,
  587 F.3d 1245 (10th Cir. 2009) ................................................................ 11

**Statutes**

20 U.S.C. § 1681 ............................................................................ *passim*

20 U.S.C. § 1687 ................................................................................. 3

20 U.S.C. § 1688 ................................................................................. 2

29 U.S.C. § 794 .................................................................................. 2

42 U.S.C. § 2000d ................................................................................ 2

42 U.S.C. § 2000bb ............................................................................. 12

42 U.S.C. § 2000e-2 ............................................................................. 7

42 U.S.C. § 6101 ................................................................................. 2

42 U.S.C. § 18116 ............................................................................ 2, 12

**Regulations**

45 C.F.R. § 81 ................................................................................... 9

45 C.F.R. § 80.6 ................................................................................. 9

45 C.F.R. § 80.7 ............................................................................. 9, 20

45 C.F.R. § 80.8 ......................................................................... 9, 10, 20

45 C.F.R. § 92.2 ............................................................................................... 6

45 C.F.R. § 92.5 ............................................................................................. 20

45 C.F.R. § 92.6 ........................................................................................... 6, 7

**Administrative and Executive Materials**

Nondiscrimination in Health Programs and Activities,
   81 Fed. Reg. 31,375 (May 18, 2016) ............................................... 2, 3, 7

Nondiscrimination in Health and Health Education Programs or Activities,
   84 Fed. Reg. 27,846 (June 14, 2019) .................................................... 4

Nondiscrimination in Health and Health Education Programs or Activities, Delegation of
Authority,
   85 Fed. Reg. 37,160 (June 19, 2020) ............................................. *passim*

Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and
Title IX of the Education Amendments of 1972,
   86 Fed. Reg. 27,984 (May 10, 2021) ................................................ 9, 19

## INTRODUCTION

Defendants respectfully ask that the Court once again deny Plaintiffs' request for an injunction in this matter.  Plaintiffs brought suit to challenge regulations promulgated by the Department of Health and Human Services (HHS) in 2016 that this Court has since vacated in relevant part and that HHS has since formally rescinded and replaced.  As the Court concluded when granting Plaintiffs' motion for summary judgment, issuance of an injunction would not have a meaningful practical effect independent of vacatur, and "neither Plaintiffs nor similarly situated non-parties need injunctive relief *from the vacated Rule*," which is no longer extant. Mem. Op. & Order at 25, ECF No. 175 ("Summ. J. Order") (emphasis added).

Plaintiffs work hard to try to convince the Court otherwise on remand, but Plaintiffs are not entitled to further relief.  Their claims are either moot—because the relevant portions of the 2016 Rule have been vacated and repealed—or unripe—because they are based on pure speculation regarding potential future rulemakings or enforcement actions.  Accordingly, Plaintiffs can no longer meet the bare requirements to satisfy Article III, much less to establish an imminent and irreparable harm that could justify an injunction.  Defendants respectfully ask that the Court deny Plaintiffs' request for further relief and that the Court direct the Clerk to close the case.

## BACKGROUND

This case arises from HHS's efforts to implement Section 1557 of the Affordable Care Act.  Section 1557 applies long-standing anti-discrimination principles to health programs or activities by incorporating four federal anti-discrimination laws into the ACA: Title VI, Title IX, the Age Discrimination Act of 1975, and Section 504 of the Rehabilitation Act.  Specifically, Section 1557 directs that

1

> [e]xcept as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section [504 of the Rehabilitation Act of 1973 (29 U.S.C. 794)], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under [Title I of the ACA] (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section [504], or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a).

As relevant here, Title IX in turn provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX further provides that the prohibition on sex discrimination does not apply to religious organizations where applying the prohibition would conflict with the religious tenets of such organizations, *id.* § 1681(a)(3), and that nothing in it "shall be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion," 20 U.S.C. § 1688.

A.      **HHS's 2016 Rule**

Acting under its statutory authority to "promulgate regulations to implement" Section 1557, 42 U.S.C. § 18116(c), HHS issued the challenged rule in May 2016.  *See* Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375 (May 18, 2016) (the "2016 Rule").  As relevant here, the 2016 Rule prohibited discrimination on the basis of sex, and explicitly defined "[o]n the basis of sex" to include "discrimination on the basis of pregnancy, false pregnancy, termination of pregnancy, or recovery therefrom, childbirth or related medical

2

conditions, sex stereotyping, and gender identity." *Id.* at 31,467.  The 2016 Rule further defined "gender identity" to include "an individual's internal sense of gender, which may be male, female, neither, or a combination of male and female . . . ." *Id.*  The 2016 Rule listed several specific examples of prohibited discrimination.  *See, e.g.*, *id.* at 31,471.  HHS had decided, for example, that covered entities could violate Section 1557 if they "deny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, for specific health services related to gender transition if such denial, limitation, or restriction results in discrimination against a transgender individual." *Id.*  Although Title IX contains a religious exemption, the 2016 Rule did not incorporate that exemption into its implementation of Section 1557.  *Id.* at 31,380; *see* 20 U.S.C. §§ 1681(a)(3), 1687.

### B.       Plaintiffs' Challenge to the 2016 Rule

Plaintiffs are a hospital system, medical provider, and membership organization.  Am. Compl. ¶¶ 5–7.  Along with several States that are no longer part of these proceedings, Plaintiffs collectively brought numerous challenges to certain provisions of the 2016 Rule, including challenges under the Administrative Procedure Act (APA) and the Religious Freedom Restoration Act (RFRA).  Plaintiffs' APA claims alleged that the 2016 Rule exceeded HHS's statutory authority by defining discrimination "on the basis of sex" to include discrimination on the basis of termination of pregnancy or gender identity, as well as by failing to incorporate Title IX's religious exemption.  *See, e.g.*, *id.* ¶¶ 117–23.  In their RFRA claims, Plaintiffs alleged that the 2016 Rule's definition of sex discrimination as including gender-identity discrimination substantially burdened their religious exercise without a compelling governmental interest.  *See id.* ¶¶ 282–311.

3

Soon after filing their complaint, Plaintiffs moved for a preliminary injunction barring enforcement of the 2016 Rule, and the American Civil Liberties Union (ACLU) of Texas and River City Gender Alliance moved to intervene in defense of the 2016 Rule.  *See* ECF Nos. 7, 24.  This Court granted Plaintiffs a preliminary injunction in December 2016, concluding that the challenged provisions of the 2016 Rule likely violated the APA and RFRA.  Order, ECF No. 62.  The preliminary injunction barred HHS "from enforcing the [2016] Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy."  *Id* at 46.  HHS thereafter began reconsidering the 2016 Rule, and the Court granted HHS's request to stay proceedings.  *See* Order, ECF No. 105.

In December 2018, the parties asked the Court to lift the stay, and Plaintiffs then moved for summary judgment.  ECF Nos 125, 136.  In their motion, Plaintiffs asked the Court to "make its preliminary injunction permanent."  Private Plaintiffs' Brief In Support of Their Renewed Mot. for Partial Summ. J., ECF No. 136.  The government did not oppose Plaintiffs' RFRA claim, but noted that because Plaintiffs were "entitled to summary judgment on their APA claim, . . . there [was] no need . . . to resolve any other claim to provide them with the relief they seek."  Defs.' Mem. in Response to Pls.' Mots. For Summ. J. at 1, ECF No. 154.  Nonetheless, the government "ask[ed] the [c]ourt to postpone ruling on Plaintiffs' summary judgment motions to allow Defendants to complete their ongoing efforts to amend the Rule[,] . . . which, if finalized, may moot this case."  *Id.* at 2.  After briefing was complete, HHS issued a notice of proposed rulemaking to rescind the challenged provisions and notified the Court.  *See* Notice Regarding Issuance of Notice of Proposed Rulemaking to Amend Challenged Regulations; Nondiscrimination in Health and Health Education Programs or Activities, 84 Fed. Reg. 27,846 (June 14, 2019).

The Court granted summary judgment in Plaintiffs' favor, holding that the challenged portion of the 2016 Rule was contrary to Section 1557 and substantially burdened Plaintiffs' religious exercise in violation of RFRA.  Summ. J. Order at 17–21.  The Court also granted Intervenors' motion to intervene.  *Id.* at 13.

As to relief, the Court vacated "the unlawful portions of the Rule for Defendants' further consideration in light of this opinion and the" prior preliminary injunction order.  *Id.* at 23; *see also* Order at 2, ECF No. 182 (vacating "the portions of the [2016] Rule that Plaintiffs challenged," "[s]pecifically," the portions of the rule defining "'*On the basis of sex'* to include gender identity and termination of pregnancy").  But the Court determined that the "circumstances d[id] not justify" a nationwide injunction because "vacatur redresses both the APA violation and the RFRA violation."  Summ. J. Order at 23.  Citing several cases, including the Supreme Court's decision in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010), the Court concluded that the best course was to "vacat[e] the Rule and invit[e] Plaintiffs to return if further relief independent of vacatur[] is later warranted."  Summ. J. Order at 24–25.

The Court noted several reasons why an injunction was unnecessary to protect Plaintiffs from any harm.  The Court explained that there was "no indication that, once the Rule is vacated, Defendants [would] defy the Court's order and attempt to apply the Rule against Plaintiffs."  *Id.* at 24.  Indeed, "Defendants . . . agree[d] with Plaintiffs and the Court that the Rule[] . . . [was] substantively unlawful under the APA" and had "been conscientiously complying with the [preliminary] injunction."  *Id.* at 24–25 (quotation marks omitted).  "Considering Defendants' prior actions and current statements, the Court conclude[d] that issuance of an injunction would not have a 'meaningful practical effect independent of its vacatur' because vacatur and remand will likely prevent Defendants from applying the Rule."  *Id.* at 25 (quoting *Monsanto*, 561 U.S.

5

at 165). Thus, the Court determined that "neither Plaintiffs nor similarly situated non-parties need injunctive relief from the vacated Rule." *Id.* Instead, the Court explained that "Plaintiffs may return to the [c]ourt for redress" if Plaintiffs in the future encountered risk of imminent harm. *Id.*[1] Plaintiffs appealed the denial of injunctive relief to the Fifth Circuit.

### C.    The 2020 Rule and Surrounding Litigation

On June 12, 2020, while Plaintiffs' appeal was pending, HHS submitted for publication a new final rule (the 2020 Rule) rescinding the various provisions of the 2016 Rule that Plaintiffs had challenged. *See* Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020). The 2020 Rule rescinded the 2016 Rule's definition of discrimination "on the basis of sex" and replaced it with a provision largely quoting Section 1557's statutory text. *Id.* at 37,244 (codified at 45 C.F.R. § 92.2).[2] The 2020 Rule also incorporated Title IX's religious exemption, as Plaintiffs in this case had argued

---

[1] The Court later granted the government's motion to modify the final judgment "to confirm that . . . the [c]ourt vacate[d] only the portions of the Rule that Plaintiffs challenged in this litigation." Order, ECF No. 182. The court modified its judgment to clarify that it vacated the 2016 Rule "insofar as the Rule defines '*On the basis of sex*' to include gender identity and termination of pregnancy." *Id.*

[2] The new provision reads as follows:

(a) Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

(b) The grounds are the grounds prohibited under the following statutes: . . . Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) (sex); . . . .

45 C.F.R. § 92.2.

was required.  *See id.* at 37,245 (codified at 45 C.F.R. § 92.6(b)) ("Insofar as the application of any requirement under this part would violate, depart from, or contradict definitions, exemptions, affirmative rights, or protections provided by any of the statutes cited in paragraph (a) of this section [including Title IX] … , such application shall not be imposed or required.").  It also rescinded a section included in the 2016 Rule that prohibited specified actions as discriminatory, including to "[d]eny or limit coverage of a claim, or impose additional cost sharing or other limitations or restrictions on coverage, for specific health services related to gender transition if such denial, limitation, or restriction results in discrimination against a transgender individual," and to "[h]ave or implement a categorical coverage exclusion or limitation for all health services related to gender transition."  81 Fed. Reg. at 31,472; 85 Fed. Reg. at 37,196.

On June 15, three days after HHS submitted the 2020 Rule for publication, the Supreme Court decided *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).  *Bostock* concerned the proper interpretation of the anti-discrimination provision in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). *Id.* at 1737.  The Court held that "discrimination based on homosexuality or transgender status necessarily entails discrimination based on sex; the first cannot happen without the second." *Id.* at 1747.  However, the Court specifically reserved the question of how RFRA and other "doctrines protecting religious liberty interact with Title VII," explaining that these "are questions for future cases." *Id.* at 1754.  The Court noted that "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws" and that "it might supersede Title VII's commands in appropriate cases." *Id.*

Following *Bostock*, groups of plaintiffs in several district courts challenged the 2020 Rule as substantively and procedurally unlawful under the APA.  *See, e.g.*, *Washington v. U.S. Dep't of Health & Human Servs.*, No. 20-cv-1105 (W.D. Wash. filed July 16, 2020); *Whitman-Walker*

7

*Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 20-cv-1630 (D.D.C. filed June 22, 2020); *Asapansa-Johnson Walker v. Azar*, No. 20-cv-2834 (E.D.N.Y. filed June 26, 2020).  Two district courts issued preliminary injunctions barring HHS from enforcing its repeal of the 2016 regulatory definition of discrimination on the basis of sex and associated provisions in the 2016 Rule, and one court enjoined HHS from enforcing the 2020 Rule's incorporation of Title IX's religious exemption.  *See Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Human Servs.*, 485 F. Supp. 3d 1 (D.D.C. 2020) (enjoining rescission of 2016 regulatory definition and enforcement of Title IX's religious exemption); *Asapansa-Johnson Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020) (enjoining rescission of the 2016 regulatory definition); Order, *Walker*, 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020) (enjoining rescission of related provision).  Both district courts acknowledged that their orders did not affect the vacatur issued by the Court in this case.  *See Whitman-Walker Clinic*, 485 F. Supp. 3d at 26–27; *Asapansa-Johnson Walker*, 480 F. Supp. 3d at 427.  HHS appealed the preliminary injunctions in *Whitman-Walker Clinic* and *Asapansa-Johnson Walker* to the Second and D.C. Circuits respectively. *See Asapansa-Johnson Walker v. Azar*, No. 20-3580 (2d Cir. filed Oct. 16, 2020); *Whitman-Walker Clinic v. U.S. Dep't of Health & Human Servs.*, No. 20-5331 (D.C. Cir. filed Nov. 9, 2020).  However, upon the parties' request, the cases on appeal challenging the 2020 Rule have been held in abeyance pending further consideration of regulations governing Section 1557 by new leadership at HHS. *See Order, Asapansa-Johnson Walker v. Azar*, No. 20-3580 (2d Cir. May 18, 2021); Clerk's Order, *Whitman-Walker Clinic v. U.S. Dep't of Health & Human Servs.*, No. 20-5331 (D.C. Cir. May 14, 2021).

### D.    Fifth Circuit Proceedings and Subsequent Developments

The Fifth Circuit issued its decision in Plaintiffs' appeal of this Court's final judgment on April 15, 2021.  *Franciscan Alliance, Inc. v. Becerra*, 843 F. App'x 662 (5th Cir. 2021).  The court noted that "the legal landscape has shifted significantly" since Plaintiffs appealed the denial of injunctive relief, and that those "developments keep us from reaching the merits of" the appeal.  *Id*. at 663.  Noting that it is "unclear" whether "the providers are pressing the same claim before us as they did in the district court," the Fifth Circuit remanded for consideration of whether this Court "should have granted them injunctive relief against the 2016 rule and the underlying statute," or, alternatively, for consideration of the government's contention "that the case is moot and that the providers never asked the district court for relief against the underlying statute."  *Id.*

On May 10, 2021, HHS issued a notification to inform the public that, consistent with the Supreme Court's decision in *Bostock* and Title IX, beginning on May 10, HHS will interpret and enforce Section 1557's prohibition on discrimination on the basis of sex to include: (1) discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity.  *See* HHS, Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972, 86 Fed. Reg. 27,984, 27,984 (May 10, 2021).  HHS explained that its "interpretation will guide HHS's Office for Civil Rights in processing complaints and conducting investigations, but does not itself determine the outcome in any particular case or set of facts."  *Id.*  HHS further explained in the notification that, "[i]n enforcing Section 1557, . . . OCR will comply with [RFRA] and all other legal requirements," as well as with "all applicable court orders that have been issued in litigation involving the Section 1557 regulations."  *Id.* at 27,985.  The notification also explains that OCR

9

applies the enforcement mechanisms for and available under Title IX when enforcing Section 1557's prohibition on sex discrimination, which incorporate the provisions applicable to Title VI at 45 C.F.R. § 80.6 through 80.11 and 45 C.F.R. Part 81.  *See* 86 Fed. Reg. at 27,985; *see also* 45 C.F.R. § 80.7 (explaining that if an investigation "indicates a failure to comply," "the matter will be resolved by informal means whenever possible"); 45 C.F.R. § 80.8 (explaining that "if the noncompliance . . . cannot be corrected by informal means, compliance . . . may be effected by the suspension or termination of or refusal to grant or to continue Federal financial assistance" or by "a reference to the Department of Justice with a recommendation" for enforcement proceedings).

HHS has not has taken a position on what the prohibition of discrimination on the basis of gender identity means in the context of gender-transition services for religious entities, which would necessarily depend on specific facts not before the agency.  Nor has HHS threatened or initiated any enforcement activity against religious-entity plaintiffs—or any religious entities who object to providing gender-transition and abortion procedures—in which the protections of RFRA or other religious exemptions could be asserted and evaluated.

## ARGUMENT

## I.     PLAINTIFFS ARE NOT ENTITLED TO ANY FURTHER RELIEF.

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction.'"  *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). "Article III of the Constitution limits the judicial power of the United States to the resolution of 'Cases' and 'Controversies,'" *Hein v. Freedom from Religion Found.*, 551 U.S. 587, 597 (2007); however, "it does not attempt to define those terms," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992).  In order to effectuate the Constitution's mandate, the Supreme Court has developed

the doctrines of standing and the similar constitutional prerequisites to the exercise of

jurisdiction—mootness and ripeness. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714–15

(5th Cir. 2012). These doctrines often overlap in practice because they "all originate in Article

III's 'case' or 'controversy language.'" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

(2006).

As discussed below, Plaintiffs are not entitled to any further relief due to these Article III

limitations. Plaintiffs' claims are either moot—because HHS has repealed the challenged

portions of the 2016 Rule—or unripe to the degree any alleged injury is based on any possible

future regulatory or enforcement action. Plaintiffs do not suffer any legally cognizable injury

that could give rise to a further exercise of judicial power, and, *a fortiori*, they cannot establish

the sort of imminent injury necessary to justify injunctive relief.

### A.      Plaintiffs' Claims In This Case Are Moot.

Consistent with the principles that parties must continue to have a personal stake in the

outcome of a lawsuit to satisfy Article III's requirements, challenges to agency regulations often

become moot when the agency rescinds the challenged regulations or a court vacates them. *See,*

*e.g.*, *Louisiana Envtl. Action Network v. U.S. EPA*, 382 F.3d 575, 581 (5th Cir. 2004) (holding

that request for relief from EPA rules was moot after "vacatur of the agency's final rules");

*Sannon v. United States*, 631 F.2d 1247, 1250–51 (5th Cir. 1980) (holding part of an appeal moot

because of new regulations). Indeed, the Fifth Circuit has acknowledged "without doubt" "[t]hat

newly promulgated regulations immediately applicable to litigants in a given case can have the

effect of mooting what once was a viable case." *Sannon*, 631 F.2d at 1250–51 (collecting cases).

Other circuits hold the same. *See, e.g.*, *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1253

(10th Cir. 2009) (Gorsuch, J.) (Because the "new Park Service rule also supersedes its 2007 rule,

it is now beyond cavil . . . that the petitioners' underlying challenge to that rule is also moot.");

11

*id.* at 1253 ("[B]y eliminating the issues upon which this case is based, [the agency's] adoption of the new rule has rendered the appeal moot." (quotation marks omitted)); *National Mining Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (holding that challenge to an "old set of rules" was moot in light of the "new system … now in place"); *Alaska v. U.S. EPA*, 521 F.2d 842, 843 (9th Cir. 1975) (holding that challenge was "either . . . moot or not ripe" because agency had "indefinitely suspended" the challenged regulation, and "should this suspension be lifted, or new regulations be promulgated pertaining to the same subject matter in general, another petition for review . . . may be filed").

That principle applies here. Plaintiffs' amended complaint makes clear that they brought this case as a challenge to HHS's 2016 Rule. *See, e.g.*, Am. Compl., Introduction and Nature of the Action ("This lawsuit challenges *a new Regulation* . . . issued by the Department of Health and Human Services [ ] that seeks to override the medical judgment of healthcare professionals across the country." (emphasis added)); *id.* ¶ 121 ("The Regulation is not in accordance with Section 1557 of the Affordable Care Act (42 U.S.C. § 18116) or Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*); *id.* ¶ 295 ("The Regulation violates the Plaintiffs rights secured to them by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.*"); *id.*, Prayer for Relief (seeking declaratory relief with respect to "the challenged Regulation" and a "permanent injunction enjoining Defendants from enforcing the challenged Regulations" against Plaintiffs). But Plaintiffs can suffer no ongoing harm from the 2016 Rule, because this Court vacated the provisions of it that Plaintiffs challenged. The 2016 Rule also has been rescinded by HHS and superseded by a new Rule.

Plaintiffs only response is to insist that this case was never just a challenge to the 2016 Rule, but rather sought to prevent HHS from ever interpreting Section 1557 in such a way that

Plaintiffs would find objectionable.  *See* Pls.' Suppl. Br. on Remand at 24–25, ECF No. 200 ("Pls.' Br.").  Yet, Plaintiffs did not seek relief from the statute itself, and they are not entitled to it now, after entry of final judgment in their favor.  Indeed, Plaintiffs' motion for summary judgment requested only that the Court "make its preliminary injunction permanent," Private Pls.' Br. in Supp. of Their Renewed Mot. for Partial Summ. J. at 2, ECF No. 136, and this Court's preliminary injunction, accordingly, had barred HHS only "from enforcing the [2016] Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy," PI Order at 46.  *See also* Plaintiffs' Motion for Summary Judgment at 2, ECF No. 82 (seeking "[a] permanent injunction prohibiting Defendants from enforcing the [2016] Rule"). This is consistent with the Court's indication in denying Plaintiffs' request for an injunction that Plaintiffs may return to the Court for redress "should Defendants attempt to apply *the vacated Rule*."  Summ. J. Order at 24–25 (emphasis added)); *see also* Order at 2, ECF No. 182 (vacating "the portions of the [2016] Rule that Plaintiffs challenged," "[s]pecifically," the portions of the rule defining "'*On the basis of sex*' to include gender identity and termination of pregnancy"). Because the provisions that Plaintiffs challenged are no longer extant, their claims are moot.

Plaintiffs ignore their own amended complaint and the substance of their motions, pointing instead to subparagraphs in proposed injunctions they "submitted alongside both of their summary-judgment motions" that asked the Court to enjoin HHS from "[c]onstruing Section 1557 to require [them] to provide medical services or insurance coverage related to 'gender identity' or 'termination of pregnancy' in violation of their religious beliefs."  Pls.' Br. at 24–25 (citing ECF 135-1 at 4 ¶(f); ECF 82-2 at 3 ¶(f)).  The language in the proposed orders on which Plaintiffs rely is too thin a reed to retroactively transform Plaintiffs' case.  Yet, in any event, Plaintiffs cannot obtain an injunction based on some hypothetical future interpretation of Section

13

1557, because any risk of harm is too speculative and unripe, as discussed below.  *See* Part I.B., *infra*.

Nor can Plaintiffs show that any of the limited exceptions to mootness could apply here. Plaintiffs point to the "voluntary cessation" exception.  *See* Pls.' Br. at 23.  Yet, courts should "assume[s] that formally announced changes to official governmental policy are not mere litigation posturing" that implicate the "voluntary cessation" doctrine.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (indicating that courts are justified in treating a voluntary withdrawal of conduct with "some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity").  Here, the Court vacated the challenged provisions and issued a judgment on Plaintiffs' RFRA claim that HHS has not appealed.  And HHS cannot undo its new 2020 Rule "without a new proceeding."  *New Mexico Health Connections v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1138, 1161 (10th Cir. 2019) (explaining that voluntary cessation exception did not apply to the agency's new formal rulemaking).  Thus, this is not a case where the defendant unilaterally ceased an action that it can easily resume later, as was true in the cases Plaintiffs cite, where the voluntary cessation doctrine would apply.  *See* Pls.' Br. at 23 (citing *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279 (5th Cir. 2012); and *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993)).  Nor could Plaintiffs raise any plausible argument that their claims here fall into the narrow exception for cases "capable of repetition, yet evading review," which exists only where the duration of the challenged action is too short to be fully litigated prior to cessation or expiration.  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (quotation marks omitted).

14

The Court should also reject Plaintiffs' claim that an injunction is always the appropriate remedy when a litigant prevails under RFRA. *See* Pls.' Br. at 9–13. The plain language of RFRA itself says that a person whose religious exercise has been burdened in violation of the statute may obtain "appropriate relief," which—contrary to Plaintiffs' argument—leaves discretion to courts to determine what relief is, in fact, "appropriate." *See, e.g.*, *Tanzin* v. *Tanvir*, 141 S. Ct. 486, 491 (2020) (examining RFRA and explaining that "appropriate relief" is "open-ended on its face" and "inherently context dependent"); *O.A. v. Trump*, 404 F. Supp. 3d 109, 154 (D.D.C. 2019) (concluding in the immigration context that an injunction was not warranted after vacatur of the challenged rule).

It is also of no moment that courts entered injunctions in RFRA cases challenging the so-called "contraceptive mandate," as Plaintiffs point out. *See* Pls.' Br. at 11–12. None of the cases Plaintiffs cite addressed the question of whether injunctive relief would have been necessary following vacatur of the challenged regulations. And, indeed, unlike here, the government largely *consented* to injunctions in the cases on which Plaintiffs rely, undercutting Plaintiffs' attempt to draw parallels between that litigation and this case. Moreover, although the district court in *Religious Sisters of Mercy v. Azar*, Case No. 3:16-cv-00386, 2021 WL 191009 (D.N.D. Jan. 1, 2019), did restrict how the agency may enforce Section 1557 as to the plaintiffs in that case, the government has appealed that decision to the Eighth Circuit.

### B.     Plaintiffs' Alleged Injury Is Not Imminent, But Rather Based on Unripe Claims of Speculative Future Harm.

Plaintiffs also lack standing to obtain any additional relief because their alleged future harms are speculative and unripe. "The ripeness doctrine is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." *Pub. Water Supply Dist. No. 8 v. City of Kearney,* 401 F.3d 930, 932 (8th Cir.

2005).  Article III limits the federal courts to deciding "Cases" and "Controversies" and thus prohibits them from issuing advisory opinions.  *Id.*  "One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts."  *Id.* (internal quotations and citations omitted).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States,* 523 U.S. 296, 300 (1998) (internal quotations and citations omitted).  Ripeness requires a court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Id.* at 300–01 (quoting *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149 (1967)).

Because the challenged portions of the 2016 Rule are no longer extant, Plaintiffs are forced to speculate that HHS will bring an enforcement action against them at some unspecified time in the future.  Even if Plaintiffs had properly raised a challenge to Section 1557 itself, Plaintiffs do not have standing to obtain an injunction that bars hypothetical future agency actions, which naturally do not present a "concrete, particularized, and actual or imminent" harm that is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted); *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (plaintiffs have standing to raise a "pre-enforcement" First Amendment claim only "under circumstances that render the threatened enforcement sufficiently imminent").  And even if Plaintiffs could cross the standing threshold, it is black letter law that "[a]n injunction is appropriate only if the anticipated injury is imminent."  *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief

. . . if unaccompanied by any continuing, present adverse effects." (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974))).

No concrete, imminent injury exists here.  Because the provisions that Plaintiffs challenged were vacated by this Court and rescinded by HHS, Plaintiffs instead request an injunction against "a fuzzily defined range of enforcement actions that do not appear imminent," which the Fifth Circuit has held is improper.  *See Google, Inc. v. Hood*, 822 F.3d 212, 226–28 (5th Cir. 2016) (reversing district court's grant of preliminary injunction because "the prospect of" an enforcement action that would harm plaintiffs was "not sufficiently imminent or defined to justify an injunction"); *Chacon*, 515 F.2d at 925 ("Insofar as" plaintiffs' request for an injunction "is premised on" legislative action that has not occurred yet, plaintiffs "face[] an impossible burden of showing that any harm to them is imminent," because "[t]he contours of the [actions] anticipated by plaintiffs cannot be predicted," "[n]or can it be foreseen how [relevant] laws will be interpreted judicially or applied administratively.").  Even though HHS has now taken the position that sex discrimination includes gender-identity discrimination under Section 1557, consistent with the Supreme Court's interpretation of Title VII in *Bostock*, the agency has not taken a position on what that means in the context of gender-transition services for religious entities, much less initiated any enforcement activity against a religious-entity plaintiff in which the protections of RFRA or other religious exemptions could be asserted and evaluated.

Plaintiffs suggest, *see* Pls.' Br. at 17–18, that they might be harmed as a result of the 2020 Rule, in light of Supreme Court's decision in *Bostock*, which held that Title VII's prohibition against sex discrimination necessarily prohibits discrimination on the basis of sexual orientation or transgender status.  *Bostock*, 140 S. Ct. at 1739.  For one, this alleged injury is

untethered to Plaintiffs' amended complaint, which challenges only the 2016 Rule.  Yet, even putting that aside, and, as Plaintiffs emphasize, *see* Pls.' Br. at 5–6, the Supreme Court itself stated that its decision did not address how "doctrines protecting religious liberty," including RFRA, would apply to Title VII's prohibition of discrimination based on homosexuality or transgender status, 140 S. Ct. at 1754.  And, indeed, when announcing that HHS will interpret Section 1557's prohibition on discrimination on the basis of sex to include discrimination on the basis of sexual orientation and gender identity, consistent with *Bostock* and Title IX, the agency underscored that it will comply with RFRA in enforcing Section 1557.

It is purely speculative—and insufficient to confer jurisdiction, much less for equitable relief—for Plaintiffs to simply posit that the agency will enforce Section 1557 against religious-entity plaintiffs in a way that burdens their religious beliefs based on *Bostock*.  The Supreme Court has long made clear that judicial review is inappropriate before "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Pacific Gas & Elec. Co. v. Energy Res. Comm'n*, 461 U.S. 190, 200 (1983).  And such relief is especially premature here: for Plaintiffs to suffer harm, HHS would have to exercise its discretion to bring an enforcement action against them even though the 2020 Rule has incorporated Title IX's religious exemption and even though HHS has committed to enforce Section 1557 consistent with RFRA.

Regarding the 2020 Rule's incorporation of Title IX's religious exemption, Plaintiffs argue that one district court has issued a preliminary injunction barring its enforcement based on a purported procedural error. Pls.' Br. at 18.  But that preliminary injunction does not demonstrate a risk of concrete harm, as Plaintiffs still have the protections of RFRA.  Moreover, in the 2020 Rule's preamble, HHS stated its view that the provision adopting Title IX's religious

18

exemption would "not . . . create any new conscience or religious freedom exemptions beyond what Congress has already enacted."  85 Fed. Reg. at 37,206.  Given HHS's enforcement discretion and existing statutory protections for religious conscience, Plaintiffs' theory of possible future injury is all the more speculative.  *See Chacon*, 515 F.2d at 925 (rejecting request for injunctive relief because "the injury plaintiffs fear[ed] about future zoning ordinances is not imminent" and "[a]ny injury plaintiffs might suffer from abuse of the City's eminent domain power can be remedied when the City formally exercises that power").

Plaintiffs also argue that two district courts have "reviv[ed]" the provision of the 2016 Rule prohibiting discrimination on the basis of gender identity, which this court vacated. Pls.' Br. at 18–19.  Plaintiffs are incorrect.  Both district courts that issued preliminary injunctions against the 2020 Rule explicitly recognized that they had "no power to revive [provisions] vacated by another district court."  *Walker*, 480 F. Supp. 3d at 427; *Whitman-Walker Clinic*, 485 F. Supp. 3d at 26 (explaining that the court was "powerless to revive" provisions that this Court had vacated).  Accordingly, the preliminary injunctions against the 2020 Rule did not affect this Court's vacatur of the 2016 Rule "insofar as [it] define[d] 'on the basis of sex' to include gender identity."  Order at 2, ECF No. 182 (quotation marks omitted).  Moreover, although the preliminary injunctions against the 2020 Rule revived the 2016 Rule's prohibition of discrimination on the basis of sex stereotyping, Plaintiffs did not challenge the sex-stereotyping provision in their amended complaint and thus cannot seek relief against that provision at this late stage.  *See generally* Am. Compl.; *see also* Order at 2, ECF No. 182 (vacating "the portions of the [2016] Rule that Plaintiffs challenged," "[s]pecifically," the portions of the rule defining "'*On the basis of sex'* to include gender identity and termination of pregnancy").  In addition, plaintiffs have not

19

demonstrated that HHS has brought or threatened any enforcement activity against a religious entity based on the sex stereotyping provision.

Nor can Plaintiffs make out any credible claim that they require an injunction to avoid being forced to either provide or insure for abortion services. This Court vacated the former definition of "on the basis of sex" insofar as it includes "termination of pregnancy." Order at 2, ECF No. 182. That definition has also been repealed formally repealed, *see* 86 Fed. Reg. at 37,244, and no court has enjoined that change in the 2020 Rule. Moreover, HHS made clear in its recent notice regarding Section 1557 that OCR would comply with all legal requirements when enforcing the statute, *see* 85 Fed. Reg. at 27,985, which necessarily includes conscience protections that proscribe HHS from requiring the performance or coverage of abortion services as a condition for receiving federal funds, *id*.

Similarly insufficient to obtain injunctive relief is Plaintiffs' assertion that they are currently suffering irreparable harm because, according to Plaintiffs, "they must choose between their religious beliefs and millions of dollars of federal funding critical for them to serve the needy." Pls.' Br. at 20–21. HHS has not taken a position on whether religious healthcare providers are required to provide gender-transition procedures, and plaintiffs' subjective fears are "not a sufficient basis for an injunction absent a real and immediate threat of future injury." *Lyons*, 461 U.S. at 107 n.8. Moreover, under HHS's enforcement framework, Plaintiffs are "several steps removed from any termination of their federal funding." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1128 (9th Cir. 2009) (holding that case was not ripe where HHS had not threatened enforcement action against plaintiffs). Before Plaintiffs' funding could be terminated, "there must be an effort to achieve informal or voluntary compliance, and administrative hearing, and notice to congressional committees," and "[j]udicial review of any

20

funding termination is available in an Article III court." *Id.*; *see also id.* at 1119; 45 C.F.R. § 92.5; 45 C.F.R. § 80.7; 45 C.F.R. § 80.8.  Plaintiffs' hypothetical future harm is not certainly impending and therefore insufficient for further relief.  *Clapper*, 568 U.S. at 416, 418.

*     *     *

For all these reasons, this Court was correct to deny Plaintiffs' request for injunctive relief in the first place.  Defendants will, of course, continue to abide by this Court's prior orders, and Plaintiffs may return to court by filing another suit if they have reason to challenge any future concrete, final agency action based in Section 1557.  But the Court should decline Plaintiffs' request for an injunction limiting HHS's interpretation of Section 1557, which would have no meaningful practical effect independent of the Court's vacatur, except to improperly bind HHS's hands in the future, based on speculation about how the agency may (or may not) enforce the statute going forward.[3]

<h2 style="text-align: center;">CONCLUSION</h2>

For the foregoing reasons, the Court should deny Plaintiffs' request for an injunction.

Dated:   June 4, 2021                    Respectfully Submitted,

                                         BRIAN M. BOYNTON
                                         Acting Assistant Attorney General

                                         MICHELLE BENNETT
                                         Assistant Branch Director, Federal Programs
                                         Branch

                                         */s/ Bradley P. Humphreys*
                                         BRADLEY P. HUMPHREYS

---

[3] An injunction is not warranted for the reasons discussed herein.  If the Court does enter an injunction, however, Defendants respectfully ask that the Court require Plaintiffs to provide a means for HHS to identify the entities that are covered by such an injunction, or to otherwise provide a mechanism for HHS to avoid the possibility of unknowingly violating any injunction. Plaintiff Christian Medical & Dental Society seeks relief on behalf of itself and its members, who number nearly 20,000, according to Plaintiffs.  Plaintiffs have not provided Defendants or the Court with a list of that association's members.

Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C. 20005
Telephone: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*