**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*,<br><br>　　　*Plaintiffs*,<br><br>v.<br><br>XAVIER BECERRA, *et al.*,<br><br>　　　*Defendants*. | No. 7:16-CV-00108-O<br><br><br>PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF ON REMAND |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION .................................................................................................. 1

ARGUMENT ....................................................................................................... 3

   I.  Plaintiffs' claim for injunctive relief is justiciable. ........................................ 3

   II. Plaintiffs are entitled to an injunction. ........................................................ 11

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Associated Gen. Contractors of Am. v. City of Columbus*,
  172 F.3d 411 (6th Cir. 1999) ................................................................ 20

*Bates v. Johnson*,
  901 F.2d 1424 (7th Cir. 1990) ........................................................ 14, 15

*Brackeen v. Haaland*,
  994 F.3d 249 (5th Cir. 2021) ............................................................ 12-13

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ........................................................................ 3, 16

*Carter v. Diamondback Golf Club, Inc.*,
  222 F. App'x 929 (11th Cir. 2007) ........................................................ 13

*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) .............................................................. 17

*Commodity Futures Trading Comm'n v. Schor*,
  478 U.S. 833 (1986) ........................................................................... 8

*DeOtte v. Azar*,
  393 F. Supp. 3d 490 (N.D. Tex. 2019) ............................................... 5, 10

*DHS v. New York*,
  140 S. Ct. 599 (2020) ........................................................................ 20

*Dierlam v. Trump*,
  977 F.3d 471 (5th Cir. 2020) ................................................................ 3

*Dobson v. Azar*,
  No. 13-3326, 2019 WL 9513153 (D. Colo. Mar. 26, 2019) ....................... 8

*Franciscan Alliance, Inc. v. Azar*,
  No. 20-10093 (5th Cir. Apr. 12, 2021) .................................................. 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ........................................................................... 13

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) ............................................................... 17

*John Doe #1 v. Veneman*,
   380 F.3d 807 (5th Cir. 2004) .................................................................... 16-17

*Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   791 F.2d 548 (7th Cir. 1986) ....................................................................... 13

*Koenning v. Janek*,
   539 F. App'x 353 (5th Cir. 2013) ................................................................. 15

*Martinez v. Deaf Smith Cnty. Grain Processors, Inc.*,
   583 F. Supp. 1200 (N.D. Tex. 1984) ............................................................ 13

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .............................................................................. 18, 19

*Monsanto. Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) .................................................................................... 18

*Mungin v. Fla. E. Coast Ry. Co.*,
   416 F.2d 1169 (5th Cir. 1969) ..................................................................... 13

*N. Arapaho Tribe v. Ashe*,
   925 F. Supp. 2d 1206 (D. Wyo. 2012) ........................................................... 19

*Ne. Fla. Chapter of Associated Gen. Contractors of Am. v.
   City of Jacksonville*,
   508 U.S. 656 (1993) ................................................................................. 4, 6

*ODonnell v. Harris Cnty.*,
   892 F.3d 147 (5th Cir. 2018) ....................................................................... 16

*Opulent Life Church v. City of Holly Springs*,
   697 F.3d 279 (5th Cir. 2012) ............................................................... 4, 6, 10

*Peterson v. Bell Helicopter Textron, Inc.*,
   806 F.3d 335 (5th Cir. 2015) ....................................................................... 14

*Portillo v. Cunningham*,
   872 F.3d 728 (5th Cir. 2017) ....................................................................... 14

*C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*,
   No. 20-6145, 2021 WL 1758896 (W.D. Wash. May 4, 2021) ................................... 5

*Religious Sisters of Mercy v. Azar*,
   Nos. 16-386 & 16-432, 2021 WL 191009 (D.N.D. Jan. 19, 2021).................*passim*

*Religious Sisters of Mercy v. Becerra,*
    No. 21-1890 (8th Cir. June 16, 2021)................................................ 8

*Roark & Hardee LP v. City of Austin,*
    522 F.3d 533 (5th Cir. 2008) ............................................. 10

*Sannon v. United States,*
    631 F.2d 1247 (5th Cir. 1980) ..............................................5-6

*Sapp v. Renfroe,*
    511 F.2d 172 (5th Cir. 1975) ............................................. 13

*SEC v. Life Partners Holdings, Inc.,*
    854 F.3d 765 (5th Cir. 2017) ............................................. 12

*Sharpe Holdings, Inc. v. HHS,*
    No. 12-92, 2018 WL 1520031 (E.D. Mo. Mar. 28, 2018)......................... 8

*Sossamon v. Lone Star State of Tex.,*
    560 F.3d 316 (5th Cir. 2009) ............................................. 6

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ....................................... 3, 6, 9, 18

*Tanzin v. Tanvir,*
    141 S. Ct. 486 (2020) ............................................. 16

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ............................................. 9

*Texas v. United States,*
    497 F.3d 491 (5th Cir. 2007) ............................................. 10

*Walker v. Azar,*
    480 F. Supp. 3d 417 (E.D.N.Y. 2020)...............................*passim*

*Whitman-Walker Clinic, Inc. v. HHS,*
    485 F. Supp. 3d 1 (D.D.C. 2020) ...............................*passim*

*Younger v. Harris,*
    401 U.S. 37 (1971) ............................................. 20

**Statutes**

5 U.S.C. § 551.............................................................. 16

5 U.S.C. § 702.............................................................. 16, 19

5 U.S.C. § 704 ........................................................................................................ 19

42 U.S.C. § 2000bb-1 ....................................................................................... 16, 19

**Other Authorities**

81 Fed. Reg. 31,376 (May 18, 2016) ........................................................... 4, 11

86 Fed. Reg. 27,984 (May 25, 2021) .................................................................. 4

Fed. R. Civ. P. 54 ............................................................................................. 2, 13

Mila Sohoni, *The Power to Vacate a Rule*,
   88 Geo. Wash. L. Rev. 1121 (2020) ...................................................... 16

Wright & Miller, *Federal Practice & Procedure* § 2662 (4th ed. 2014) ...................... 14

**INTRODUCTION**

Plaintiffs are entitled to an injunction. They prevailed on their RFRA claim and satisfy all four factors for an injunction. An injunction has been granted in *every* case in which the Supreme Court or Fifth Circuit has found a meritorious RFRA claim, in at least twenty cases involving the analogous contraceptive mandate, and in the *Sisters of Mercy* case involving the same issue presented here. The proper course is to follow these decisions and grant an injunction.

Defendants don't seriously dispute these basic points. Indeed, they don't cite a single case—from any jurisdiction, anywhere, ever—denying an injunction after finding a meritorious RFRA claim. Instead, they offer a hodgepodge of justiciability arguments, each lacking merit.

First, HHS claims the case is "moot" because the 2016 Rule has been vacated and replaced with the 2020 Rule. But swapping rules has changed nothing. The 2020 Rule, under HHS's view of *Bostock*, imposes *the same RFRA-violating burden* as the 2016 Rule did. And in any event, two courts have revived the offending parts of the 2016 Rule, and HHS now interprets *Section 1557 itself*—regardless of the operative rule—to impose the same burden. Thus, Plaintiffs face the same injury today as when this case was filed. Indeed, even the ACLU admits the case isn't moot.

Alternatively, HHS claims Plaintiffs' injury is "speculative" and therefore unripe. But this is the same ripeness argument HHS made and this Court rejected in 2016—and it hasn't improved with age. Plaintiffs face the same hardship today that this Court recognized in 2016: the "impossible choice" of "intentionally defying" HHS's interpretation of Section 1557—and accruing daily-increasing, multimillion dollar penalties—or else "forgoing specific conduct they believe is constitutionally protected." ECF 62 at 23. As in 2016, HHS "refuse[s] to indicate" whether Plaintiffs are protected by RFRA (*id.* at 21)—and refused to answer the Fifth Circuit's pointed questions on this score at oral argument. Br. 21 ("[Q.] Are you able to tell us that … you're

1

not going to enforce? [A.] No your honor."). HHS has even told this Court that if it enters an injunction, it should require Plaintiffs to provide "a list of [their] members" so that HHS won't "unknowingly violat[e]" the injunction by enforcing Section 1557 against them. HHS Br. 21 n.3. This is a straightforward admission that Plaintiffs face a threat of enforcement absent an injunction.

ACLU's arguments fare no better. First, they claim this Court can't enjoin HHS's enforcement of Section 1557 because Plaintiffs challenged only the 2016 Rule, not enforcement of Section 1557. But this is incorrect. Both times Plaintiffs moved for summary judgment, they requested an injunction not only barring application of the 2016 Rule, but also barring HHS from "*[c]onstruing Section 1557*" to force them to violate their religious beliefs. Br. 24. And even if Plaintiffs hadn't asked for it, Rule 54(c) instructs the Court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

Alternatively, ACLU offers several strained arguments not joined by HHS—claiming that Plaintiffs are already protected by a declaratory judgment, that the APA's waiver of sovereign immunity doesn't apply, or that an injunction would improperly restrict HHS from passing new regulations. But these arguments fail, too: there is no declaratory judgment protecting Plaintiffs; the APA's waiver of sovereign immunity is irrelevant to Plaintiffs' RFRA claim; and an injunction here would merely protect Plaintiffs, leaving HHS free to promulgate any rules it wants.

The bottom line is that, due to developments postdating this Court's vacatur, Plaintiffs face the same legal quandary they faced when this lawsuit began: HHS interprets Section 1557 to require Plaintiffs to perform and insure gender transitions and abortions in violation of conscience on pain of massive, mounting financial penalties. The Court has already held that this interpretation of Section 1557 violates RFRA. In these circumstances, RFRA requires an injunction.

## ARGUMENT

Having prevailed on their RFRA claim, Plaintiffs are "entitled to an exemption" from HHS's religion-burdening conduct. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694-95 (2014). Here, that means a plaintiff-specific injunction prohibiting HHS from applying Section 1557 to force them to perform or insure gender transitions or abortions. ECF No. 200-2. Neither HHS nor ACLU has shown otherwise.

## I.   Plaintiffs' claim for injunctive relief is justiciable.

**1.** HHS's lead argument is that Plaintiffs' injunction claim is "moot" because this Court vacated the 2016 Rule in part and HHS promulgated the 2020 Rule. ECF No. 202 ("HHS Br.") at 11-15. But HHS is wrong. As the *Sisters of Mercy* court explained in rejecting the same argument: neither this Court's "vacatur of the 2016 Rule [nor] the ensuing promulgation of the 2020 Rule" fully "cured … Plaintiffs' injuries." *Religious Sisters of Mercy v. Azar*, Nos. 16-386 & 16-432, 2021 WL 191009, at *15 (D.N.D. Jan. 19, 2021).

A claim becomes moot only "[i]f an intervening event renders the court unable to grant the litigant 'any effectual relief whatever.'" *Dierlam v. Trump*, 977 F.3d 471, 476-77 (5th Cir. 2020); ECF No. 200 ("Br.") at 22. Here, there is plainly relief the Court still could grant—the injunction Plaintiffs seek now. And that relief would be effectual notwithstanding the Court's partial vacatur of the 2016 Rule, since it would prevent HHS from imposing the same RFRA-violating *burden*—the requirement that Plaintiffs perform and insure gender transitions and abortions or else face penalties under Section 1557—by other *means*—including the 2020 Rule, the 2016 Rule as revived by other courts, or Section 1557 itself. Br. 14-23.

"Voluntary-cessation" principles demonstrate the same point. Br. 23. A defendant's post-litigation "cessation" of conduct doesn't moot a case unless the defendant shows it is "absolutely clear" that its challenged conduct "could not be reasonably expected to recur." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020).

Here, not only has the Government failed to make that showing; its challenged conduct *hasn't even ceased*. Indeed, despite five years of litigation, a successful RFRA claim, a new rulemaking, and two new Administrations, the legal situation Plaintiffs face today remains the same as the day they sued. At that time, HHS had promulgated a formal interpretation of Section 1557 (the 2016 Rule) in which it:

(a) defined "sex" discrimination under Section 1557 to include discrimination based on "gender identity," 81 Fed. Reg. 31,376, 31,467 (May 18, 2016), while

(b) promising in general terms to enforce this interpretation consistent with RFRA, *id.* at 31,466 ("Insofar as the application of any requirement under this part would violate applicable Federal statutory protections for religious freedom and conscience, such application shall not be required.").

Today, HHS has again promulgated a formal interpretation of Section 1557 (the Notification of Interpretation) that:

(a) defines "sex" discrimination under Section 1557 to include discrimination based on "gender identity," 86 Fed. Reg. 27,984, 27,984 (May 25, 2021), while

(b) promising in general terms to enforce this interpretation consistent with RFRA, *id.* at 27,985 ("In enforcing Section 1557, … OCR will comply with the Religious Freedom Restoration Act … and all other legal requirements.").[1]

Thus, Plaintiffs' claims are just as justiciable today as the day they were filed. A defendant can't "moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). Here, HHS's current understanding of section 1557 doesn't differ in *any* respect. And because that understanding of Section 1557 "disadvantages [Plaintiffs] in the same fundamental way" as did the 2016 Rule, "[t]his is an *a fortiori* case": Plaintiffs' claims aren't moot. *Id.* at 662-63; *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 286 (5th Cir. 2012).

---

[1]   Plaintiffs initially cited the Notification of Interpretation as it appeared on HHS's website. *See* Br. 8 n.4. The Notification has since been published in the Federal Register.

That is especially so since even *before* the Notice of Interpretation, Plaintiffs *already* continued to face "a credible threat of enforcement for refusal to provide or insure gender-transition procedures," given the 2020 Rule's interaction with *Bostock* and the *Walker* and *Whitman-Walker* courts' revival of the 2016 Rule. *Sisters of Mercy*, 2021 WL 191009, at \*12, 14-15. And the threat is made all the more concrete by the fact that other courts have continued to interpret the prohibition on "gender identity" discrimination under Section 1557 to mean that covered entities can be punished for refusing to perform or insure gender-transition procedures—even when administering a Catholic organization's health plan. Br. 16 (citing *C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, No. 20-6145, 2021 WL 1758896, at \*1-2, 4-5 (W.D. Wash. May 4, 2021)).

Finally, as we've explained, the contraceptive-mandate cases confirm that Plaintiffs' claims aren't moot. In the contraceptive-mandate cases, as here, HHS violated RFRA by mandating the coverage of religiously objectionable services. There, as here, it attempted to remedy that violation by promulgating new regulations purporting to lift the unlawful burden. Br. 24; *DeOtte v. Azar*, 393 F. Supp. 3d 490, 495-98 (N.D. Tex. 2019). And there, as here, the new regulations were themselves enjoined by multiple district courts. Br. 24. In response, at least 17 courts—this one included—found that challenges to the original mandate remained justiciable. *Id.* & n.10. And every one of those courts entered permanent injunctions analogous to the one Plaintiffs seek here. *Id.*; *see also id.* at 11 n.6.

Defendants have little to say about any of this. For its part, ACLU concedes Plaintiffs' injunction claim isn't moot. ECF No. 201 ("ACLU Br.") at 11. HHS, meanwhile, offers several scattershot counterarguments, all meritless.

First, HHS cites various cases for the general proposition that "'newly promulgated regulations … can have the effect of mooting'" a "challenge[]" to the previous regulations. HHS Br. 11-12 (quoting *Sannon v. United States*, 631 F.2d 1247, 1250-

51 (5th Cir. 1980)). Of course. But this anodyne proposition is beside the point here, where Plaintiffs are "challenging" not only the 2016 Rule but also HHS's act of imposing the same RFRA-violating burden by other regulatory means. And in any event, none of these cases addressed a situation like this one, where the prior unlawful regulation has been revived by other courts, where the "newly promulgated regulation[]" imposes the *same* unlawful burden as did the one it purported to replace, and where the agency has issued a "Notification" formally reinstating the substance of the allegedly replaced rule. Facts like these are governed by the squarely analogous contraceptive-mandate cases and the voluntary-cessation doctrine, not high-level platitudes invoked by HHS.

Next, HHS claims that as a "public entity," it should get "solicitude" on the question whether its actions are "'mere litigation posturing' that implicate the 'voluntary cessation' doctrine." HHS Br. 14 (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009)). But Plaintiffs' argument isn't that the 2020 Rule was "litigation posturing"; our argument is that (whatever HHS's intent in promulgating it) the 2020 Rule—in light of *Bostock*, the *Walker* and *Whitman-Walker* injunctions, and the Notification of Interpretation—didn't fix the problem. "Even applying 'some solicitude,'" "partial voluntary cessation does not moot" a case, *Speech First*, 979 F.3d at 328 (quoting *Sossamon*, 560 F.3d at 325)—much less (as here) no cessation at all.

HHS likewise fails to distinguish *City of Jacksonville* and *Opulent Life Church*. HHS says that there, "the defendant unilaterally ceased an action that it can easily resume later," HHS Br. 14, but this misses the point of those cases. The issue in those cases wasn't whether there was a "mere risk that [the defendants would] repeat its allegedly wrongful conduct"; it was that they had "already done so," making it especially easy to conclude that the cases weren't moot. *City of Jacksonville*, 508 U.S. at 662; *accord Opulent Life Church*, 697 F.3d at 285-86. The same is true here. Indeed, HHS has admitted as much in other litigation, stating that "efforts to apply Section

1557 to prohibit "gender identity" and "termination of pregnancy" discrimination are "*more likely* to bear fruit under the 2020 Rule than under the 2016 Rule.'" Br. 17, 23 (quoting HHS). And despite our emphasis on this admission in our opening brief (*id.*), HHS simply ignores it.[2]

Turning to the contraceptive-mandate cases, HHS says this case is different because here, the 2016 Rule has not only been replaced by HHS (as with the original contraceptive-mandate regulations) but also vacated by this Court. HHS Br. 15. But the analogy to the contraceptive-mandate cases isn't based on the *means* by which the various RFRA-violating regulations initially went away (whether by vacatur, injunction, or issuance of a new rule); it turns on the fact that—in both contexts—other courts purported to *bring them back*, triggering the need for more relief. And here, notwithstanding this Court's vacatur, that is exactly what the *Walker* and *Whitman-Walker* courts have purported to do.

Although both courts purported to disclaim the "power to revive" already-vacated provisions, *Walker v. Azar*, 480 F. Supp. 3d 417, 427 (E.D.N.Y. 2020); *see also Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 60 (D.D.C. 2020), they nonetheless went on to expressly restore portions of the 2016 Rule prohibiting "gender identity" discrimination. *Walker* enjoined the 2020 Rule's "repeal of the 2016 definition of discrimination on the basis of sex," such that, "as a result," the 2016 Rule's "definitions of 'on the basis of sex,' 'gender identity,' and 'sex stereotyping'" "*remain in effect.*" 480 F. Supp. at 430 (emphasis added). And *Whitman-Walker* revived the 2016 Rule's definition of "sex" discrimination to include "sex stereotyping"—which, it reasoned, would also prohibit "gender identity" discrimination, since the latter "often cannot be

---

[2]   HHS also fails to explain how its actions here—replacing the 2016 Rule with the 2020 Rule via rulemaking, and then promulgating the Notification of Interpretation via website update and press release (without notice and comment)—are any less "unilateral" than the actions at issue in *City of Jacksonville* and *Opulent Life Church*.

meaningfully separated from" the former. 485 F. Supp. 3d at 26-27, 38, 64.

Neither HHS nor ACLU offers any alternative understanding of this language other than as meaning what it says—that notwithstanding this Court's vacatur and the promulgation of the 2020 Rule, portions of the 2016 Rule prohibiting "gender identity" discrimination have been "judicially restored." *Sisters of Mercy*, 2021 WL 191009, at *16. In fact, in its brief in the Eighth Circuit appeal in *Sisters of Mercy*, HHS concedes as much, stating that "the preliminary injunctions against the 2020 Rule *revived* the 2016 Rule's prohibition of discrimination on the basis of sex stereotyping." Brief for Appellants at 26, *Religious Sisters of Mercy v. Becerra*, No. 21-1890, (8th Cir. June 16, 2021) (emphasis added). So *DeOtte* and the other contraceptive-mandate cases were indeed in a "similar posture." *Sisters of Mercy*, 2021 WL 191009, at *16.

Nor does HHS's alternative distinction of the contraceptive-mandate cases—that there, "the government largely *consented* to injunctions," HHS Br. 15—undercut the analogy. "[P]arties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III," *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 851 (1986), so if there was a mootness issue in those cases, HHS's consent wouldn't have solved it. And in fact, many of the decisions addressed the issue, concluding that "[g]iven the uncertainty presented by the legal challenges" to the new regulations, "a permanent injunction is proper." *Dobson v. Azar*, No. 13-3326, 2019 WL 9513153, at *3-4 (D. Colo. Mar. 26, 2019); *see also, e.g.*, *Sharpe Holdings, Inc. v. HHS*, No. 12-92, 2018 WL 1520031, at *2 (E.D. Mo. Mar. 28, 2018). So too here.

Finally, HHS doesn't even attempt to distinguish *Sisters of Mercy*—squarely on-point authority rejecting each of HHS's arguments. Instead HHS notes only that "the government has appealed that decision to the Eighth Circuit." HHS Br. 15; *accord* ACLU Br. 15 n.3, 21-22. But HHS makes no effort to explain why it thinks *Sisters of*

*Mercy* was wrong. And the fact that HHS is forced to ask this Court simply to ignore squarely on-point precedent only drives home the point: Plaintiffs' claim isn't moot.

**2.** Lacking a compelling mootness argument, HHS switches justiciability grounds, arguing that Plaintiffs "lack standing" to seek relief against applications of Section 1557 in light of post-litigation developments, or, alternatively, that their injunction claim is not "ripe." HHS Br. 15-21. HHS is wrong on both counts.

HHS's standing argument is a category error. In assessing standing (unlike mootness), "courts look exclusively to the time of filing." *Texas v. EEOC*, 933 F.3d 433, 448 (5th Cir. 2019). And this Court already held (in a ruling no party appealed) that Plaintiffs had standing. ECF No. 62 at 15-20; *see* ECF No. 175 at 16-17. In any event, Plaintiffs would continue to have standing today even if it were assessed under current facts. Their "intended" religious exercise is at least "'arguably … proscribed by" Section 1557, given the 2020 Rule read in light of *Bostock*; the *Walker* and *Whitman-Walker* injunctions; and the Notification of Interpretation. *Speech First*, 979 F.3d at 330. And Plaintiffs, as recipients of federal healthcare funding, were "covered by the allegedly" illegal requirement—giving them standing to sue "in the pre-enforcement context." *Id.* at 330-31, 336; *accord Sisters of Mercy*, 2021 WL 191009, at *14-17.

As for ripeness, if HHS's argument sounds familiar, it is because HHS made the same ripeness argument in virtually identical terms in 2016. ECF No. 50 at 23-25. This Court rightly rejected it, concluding that "the case is … ripe" because HHS's interpretation of Section 1557 "clearly prohibits" Plaintiffs' conduct, thus putting them to the "impossible choice" of either "defying federal law" and risking "serious financial and civil penalties," or else violating their religious beliefs. ECF No. 62 at 20-24. HHS offers no reason why this Court's decision on ripeness was erroneous. It simply pretends it never happened. But the Court's prior ruling was correct.

Even if this Court were to undertake the ripeness analysis anew, none of HHS's arguments warrant a contrary result. In assessing ripeness, the Court "must evaluate

(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007). Here, both prongs cut in favor of Plaintiffs' claims being ripe.

First, a claim is fit for judicial resolution if the "remaining questions are purely legal." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (cleaned up). Here, the only remaining question—whether Plaintiffs are entitled to an injunction—follows as a "matter of law" from Plaintiffs' successful RFRA claim, as Plaintiffs explained at length. Br. 9-11 (quoting *Opulent Life Church*, 697 F.3d at 294-96); *see DeOtte*, 393 F. Supp. 3d at 511-12 ("Having succeeded on their RFRA claims, Plaintiffs easily satisfy the permanent-injunction factors, which largely mirror the RFRA analysis itself."). Therefore, "[b]ecause the present case involves primarily questions of law" and "would not be significantly aided by further factual development," the first factor is satisfied. ECF No. 62 at 21.

Second, Plaintiffs will suffer hardship if the Court doesn't adjudicate their injunction claim now. For one thing, Plaintiffs have already dealt with five years of uncertainty about whether they can continue to carry out their missions, care for their patients, and insure their employees consistent with their religious beliefs. Requiring them to continue to bear that "risk" constitutes "[p]ractical harm." *Sisters of Mercy*, 2021 WL 191009, at *20. As before, "Plaintiffs should not be forced to choose between forgoing conduct they believe is protected or risking substantial sanctions and liability." ECF No. 62 at 22. Moreover, as Plaintiffs have already explained, their exposure to Section 1557 liability isn't static but *increasing*, given their ongoing need to certify compliance, Br. 13—meaning further delay threatens even greater financial harm.

HHS counters by pointing out that the Notification of Interpretation says HHS "will comply with RFRA in enforcing Section 1557." HHS Br. 18; *see also id.* at 9-10. But again, this Court already rejected this *precise* ripeness argument in 2016 when

HHS pointed to materially identical platitudes about statutory protections for religious freedom in the 2016 Rule. *See* Br. 22; *supra* at 4 (quoting 81 Fed. Reg. at 31,466). As this Court said at the time, "Defendants refuse to indicate whether" the RFRA defense would *actually succeed*; and "even assuming that Private Plaintiffs" might "eventually find safe harbor," the "impossible choice" they face in the meantime "constitutes substantial hardship." ECF No. 62 at 21-24. HHS has offered no reason for the Court to depart from this analysis, and the *Sisters of Mercy* court recently followed it. *See* 2021 WL 191009, at *16 ("Simply repeating what [RFRA] already commands does not diminish the possibility that HHS will review [plaintiffs'] 'individualized and fact specific' RFRA concerns and then decide to pursue enforcement anyway.").

Indeed, during oral argument in the Fifth Circuit, HHS pointedly refused to disavow enforcement against the Plaintiffs: "[Q.] Are you able to tell us that … you're not going to enforce? [A.] No your honor." Oral Arg. at 15:46-19:27 (No. 20-10093). And its brief on remand only underscores the threat of enforcement. Specifically, HHS requests that "if the Court does enter an injunction," it should "require Plaintiffs" to provide a "list of [CMDA's] members," so HHS doesn't "unknowingly violat[e] [the] injunction" by enforcing Section 1557 against them. HHS Br. 21 n.3. But if HHS worries that it will unwittingly enforce Section 1557 against CMDA's members in *violation* of an injunction, then CMDA's members obviously face a serious threat of enforcement *absent* an injunction. In other words, this is a straightforward admission that CMDA's members face a credible threat of enforcement.

## II. Plaintiffs are entitled to an injunction.

**1.** With justiciability settled, Plaintiffs are entitled to the injunction they seek. The traditional injunctive-relief factors are satisfied. Br. 9-14. And there is not only a "'reasonable likelihood'" that HHS's will reimpose the same RFRA-violating requirement Plaintiffs brought this suit to challenge—it has *already done so*, given the 2020 Rule's adoption of *Bostock*, the *Walker* and *Whitman-Walker* injunctions, and

11

the Notification of Interpretation. *Id.* at 15-21 (quoting *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017)). Thus, as in the contraceptive-mandate cases and *Sisters of Mercy*, the proper relief is a permanent injunction—one preventing HHS from applying not just the 2016 Rule, but also Section 1557, to impose on Plaintiffs the requirement that they perform and insure gender transitions and abortions. Br. 16-17.

**2.** Lacking any serious argument why Plaintiffs aren't entitled to this relief on the merits, HHS and ACLU argue primarily that Plaintiffs failed to ask for it. HHS Br. 12; ACLU Br. 12-15. But Plaintiffs' complaint identified the substantial burden on their religious exercise as resulting from HHS's attempt to "forc[e] them to choose between federal funding and their livelihood as healthcare providers and their exercise of religion"—not from the particular words on the page of the 2016 Rule. ECF No. 21 ¶314; *see also* ECF No. 136 at 36-37. The complaint requested all relief that is "equitable and just"—language broad enough to include the injunction they seek now. ECF No. 21 at 85 ¶(m). And in moving for summary judgment, Plaintiffs twice requested an injunction not simply against the 2016 Rule, but specifically barring HHS from "*[c]onstruing Section 1557* to require [them] to provide medical services or insurance coverage … in violation of their religious beliefs"—the same injunction they seek today. ECF 135-1 at 4 ¶(f); ECF 82-2 at 3 ¶(f) (same); Br. 24-25 (emphasis added).

Unable to dispute this fact, HHS tries to downplay it, saying these requests are "too thin a reed" to preserve their claim. HHS Br. 13. But HHS cites no authority for this proposition, and there is none. There is no better place to ask for a particular form of injunctive relief than to include it in the filing whose sole purpose is to identify with precision the relief the plaintiff wants the court to grant.

Falling back, ACLU suggests that the proposed injunction language doesn't suffice because elsewhere in the lawsuit Plaintiffs stressed the 2016 Rule or could have done more to stress the statute. ACLU Br. 12-15 (citing *Brackeen v. Haaland*, 994 F.3d

12

249, 267 (5th Cir. 2021)). But it's no surprise that in arguing the merits, Plaintiffs focused attention on the specific *mechanism* by which HHS was at the time burdening their rights. Nothing about that is inconsistent with Plaintiffs then asking, at the remedy stage, for the Court both to "abate[] that conduct *and* prevent[] its recurrence." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185-86 (2000) (emphasis added). Indeed, the surprising result (and the one both unprecedented and potentially devastating for religious liberty) would be if, after losing a RFRA case on the merits, the Government could then turn around and reimpose the exact same substantial burden on a plaintiff's religious exercise through a slightly different means.

In any event, even if Plaintiffs hadn't initially requested injunctive relief, they would still be entitled to it under Rule 54(c), which instructs courts to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). This rule "has been construed liberally," *Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975), "leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved," including "injunctive relief when appropriate, and even when not specifically requested." *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 559 (7th Cir. 1986) (cleaned up) (collecting cases); *see, e.g.*, *Mungin v. Fla. E. Coast Ry. Co.*, 416 F.2d 1169, 1175 (5th Cir. 1969) (trial court can grant "further relief," including an injunction, even when the complaint requested only a "money award"); *Carter v. Diamondback Golf Club, Inc.*, 222 F. App'x 929, 932 (11th Cir. 2007); *Martinez v. Deaf Smith Cnty. Grain Processors, Inc.*, 583 F. Supp. 1200, 1211 n.5 (N.D. Tex. 1984) (granting unpled injunctive relief).

HHS simply ignores this rule. And though ACLU says Rule 54(c) doesn't apply if it "would prejudice the opposing party," it offers nothing more than an *ipse dixit* that

Defendants "would be 'severely prejudiced.'" ACLU Br. 17. But as ACLU's own authority explains, prejudice under Rule 54(c) arises if the defendant lacked an "opportunity to challenge" the unpled relief. *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 n.4 (5th Cir. 2015) (quoting Wright & Miller, *Federal Practice & Procedure* § 2662 (4th ed. 2014)). And the Fifth Circuit has explained that when a district court permits counsel to "present[] … arguments" concerning the propriety of specific relief, and when a party "ha[s] every reason to expect that the court might" grant such relief, "there [is] no prejudice" under Rule 54(c). *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017).

Here, Defendants had ample opportunity to challenge Plaintiffs' entitlement to this injunction when Plaintiffs asked for it the first two times on summary judgment. But even if they neglected the opportunity then, the whole point of Plaintiffs' appeal, and the current proceedings on remand, is to secure this relief. Thus, Defendants have had every opportunity to "challenge" it, "present … arguments" about it, and "expect" it —which perhaps explains why the only party that would actually be subject to the supposedly unpled injunction (HHS) hasn't made any prejudice argument at all. *See id.*

**3.** Waiver aside, Defendants' other arguments likewise fail. First, ACLU argues an injunction is unnecessary because this Court "already granted Plaintiffs' request for a declaratory judgment" against the 2016 Rule. ACLU Br. 11. But this argument is confused on multiple levels. For one thing, this Court doesn't appear to have granted a declaratory judgment at all. "[T]he defendant is under no judicial compulsion" unless declaratory relief is "record[ed]" on the separate judgment document required by Rule 58. *Bates v. Johnson*, 901 F.2d 1424, 1428 (7th Cir. 1990). But here, nothing in the Rule 58 final judgment (ECF No. 176) or the later order modifying that judgment (ECF No. 182)—or, for that matter, even in the Court's summary-judgment

14

*opinion*, ECF No. 175—says anything about declaratory relief. It's therefore (at minimum) "uncertain[]" whether any such relief was granted at all. *Koenning v. Janek*, 539 F. App'x 353, 355 & n.2 (5th Cir. 2013) (citing *Bates*, 901 F.2d at 1428).[3]

Regardless, even assuming the Court *did* grant the declaratory judgment ACLU says it did, that wouldn't obviate the need for an injunction. According to ACLU, the supposed declaration would "protect[] Plaintiffs from any attempt to *enforce the 2016 Rule* regarding paying or providing for abortion and transition-related care." ACLU Br. 11 (emphasis added). But the point of Plaintiffs' appeal and supplemental briefing is that they are entitled to protection not just from the 2016 Rule, but also from other attempts to apply Section 1557 to achieve the same unlawful end—which the proposed injunction (but not ACLU's understanding of the alleged declaratory judgment) would provide.

More broadly, ACLU's argument would prove too much. If a declaratory judgment always sufficed to defeat a plaintiff's showing of a "likelihood of irreparable harm," *cf. id.*, then courts would never need to grant injunctions. Yet as Plaintiffs have explained, an injunction has been the remedy in *every* case in which the Supreme Court or Fifth Circuit has found a meritorious RFRA claim, in at least twenty cases in the analogous contraceptive-mandate context, and in the *Sisters of Mercy* decision involving the same issues as this case. Br. 10-13. If ACLU's declaratory-judgment argument were right, then all these courts got the remedy wrong.

---

[3]   At the Fifth Circuit, ACLU attempted to locate the alleged declaratory judgment in the following language from the final judgment: "The Court … now **HOLDS** that Nondiscrimination in Health Programs & Activities ('the Rule'), 81 Fed. Reg. 31376 (May 18, 2016), codified at 45 C.F.R. § 92, violates the APA and RFRA and enters this Final Judgment on those claims." ECF No. 176; *see* ACLU's 28(j) Resp., *Franciscan Alliance, Inc. v. Azar*, No. 20-10093 (5th Cir. Apr. 12, 2021). But as a matter of ordinary legal language, not every "hold[ing]" also constitutes a declaratory judgment. And if that language were indeed a declaratory judgment, then that would suggest HHS is barred from applying *all* of the 2016 Rule (not just the "gender identity" and "termination of pregnancy" portions) to *anyone* (not just Plaintiffs)—which isn't an effect that anyone (ACLU included) thinks the Court's judgment had. *Cf.* ACLU Br. 11.

**4.** Next, ACLU argues the scope of relief "is dictated by" the "violation established," which is a question of "substantive law." ACLU Br. 16 (quoting *ODonnell v. Harris Cnty.*, 892 F.3d 147, 155, 163 (5th Cir. 2018)). Plaintiffs agree—which is precisely why HHS's RFRA violation should result in an injunction. Plaintiffs have successfully asserted two distinct merits claims in this case—APA and RFRA. The APA provides a cause of action for plaintiffs to seek to "set aside" unlawful "agency action," 5 U.S.C. § 702—a term defined to include "the whole or a part of an agency rule," *id.* § 551(13). The nature of an APA violation, then, is the existence of the *ultra vires* rule itself—a violation the court normally remedies (as this Court properly did here) by vacating the rule or its unlawful portions. *See* ECF No. 175 at 21-23; *accord* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1133 (2020) (the APA "makes agency action the *object* of the court's review").

The nature of a RFRA violation, however, isn't the existence of any particular rule or statute, but government action imposing a "substantial[] burden" on religion. 42 U.S.C. § 2000bb-1(a). So the remedy is properly aimed at the *burden*—for example, damages to compensate the plaintiff for suffering it, *see Tanzin v. Tanvir*, 141 S. Ct. 486, 489-93 (2020), or a plaintiff-specific injunction to ensure that it isn't imposed at all, now or in the future, *see Hobby Lobby*, 573 U.S. at 694-95 (successful RFRA plaintiffs are "entitled to an exemption").

Unsurprisingly, then, neither HHS nor ACLU can muster a single case in the history of RFRA in which a court, having found a prospective RFRA violation on the merits, nonetheless declined to enter an injunction. And none of the cases Defendants try to offer as analogous—none of which are RFRA cases—suggest this case should break new ground.

ACLU cites *John Doe #1 v. Veneman*, but that case only proves our point: the Fifth Circuit reversed the district court's injunction as "exceed[ing] the scope of judicial review permitted under the APA," which is irrelevant under RFRA. 380 F.3d 807,

818-19 (5th Cir. 2004). Meanwhile, in *Chacon v. Granata* (HHS Br. 16-17), the defendant hadn't yet taken *any* action that "inflict[ed] … legal injury on the[] plaintiffs," 515 F.2d 922, 925 (5th Cir. 1975)—unlike here, where no one disputes that the 2016 Rule cognizably injured Plaintiffs, and where Plaintiffs' claim is precisely that (absent an injunction) the revived portions of the 2016 Rule, the 2020 Rule as read in light of *Bostock*, and the Notification of Interpretation will continue to injure them in the same way.

HHS's citation to *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016), is equally inapposite. There, the district court enjoined the defendant from bringing any enforcement action under any provision of Mississippi law against Google for "making accessible third-party content to internet users." *Id.* at 220. The *Google* court reversed, holding that given the "fact-intensive" nature of Google's claimed constitutional defense, it couldn't determine in advance whether the "fuzzily defined" government conduct the district court enjoined would in fact "necessarily violate the Constitution." *Id.* at 227-28. Here, by contrast, the HHS conduct Plaintiffs seek to enjoin is narrowly defined—application of one statute (Section 1557) to require Plaintiffs to perform or insure gender transitions and abortions. *See* ECF No. 200-2. And the only findings necessary to uphold Plaintiffs' RFRA defense to such conduct—Plaintiffs' sincere religious beliefs, the substantial burden imposed by the crippling penalties triggered under Section 1557, and the availability of other ways for HHS to foster access to such procedures besides conscripting religious objectors—have been definitively (and correctly) determined by this Court. *See* ECF No. 62 at 39-42; ECF No. 175 at 19-21.

Finally, both response briefs seek refuge in *Monsanto*, to no avail. HHS points out that this Court invoked *Monsanto* in denying injunctive relief on summary judgment, HHS Br. 5-6, relying on it for the proposition that an injunction on top of vacatur is

inappropriate if the injunction would have no "meaningful practical effect independent of" the vacatur, ECF 175 at 24-25 (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010)). But as Plaintiffs already explained, whatever relevance this proposition might have had to the question whether the Court should both vacate and issue an injunction against *the 2016 Rule alone*, it doesn't foreclose the injunctive relief Plaintiffs are actually seeking, which would run against any other attempt to apply Section 1557 to require them to perform or insure gender transitions. Br. 14-16. HHS offers no response.

For its part, ACLU (at 19) pivots to a *different* portion of *Monsanto*, in which the Court held that the district court had erred by enjoining the defendant agency from engaging in any future "partial deregulation" of certain alfalfa after concluding that the agency's decision to *completely* deregulate the alfalfa violated the APA. 561 U.S. at 158-64. The Court did so for two reasons: first, such a hypothetical partial deregulation would constitute a separate agency action under the APA, which any affected party could then challenge in a "new suit"; and second, depending on how the agency accomplished it, the hypothetical partial deregulation the district court enjoined might not "cause respondents any injury at all," since it could theoretically be limited to "a remote part of the country" irrelevant to them. *Id.* at 162-63.

That reasoning has no application here. First, the conduct Plaintiffs seek to enjoin isn't limited to a hypothetical future rulemaking interpreting Section 1557. Instead, Plaintiffs seek to enjoin HHS from *present* applications of *existing* law—including the 2020 Rule, the portions of the 2016 Rule revived in other litigation, and Section 1557 itself—all of which HHS can accomplish without any new rulemaking at all. Such a request for "pre-enforcement" relief against threatened applications of a statute is, of course, a legal commonplace—before and after *Monsanto*. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014); *see also, e.g.*, *Speech First*, 979 F.3d at 330-31.

18

Second, unlike in *Monsanto*, there is no scenario in which the conduct Plaintiffs seek to enjoin might not "cause [them] any injury." 561 U.S. at 162-63. As far as Plaintiffs' proposed injunction is concerned, HHS can take whatever "hypothetical future regulatory action" it wants with respect to the public at large. *Cf.* ACLU Br. 19. What it can't do under Plaintiffs' proposed injunction is apply Section 1557 to *them*, in a way that would require *them* to perform or insure gender transitions and abortions. Put differently, the only HHS conduct Plaintiffs seek to enjoin is conduct that *by definition* injures them, and the reach of the proposed injunction is limited to relieving that plaintiff-specific injury. *Monsanto* therefore is inapposite.

**5.** ACLU's remaining arguments are equally far afield. First, ACLU argues that because the APA's "waiver of sovereign immunity is limited to 'final agency action,'" Plaintiffs can't seek relief that would cover actions by HHS under Section 1557 other than the 2016 Rule. ACLU Br. 18-19.

But even assuming (as is doubtful) that this conclusion follows from the premise, ACLU omits that Plaintiffs are seeking an injunction here not under the APA but under RFRA. Again, while the APA provides a cause of action for persons "aggrieved by" certain "agency action[s]" to seek "judicial review," 5 U.S.C. § 702, RFRA includes its own cause-of-action provision, waiving sovereign immunity on different terms: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim … in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). That is, "RFRA provides Plaintiffs with a cause of action that is separate from the APA." *N. Arapaho Tribe v. Ashe*, 925 F. Supp. 2d 1206, 1211 (D. Wyo. 2012); *see also* ECF No. 175 at 17-18 n.6 (collecting cases "distinguishing APA claims and RFRA claims"); *cf.* 5 U.S.C. § 704 (APA applies only to actions "for which there is no other adequate remedy in a court"). So ACLU's lengthy excursion into the APA's "final agency action" requirement has no relevance to the resolution of Plaintiffs' claim—explaining why HHS has never raised

19

it, and why neither the contraceptive-mandate cases nor *Sisters of Mercy* saw need to address it *en route* to granting injunctions analogous to the one Plaintiffs seek here.

Finally, ACLU devotes a subsection of its response (at 20-22) to the Sixth Circuit's decision in *Associated General Contractors of America v. City of Columbus*, claiming the injunction Plaintiffs seek here is analogous to the one held there to be "beyond the power of a federal court to provide." 172 F.3d 411, 421 (6th Cir. 1999). But the injunction reversed by the Sixth Circuit in *City of Columbus* has nothing to do with the relief Plaintiffs seek. In *City of Columbus*, the district court entered an injunction requiring a city to "petition" it for pre-approval before adopting any future set-aside ordinances. *Id.* at 413. Unsurprisingly, the Sixth Circuit held that relief violated Article III, for the commonsense reason that courts typically don't exercise a "power of prior approval or veto over the legislative process." *Id.* at 415-19 (quoting *Younger v. Harris*, 401 U.S. 37, 53 (1971)).

Here, Plaintiffs don't seek an injunction requiring HHS to submit new proposed regulations to this Court for pre-approval. Indeed, *City of Columbus* itself expressly distinguished cases—like this one—"not involv[ing] the jurisdiction of the court to" "review and pre-approve the actions of a legislative body." 172 F.3d at 418-19. As already explained, Plaintiffs don't seek to enjoin HHS from enacting new regulations at all. What Plaintiffs seek is an order prohibiting HHS—whatever the operative rule—from applying Section 1557 to require *them* to perform or insure gender transitions or abortions. ECF No. 200-2. Far from the exotic injunction reversed in *City of Columbus*, that sort of tailored, plaintiff-specific relief is at the heart of a court's equitable authority. *See DHS v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring).

## CONCLUSION

The Court should enter a permanent injunction as set out in Plaintiffs' proposed injunction submitted at ECF No. 200.

Respectfully submitted.

*/s/ Luke W. Goodrich*
Luke W. Goodrich
DC Bar No. 977736
Eric C. Rassbach
Mark L. Rienzi
The Becket Fund for Religious Liberty
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
lgoodrich@becketlaw.org

*Counsel for Plaintiffs Christian Medical*
*& Dental Associations, Franciscan*
*Alliance, Inc., Specialty Physicians of*
*Illinois, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2021, I electronically filed the foregoing document through the Court's ECF system, which automatically serves notification of the filing on counsel for all parties.

*/s/ Luke W. Goodrich*
Luke W. Goodrich

21