## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **FRANCISCAN ALLIANCE, INC. et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:16-cv-00108-O** |
| | § | |
| **XAVIER BECERRA, Secretary of the** | § | |
| **United States Department of Health and** | § | |
| **Human Services; and UNITED STATES** | § | |
| **DEPARTMENT OF HEALTH AND** | § | |
| **HUMAN SERVICES,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN CIVIL LIBERTIES** | § | |
| **UNION OF TEXAS et al.,** | § | |
| | § | |
| **Intervenors.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Plaintiffs' Supplemental Brief on Remand (ECF No. 200), filed May 14, 2021; Intervenors' Memorandum of Law in Opposition to Plaintiffs' Supplemental Brief on Remand (ECF No. 201), filed June 4, 2021; Defendants' Supplemental Brief on Remand (ECF No. 202), filed June 4, 2021; and Plaintiffs' Supplemental Reply Brief on Remand (ECF No. 203), filed June 18, 2021. Having considered the motion, briefing, and applicable law, the Court **GRANTS** the motion.

## I.    BACKGROUND

Five years ago as part of the implementation of Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), the Department of Health & Human Services ("HHS") promulgated a rule

1

requiring medical providers to perform and insure abortions and gender-transition procedures[1] or face penalties for unlawful discrimination on the basis of "termination of pregnancy" and "gender identity," respectively. Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,467 (May 18, 2016) (formerly codified as 45 C.F.R. § 92.4 (2016)) (the "2016 Rule"); *see also* 20 U.S.C. § 1681 ("Title IX"). Already facing legal challenges,[2] a Catholic hospital association and a Christian healthcare professional association ("Christian Plaintiffs") objected to performing abortions and gender-transition procedures, which they view as harmful. Along with several states ("State Plaintiffs"), Christian Plaintiffs sued HHS to enjoin the enforcement of Section 1557 and the 2016 Rule in such a way that would violate their religious beliefs. Compl., ECF No. 1.

After a hearing, the Court concluded that it had jurisdiction over the dispute, that the 2016 Rule violated the APA by contradicting existing law and exceeding statutory authority, and that the 2016 Rule likely violated RFRA as applied to the Christian Plaintiffs. *See* Order, ECF No. 62. Accordingly, the Court granted a preliminary injunction, enjoining "Defendants from enforcing the [2016] Rule's prohibition against discrimination on the basis of gender identity or termination of pregnancy." Order 46, ECF No. 62. In light of an HHS notice of upcoming rulemaking proceedings addressing the 2016 Rule, the Court granted a stay of the case, retained jurisdiction, and maintained the full effect of its preliminary injunction in the interim. Order 10, ECF No. 108.

For sixteen months, the case remained stayed until the parties jointly requested the case be re-opened, which the Court allowed. *See* ECF Nos. 125, 126. In the former half of 2019, the parties

---

[1] As used in this order, the term "gender-transition procedures" includes surgery, counseling, provision of pharmaceuticals, or other treatments sought in furtherance of a gender transition.

[2] Beginning in 2015, transgender individuals began suing hospitals and other providers for declining to perform or cover transition procedures. *See, e.g.*, *Cruz v. Zucker*, 116 F. Supp. 3d 334 (S.D.N.Y. 2015).

fully briefed the Intervenors' Motion to Intervene (ECF No. 129) and both State Plaintiffs' and Christian Plaintiffs' Motions for Partial Summary Judgment and Permanent Injunction (ECF Nos. 132, 135), addressing their APA and RFRA claims only. The Court granted the motion to intervene; granted in part Plaintiffs' motions for summary judgment, finding the 2016 Rule violative of both the APA and RFRA; denied in part the motion, declining to grant a permanent injunction nationwide; and issued a final judgment to that effect. Mem. Op. 25, ECF No. 175; *see also* Final Judgment, ECF No. 176. Soon thereafter, the Court modified the Final Judgment to clarify that it vacated the 2016 Rule insofar as it defined "on the basis of sex" to include gender identity and termination of pregnancy. *See* Order, ECF No. 182. The Christian Plaintiffs appealed the denial of injunctive relief. Not. of Appeal, ECF No. 185.

While pending appeal, the landscape drastically shifted. HHS repealed the 2016 Rule and finalized a new rule in 2020. Nondiscrimination in Health and Health Education Programs or Activities, Delegation of Authority, 85 Fed. Reg. 37,160 (June 19, 2020) (the "2020 Rule"). The Supreme Court interpreted Title VII's prohibition of "sex discrimination" to include gender identity and sexual orientation in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020). Two district courts extended *Bostock*'s reasoning to Title IX as applied through Section 1557, entering injunctions modifying the 2020 Rule and purportedly restoring certain provision of the 2016 Rule. *See Walker v. Azar*, 480 F. Supp. 3d 417, 430 (E.D.N.Y. 2020) ("As a result [of the district court's injunction], the definitions of 'on the basis of sex,' 'gender identify,' and 'sex stereotyping' currently set forth in [the 2016 Rule] will remain in effect."); *Whitman-Walker Clinic, Inc. v. HHS*, 485 F. Supp. 3d 1, 64 (D.D.C. 2020) ("HHS will be preliminarily enjoined from enforcing the repeal of the 2016 Rule's definition of discrimination '[o]n the basis of sex' insofar as it includes 'discrimination on the basis of . . . sex stereotyping.'"). President Biden issued an executive order

declaring that his administration would apply *Bostock*'s interpretation of Title VII to other statutes prohibiting sex discrimination. Exec. Order No. 13,988, 86 Fed. Reg. 7023 (Jan. 20, 2021). The Department of Justice issued guidance instructing federal agencies to apply *Bostock*'s definition of sex discrimination to Title IX. Pamela S. Karlan, Principal Deputy Assistant Att'y Gen., U.S. Dep't of Justice, C.R. Div., Memorandum re: Application of *Bostock v. Clayton County* to Title IX of the Education Amendments of 1972 (Mar. 26, 2021). HHS began considering a new rule. *See* Order, *Whitman-Walker Clinic, Inc. v. HHS*, No. 20-5331 (D.C. Cir. Feb. 18, 2021) (staying the appeal from the preliminary injunction in light of ongoing agency proceedings).

The shifting landscape led the Fifth Circuit panel to remand the case to this Court for further consideration and to retain jurisdiction over the matter if again appealed. The panel offered this mandate:

> On appeal, the providers argue that the district court should have granted them injunctive relief against the 2016 rule and the underlying statute, that they still suffer a substantial threat of irreparable harm under the 2016 rule, and that the subsequent developments have only made it clear that an injunction should have been granted in the first place. In response, the government contends that the case is moot and that the providers never asked the district court for relief against the underlying statute. On remand, the district court should consider these issues, and we express no view as to their relative merits at this time.

*Franciscan All., Inc. v. Becerra*, 843 F. App'x 662, 663 (5th Cir. 2021). Since the Fifth Circuit's remand and presumably spurred by the President' executive order and DOJ's guidance, HHS issued guidance documentation that it would now interpret Section 1557 to prohibit "gender identity" discrimination. "Notification of Interpretation and Enforcement" Dep't of Health and Hum. Servs., *Notification of Interpretation and Enforcement of Section 1557 of the Affordable Care Act and Title IX of the Education Amendments of 1972* (May 10, 2021), https://www.hhs.gov/sites/default/files/ocr-bostock-notification.pdf (the "2021 Interpretation").

The Court ordered supplement briefing, through which the Christian Plaintiffs asked the Court to permanently enjoin HHS

> from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against Plaintiffs . . . in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions . . . .

Pls.' Proposed Order. ECF No. 200-1; *see also* Pls.' Supp. Reply 2, ECF No. 203 ("an injunction here would merely protect Plaintiffs, leaving HHS free to promulgate any rules it wants."). The government and Intervenors ("the ACLU") opposed the motion, and it is ripe for the Court's consideration. *See* Ints.' Supp. Resp., ECF No. 201; Defs.' Supp. Resp., ECF No. 202; Pls.' Supp. Reply, ECF No. 203.

## II.   LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is proper when the pleadings and evidence show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material-fact issues. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing the evidence on a motion for summary judgment, the court must resolve all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255,

106 S.Ct. 2505. And if there appears to be some support for the disputed allegations, such that "reasonable minds could differ as to the import of the evidence," a court must deny the motion for summary judgment. *Id.* at 250, 106 S.Ct. 2505.

### B. Permanent Injunction

A "court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved." *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996). The standard is "essentially the same" as the standard for a preliminary injunction. *Id.* "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). But unlike for a preliminary injunction, a plaintiff seeking a permanent injunction "must demonstrate actual success on the merits." *Millennium Rests. Grp., Inc. v. City of Dallas*, 191 F. Supp. 2d 802, 809 (N.D. Tex. 2002).

### C. Mootness

"The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020), *cert. denied sub nom. Dierlam v. Biden*, 141 S. Ct. 1392 (2021) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "Accordingly, to invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Chafin v. Chafin*, 568 U.S. 165, 171–72 (2013) (cleaned up). This case-or-controversy requirement

persists "through all stages of federal judicial proceedings." *Id.* Thus, "[i]f an intervening event renders the court unable to grant the litigant 'any effectual relief whatever,' the case is moot." *Dierlam*, 977 F.3d at 476 (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307–08 (2012). "Further, a case is not necessarily moot because it's uncertain whether the court's relief will have any practical impact on the plaintiff." *Dierlam*, 977 F.3d at 477 (citing *Chafin*, 568 U.S. at 175) ("Courts often adjudicate disputes where the practical impact of any decision is not assured.")). "When conducting a mootness analysis, a court must not 'confuse[] mootness with the merits.'" *Dierlam*, 977 F.3d at 477 (quoting *Chafin*, 568 U.S. at 174). A court "need only ask whether the plaintiff's requested relief is 'so implausible that it may be disregarded on the question of jurisdiction[,]'" leaving for later "to decide whether [the plaintiff] is in fact entitled to the relief he seeks.'" *Id.* (quoting *Chafin*, 568 U.S. at 177).

The Fifth Circuit recognizes two voluntary actions by a party that typically moot a case: (1) "if the plaintiff represents to a court that it is no longer seeking relief on its claim," and (2) "if the defendant credibly pledges to the court that it will provide the plaintiff's requested relief . . .." *D.C. v. Klein Indep. Sch. Dist.*, No. 20-20339, 2021 WL 2492842, at *10 (5th Cir. June 17, 2021) (citing *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 211–15 (1st Cir. 1987); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure § 3533.2 (3d ed. 1998); *Lee ex rel. MacMillan v. Biloxi Sch. Dist.*, 963 F.2d 837, 839 (5th Cir. 1992)). But the "well settled rule" is that "a defendant's voluntary cessation of a challenged practice" will moot a case only if the defendant carries "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again" *Friends of the Earth, Inc. v.*

7

*Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks, alteration, and citations omitted); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 285 (5th Cir. 2012).

### D.  Ripeness

"The ripeness inquiry reflects 'Article III limitations on judicial power' as well as 'prudential reasons for refusing to exercise jurisdiction.'" *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010). "Ripeness ensures that federal courts do not decide disputes that are 'premature or speculative.'" *Id.* (quoting *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002)); *see also Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007) ("[The] basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.") (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977)).

 "[A] challenge to administrative regulations is fit for review if (1) the questions presented are 'purely legal one[s],' (2) the challenged regulations constitute 'final agency action,' and (3) further factual development would not 'significantly advance [the court's] ability to deal with the legal issues presented.'" *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 681 (N.D. Tex. 2016) (quoting *Texas*, 497 F.3d at 498–99). "An additional consideration is 'whether resolution of the issues will foster effective administration of the statute.'" *Texas*, 497 F.3d at 498–99 (quoting *Merchs. Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 920 (5th Cir. 1993). A "purely legal" question must still involve some hardship, which may include a legal harms, practical harms, or the harm

of being "force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences." *Oh. Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998); *see Texas*, 497 F.3d at 499; *see also Union Carbide*, 473 U.S. at 581 (finding hardship where the plaintiffs "suffer[ed] the continuing uncertainty and expense of depending for compensation on a process whose authority is undermined because its constitutionality is in question").

## III.   ANALYSIS

> *The greater a man's talents, the greater his power to lead astray. It is better that one should suffer than that many should be corrupted. Consider the matter dispassionately, Mr. Foster, and you will see that no offense is so heinous as unorthodoxy of behavior.*[3]

Christian Plaintiffs ask to be exempted from the government's orthodoxy. Specifically, they ask the Court for a permanent injunction based on their RFRA claim to be exempt from the government's requirement to perform abortions and gender-transition procedures. *See* Pls.' Supp. Br. 2, ECF No. 200. The government alone argues that the promulgation of the 2020 Rule rendered this case moot or unripe. *See* Defs.' Supp. Br. 10–21, ECF No. 202. And, even if the case is justiciable, the government contends, together with the ACLU, that the Court should not or cannot grant injunctive relief because Christian Plaintiffs cannot show a permanent injunction is warranted, the Court's relief granted thus far is sufficient, and the Court lacks the authority to grant the relief requested. *See* Defs.' Supp. Br. 12–13, 18, ECF No. 202; Ints.' Supp. Br. 9–22, ECF No. 201. To provide clarity, the Court first reconstructs the Section 1557 regulatory scheme as it stands today and then turns to the justiciability and merits of the injunction requested.

---

[3] Aldous Huxley, *Brave New World*, ch. 10 (1932) ("Ending is better than mending.").

Justice Alito was right: an intense battleground emerged.[4] Left in the rubble is Section 1557, its injunction-modified HHS implementing rule, and Section 1557's *Bostock*-based HHS interpretation—all still applying to Christian Plaintiffs in this case. Section 1557(a) provides

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. § 18116(a). Through its plain language, Section 1557 incorporates, as relevant here, Title IX's prohibition on discrimination "on the basis of sex." 20 U.S.C. § 1681(a).

During the final year of the Trump administration, HHS issued the 2020 Rule. 85 Fed. Reg. 37,160 (June 19, 2020). Departing from the 2016 Rule, the 2020 Rule incorporated Title IX's

---

[4] Healthcare benefits may emerge as an intense battleground under the Court's holding. Transgender employees have brought suit under Title VII to challenge employer-provided health insurance plans that do not cover costly sex reassignment surgery. Similar claims have been brought under the Affordable Care Act (ACA), which broadly prohibits sex discrimination in the provision of healthcare.

Such claims present difficult religious liberty issues because some employers and healthcare providers have strong religious objections to sex reassignment procedures, and therefore requiring them to pay for or to perform these procedures will have a severe impact on their ability to honor their deeply held religious beliefs.

*Bostock*, 140 S. Ct. at 1781–82 (2020) (Alito, J. dissenting).

abortion-neutrality exception[5] and religious exemption.[6] *Id.* at 37,162, 37,207. The 2020 Rule further eliminated the 2016 Rule's definition of "sex" discrimination, reasoning that repeal would permit "application of the Supreme Court's construction" in *Bostock. Id.* at 37,178. Three days later, the Supreme Court ruled that, in the Title VII context, employment discrimination "on the basis of sex" encompasses "fir[ing] someone simply for being homosexual or transgender." *Bostock*, 140 S. Ct. at 1753 (2020).

After *Bostock*, numerous courts enjoined portions of the 2020 Rule and HHS modified its interpretation. On May 10, 2021, HHS issued the 2021 Interpretation of Section 1557 to put the Humpty-Dumpty scheme back together again. The 2021 Interpretation reads into Title IX's prohibition on discrimination "on the basis of sex" (as incorporated into Section 1557) as including "(1) discrimination on the basis of sexual orientation; and (2) discrimination on the basis of gender identity" and asserts that the interpretation is "consistent with the Supreme Court's decision in *Bostock* and Title IX . . .." *See* 2021 Interpretation. HHS assured the public that

> In enforcing Section 1557, as stated above, [the Office of Civil Rights] will comply with [RFRA] and all other legal requirements [and] with all applicable court orders that have been issued in litigation involving the Section 1557 regulations, including *Franciscan Alliance, Inc. v. Azar*, 414 F. Supp. 3d 928 (N.D. Tex. 2019); *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1 (D.D.C. 2020); *Asapansa-Johnson Walker v. Azar*, No. 20-CV-2834, 2020 WL 6363970 (E.D.N.Y. Oct. 29, 2020); and *Religious Sisters of Mercy v. Azar*, No. 3:16-CV-00386, 2021 WL 191009 (D.N.D. Jan. 19, 2021).

---

[5] "Nothing in this chapter shall be construed to require or prohibit any person, or public or private entity, to provide or pay for any benefit or service, including the use of facilities, related to an abortion. Nothing in this section shall be construed to permit a penalty to be imposed on any person or individual because such person or individual is seeking or has received any benefit or service related to a legal abortion." 20 U.S.C. § 1688.

[6] Title IX's exempts from its prohibitions any "educational institution which is controlled by a religious organization if the application of this action would not be consistent with the religious tenets of such organization." 20 U.S.C. § 1681(a)(3), and further defines education institution as "any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such term means each such school, college, or department." *Id.* § 1681(c).

*Id.* HHS injected *Bostock*'s interpretation of Title VII's "on the basis of sex" language into Section 1557's incorporation of Title XI while, in the same breath, assuring compliance with all relevant and court-ordered vacaturs and injunctions, which seems to stand at odds.

Even assuming the HHS Secretary has the power to reimagine Section 1557(a)—or the 2020 Rule for that matter—by administrative fiat,[7] the 2021 Interpretation, while succinct, did little for clarity. According to the 2021 Interpretation, incorporating all of HHS's compliance measures, Section 1557(a) should be interpreted to read, in relevant part, as follows:

> [A]n individual shall not, **(1) on the basis of sexual orientation or (2) on the basis of gender identity,** be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments) **except**
>
> **(1) the statute's implementing rule may not define sex discrimination to include "gender identity" as the 2016 Rule had, *see Franciscan*, 414 F. Supp. 3d 928; *see also* Order, ECF No. 182;**
>
> **(2) the statute's implementing rule must define sex discrimination to include "sex stereotyping," which should encapsulate "gender identity," and may not incorporate Title IX's religious exemption until it is revisited in another round of rulemaking,[8] *see Whitman-Walker*, 485 F. Supp. 3d 1;**
>
> **(3) the statute's implementing rule must require the 2016 Rule's definitions of "on the basis of sex," "gender identity," and "sex stereotyping" remain in effect. And the statute's implement rule must require "healthcare providers to 'treat individuals consistent with their gender identity' and prohibit[] them from 'deny[ing] or limit[ing] health services that are ordinarily or exclusively available to individuals of one sex, to a transgender individual based on the fact that the individual's sex assigned at birth, gender identity, or gender otherwise recorded is different from the one to which such health services are**

---

[7] The Court doubts this premise. *See* 42 U.S.C. § 18116(c) (granting the HHS Secretary power to promulgate Section 1557's implementing regulations through notice and comment).

[8] Even absent the *Walker-Whitman* nationwide injunction, query whether the incorporation of Title XI's religious exemption captured all religion-burdening enforcement against citizens like Christian Plaintiffs here, as that provision exempts only "religious organization['s]" "educational operation[s]." 85 Fed. Reg. at 37,207–08.

ordinarily or exclusively available,'" *Asapansa-Johnson*, 2020 WL 6363970 (quoting 45 C.F.R. § 92.206); and

**(4) the statute may not be applied or enforced by HHS against the Religious Sisters of Mercy, Sacred Heart Mercy Health Care Center (Alma, MI), SMP Health System, and University of Mary in a manner that would require them to perform or provide insurance coverage for gender-transition procedures, *see Religious Sisters*, 2021 WL 191009.**

(5) And the Office of Civil Rights plans to "comply with the Religious Freedom Restoration Act . . . and all other legal requirements."[9]

If this sounds entirely unworkable or, at worst, materially indistinguishable from the 2016 Rule, you're not alone. *Compare* the 2020 Rule and 2021 Interpretation, 86 Fed. Reg. 27,984, 27,984 (May 25, 2021); *with* the 2016 Rule, 81 Fed. Reg. 31,376, 31,466, 31,467 (May 18, 2016) (defining "sex" discrimination under Section 1557 to include discrimination based on "gender identity," and promising "[i]nsofar as the application of any requirement under this part would violate applicable Federal statutory protections for religious freedom and conscience, such application shall not be required."). The 2021 Interpretation effectuates a legal Penrose staircase to enforce Section 1557 in the near identical way as, if not an enhanced version of, how the 2016 Rule dictated.[10] Having deciphered the current state of Section 1557, the Court turns to justiciability.

### A. Justiciability

Mandated by the Fifth Circuit, the Court must decide whether "the case is moot[.]" *Franciscan*, 843 F. App'x at 663. In its supplemental brief, the government contends that

---

[9] The un-bolded portion is the original text of the 2021 Interpretation; the emphasized portions are added to supplement the 2021 Interpretation with the actual holdings of the referenced court orders.

[10] To the extent that, after years of studying the law and record in this case, the Court's reconstruction does not comport with other court's or HHS's, the Court fears the Kafkaesque burden a consciously objecting doctor faces in even deciding whether the statute applies to her—much less how and to what extent it applies.

"Plaintiffs' claims are either moot—because HHS has repealed the challenged portions of the 2016 Rule—or unripe to the degree [that] any alleged injury is based on a[] possible future regulatory or enforcement action." Defs.' Supp. Br. 11, ECF No. 202. Christian Plaintiffs and the ACLU disagree with the government's justiciability conclusion. *See* Pls.' Supp. Reply 3, ECF No. 203 ("[N]either this Court's 'vacatur of the 2016 Rule [nor] the ensuing promulgation of the 2020 Rule' fully 'cured . . . Plaintiffs' injuries.'") (quoting *Religious Sisters*, 2021 WL 191009, at *15); *see also* Ints.' Supp. Br. 11, ECF No. 201 ("[T]he government's compliance with this Court's declaratory judgment does not technically *moot* Plaintiffs' request for injunctive relief."). In reply, Plaintiffs maintain that the mootness argument fails because they "are 'challenging' not only the 2016 Rule but also HHS's act of imposing the same RFRA-violating burden by other regulatory means." Pls.' Supp. Reply 6, ECF No. 203. The Court concludes that before it is a justiciable case or controversy.

The government relies on four cases to support its proposition that promulgation of the 2020 Rule automatically mooted this case, all of which are distinguishable. Defs.' Supp. Br. 11–15, ECF No. 202. In one, the Fifth Circuit found a part of an appeal moot by the agency's express request of "a voluntary vacatur of the agency's final rules" satisfying the petitioner's vacatur request. *See Louisiana Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 581 (5th Cir. 2004). Defendants also cite *Sannon v. United States*, 631 F.2d 1247, 1250 (5th Cir. 1980). There, the court found the case moot where petitioners, barred originally by a prior regulation, sought to present their claims for political asylum to an immigration judge, but under newly promulgated regulations, they had the right to exactly the hearings they sought. *Id.* Here, while HHS's 2016 Rule has been modified and supplanted in many respects by the 2020 Rule, the nationwide injunction, and the 2021 Interpretation, HHS has made no voluntary request to vacate the

14

offending portions of the 2021 Interpretation or 2020 Rule, the means by which Section 1557 operates today. HHS has only made assurance that it would "voluntarily" vacate the offending portions of the 2016 Rule in compliance with the Court's order. As outlined above, the promise is hollow and contradicted by the plain terms of the 2021 Interpretation.[11] As it currently stands, Christian Plaintiffs have no relief—including this Court's 2019 order—which provides exactly the scope of what Plaintiffs seek here. *See* Order, ECF No. 182. Thus, the Fifth Circuit precedents are materially distinguishable from the present case.

Left are two cases from outside this circuit. In the first, then-Judge Gorsuch found an appeal moot because "[b]y its terms . . . the district court's order ha[d] expired" once a new rule had been promulgated. *Wyoming v. U.S. Dep't of Interior*, 587 F.3d 1245, 1252 (10th Cir. 2009). In the other, a 1975 Ninth Circuit panel summarily dismissed a case without prejudice, finding the issues "moot or not ripe" after enforcement of a statute had been "indefinitely suspended" but urged re-filing once a new rule was promulgated or the suspension lifted. *State of Alaska v. Env't Prot. Agency*, 521 F.2d 842, 843–44 (9th Cir. 1975). Here, even assuming the Court found the cases to be more than persuasive, the Court's 2019 order had no such automatic expiration as did the order in the case before then-Judge Gorsuch. *See* Order, ECF No. 182. Similarly, enforcement of Section 1557 as the 2016 Rule proscribed has not been "indefinitely suspended." Indeed, the facts suggest a threat well beyond the "mere risk that [HHS might] repeat its allegedly wrongful conduct" of the enforcement of Section 1557 against Christian Plaintiffs in the same religion-burdening way as the 2016 Rule proscribed. *See Opulent Life Church*, 697 F.3d at 285. In light of the *Walker-Whitman* and *Walker* nationwide injunctions and their incorporation via the 2021 Interpretation,

---

[11] For this same reason, the Court need not reach the voluntary cessation doctrine.

HHS has practically "already done so[.]" *City of Jacksonville*, 508 U.S. at 662. The Office of Civil Rights need only say the word.

Because the injunctive relief Christian Plaintiffs now seek is plainly within the Court's power to grant and the current Section 1557 regulatory scheme credibly threatens the same RFRA-violating religious-burden that the application of the 2016 Rule threatened, this case is not moot. *See infra* Part III(B); *see, e.g., DeOtte v. Azar*, 393 F. Supp. 3d 490, 495-98 (N.D. Tex. 2019) (granting a permanent injunction where the plaintiffs faced a credible threat of enforcement of the Affordable Care Act's contraceptive mandate).

As for ripeness, even assuming the Fifth Circuit's remand mandate required its consideration, the Court has rejected the government's nearly identical argument in the past and again rejects the argument. *See* Mem. Op. 20–24, ECF No. 62. Like before, the Court concludes that the current regulatory scheme for Section 1557 "clearly prohibits" Plaintiffs' conduct, thus, putting them to the "impossible choice" of either "defying federal law" and risking "serious financial and civil penalties," or else violating their religious beliefs. Mem. Op. 20–24, ECF No. 62; *see Texas v. United States*, 497 F.3d 491, 498 (5th Cir. 2007).[12] The Court also declines to heighten the harm required for ripeness by blurring it with the irreparable harm required for a permanent injunction. *See Oh. Forestry*, 523 U.S. at 734 (1998) (for the purposes of ripeness, being "force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences" constitutes a practical harm); *Dierlam*, 977 F.3d at 477 (declining to blur the jurisdictional inquiry

---

[12] For similar reasons, the Court declines to relitigate HHS's standing arguments, as they fail for the same reason as before. *See* Mem. Op. 15–20, ECF No. 62; Mem. Op. 16–17, ECF No. 175; *Texas v. EEOC*, 933 F.3d 433, 448 (5th Cir. 2019) ("courts look exclusively to the time of filing."); *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988) (The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

with the merits). Accordingly, the Court finds neither mootness nor ripeness to bar justiciability in this case and turns to the permanent injunction.

### B. Permanent Injunction

Mandated by the Fifth Circuit panel, the Court must decide whether it "should [] grant[] [Christian Plaintiffs] injunctive relief against the 2016 rule and the underlying statute" by considering whether "they still suffer a substantial threat of irreparable harm under the 2016 rule" and "the subsequent developments." *Franciscan*, 843 F. App'x at 663. Christian Plaintiffs contend they are entitled to a permanent injunction. Pls.' Supp. Br. 9–21, ECF No. 200. The ACLU disagrees, maintaining Christian Plaintiffs have not demonstrated irreparable harm and the Court lacks authority to grant the requested relief. Ints.' Supp. Br. 9–22, ECF No. 201. The government suggests that, because Christian Plaintiffs have not suffered sufficient harm for ripeness (an argument rejected above), *ipso facto* the Christian Plaintiffs fall short of irreparable harm for a permanent injunction. Defs.' Supp. Br. 12–13, 18, ECF No. 202.

"[T]he standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits." *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 847-48 (5th Cir. 2004). A "court may grant a permanent injunction without a trial on the merits if there are no material issues of fact and the issues of law have been correctly resolved." *Calmes*, 926 F. Supp. At 591. Thus, a permanent injunction is proper if the plaintiff shows: "(1) that it has succeeded on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest." *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021); *see also eBay*, 547 U.S. at 391. Unlike for a preliminary injunction, a plaintiff seeking a permanent injunction "must

demonstrate actual success on the merits." *Millennium*, 191 F. Supp. 2d at 809. Central to the disposition of this case are the intertwined questions of success on the merits and irreparable injury.

A RFRA claimant may "obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The question of whether injunctive relief should be granted in RFRA cases typically "begins and ends" with "success on the merits[.]" *Korte v. Sebelius*, 735 F.3d 654, 666 (7th Cir. 2013); *see DeOtte*, 393 F. Supp. 3d at 511–12; *see, e.g., O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft*, 389 F.3d 973, 1025-29 (10th Cir. 2004) (en banc) (McConnell, J., concurring), *aff'd*, 546 U.S. 418 (2006) (RFRA "express[es Congress's] view of the proper balance between" religious liberty and governmental interests, so the balance of equities and "the balance of harms . . . favor protecting the moving party's burdened rights."); *Opulent Life Church*, 697 F.3d at 294–96 ("Injunctions protecting First Amendment freedoms are always in the public interest"—a principle that "applies equally to injunctions protecting" RFRA plaintiffs).

Here, the RFRA violation, the success on the merits, is all but conceded. No party disputes that the current Section 1557 regulatory scheme threatens to burden Christian Plaintiffs' religious exercise in the same way as the 2016 scheme: namely, by placing substantial pressure on Christian Plaintiffs, in the form of fines and civil liability, to perform and provide insurance coverage for gender-transition procedures and abortions. Like before, the current scheme continues to fall short of the "more focused" RFRA inquiry. *See Franciscan*, 414 F. Supp. 3d at 944 (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006)). The government asserts no "harm [in] granting *specific* exemptions" to Christian Plaintiffs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726–27 (2014). Accordingly, for these reasons and those laid out in greater detail in the Court's October 15, 2019, Order, the Court holds that Christian Plaintiffs have shown success on the merits for its RFRA claim because the current Section 1557 regulatory

scheme substantially burdens Christian Plaintiffs' religious exercise in clear violation of RFRA.[13] *Franciscan*, 414 F. Supp. 3d at 941–44.

For irreparable injury, the mere "possibility" of injury is not enough. Plaintiffs must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). In the context of RRFA, if a plaintiff demonstrates a violation, that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (internal quotation marks omitted)); *Opulent Life Church*, 697 F.3d at 294–96 (equating the First Amendment irreparable injuries to RFRA irreparable injuries).

Here, Christian Plaintiffs contend that violation of their statutory rights under RFRA is an irreparable harm. The Court agrees and concludes that enforcement of the 2021 Interpretation forces Christian Plaintiffs to face civil penalties or to perform gender-transition procedures and abortions contrary to their religious beliefs—a quintessential irreparable injury. *See DeOtte*, 393 F. Supp. 3d at 512 ("Plaintiffs rights will be violated day after day."); *see also* 45 C.F.R. §§ 86.4, 92.4 ("false" certification claims trigger false-claims liability, "exposing [them] to civil penalties," treble damages, and the possibility of "up to five years' imprisonment."); *Sisters of Mercy*, 2021 WL 191009, at *2 n.1. When the RFRA violation is clear and the threat of irreparable harm is present, a permanent injunction exempting Christian Plaintiffs from that religion-burdening conduct is the appropriate relief. *See ODonnell v. Harris Cnty.*, 892 F.3d 147, 163 (5th Cir. 2018)

---

[13] The lack of briefing on this issue from the government, despite the Fifth Circuit's specific mandate, is concerning and speaks to, at best, the authenticity of HHS and the 2021 Interpretation's generalized promise to "comply with the Religious Freedom Restoration Act . . . and all other legal requirements," *see* 2021 Interpretation, and, at worst, may suggest some sort of religious animus in the failure to include reasonable religious exemptions in the formation and promulgation of the 2021 Interpretation.

(quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)) ("When crafting an injunction, district courts are guided by the Supreme Court's instruction that 'the scope of injunctive relief is dictated by the extent of the violation established.'"). Because the Court finds the permanent-injunction factors weigh in favor of granting an injunction in this instant, the Court concludes that Christian Plaintiffs are "entitled to an exemption" from HHS's religion-burdening conduct. *Hobby Lobby*, 573 U.S. at 694–95; *see* 42 U.S.C. § 2000bb-1(c).

The Court need not speculate whether another lesser remedy would be adequate in providing Christian Plaintiffs' relief because a vacatur was already insufficient as it led to an identical RFRA violation. *see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy . . . [i]s sufficient to redress [plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [i]s warranted."). The changing landscape of Section 1557's regulatory scheme left the Court's 2019 order wholly inadequate compared to the relief the Court sought to provide. *Franciscan*, 414 F. Supp. 3d at 946; *contra Monsanto*, 561 U.S. 139, 165–66 (finding a permanent injunction overbroad where the court's vacatur based on an APA claim rendered the added injunctive relief superfluous—lacking "any meaningful practical effect independent of the vacatur."). The Court finds no reason to depart from its charge to Christian Plaintiffs two years ago "inviting [them] to return if further relief independent of vacatur is later warranted." *Franciscan*, 414 F. Supp. 3d at 946. Thus, the Court concludes that the permanent injunctive relief requested is the adequate remedy at this juncture.

If the Court found a permanent injunction appropriate in this case, the ACLU and the government offered an alternative argument: the scope of the injunctive relief requested would exceed the Court's authority by addressing relief outside the 2016 Rule. *See* Ints. Resp. 12, ECF No. 201; *see also Franciscan*, 843 F. App'x at 663 (instructing the Court to determine whether

"the providers never asked the district court for relief against the underlying statute" and presumably, if so, whether it affects the Court's power to grant the requested injunction). The Court finds the argument unpersuasive.[14]

The ACLU and the government narrowly read Plaintiffs' live pleading as challenging just the 2016 Rule and not Section 1557 itself; thus, limiting the possible scope of injunctive relief to the 2016 Rule. *See* Ints.' Supp. Resp. 12, ECF No. 201. But Rule 54(c) provides no such limit. Under Federal Rule of Civil Procedure 54(c), "district courts [my] grant any appropriate relief following a general prayer by the plaintiff, even if the plaintiff did not specifically seek it, but only where relief is otherwise legally permitted." *Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340 (5th Cir. 2015); *see also Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975) (Rule 54(c) "has been construed liberally[.]"). "Rule 54(c) does not permit unrequested relief when it operates to the prejudice of the opposing party, such as when relief is finally sought at a late stage of the proceedings." *Portillo v. Cunningham*, 872 F.3d 728, 735 (5th Cir. 2017) (cleaned up); *see also id.* ("The discretion afforded by Rule 54(c) [] assumes that a plaintiff's entitlement to relief not specifically pled has been tested adversarially, tried by consent, or at least developed with meaningful notice to the defendant."). But when a district court permits the parties to "present[] . . . arguments" concerning the specific relief, and when a party "ha[s] every reason to expect that the court might" grant such relief, "there [is] no prejudice" under Rule 54(c). *Id.* at 735.

Here, in the Amended Complaint, Plaintiffs identified the substantial burden on their religious exercise as resulting from HHS's attempt to "forc[e] them to choose between federal funding and their livelihood as healthcare providers and their exercise of religion." Am. Compl. ¶

---

[14] The Court wonders how the injunctive relief requested can be both superfluous in light of the Court's vacatur of portions of the 2016 Rule and, at the same time, outside the Court's authority because its scope reaches beyond the 2016 Rule. These positions seem at odds.

314, ECF No. 21. That was the alleged RFRA violation then. That was the alleged RFRA violation before the Court in 2019. And that is the same RFRA violation the Court found today. Plaintiffs repeatedly challenge that same RFRA violation—no matter HHS's Section 1557 interpretation du jour. To ignore this pattern would be to face the Neuralyzer. Thus, the Court concludes that, under Rule 54(c), the permanent injunction request is the appropriate relief for these Plaintiffs and that the relief has been sufficiently adversarilly tested for nearly five years so as to provide meaningful notice to the government and to be a legally permitted remedy, as required by Rule 54(c). Accordingly, the Court will grant Plaintiffs' requested permanent injunctive relief.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' request for a permanent injunction and **PERMANENTLY ENJOINS** HHS, Secretary Becerra, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from interpreting or enforcing Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116(a), or any implementing regulations thereto against Plaintiffs, their current and future members, and those acting in concert or participation with them, including their respective health plans and any insurers or third-party administrators in connection with such health plans, in a manner that would require them to perform or provide insurance coverage for gender-transition procedures or abortions, including by denying Federal financial assistance because of their failure to perform or provide insurance coverage for such procedures or by otherwise pursuing, charging, or assessing any penalties, fines, assessments, investigations, or other enforcement actions.

The Court shall retain jurisdiction as necessary to enforce this order. Plaintiffs shall file any petition for attorneys' fees and expenses by thirty (30) days after the final resolution of all claims, including any appeals.

**SO ORDERED** on this **9th day** of **August, 2021**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**