# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.,* | **No. 7:16-CV-00108-O** |
| *Plaintiffs,* | |
| v. | **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES** |
| XAVIER BECERRA, *et al.,* | |
| *Defendants.* | |

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................iii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 2

   I.  Plaintiffs are entitled to attorney's fees. ................................................ 2

   II. Plaintiffs' attorney's fees are reasonable. ............................................ 3

       A. Counsel's hours are reasonable.................................................... 4

           1. Total hours.......................................................................... 5

           2. Billing judgment.................................................................. 6

       B. Counsel's hourly rates are reasonable........................................... 9

           1. Home rates......................................................................... 10

           2. Dallas-Fort Worth rates....................................................... 15

       C. The lodestar amount is reasonable. ............................................. 21

   III. Plaintiffs' expenses are reasonable. .................................................. 22

CONCLUSION................................................................................................. 22

CERTIFICATE OF CONFERENCE.................................................................... 24

CERTIFICATE OF SERVICE............................................................................ 24

EXHIBITS

Exhibit 1: Goodrich Declaration

   Exhibit 1-A: Summary of Fees

   Exhibit 1-B: Summary of Requested Expenses

   Exhibit 1-C: Contemporaneous Billing Records

   Exhibit 1-D: Billing Judgment Deletions

   Exhibit 1-E: Goodrich Resume

   Exhibit 1-F: Rienzi Resume

   Exhibit 1-G: Windham Resume

   Exhibit 1-H: Barclay Resume

   Exhibit 1-I: Thomson Resume

   Exhibit 1-J: Davis Resume

   Exhibit 1-K: Chen Resume

   Exhibit I-L: Busick Resume

Exhibit 2: Schaerr Declaration

Exhibit 3: Robison Declaration

# TABLE OF AUTHORITIES

**Page(s)**

*Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*,
No. 16-cv-02355, 2021 WL 6428370 (N.D. Tex. Dec. 17, 2021) ........................... 17

*Alto-Shaam, Inc. v. Manitowoc Co.*,
No. 09-cv-018, 2012 WL 12978015 (N.D. Tex. Feb. 2, 2012) ........................... 4, 18

*Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par.*
*Sch. Bd.*,
919 F.2d 374 (5th Cir. 1990) .................................................................. 22

*Belmont Abbey Coll. v. HHS*,
No. 11-cv-1989, 2011 WL 8997549 (D.D.C. Nov. 10, 2011).................................. 12

*BLinC v. Univ. of Iowa*,
No. 17-cv-80 (S.D. Iowa, Nov. 10, 2021) .................................................... 20

*Bode v. United States*,
919 F.2d 1044 (5th Cir. 1990) ................................................................. 4

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ........................................................................... 12

*Christian Emps. All. v. EEOC*,
No. 21-cv-195, 2022 WL 1573689 (D.N.D. May 16, 2022).................................... 19

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
No. 20-cv-1277, 2022 WL 2805527 (N.D. Tex. July 18, 2022) ........................... 21

*Combs v. City of Huntington*,
829 F.3d 388 (5th Cir. 2016) .................................................................. 3

*DeLeon v. Abbott*,
687 F. App'x 340 (5th Cir. 2017) ............................................................. 22

*In re Enron Corp. Sec., Derivative & ERISA Litig. v. Enron Corp.*,
586 F. Supp. 2d 732 (S.D. Tex. 2008)......................................................... 15

*Fralick v. Plumbers & Pipefitters National Pension Fund*,
No. 09-cv-0752, 2011 WL 487754 (N.D. Tex. Feb. 11, 2011) ................................ 6

*Franciscan All., Inc. v. Becerra*,
47 F.4th 368 (5th Cir. 2022)........................................................... 3, 5, 19

*Franciscan All., Inc. v. Becerra*,
  553 F. Supp. 3d 361 (N.D. Tex. 2021), *amended*, 2021 WL 6774686
  (N.D. Tex. Oct. 1, 2021) ................................................................................. 2, 5, 11

*Franciscan All., Inc. v. Becerra*,
  843 F. App'x 662 (5th Cir. 2021) .............................................................................. 5

*Franciscan All., Inc. v. Burwell*,
  227 F. Supp. 3d 660 (N.D. Tex. 2016) .......................................................... 1, 5, 10

*Glass v. United States*,
  335 F. Supp. 2d 736 (N.D. Tex. 2004) ..................................................................... 6

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................................................ 21

*Hill v. Schilling*,
  No. 07-cv-2020, 2022 WL 1321548 (N.D. Tex. May 3, 2022) ..................... 8, 16, 17

*Hoffman v. L & M Arts*,
  No. 10-cv-0953, 2015 WL 3999171 (N.D. Tex. July 1, 2015) ..................... 4, 17, 18

*Intervarsity Christian Fellowship v. Univ. of Iowa*,
  No. 18-cv-80 (S.D. Iowa Nov. 18, 2021) ............................................................... 20

*Johnson v. Ga. Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) .................................................................................... 4

*Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Parish Sch.
  Bd.*, 735 F.2d 895 (5th Cir. 1984) ........................................................................... 2

*League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch.
  Dist.*,
  119 F.3d 1228 (5th Cir. 1997) .................................................................................. 4

*Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Sebelius*,
  134 S. Ct. 893 (2013) (Dec. 31, 2013) ................................................................... 12

*Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Sebelius*,
  No. 13-cv-2611, 2013 WL 5331098 (D. Colo. Sept. 24, 2013) ............................... 12

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
  140 S. Ct. 2367 (2020) ........................................................................................... 13

*Louisiana Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) ..................................................................... 10, 16, 19

iii

*Mauricio v. Phillip Galyen, P.C.*,
   174 F. Supp. 3d 944 (N.D. Tex. 2016) ................................................................ 8

*McClain v. Lufkin Indus., Inc.*,
   649 F.3d 374 (5th Cir. 2011) ............................................................... 9, 10

*Midkiff v. Prudential Ins. Co. of Am.*,
   571 F. Supp. 3d 660 (W.D. Tex. 2021) .................................................... 13

*Miller v. Raytheon Co.*,
   No. 09-cv-440, 2013 WL 6838302 (N.D. Tex. Dec. 27, 2013) ............... 9, 10, 16, 19

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) .......................................................................... 15

*Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*,
   258 F.3d 345 (5th Cir. 2001) ............................................................... 18

*R.K.C.J., LLC v. Texas Cap. Bank, N.A.*,
   No. 20-cv-533, 2020 WL 5552153 (N.D. Tex. Aug. 24, 2020) ...................... 7

*Religious Sisters of Mercy v. Becerra*,
   ___ F.4th ___, 2022 WL 17544669 (8th Cir. Dec. 9, 2022) ...................... 19

*Robinson v. Linder*,
   No. 08-cv-1, 2009 WL 10708332 (E.D. Tex. Mar. 17, 2009) ...................... 17

*Romain v. Walters*,
   856 F.3d 402 (5th Cir. 2017) ................................................................ 3

*Saizan v. Delta Concrete Prods. Co.*,
   448 F.3d 795 (5th Cir. 2006) ...................................................... 4, 6, 19

*SCA Promotions, Inc. v. Yahoo! Inc.*,
   2016 WL 8223206 (N.D. Tex. Nov. 21, 2016) ......................................... 8

*Shipes v. Trinity Indus.*,
   46 F.3d 67 (5th Cir. 1995) .................................................................. 21

*Sierra Club v. Energy Future Holdings Corp.*,
   No. 12-cv-108, 2014 WL 12690022 (W.D. Tex. Aug. 29, 2014) ............ 9, 11, 13

*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002) ............................................................... 14

*United Healthcare Servs., Inc. v. Next Health, LLC*,
   No. 17-cv-0243, 2020 WL 13490846 (N.D. Tex. Sept. 16, 2020) ................ 7

*United States v. Varner,*
 948 F.3d 250 (5th Cir. 2020) ................................................................ 11

*Villas at Parkside Partners v. City of Farmers Branch,*
 No. 08-cv-1551, 2010 WL 2730629 (N.D. Tex. July 9, 2010) ................................ 21

*Watkins v. Fordice,*
 7 F.3d 453 (5th Cir. 1993) ................................................................ 3, 7

*Wheaton College v. Burwell,*
 573 U.S. 958 (2014) ................................................................ 12

*Zubik v. Burwell,*
 578 U.S. 403 (2016) ................................................................ 13

**Statutes**

28 U.S.C. § 2412 ................................................................ 2

42 U.S.C. § 1988 ................................................................ 2, 3

**Other Authorities**

85 Fed. Reg. 37160 (June 19, 2020) ................................................................ 19

87 Fed. Reg. 47824 (Aug. 4, 2022) ................................................................ 19

*HHS Mandate Information Central,* Becket Fund,
 https://perma.cc/7YQE-HMBJ ................................................................ 13

## INTRODUCTION

As prevailing parties in this litigation, Plaintiffs seek recovery of their reasonable attorney's fees and expenses. To understand the nature of this request, it is helpful to recall the nature of this litigation.

This case began when the Department of Health and Human Services did something dangerous and unprecedented: It reinterpreted the Affordable Care Act to require doctors and hospitals across the country to perform and insure gender transitions and abortions—even when doing so would violate their deeply held religious beliefs and experienced medical judgment. Even though religious organizations pleaded with HHS during the rulemaking process to provide a religious exemption—as clearly required under both the Religious Freedom Restoration Act (RFRA) and Title IX—HHS expressly refused. This put Plaintiffs to an existential choice: either comply with HHS's demands and start performing and paying for gender transitions and abortions—searing their consciences and scarring their patients—or follow their convictions and suffer massive penalties under the Affordable Care Act. Plaintiff Franciscan Alliance in particular, as this Court recognized, faced "losing $900 million," *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 673 n.6 (N.D. Tex. 2016), which would devastate its 145-year-old ministry of caring for the poor and elderly.

Faced with this intolerable choice, Plaintiffs sued. Given Plaintiffs' inability to pay customary law-firm rates, the expected longevity and complexity of the litigation, and the controversial subject matter, large corporate law firms wouldn't come near this case. Yet despite facing the full weight of the federal government, with all the resources of the Department of Justice behind it, Plaintiffs prevailed at every turn. They won a preliminary injunction the day before HHS's rule was to take effect. They

1

won summary judgment. They won a Fifth Circuit appeal. They won a permanent injunction on remand. And they won a Fifth Circuit appeal again. After six hard-fought years of litigation, over three administrations, and multiple rule changes that this Court likened to "a legal Penrose staircase," *Franciscan All., Inc. v. Becerra*, 553 F. Supp. 3d 361, 373 (N.D. Tex. 2021), Plaintiffs now have permanent protection from HHS's illegal and dangerous attempt to force them to violate their consciences. And the novel victory in this case has already rippled across the country, with HHS citing it multiple times in its own rulemaking processes, and multiple federal courts issuing similar injunctions, citing *Franciscan* as their lead authority.

As prevailing parties, Plaintiffs now request reasonable attorney's fees. Over six years of litigation, counsel expended 3,805.6 hours. However, in the exercise of billing judgment, counsel has cut 569.7 hours from this total, or 15%. Based on prevailing market rates, Plaintiffs request fees of $2,346,041 and expenses of $4,209.28. As shown below, this request is well-supported by evidence and precedent.

## ARGUMENT

Plaintiffs are prevailing parties in this litigation and thus entitled to recover attorney's fees and expenses under 42 U.S.C. § 1988(b) ("Section 1988"). *See* Dkt. 193. In addition, counsel's request for fees and expenses is reasonable based on the hours expended and the prevailing market rates.

## I. Plaintiffs are entitled to attorney's fees.

Section 1988, which applies against federal agencies under 28 U.S.C. § 2412(b), authorizes attorney's fees for the prevailing party "[i]n any action or proceeding to enforce … the Religious Freedom Restoration Act." 42 U.S.C. § 1988(b); *see Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Parish Sch. Bd.*, 735 F.2d 895, 897-

98 (5th Cir. 1984). Because this was an action to enforce RFRA, *see* Dkt. 21, Section 1988 is triggered.

To qualify as a "prevailing party" under Section 1988, "(1) the plaintiff must achieve judicially-sanctioned relief, (2) the relief must materially alter the legal relationship between the parties, and (3) the relief must modify the defendant's behavior in a way that directly benefits the plaintiff at the time the relief is entered." *Romain v. Walters*, 856 F.3d 402, 406 (5th Cir. 2017). Here, Plaintiffs satisfied all three requirements by prevailing on their RFRA and Administrative Procedure Act (APA) claims at summary judgment and by obtaining both a vacatur of the offending portions of HHS's rule and a permanent injunction prohibiting HHS from interpreting or enforcing Section 1557 to compel them to perform or insure gender-transition procedures and abortions. Dkts. 175, 206. Accordingly, Plaintiffs are prevailing parties— as both this Court and the Fifth Circuit have recognized. Dkt. 193; *see Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 n.57, 380 (5th Cir. 2022). They are therefore entitled to "a reasonable attorney's fee." 42 U.S.C. § 1988(b).

## II. Plaintiffs' attorney's fees are reasonable.

"[C]ourts apply a two-step method for determining a reasonable attorney's fee award." *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). Courts first calculate the lodestar, "which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work." *Id.* at 392. At the second step, courts may "enhance or decrease [the lodestar amount] based on the twelve *Johnson* factors." *Id.*; *see also Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service

properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).

As an alternative to the second step of separately considering the *Johnson* factors, courts may also consider certain *Johnson* factors when calculating the lodestar, dispensing with later enhancements or reductions. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006). When taking this approach, courts pay special attention to "the time and labor involved," "the customary fee," "the amount involved and the result obtained," and "the experience, reputation[,] and ability of counsel." *Id.* When calculating the lodestar, courts also typically consider the complexity of the litigation. *See, e.g., Alto-Shaam, Inc. v. Manitowoc Co.*, No. 09-cv-018, 2012 WL 12978015, at *6 (N.D. Tex. Feb. 2, 2012); *Hoffman v. L & M Arts*, No. 10-cv-0953, 2015 WL 3999171, at *3 (N.D. Tex. July 1, 2015).

### A. Counsel's hours are reasonable.

To calculate the reasonable number of hours expended, courts determine whether the total number of hours claimed are reasonable and whether specific hours claimed are reasonably expended. *League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). Contemporaneous billing records are acceptable documentation for determining reasonable hours. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).

4

### 1. Total hours

Here, over the course of six years, counsel achieved everything their clients sought in this litigation. When this litigation began, Plaintiffs were just months away from being forced to either violate their consciences or incur multimillion dollar penalties under HHS's unlawful mandate, jeopardizing their religious mission to provide healthcare to the poor, disabled, and elderly. *Franciscan*, 227 F. Supp. 3d at 674, 681. Accordingly, counsel immediately sought a preliminary injunction—which they obtained the night before HHS's unlawful requirement was to take full effect. *See id.* Then, after HHS failed to fix the problem, counsel obtained vacatur of the offending portions of HHS's rule. *See* Dkts. 175, 182. Then, to ensure their clients remained protected despite an onslaught of new efforts by HHS to reimpose the same unlawful requirement through other means, counsel prevailed in a Fifth Circuit appeal, obtained a remand, and won a permanent injunction protecting Plaintiffs from any action by HHS to force them to perform or insure gender transitions or abortions under the governing statute. *Franciscan All., Inc. v. Burwell*, 2021 WL 6774686 (N.D. Tex. Oct. 1, 2021). Finally, after HHS challenged the permanent injunction on appeal, Plaintiffs prevailed at the Fifth Circuit again.

Achieving these results took six years of hard-fought litigation, spanning three different administrations and two appeals to the Fifth Circuit. *See Franciscan*, 47 F.4th 368; *Franciscan All., Inc. v. Becerra*, 843 F. App'x 662 (5th Cir. 2021). Oral arguments were held on the preliminary-injunction motion and both Fifth Circuit appeals. To obtain vacatur, Plaintiffs were forced to file two different summary-judgment motions—one in 2017, Dkt. 82, and another two years later, after HHS responded to the first by requesting an unproductive-but-time-consuming "voluntary

5

remand" to the agency, *see* Dkt. 136 at 14. And obtaining the permanent injunction required still another full-length set of briefs on remand from the Fifth Circuit, which Plaintiffs were forced to defend in still more briefing and argument when HHS appealed. *See* Dkts. 200, 203.

In total, counsel expended 3,805.6 hours litigating this matter, as documented in the contemporaneous billing records in Exhibits 1-C and 1-D. That amount is reasonable given the prolonged and complex nature of the litigation. *See* Ex. 1 (Goodrich Decl.) ¶¶ 39, 41. Nevertheless, as explained below, in the exercise of billing judgment, counsel has significantly reduced the total number of hours by 569.7—or 15%—leaving a total of 3,235.9 hours. *See* Goodrich Decl. ¶¶ 28, 35; Exs. 1-C, 1-D.

### 2.  Billing judgment

To show the reasonableness of the hours billed, counsel seeking fees must exercise "billing judgment," which requires "documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799. Here, the elimination of 569.7 hours—all documented in Exhibit 1-D—demonstrates that counsel exercised billing judgment. The eliminated hours generally fall within the following categories.

First, counsel exercised billing judgment by cutting time from all block-billed entries. Goodrich Decl. ¶ 29. Block billing is the "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Tex. 2004). Even though "[a] reduction for block billing is not automatic," *Fralick v. Plumbers & Pipefitters National Pension Fund*, No. 09-cv-0752, 2011 WL 487754, at *5 (N.D. Tex. Feb. 11, 2011), counsel applied a 50% across-the-

board reduction to block-billed times entries. Goodrich Decl. ¶ 29. In total, counsel cut 17.75 hours for block billing. *Id.*

Second, counsel exercised billing judgment by eliminating all hours for attorney travel. *Id.* ¶ 30. Courts often permit recovery for attorney travel time, though courts sometimes discount the time or rate. *See United Healthcare Servs., Inc. v. Next Health, LLC*, No. 17-cv-0243, 2020 WL 13490846, at *3 (N.D. Tex. Sept. 16, 2020) (collecting cases); *Watkins*, 7 F.3d at 459 (affirming decision to discount travel time). Here, attorneys expended 62.3 hours for travel to various hearings and oral arguments. Goodrich Decl. ¶ 30. And although attorneys often worked on this case during travel, counsel still eliminated all 62.3 hours. *Id.*

Third, counsel cut 107.85 hours that counsel deemed excessive. *Id.* ¶ 31. Generally, these hours include billing entries for internal meetings or entries that could be cut or reduced because, in hindsight, they may have taken longer than necessary to accomplish the relevant task. *Id.*; *see, e.g., R.K.C.J., LLC v. Texas Cap. Bank, N.A.*, No. 20-cv-533, 2020 WL 5552153, at *7 (N.D. Tex. Aug. 24, 2020), *report and recommendation adopted*, 2020 WL 5544376 (N.D. Tex. Sept. 16, 2020) ("writ[ing] off time spent on work that … in hindsight may have been unnecessary" demonstrates billing judgment).

Finally, counsel cut 381.8 hours for work that counsel deemed unproductive or redundant. Goodrich Decl. ¶ 32. That includes work on motions or briefing that was unproductive, as well as cuts to tasks that could be deemed redundant. *Id.*

Included among the cuts is the elimination of the entirety of time billed by several attorneys who worked only minimally on the case and therefore billed relatively few hours. *Id.* ¶ 33. This includes cuts to all the hours of Daniel Blomberg (42.1 hours),

Eric Baxter (16.3 hours), Eric Rassbach (8.9 hours), Chase Harrington (18.2 hours), Daniel Benson (28.9 hours), and Jacob Coate (21.5 hours), totaling 135.9 hours; counsel are not seeking any fees for the work completed by these lawyers. *Id.* ¶ 33; *Mauricio v. Phillip Galyen, P.C.*, 174 F. Supp. 3d 944, 950 (N.D. Tex. 2016) (finding counsel exercised billing judgment by, among other things, "wr[iting] off all of the hours" for attorneys who billed few hours).

Counsel also cut the hours of attorneys who had been involved at the outset of the litigation, but then pared back their work in later years. Goodrich Decl. ¶ 34. Those attorneys include Lori Windham, Diana Thomson, and Stephanie Barclay. *Id.* Counsel eliminated all hours for these attorneys from 2018 onwards, cutting an additional 16.9 hours. *Id.* In total, these cuts reduced the total number of billers, removed unproductive and redundant hours, and resulted in a leaner and more efficient team.

In total, counsel cut 569.7 hours or approximately 15% of its total hours. *Id.* ¶ 28. Courts consistently find that reductions of this nature satisfy billing judgment. *See, e.g., SCA Promotions, Inc. v. Yahoo! Inc.*, 2016 WL 8223206, at *10 (N.D. Tex. Nov. 21, 2016) ("Courts in the Northern District of Texas have applied a 15% reduction in similar cases when a fee applicant has not demonstrated billing judgment."); *Hill v. Schilling*, No. 07-cv-2020, 2022 WL 1321548, at *7 (N.D. Tex. May 3, 2022) (13% reduction due to the absence of reductions) (collecting cases). Accordingly, the Court should find that counsel exercised billing judgment and reasonably expended 3,235.9 hours in this case.

### B. Counsel's hourly rates are reasonable.

The "purposes governing fee-shifting awards in civil rights cases are well established": to "facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Based on that purpose, courts calculate a reasonable hourly rate based on "the prevailing market rates in the relevant community." *Id.*

The "relevant community" may be the "home district" of plaintiffs' counsel or the district where the case was brought, depending on the circumstances. *Id.* at 381-82. Counsel's "'home' rates should be considered as a starting point for calculating the lodestar" when "out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff." *Id.* at 382-83. Home rates are also appropriate where counsel have "shown that they participate in a market requiring more specialized and sophisticated legal services." *Sierra Club v. Energy Future Holdings Corp.*, No. 12-cv-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014).

When out-of-district counsel are unnecessary, or have not shown that they participate in a market requiring more specialized services, courts typically award local rates "based on the prevailing community standards for attorneys of similar experience in similar cases," *Miller v. Raytheon Co.*, No. 09-cv-440, 2013 WL 6838302, at *3 (N.D. Tex. Dec. 27, 2013). In such a case, this Court has said that it "will look to the prevailing market rates in Dallas." *Id.* at *7.

"Generally, the reasonable hourly rate is established through affidavits submitted by other attorneys practicing in the community." *Id.* at *8. Applicants may also establish reasonable hourly rates "by directing the district court to fee awards in the

9

same district." *Id*. Courts also consider an attorney's actual rates, not just prevailing rates. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).

### 1. Home rates

Here, given the extraordinary stakes of this litigation for the Plaintiffs, the unavailability of comparable counsel within the district, and the need for counsel's specialized services, counsel's "'home' rates should be considered as a starting point for calculating the lodestar." *McClain*, 649 F.3d at 382-83.

Home rates are warranted because "abundant … evidence prove[s] the necessity of … turning to out-of-district counsel." *McClain*, 649 F.3d at 382. Indeed, it would have been surprising if Plaintiffs *hadn't* turned to specialized, out-of-district counsel for this bet-the-company—and bet-the-conscience—litigation. At the time counsel was retained, HHS had just promulgated a rule imposing on Plaintiffs a dramatic new choice: start performing and insuring gender transitions or else face multimillion dollar penalties destroying your ministry to the poor and elderly. As this Court has recognized, refusing to comply would have been crippling: Franciscan alone "would risk losing $900 million." *Franciscan*, 227 F. Supp. 3d at 673 n.6. But complying would require casting aside their deeply held religious beliefs about human sexuality and performing procedures that they believed, in their considered medical judgment, would be harmful to their patients.

Moreover, the entity imposing the requirement was the federal government, which has all the litigation resources of the Department of Justice at its disposal. The issues were complex and novel; no case had yet considered whether HHS's rule complied with the APA, or whether objecting religious entities were entitled to an exemption under RFRA. The plaintiffs-to-be were religious nonprofits and a membership

organization composed of individual religious healthcare providers who could not afford large law firm rates. And the subject-matter implicated "hotly-debated issues of sex and gender identity," *United States v. Varner*, 948 F.3d 250, 256 (5th Cir. 2020), in which most major law firms have little appetite for getting involved—or on which they agree with the gender-ideology "orthodoxy" HHS was attempting to impose, *Franciscan*, 553 F. Supp. 3d at 370.

In other words, as a long-time litigator in Dallas notes, "[a] large international law firm would be the most likely candidate for having the resources to staff, litigate, and win a case like this." Ex. 3 (Robison Decl.) ¶ 14. But "it would be extraordinarily difficult, if not impossible, to bring in experienced counsel from an international law firm" due to the "controversial subject matter," "the non-pecuniary nature of the claims," "the inability of religious nonprofits to pay a firm's customary rates," and "the longevity and complexity of the litigation." *Id.* ¶¶ 3-4. Because Plaintiffs needed to turn to an out-of-district specialist to protect themselves, out-of-district rates are warranted.

Counsel's home rates are also warranted because counsel "participate in a market requiring more specialized and sophisticated legal services." *Sierra Club*, 2014 WL 12690022, at *6. Specialized religious-liberty expertise is crucial in litigating difficult cases involving the intersection of RFRA and the Affordable Care Act, and "was crucial in securing [Plaintiffs'] permanent injunction in this complex case." Robison Decl. ¶ 12; Ex. 2 (Schaerr Decl.) ¶ 14.

Gene Schaerr, a DC-area attorney with significant experience litigating high-stakes cases, including serving as counsel of record in over 100 Supreme Court cases, states that Plaintiffs' counsel are "well-known as expert religious liberty litigators"

and comprise "the best law firm in the nation specialized in religious liberty litigation." Schaerr Decl. ¶ 10. In the last decade, counsel has litigated eight religious liberty merits cases in the U.S. Supreme Court and prevailed in all eight. Goodrich Decl. ¶¶ 8-9. In 2020, Counsel's firm was recognized by the *National Law Journal* as a member of the "Appellate Hot List," the first non-profit law firm chosen since the list's creation. Goodrich Decl. ¶ 11. And in 2021 and 2022 alone, counsel's firm secured precedent-setting victories in religious liberty cases at the Fifth Circuit, Seventh Circuit (twice), Eighth Circuit (thrice), Ninth Circuit (twice), the Indiana Supreme Court, and the Texas Supreme Court. Goodrich Decl. ¶ 10.

Perhaps most importantly, this case bears close resemblance to the widespread RFRA challenges to HHS's contraception mandate, which applied the Affordable Care Act to require religious employers to provide insurance coverage of all forms of contraception, including those that could cause an abortion. Schaerr Decl. ¶ 13. As the Schaerr Declaration explains, counsel's firm "was the leading law firm in the country challenging HHS's contraception mandate under RFRA." *Id*. ¶ 14. The Becket Fund brought the first case challenging the mandate. Complaint, *Belmont Abbey Coll. v. HHS*, No. 11-cv-1989, 2011 WL 8997549 (D.D.C. Nov. 10, 2011), ECF No. 1. It brought the first class action challenging the mandate. Complaint, *LSP v. HHS*, No. 13-cv-2611, 2013 WL 5331098 (D. Colo. Sept. 24, 2013), ECF No. 1. It won the first Supreme Court order blocking the mandate. *Little Sisters of the Poor Home for the Aged, Denver, Colo. v. Sebelius*, 134 S. Ct. 893 (2013) (Dec. 31, 2013). It won the first Supreme Court case on the merits challenging the mandate. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014). It won the first Supreme Court order blocking the mandate for non-profit employers after *Hobby Lobby*. *Wheaton College v. Burwell*, 573 U.S. 958

12

(2014). It won the first Supreme Court merits ruling blocking the mandate for non-profit employers. *Zubik v. Burwell*, 578 U.S. 403 (2016). It won injunctions against HHS in at least eight cases across the country. *HHS Mandate Information Central*, Becket Fund, https://perma.cc/7YQE-HMBJ. And it won the first Supreme Court case establishing that HHS could grant a religious exemption from the mandate. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020); *see also* Schaerr Decl. ¶ 14. As Schaerr notes, "It is safe to say that no other law firm in the country has as much experience and success litigating against HHS under RFRA as Becket," and that experience was "extraordinarily valuable in a case like this one." Schaerr Decl. ¶ 14.

Given this evidence on the need for specialized out-of-district counsel, the only remaining question is whether counsel's home rates are reasonable compared to what similar attorneys charge in the DC area. *Midkiff v. Prudential Ins. Co. of Am.*, 571 F. Supp. 3d 660, 667 (W.D. Tex. 2021) (when out-of-district counsel is warranted, the prevailing rates in counsel's home district determines the reasonable rate); *Sierra Club*, 2014 WL 12690022, at *6 ("The billing rates that Defendants' counsel charged are reasonable because they are within their home-market rates."). Those rates are as follows:

| | 2016 Rate | 2017 Rate | 2018 Rate | 2019 Rate | 2020 Rate | 2021 Rate | 2022 Rate |
|---|---|---|---|---|---|---|---|
| Daniel Chen ('16) | N/A | N/A | N/A | N/A | $600/hour | $700/hour | $700/hour |
| Diana Thomson ('09) | $790/hour | $790/hour | N/A | N/A | N/A | N/A | N/A |
| Joseph Davis ('14) | N/A | N/A | N/A | $700/hour | $700/hour | $790/hour | $790/hour |
| Lori Windham ('05) | $860/hour | $860/hour | N/A | N/A | N/A | N/A | N/A |
| Luke Goodrich ('04) | $860/hour | $860/hour | $1,000/hour | $1,000/hour | $1,000/hour | $1,000/hour | $1,000/hour |
| Mark Rienzi ('00) | $1,000/hour | $1,000/hour | $1,000/hour | $1,200/hour | $1,200/hour | $1,200/hour | N/A |
| Stephanie Barclay ('11) | $700/hour | $700/hour | N/A | N/A | N/A | N/A | N/A |
| Rachel Busick ('15) | $550/hour | $550/hour | N/A | N/A | N/A | N/A | N/A |
| Paralegals | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour |

"Generally, the reasonable hourly rate for a particular community [of attorneys] is established through affidavits of other attorneys practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Here, the Schaerr declaration states that counsel's rates are reasonable for the DC area and are in fact "lower than the rates my firm and other firms at which I have worked would charge their clients for attorneys of comparable seniority and expertise on a similar matter." Schaerr Decl. ¶ 17. The declaration also explains that other DC attorneys with comparable experience would charge higher rates than those requested here—including $1,085-$1,895/hour for law firm partners and up to $1,195/hour for associates. *Id.* ¶¶ 18-20. Because counsel's DC rates are lower than those charged by comparable practitioners in the DC area, the rates are reasonable.

In addition, under governing precedent, Plaintiffs' counsel can charge current billing rates for their work. *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *see also In re Enron Corp. Sec., Derivative & ERISA Litig. v. Enron Corp.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) ("To compensate for delay in receiving fees, counsel have properly used their current billing rates."). Nevertheless, as demonstrated in the table above (and the table below, for hourly rates in Dallas-Fort Worth), counsel have reduced their hourly rates for work completed earlier in the case instead of charging at their current rates. These reductions are additional evidence that counsel's rates are reasonable.

### 2. Dallas-Fort Worth rates

Alternatively, if this Court determines that out-of-district counsel was not needed, Plaintiffs request the following rates based on market rates in Dallas-Fort Worth:

| | 2016 Rate | 2017 Rate | 2018 Rate | 2019 Rate | 2020 Rate | 2021 Rate | 2022 Rate |
|---|---|---|---|---|---|---|---|
| Daniel Chen ('16) | N/A | N/A | N/A | N/A | $515/hour | $610/hour | $610/hour |
| Diana Thomson ('09) | $705/hour | $705/hour | N/A | N/A | N/A | N/A | N/A |
| Joseph Davis ('14) | N/A | N/A | N/A | $610/hour | $610/hour | $705/hour | $705/hour |
| Lori Windham ('05) | $800/hour | $800/hour | N/A | N/A | N/A | N/A | N/A |
| Luke Goodrich ('04) | $800/hour | $800/hour | $905/hour | $905/hour | $905/hour | $905/hour | $905/hour |
| Mark Rienzi ('00) | $905/hour | $905/hour | $905/hour | $1,050/hour | $1,050/hour | $1,050/hour | N/A |
| Stephanie Barclay ('11) | $610/hour | $610/hour | N/A | N/A | N/A | N/A | N/A |
| Rachel Busick ('15) | $420/hour | $420/hour | N/A | N/A | N/A | N/A | N/A |
| Paralegals | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour | $210/hour |

Reasonable hourly rates can be established either "through affidavits submitted by other attorneys practicing in the community" or "by directing the district court to fee awards in the same district." *Miller*, 2013 WL 6838302, at \*8. Furthermore, counsel's actual hourly rate is relevant to determining the reasonableness of rates. *Kellstrom*, 50 F.3d at 328. Here, all three demonstrate that counsel's rates are reasonable.

First, Brian Robison, a partner with over twenty-five years of experience litigating in the Dallas-Fort Worth area, states that "[i]n light of the religious liberty expertise that these lawyers brought to the task, the prevailing market rates in the Northern District of Texas, the nature and complexity of this litigation, and the success obtained for the Becket Fund's client," counsel's rates are reasonable. Robison Decl. ¶¶ 6-7, 17. Robison notes the hourly rates of comparable practitioners at large international law firms, including the hourly rates for work done in Texas federal courts. *Id.* ¶¶ 21-25. He explains that Plaintiffs' counsel "would be able to charge similar or higher rates as attorneys litigating at large international law firms" and that counsel's "proposed billing rates are *lower* than the rates my two prior firms and other firms with which I am familiar would charge their clients for attorneys of comparable seniority and expertise on a similar matter." *Id.* ¶¶ 19-20 (emphasis added).

Second, comparable fee awards in this District confirm the reasonableness of the counsel's hourly rates. For example, in a trusts-and-estates fee petition decided earlier this year, attorneys at Locke Lord requested rates of $730/hour, $790-820/hour, and $800-830/hour for work done from April 2019 to March 2020. *Hill*, 2022 WL 1321548, at \*5. The district court took judicial notice of the hourly rates for attorneys at Winston & Strawn and found that an attorney who graduated in 2013 charged a

16

standard rate of $860/hour and had recently raised his rate to $935/hour. *Id.* at *5. The court found that this evidence—along with the experience and reputation of the attorneys involved—supported the conclusion "that Locke Lord's rates are comparable to what other similar firms are charging for legal work in the Northern District of Texas." *Id.* at *6. The court therefore held that the requested rates of $730/hour, $790-820/hour, and $800-830 were reasonable. *Id.*

Similarly, in *Advanced Physicians, S.C. v. Connecticut Gen. Life Ins. Co.*, No. 16-cv-02355, 2021 WL 6428370, at *6 (N.D. Tex. Dec. 17, 2021), the district court awarded rates from $537/hour to $862/hour for attorneys at a large international law firm in an ERISA action. The district court justified its decision based on "the Court's knowledge of rates charged for legal services by attorneys with the level of skill, competence, and ability of Plaintiff's counsel and paralegal in the Dallas legal community," as well as "the complex and novel" nature of the litigation. *Id.*

Older cases from this District are also illustrative. "It is not unreasonable to conclude that counsel's rates would increase over time, due to inflation and, perhaps, counsel's reputation in the field of civil rights litigation." *Robinson v. Linder*, No. 08-cv-1, 2009 WL 10708332, at *5 (E.D. Tex. Mar. 17, 2009). Thus, if courts in this District found these similar rates reasonable several years ago, it follows that counsel's rates here are also reasonable.

For example, in a fee petition involving work done in 2013 involving complex discovery disputes, the district court held that rates ranging from $601/hour to $810/hour for attorneys from the law firm of Willkie Farr & Gallagher LLP were reasonable. *Hoffman*, 2015 WL 3999171, at *3. The court, using data from 2013, concluded that $601/hour for an attorney with 3-6 years' experience and $810/hour for

17

an attorney with 25 years' experience was reasonable, especially in light of "the nature and complexity of this litigation." *Id.* Likewise, in a case involving work completed in 2012, this Court found that rates from $300 to $725/hour were reasonable for attorneys from the law firm of Baker Botts. *Alto-Shaam*, 2012 WL 12978015, at *6. In finding these rates reasonable, this Court emphasized "the background of the attorneys" and "the highly complex and contentious nature" of the litigation. *Id.*

These same factors are all present here and weigh in favor of awarding counsel's market rates. As explained in the Robison declaration, this litigation was extraordinarily complex and contentious and would typically demand the involvement of a large international law firm. Robison Decl. ¶ 14. In fact, the litigation took six years and two full appeals to the Fifth Circuit to reach a final resolution. In similar circumstances, the Fifth Circuit has instructed lower courts considering fee petitions to not "overlook the complexity of [a] case," especially one that "involved two appeals to [the Fifth Circuit]." *Northwinds Abatement, Inc. v. Emps. Ins. of Wausau*, 258 F.3d 345, 355 (5th Cir. 2001) (rejecting fee reduction).

Moreover, counsel's experience, reputation, and ability also favor granting counsel's market rates. As the Robison declaration states, "Becket Fund attorneys are well-known expert religious liberty litigators," Robison Decl. ¶ 9, and in Schaerr's estimation, the Becket Fund is "the best law firm in the nation specialized in religious liberty litigation," Schaerr Decl. ¶ 10. Schaerr also notes that counsel's prior experience in religious liberty litigation—and especially its experience as "the leading law firm in the country challenging HHS's contraception mandate under RFRA"–"would be extraordinarily valuable in a case like this one." Schaerr Decl. ¶ 14. The Robison

18

declaration concurs, noting that "the Becket Fund's expertise in religious liberty litigation was crucial in securing their client's permanent injunction in this complex case." Robison Decl. ¶ 12.

And most importantly, counsel secured exceptional relief for their clients, which is "[t]he most critical factor in determining an attorney's fee award." *Saizan*, 448 F.3d at 799 (quotation marks omitted). Here, Plaintiffs obtained every form of relief they requested—including vacatur of the 2016 Rule and a permanent injunction preventing HHS from interpreting or applying Section 1557 to require them to perform or insure gender transitions or abortions in violation of conscience.

This was pathbreaking litigation consequential not just for Plaintiffs but for the law nationwide. The decisions in this case have been cited repeatedly in multiple new final and proposed HHS rules over the course of this litigation. 85 Fed. Reg. 37160 (June 19, 2020) (mentioning "Franciscan" by name 40 times); 87 Fed. Reg. 47824 (proposed Aug. 4, 2022) (20 times). The Fifth Circuit issued a published opinion contributing to the development of the law of justiciability and remedies in cases arising under RFRA. *Franciscan*, 47 F.4th 368. And multiple other federal courts have entered injunctions analogous to the ones obtained by Plaintiffs in this case, with the *Franciscan* decisions as their lead authority. *Religious Sisters of Mercy v. Becerra*, ___ F.4th ___, 2022 WL 17544669 (8th Cir. Dec. 9, 2022); *Christian Emps. All. v. EEOC*, No. 21-cv-195, 2022 WL 1573689 (D.N.D. May 16, 2022).

Third, counsel's actual hourly rate is relevant to the reasonableness of their rates. *Kellstrom*, 50 F.3d at 328. And in looking at actual rates, courts can also consider previous fee awards for Plaintiffs' counsel. *Miller*, 2013 WL 6838302, at *8. Here, while counsel do not have prior fee awards in the Northern District of Texas, counsel's

19

firm recently prevailed in a pair of religious-liberty cases in the Southern District of Iowa and obtained hourly rates that are comparable to the rates requested here.

In *Intervarsity Christian Fellowship v. University of Iowa* and *Business Leaders in Christ v. University of Iowa*, the United States District Court for the Southern District of Iowa, sitting in Davenport, Iowa, held that a public university violated the constitutional rights of religious student organizations by selectively deregistering them based on their religious beliefs. After prevailing in the Eighth Circuit, counsel's firm moved for attorney's fees before the district court. The court awarded attorney's fees and found that a rate of $914/hour for a Becket Fund attorney with twenty-one years of experience and a rate of $759/hour for a Becket Fund attorney with thirteen years of experience was reasonable. *Intervarsity Christian Fellowship v. Univ. of Iowa*, No. 18-cv-80, ECF No. 101 at 2 n.1 (S.D. Iowa Nov. 18, 2021); *BLinC v. Univ. of Iowa*, No. 17-cv-80, ECF No. 147 at 3 (S.D. Iowa, Nov. 10, 2021). The court explained that "[a]lthough the rates requested for Plaintiff's out of state counsel are significantly higher, between $759 and $914 for the two attorneys, they are reasonable given the complex nature of the issues in this case and the extensive experience Plaintiff's counsel has in constitutional litigation." *BLinC*, No. 17-cv-80, ECF No. 147 at 3.

Because Becket Fund attorneys were awarded these rates in a case pending in Davenport, Iowa, it follows that a higher rate is warranted in Dallas-Fort Worth. *See* Robison Decl. ¶ 27. This is particularly true because "[t]he legal market in the Dallas-Fort Worth area is significantly larger and more sophisticated than the legal market in Davenport, Iowa" and "[t]he attorneys in this case have similar experience to the attorneys in the *Intervarsity* and *BLinC* litigation." *Id.*

In short, attorney affidavits, other fee awards from this District, and counsel's actual awarded rates demonstrate that counsel's rates are reasonable.

### C. The lodestar amount is reasonable.

Based on the hours reasonably expended in this litigation and counsel's reasonable home rates, the lodestar amount is **$2,346,041**. *See* Ex. 1-A at 6. Alternatively, if the Court concludes that home rates are not warranted, the same calculation using prevailing market rates in the Northern District of Texas produces a lodestar amount of **$2,096,939**. *See id.* at 7. As explained above, these amounts are reasonable.

After calculating the lodestar, courts move to the second stage and consider whether to enhance or reduce the award based on unaccounted *Johnson* factors. When considering the *Johnson* factors, this Court "necessarily has discretion" to grant an enhancement. *Villas at Parkside Partners v. City of Farmers Branch*, No. 08-cv-1551, 2010 WL 2730629, at *4 (N.D. Tex. July 9, 2010) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983)). And courts in the Northern District of Texas and the Fifth Circuit have granted enhancements of 20-33% when a plaintiff achieved exceptional results and the enhancement was needed to account for the true market value of plaintiff's counsel's services. *See Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 20-cv-1277, 2022 WL 2805527, at *7 (N.D. Tex. July 18, 2022) (20% enhancement); *Shipes v. Trinity Indus.*, 46 F.3d 67 (5th Cir. 1995) (affirming 33% enhancement). Here, if the Court determines that the lodestar does not adequately account for the exceptional results and true market value of counsel's services as described above, a similar enhancement would be warranted.

### III.  Plaintiffs' expenses are reasonable.

"[U]nder 42 U.S.C. § 1988, a prevailing party may also recover '[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, [and] travel … because they are part of the costs normally charged to a fee-paying client.'" *DeLeon v. Abbott*, 687 F. App'x 340, 342 (5th Cir. 2017) (quoting *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)).

Here, Plaintiffs seek expenses totaling $4,209.28. That amount consists of $3,031.74 for airfare, $114.60 for ground transportation, $608.92 for lodging, $123.92 for meals, and $330.10 for printing. The out-of-pocket expenses for airfare, ground transportation, lodging, and meals were incurred for attorney travel to in-person hearings and oral arguments in Dallas and New Orleans. Goodrich Decl. ¶ 36. The printing costs were incurred to meet the requirements of filing paper copies of relevant briefing in this Court and the Fifth Circuit. *Id.* These expenses are precisely the types of expenses that are "normally charged to a fee-paying client." *DeLeon*, 687 F. App'x at 342. Accordingly, the Court should grant Plaintiffs' reasonable expenses in the amount of $4,209.28.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for attorney's fees of $2,346,041 and expenses of $4,209.28.

22

Dated: December 23, 2022                    Respectfully submitted,

                                            */s/ Luke W. Goodrich*
                                            Luke W. Goodrich
                                            DC Bar No. 977736
                                            Mark L. Rienzi
                                            Joseph C. Davis
                                            The Becket Fund for Religious Liberty
                                            1919 Pennsylvania Ave. NW
                                            Suite 400
                                            Washington, DC 20006
                                            (202) 955-0095
                                            lgoodrich@becketlaw.org

                                            *Counsel for Plaintiffs Christian Medical
                                            & Dental Associations, Franciscan
                                            Alliance, Inc., Specialty Physicians of
                                            Illinois, LLC*

23

## CERTIFICATE OF CONFERENCE

On December 15, 2022, counsel for Plaintiffs, Luke W. Goodrich, informed Bradley Humphreys, counsel for HHS, of Plaintiffs' intent to file this motion and accompanying memorandum. On December 21, 2022, Mr. Humphreys indicated that HHS opposes the motion.

/s/ Luke W. Goodrich
Luke W. Goodrich

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, the foregoing was served on all parties via ECF.

/s/ Luke W. Goodrich
Luke W. Goodrich