**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC., *et al.*,        ) ) ) ) | |
| *Plaintiffs*,        ) | Case No. 7:16-cv-00108-O |
|        ) | |
| v.        ) | |
|        ) | |
| XAVIER BECERRA, Secretary of Health and Human Services, *et al.*,        ) ) ) | |
| *Defendants*.        ) ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR
ATTORNEY'S FEES AND EXPENSES**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

LEGAL STANDARD................................................................................................. 5

ANALYSIS................................................................................................................. 6

I.      PLAINTIFFS' FEE REQUEST FOR THE UNDERLYING LITIGATION IS
UNREASONABLE. ..........................................................................................6

      A.      Plaintiffs' Proposed Rates Are Excessive for the Northern District of
Texas. .................................................................................................6

            1.      Plaintiffs Are Not Entitled to Fees Calculated Using the Becket
Fund's Home Rates................................................................. 6

            2.      Plaintiffs' Proposed Rates for Dallas–Ft. Worth Are Excessive. ..............12

      B.      Plaintiffs Should Not Recover for Time That Is Not Compensable. ....................14

            1.      Plaintiffs Should Not Recover Fees for Work Performed Opposing
Intervenors. ....................................................................14

            2.      Plaintiffs Should Not Recover Fees Related to Their Untimely
Request to Modify Fee Petition Deadlines. .................................16

            3.      Plaintiffs Should Not Recover for Time Spent Seeking Deadline
Extensions. ....................................................................17

      C.      Plaintiffs Have Not Established Their Entitlement to Fees on Their APA
Claims. ..............................................................................................18

      D.      Defendants Are Entitled to A Fee Reduction To Account for Plaintiffs'
Counsel's Block Billing..................................................................20

II.      AN ENHANCEMENT OF FEES IS NOT WARRANTED............................................21

III.      PLAINTIFFS' REQUEST FOR FEES-ON-FEES SHOULD BE
SIGNIFICANTLY REDUCED. ..............................................................23

CONCLUSION.......................................................................................................... 23

i

## TABLE OF AUTHORITIES

**Cases**

*Avoyelles Sportsmen's League v. Marsh*,
  786 F.2d 631 (5th Cir. 1986) ........................................................................ 14, 15

*Barrow v. Greenville Indep. Sch. Dist.*,
  No. 3:00-cv-0913-D, 2005 WL 6789456 (N.D. Tex. Dec. 20, 2005),
  *aff'd* 2007 WL 3085028 (5th Cir. Oct. 23, 2007) .................................................. 20

*Beamon v. City of Ridgeland, Miss.*,
  666 F. Supp. 937 (S.D. Miss. 1987) ................................................................... 17

*Blum v. Stenson*,
  465 U.S. 886 (1984) ......................................................................................... 7, 13

*Bramlett v. Med. Prot. Co. of Fort Wayne, Ind.*,
  Civ. A. No. 3:09-cv-1596-D, 2010 WL 3294248, (N.D. Tex. Aug. 20, 2010) ....... 20

*Brown v. Miss. Dep't of Health*,
  Case No. 3:11-cv-146-CRW-FKB, 2013 WL 12128785 (S.D. Miss. Mar. 5, 2013) ............. 17

*Carroll v. Sanderson Farms, Inc.*,
  Civ. A. No. H-10-3108, 2014 WL 549380 (S.D. Tex. Feb. 11, 2014) .................... 13

*City of Burlington v. Dague*,
  505 U.S. 557 (1992) ............................................................................................ 22

*Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*,
  No. 20-cv-1277, 2022 WL 2805527 (N.D. Tex. July 18, 2022) *appeal docketed*,
  No. 22-10710 (5th Cir. July 25, 2022) ................................................................. 22

*Comm'r , Immigr. & Naturalziation Serv. v. Jean*,
  496 U.S. 154 (1990) ............................................................................................ 23

*Cross v. Comm'r of Social Sec. Admin.*,
  Civ. A. No. 1:18-cv-5198-TCB, 2020 WL 9810009 (N.D. Ga. Sept. 29, 2020) ..... 17

*Franciscan Alliance, Inc. v. Becerra*,
  843 F. App'x 662 (5th Cir. 2021) ........................................................................... 4

*Franciscan Alliance, Inc. v. Becerra*,
  47 F.4th 368 (5th Cir. 2022) .................................................................................. 5

*Gate Guard Servs., L.P. v. Perez*,
  792 F.3d 554 (5th Cir. 2015) ............................................................................. 5, 6

*Hannon v. Nevitt*,
  Civ. A. No. 3:09-cv-66-N, 2013 WL 12290978 (N.D. Tex. Mar. 14, 2013) ......................... 17

*Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*,
  82 F.3d 1533 (10th Cir. 1996) ...................................................................... 20

*Hayes, Trustee for Paul B. Hayes Family Trust v. Chaparral Energy, LLC*,
  Case No. 14-CV-495-GKF-PJC, 2018 WL 10780611 (N.D. Okla. Mar. 21, 2018) ............... 15

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................ 5, 16, 18, 19

*Hill v. Estate of Hill*,
  Civ. A. No. 20-cv-3634-L, 2022 WL 17475788 (N.D. Tex. Dec. 5, 2022) ........................... 12

*Hill v. Schilling*,
  Civ. A. No. 07-cv-2020-L, 2022 WL 1321548 (N.D. Tex. May 3, 2022) ............................. 12

*Hopwood v. State of Texas*,
  236 F.3d 256 (5th Cir. 2000) ....................................................................... 10

*Humphrey v. United Way of Tex. Gulf Coast*,
  802 F. Supp. 2d 847 (S.D. Tex. 2011) ............................................................. 20

*In re Rodriguez*,
  517 B.R. 724 (S.D. Tex. 2014) ...................................................................... 7

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ...................................................................... 21

*Judicial Watch, Inc. v. U.S. Dep't of Just.*,
  878 F. Supp. 2d 225 (D.D.C. 2012) ................................................................ 23

*Judicial Watch v. U.S. Dep't of Commerce*,
  470 F.3d 363 (D.C. Cir. 2006) ..................................................................... 15

*Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Parish Sch. Bd.*,
  735 F.2d 895 (5th Cir. 1984) ....................................................................... 5

*La. Power & Light Co. v. Kellstrom*,
  50 F.3d 319 (5th Cir. 1995) ....................................................................... 20

*Leroy v. City of Houston*,
  831 F.2d 576 (5th Cir. 1987) ...................................................................... 22

*Love v. Reilly*,
  924 F.2d 1492 (9th Cir. 1991) ..................................................................... 15

*McClain v. Lufkin Indus., Inc.*,
   649 F.3d 374 (5th Cir. 2011) .................................................................... 7, 8

*Merrick v. Scott*,
   Civ. A. No. 3:10-cv-2172-D, 2011 WL 1938188 (N.D. Tex. May 20, 2011) ......................... 21

*Miller v. Raytheon Co.*,
   Civ. A. No. 3:09-cv-440-O, 2013 WL 6838302 (N.D. Tex. Dec. 27, 2013) ........................... 21

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) .................................................................................... 5

*Perdue v. Kenney A. ex. rel Winn*,
   559 U.S. 542 (2010) .................................................................................... 5

*R4U Ventures, LLC v. Grozian*,
   21-cv-3171-B, 2022 WL 1032498 (N.D. Tex. Apr. 6, 2022) ................................... 12

*S & P Inv. Grp., LLC v. Kingdom Materials Holdings, LLC*,
   Civ. A. No. 21-cv-00159-O, 2022 WL 2919498 (N.D. Tex. July 7, 2022) ...................... 12

*Sheppard v. U.S. Dep't of Justice*,
   Case No. 4:17-cv-1037-NKL, 2022 WL 245480 (W.D. Mo. Jan. 25, 2022) .................... 17

*Shipes v. Trinity Indus.*,
   987 F.2d 311 (5th Cir. 1993) ........................................................................ 22

*Shipes v. Trinity Indus.*,
   46 F.3d 67, 1995 WL 29358 (5th Cir. 1995) ....................................................... 22

*Stormans Inc. v. Selecky*,
   906 F. Supp. 2d 1093 (W.D. Wash. 2012) .................................................... 14, 15

*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002) ......................................................................... 7

*UMB Bank, N.A. v. All Com. Floors, Inc.*,
   Civ. A. No. 21-cv-01154-O, 2022 WL 3139754 (N.D. Tex. Aug. 5, 2022) ..................... 12

*UMB Bank, N.A. v. All Com. Floors, Inc.*,
   Civ. A. No. 21-cv-01154-O, 2022 WL3146055 (N.D. Tex. July 21, 2022) ..................... 12

*Van Ooteghem v. Gray*,
   774 F.2d 1332 (5th Cir. 1985) .................................................................... 9, 10

*Von Clark v. Butler*,
   916 F.2d 255 (5th Cir. 1990) ........................................................................ 22

*Walker v. U.S. Dep't of Hous. and Urb. Dev.*,
 99 F.3d 761 (5th Cir. 1996) ............................................................... 21

**Statutes**

28 U.S.C. § 1391 .................................................................................... 10

28 U.S.C. § 2412 ............................................................................. *passim*

33 U.S.C. § 1365 .................................................................................... 13

42 U.S.C. § 1988 ............................................................................. *passim*

**Rules**

Fed. R. Civ. P. 54 .................................................................................. 16

**Federal Regulations**

Nondiscrimination in Health Programs and Activities,
 81 Fed. Reg 31,375 (May 18, 2016) ..................................................... 2

**Other Authorities**

Becket, Our Staff,
 https://www.becketlaw.org/about-us/staff/ (last visited Jan. 18, 2023) ................................. 13

Gibson Dunn,
 https://www.gibsondunn.com/ (last visited Jan. 18, 2023) ..................................... 13

## INTRODUCTION

The Court should reject Plaintiffs' request for over $2.3 million in fees for the work performed in this litigation.  Defendants do not dispute that Plaintiffs are prevailing parties under 42 U.S.C. § 1988(b), but success in litigation is not a blank check, and Plaintiffs' requested fee award is unreasonable.

Plaintiffs make much of the fact that this litigation spanned several years and now construe it as much more complex than it actually was.  However, as Plaintiffs themselves acknowledged when litigating the merits, the case "boil[ed] down to a very simple question of statutory interpretation[.]"  First Am. Compl. ("FAC"), ECF No. 21 at 4.  Moreover, apart from the preliminary injunction stage, which concluded in 2016, Defendants never substantively opposed Plaintiffs' merits arguments, and the case was stayed for over seventeen months while Defendants voluntarily reconsidered the challenged Rule.  There was no discovery of any kind and no trial; the case proceeded exclusively through motions practice.

With that in mind, the Court should award Plaintiffs no more than $888,126.80 in fees.  To start, the Court should reject Plaintiffs' request for fees based on the Becket Fund's "home rates" in Washington, D.C.  Plaintiffs have failed to prove that engaging out-of-district counsel was necessary to secure competent representation—and, indeed, Plaintiffs do not appear to have even tried.  The Court should therefore calculate fees based on prevailing rates in the Northern District of Texas, where Plaintiffs chose to bring their case.

The Court should also reduce Plaintiffs' fee award by excluding from its calculation of reasonable fees hundreds of hours Plaintiffs spent litigating against the Intervenors, dozens of hours spent on an avoidable motion to set deadlines for Plaintiffs to request fees, and twenty-one hours spent on seeking deadline extensions.  Plaintiffs' requested fees should be reduced further

1

to exclude hours spent pursuing their Administrative Procedure Act ("APA") claim, fees for which are made available under Section 2412(d) of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  Plaintiffs have not satisfied the statutory requirements of that fee provision.

Plaintiffs' fee award should also be reduced to account for deficiencies in Plaintiffs' counsel's billing records.  Although most of the entries describe work on an item-by-item basis, Plaintiffs' counsel has "block billed" approximately 325 hours of work.  Defendants propose a 5 percent reduction of fees to address this deficiency.

Finally, any award for the time Plaintiffs' counsel spent litigating fees should be reduced proportionally to any reduction the Court applies to Plaintiffs' fees for the underlying litigation.

## BACKGROUND

Plaintiffs, together with several States, brought this action to challenge certain portions of the May 18, 2016 HHS rule titled Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,388, 31,392 (Rule), specifically the Rule's prohibition of discrimination on the basis of "gender identity" and "termination of pregnancy."  *See, e.g.*, Order, ECF No. 62 (describing Plaintiffs' objections to the Rule).  On December 31, 2016, the Court granted Plaintiffs' motion for a preliminary injunction, finding that those two challenged aspects of the Rule were contrary to law and therefore violated the APA, and further concluding that the Rule likely violated the Religious Freedom Restoration Act ("RFRA").  *See id.* at 32–42.

With the preliminary injunction already in place, on March 14, 2017, Plaintiffs moved for summary judgment, incorporating by reference the arguments they made during the preliminary injunction stage of the litigation.  *See* Br. in Supp. of Pls.' Mot. for Summ. J., ECF No. 83.  On May 2, 2017, Defendants asked the Court to remand the case to HHS to provide the agency an opportunity to reconsider the Rule, explaining that a remand and stay "would conserve the

resources of the parties and of the Court by avoiding unnecessary briefing and consideration of a summary judgment motion that may become moot in light of subsequent administrative proceedings." Defs.' Mot. for Voluntary Remand & Stay, ECF No. 92 at 1.

The Court granted Defendants' motion in part on July 10, 2017, staying the litigation pending further order of the Court and holding all then-pending motions in abeyance. *See* Order, ECF No. 105. Although the then-proposed Intervenors—River City Gender Alliance and the American Civil Liberties Union ("ACLU")—pursued their own appeal to the Fifth Circuit of this Court's entry of the preliminary injunction and its denial of their motion to intervene as of right, *see* Notices of Appeal, ECF Nos. 71, 72,[1] litigation between the parties ceased from July 10, 2017 until December 17, 2018, when the Court granted the parties' joint motion to lift the stay. *See* Order, ECF No. 126.

Plaintiffs filed a renewed motion for partial summary judgment on February 4, 2019. *See* ECF No. 136. In response, Defendants explained that they "agree with Plaintiffs and the Court that the Rule's prohibitions on the basis of gender identity and termination of pregnancy conflict with Section 1557 and thus are substantively unlawful under the APA." Defs.' Mem. in Response to Pls.' Mots. for Partial Summ. J., ECF No. 154 at 1. Defendants also agreed with Plaintiffs that the "Rule also fails to incorporate Title IX's exemptions despite Section 1557's directive to the contrary, thereby prohibiting conduct the statute permits." *Id.* Accordingly, Defendants acknowledged that "Plaintiffs [ ] are entitled to summary judgment on their APA claim," explaining that "there is no need for this Court to resolve any other claim to provide them with the relief they seek." *Id.*

---

[1] Plaintiffs, River City Gender Alliance, and the ACLU ultimately agreed that their appeal should be dismissed. *See* Joint Motion to Dismiss Appeal as Moot, *Franciscan Alliance, Inc. v. Cochran*, No. 17-10135 (5th Cir. Dec. 3, 2019) (No. 125).

The Court granted Plaintiffs' motion for partial summary judgment on October 15, 2019, relying substantially on its reasoning for granting Plaintiffs' motion for a preliminary injunction in December 2016.  *See* Mem. Op. & Order, ECF No. 175 at 17–21.  The Court also noted that Defendants did not substantively oppose Plaintiffs' RFRA arguments and that "Defendants [did] not object to the relevant facts, arguments, or evidence" related to that claim.  *Id.* at 16–21.  In the same order, the Court also granted River City Gender Alliance and the ACLU's motion to intervene, though it found that the Intervenors' arguments were "largely duplicative of those the Court has already addressed."  *Id.* at 6–15, 21.  The Court vacated the relevant portions of the Rule, remanded to HHS for further consideration, and entered final judgment in favor of Plaintiffs.  *Id.* at 25.  However, the Court declined to enter injunctive relief from the vacated portions of the Rule, as Plaintiffs had requested.  *Id.*

Plaintiffs then appealed this Court's denial of a permanent injunction, and the Fifth Circuit issued its decision on April 15, 2021.  *See Franciscan Alliance, Inc. v. Becerra*, 843 F. App'x 662 (5th Cir. 2021).  The court of appeals observed that the legal landscape had shifted significantly in the months following this Court's entry of final judgment, which it concluded "keep[s] us from reaching the merits of this appeal."  *Id.* at 662–63.  The Fifth Circuit thus remanded the case for further proceedings to determine "[w]hether the providers are pressing the same claim . . . as they did in district court."  *Id.* at 663.

On remand, the Court ordered the parties each to submit supplemental briefing on the developments highlighted in the Fifth Circuit's decision.  *See* Order, ECF No. 199.  On August 16, 2021, the Court granted Plaintiffs' request for a permanent injunction, prohibiting HHS from interpreting or enforcing Section 1557 in a manner that would require Plaintiffs or their members

to perform or provide insurance coverage for gender-transition procedures or abortions.  *See* Mem. Op. & Order, ECF No. 206 at 22.

Defendants then appealed the Court's permanent injunction on justiciability grounds.  *See* Notice of Appeal, ECF No. 212.  The Fifth Circuit agreed with Defendants that Plaintiffs' APA claim was moot but affirmed this Court's decision as to Plaintiffs' RFRA claim.  *See Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368, 380 (5th Cir. 2022).

## LEGAL STANDARD

EAJA "provides two paths for recovering attorneys' fees from the government."  *Gate Guard Servs., L.P. v. Perez*, 792 F.3d 554, 559 (5th Cir. 2015). Under 28 U.S.C. § 2412(b), the federal government may be liable for attorneys' fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.'"  28 U.S.C. § 2412(b).  Thus, Section 2412(b) incorporates 42 U.S.C. § 1988(b), which allows a court to award a "reasonable attorney's fee" to the prevailing party in a dispute arising under RFRA.  *Knights of Ku Klux Klan, Realm of La. v. E. Baton Rouge Parish Sch. Bd.*, 735 F.2d 895, 98 n.4 (5th Cir. 1984) (quoting 28 U.S.C. § 2412(b)).  A "reasonable" fee under Section 1988(b) is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  *Perdue v. Kenney A. ex. rel Winn*, 559 U.S. 542, 552 (2010); *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (explaining that "a fee award is not intended to be "a form of economic relief to improve the financial lot of attorneys").  The starting point for determining a reasonable fee is the "lodestar," a reasonable number of hours multiplied by a reasonable hourly rate.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Services that were excessive, redundant, inefficient, or simply unnecessary are not compensable.  *See id*. at 434.

5

The second path for recovering fees is through Section 2412(d), which allows courts to award attorneys' fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Gate Guard Servs.*, 792 F.3d at 559 (quotation omitted). Section 2412(d) applies "in any civil action . . . including proceedings for judicial review of agency action," such as those brought under the APA. 28 U.S.C. § 2412(d)(1)(A); *see also* ECF No. 193 at 2. To be eligible for fees under Section 2412(d), the party seeking fees must establish that it satisfies certain substantive and procedural requirements. Among others, the prevailing party must establish that its net worth does not exceed the statutory limit for eligibility, or that it is exempt from the net-worth cap because it is a 501(c)(3) organization, and it must allege that the government's position was not substantially justified. *See* 28 U.S.C. § 2412(d)(1)(B), (2)(B). Fees awarded under Section 2412(d) must be calculated subject to the statutory cap of $125 per hour, though courts may adjust that rate to account for increases in the cost of living or due to a special factor, such as the limited availability of qualified attorneys for the proceeding. *Id.* § 2412(d)(2)(A).[2]

## ANALYSIS

## I.   PLAINTIFFS' FEE REQUEST FOR THE UNDERLYING LITIGATION IS UNREASONABLE.

### A.   Plaintiffs' Proposed Rates Are Excessive for the Northern District of Texas.

1.   Plaintiffs Are Not Entitled to Fees Calculated Using the Becket Fund's Home Rates.

The Court should reject Plaintiffs' attempt to obtain attorneys' fees based on rates that exceed those that prevail in this District, where Plaintiffs chose to file their lawsuit. The Supreme

---

[2] Absent a finding of bad faith, attorneys' fees awarded under EAJA Section 2412(b) are paid from the Judgment Fund, whereas fees awarded under Section 2412(d) are paid from agency appropriations. *See* 28 U.S.C. § 2412(c)(2), (d)(4).

Court has been clear that "reasonable" hourly rates "are to be calculated according to the prevailing rates *in the relevant community*." *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (emphasis added). As the Fifth Circuit has recognized, the relevant community is usually defined as the district in which the forum court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Only in the "unusual case[]," and "under certain limited circumstances," may out-of-district rates be used as the starting point to calculate fees, where there is "abundant and uncontradicted evidence" that proves the "necessity" of turning to out-of-district counsel. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382–83 (5th Cir. 2011).

In *McClain*, for example, the Fifth Circuit concluded that the use of home rates was appropriate based on affidavits from numerous Texas litigators "who swore that no Texas attorneys were willing and able to assist in such a large case[.]" *Id.* at 383; *see also In re Rodriguez*, 517 B.R. 724, 733 (S.D. Tex. 2014) (considering testimony from two local attorneys "that there were no lawyers in the Valley willing to take the case"). Plaintiffs come nowhere close to making such a showing that engaging out-of-district counsel was a "necessity." *McClain*, 649 F.3d at 382.

Conspicuously absent from Plaintiffs' papers is any assertion (much less any evidence) that they were unable to obtain competent counsel in the Northern District of Texas, or anywhere within the State of Texas for that matter. Indeed, it is telling that Plaintiffs do not claim to have ever even *attempted* to locate qualified counsel within this District. Rather, Plaintiffs rely on declarations from Gene Schaerr, a Partner with the law firm of Schaerr Jaffe LLP, which is based in Washington, D.C., and from Brian Robison, a Partner with the law firm of Brown Fox PLLC, which has offices in Dallas and Frisco, Texas. *See* Schaerr Decl., ECF No. 224-2 ¶ 2; Robison Decl., ECF No. 224-3 ¶ 2. But neither declarant avers that competent counsel within the Northern District of Texas was unavailable to Plaintiffs.

Mr. Schaerr, who does not purport to be familiar with the Texas legal market, provides his opinion that "it would be incredibility difficult to bring in experienced counsel necessary to litigate a novel and complex case like this one."  ECF No. 224-2 ¶ 15.  Mr. Schaerr acknowledges, however, that his statement is based on his experience "at international law firms."  *Id.*  Similarly, Mr. Robison acknowledges that "[t]he vast majority of [his] experience involves litigation at large international law firms."  ECF No. 224-3 ¶ 6.  Based on that experience, Mr. Robison states that "it would be extraordinarily difficult, if not impossible, to bring in experienced counsel *from an international law firm* to litigate such a novel and complex case, particularly given the case's hot-button subject matter."  *Id.* ¶ 13 (emphasis added).

Neither Mr. Schaerr nor Mr. Robison explain why Plaintiffs would require representation from an "international law firm," as opposed to experienced counsel at a smaller firm.  Mr. Robison does opine that "[a] large international law firm would be the most likely candidate for having the resources to staff, litigate, and win a case like this."  *Id.* ¶ 14.  As discussed herein, Defendants dispute that this case presented particularly novel or complex issues.  However, even assuming that it did, Mr. Robison provides no reason why smaller law firms, or those without an international presence, could not have competently handled the litigation, which involved no discovery, did not go to trial, and was resolved on the parties' papers.  Nor is Mr. Robison qualified to evaluate whether another type of firm could have provided skilled counsel, given the acknowledged limits of his experience.  Moreover, Mr. Robison's statement that "*most firms* with the requisite experience would either be unable or unwilling to litigate a case like this one," *id.* (emphasis added), is a far cry from testimony establishing that *no firm* could have or would have done so. *See McClain*, 649 F.3d at 383.

8

Without any actual evidence that other qualified counsel was unavailable, Plaintiffs try to justify the use of the Becket Fund's home rates based on their assertion that the issues in the case were "complex and novel." Pls.' Mem. in Supp. of Mot. for Award of Atty's Fees and Expenses, ("Pls.' Mem.") at 10, ECF No. 224. In fact, however, Plaintiffs' claims presented straightforward issues that could have been well-handled by any competent generalist attorney. Plaintiffs themselves admitted the lack of complexity in their First Amended Complaint. Here in Plaintiffs' counsel's own words: "Ultimately, this case boils down to a very simple question of statutory interpretation: May HHS redefine the term 'sex' to thwart decades of settled precedent and impose massive new obligations on healthcare professionals and sovereign States?" FAC at 4. Plaintiffs had it right the first time, and the Court should reject Plaintiffs' newfound view of the complexity of the case now that they are seeking attorneys' fees.[3]

Plaintiffs also make much of the Becket Fund's experience in religious liberty litigation to attempt to justify an award based on Washington, D.C. rates. Defendants do not dispute that the attorneys at the Becket Fund are experienced where it comes to RFRA. But the case law interpreting RFRA is well developed at this point—in no small part as a result of the many Affordable Care Act contraceptive coverage decisions that Plaintiffs cite, *see* Pls.' Mem. at 12–13—and no specialized expertise was necessary to develop Plaintiffs' RFRA claims.

Moreover, even assuming the Becket Fund was better placed than other attorneys to handle this litigation, the Fifth Circuit has made clear that counsel are not entitled to hourly rates that "lions at the bar" command. *Van Ooteghem v. Gray*, 774 F.2d 1332, 1338 (5th Cir. 1985); *see*

---

[3] Mr. Robison states that the Becket Fund's specialized experience was "crucial" to securing Plaintiffs' victory. ECF No. 224-3 ¶ 12. But Mr. Robison's opinion is not based on personal knowledge. The Court, of course, is in a better position to evaluate whether the outcome in this case turned on the specific quality of the Becket Fund's representation.

*also Hopwood v. State of Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (affirming reduction of former Solicitor General Theodore Olson's rates to those prevalent in the community of Austin, Texas). "The standard is fair compensation." *Van Ooteghem*, 744 F.2d at 1338.  Plaintiffs may, of course, choose whatever counsel they wish, but the mere fact that they selected out-of-district specialists—apparently without ever attempting to secure counsel in this District—does not allow them to obtain fees from the government based on those specialists' home rates.

Plaintiffs' attempt to recover fees based on Washington, D.C. rates is all the more unfounded because Plaintiffs had the option of filing this case in the United States District Court for the District of Columbia.  HHS is located in Washington, D.C, which would have made venue proper there.  *See* 28 U.S.C. § 1391(e)(1).  And had Plaintiffs filed in Washington, D.C., using the Becket Fund's home rates to calculate fees would have been the norm.  Plaintiffs' argument that applying Washington, D.C. rates is appropriate because this case involved "bet the company—and bet the conscience" litigation is therefore just a red herring.  *See* ECF No. 224 at 10.  Plaintiffs still could have retained the Becket Fund and been entitled to Washington, D.C. rates for work performed on their civil rights claims had they chosen to file in Washington, D.C. Indeed, other than it being Plaintiffs' preferred venue, there is nothing about the Plaintiffs or this case that required filing in this District.  Franciscan Alliance is an Indiana corporation, and the Christian Medical & Dental Society is an Illinois corporation.  *See* FAC at 6–7.  Given that Plaintiffs *selected* the Northern District of Texas as the forum, the Court should follow the ordinary rule and award fees based on the local prevailing rates.

*        *        *

In the alternative, if the Court concludes that Plaintiffs are entitled to attorneys' fees at Washington, D.C. rates due to the Becket Fund's specialized expertise, then the Court should find

that the number of hours billed are excessive on the whole and, accordingly, apply a substantial across-the-board reduction. *See* 42 U.S.C. § 1988(b) ("[T]he court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . ."). It is only sensible to expect that experts in religious liberty litigation should be able to work more efficiently in a case involving religious liberty issues than generalists less experienced in the subject matter. Even more so in a case "that boils down to a very simple question of statutory interpretation[.]" FAC at 4.

Yet, the large number of hours the Becket Fund billed do not appear to reflect any such efficiencies. Even after taking into account Plaintiffs' counsel's exercise of "billing discretion," Plaintiffs seek to recover a total of 2,845.5 hours of attorney time (in addition to 390.4 hours of paralegal time), which is the equivalent of a single attorney working a 40-hour week for over 71 straight weeks. *See* ECF No. 224-1, Ex. 1-A at 3. The litigation of this case—which required no discovery whatsoever and no trial, and which involved straightforward APA, RFRA, and justiciability arguments—should not have required that level of effort, and certainly not when performed by "well-known [] expert religious liberty litigators." Pls.' Mem. at 13 (quoting ECF No. 224-2 ¶ 10).

That Plaintiffs counsel' total claimed hours are unreasonable is underscored by the fact that they were not the only attorneys litigating against HHS in this case. Far from it. Plaintiffs were accompanied on the First Amended Complaint by various States, each of which had its own attorneys who presumably contributed to the overall effort, or at a minimum on the shared legal claims. The time Plaintiffs' counsel billed is unreasonably high considering that those other attorneys were advancing the same, or substantially similar, arguments.

Accordingly, if the Court concludes that Washington D.C. rates are appropriate based on the Becket Fund's purported expertise, Defendants ask that the Court apply an across-the-board

reduction of hours billed of 25 percent to account for the unreasonableness of the total hours expended.

2.    <u>Plaintiffs' Proposed Rates for Dallas–Ft. Worth Are Excessive</u>.

Plaintiffs' proposed market rates for the Dallas–Ft. Worth area are also excessive and out of line with rates used to calculate recent fee awards in recent cases in the Northern District of Texas.  Notably, Plaintiffs do not cite to any decision from this District in which a court has awarded rates as high as those Plaintiffs seek, which start at $420 per hour for a first-year law graduate for work performed in 2016 and reach $1,050 per hour for work performed in 2019 by the Becket Fund's most experienced attorney.  *See* ECF No. 224 at 15.  In the last year, courts in the Northern District of Texas have, instead, awarded fees at significantly lower rates than those Plaintiffs propose.  *See, e.g.*, *UMB Bank, N.A. v. All Com. Floors, Inc.*, Civ. A. No. 21-cv-01154-O, 2022 WL 3139754 (N.D. Tex. Aug. 5, 2022) (adopting report recommending approval of 2022 rates ranging from $575 per hour for an associate with eight years' experience to $765 per hour for an attorney with twenty-five years' experience); *UMB Bank, N.A. v. All Com. Floors, Inc.*, Civ. A. No. 21-cv-01154-O, 2022 WL3146055, at *6 (N.D. Tex. July 21, 2022) (underlying report and recommendation); *S & P Inv. Grp., LLC v. Kingdom Materials Holdings, LLC*, Civ. A. No. 21-cv-00159-O, 2022 WL 2919498 (N.D. Tex. July 7, 2022) (report and recommendation) (finding $575 per hour reasonable for an attorney with more than twenty years of business experience); *Hill v. Estate of Hill*, Civ. A. No. 20-cv-03634-L, 2022 WL 17475788, at *9 (N.D. Tex. Dec. 5, 2022) (approving hourly rate of $475 for an attorney licensed to practice law in Texas since 2002); *Hill v. Schilling*, Civ. A. No. 07-cv-2020-L, 2022 WL 1321548, at *6 (N.D. Tex. May 3, 2022) (approving rates of $830 per hour for a shareholder at Locke Lorde with twenty-eight years' experience).

Nor do Plaintiffs' declarations provide support for the local rates Plaintiffs propose. Among Plaintiffs' declarants, only Mr. Robison provides his opinion regarding rates appropriate in this District. *See* ECF No. 224-3 ¶ 17–28. The "vast majority" of Mr. Robison's experience, however, as discussed above, is limited to "litigation at large international law firms." *Id.* ¶ 6. Large international law firms presumably have significantly higher costs (*e.g.*, overhead) than a boutique religious-liberty-focused legal organization like the Becket Fund. For example, based on the Becket Fund's website, its total staff consists of forty-seven persons, including managers, counselors, government affairs personnel, researchers, communications personnel, operations personnel, and one fellow. *See* Becket, Our Staff, available at https://www.becketlaw.org/about-us/staff/ (last visited Jan. 18, 2023). Compare that to Mr. Robison's former firm, Gibson, Dunn & Crutcher, which employs over 1800 attorneys, in addition to non-attorney staff, across twenty worldwide offices. *See* Gibson Dunn, https://www.gibsondunn.com/ ("1800+ Lawyers") (last visited Jan. 18, 2023); ECF No. 224-3 ¶ 3. It is apples to oranges, therefore, to compare reasonable rates for the Becket Fund with reasonable rates for attorneys at large international law firms. *See Carroll v. Sanderson Farms, Inc.*, Civ. A. No. H-10-3108, 2014 WL 549380, at *22 (S.D. Tex. Feb. 11, 2014) (reducing proposed rate after taking into account the size of plaintiff counsel's firm); *see also id.* at *14 (citing cases for the proposition that the size of the firm affects the reasonableness of rates).

Defendants propose that the Court apply a reduction of $150 (excluding paralegal rates) to Plaintiffs' proposed Dallas–Ft. Worth rates to bring the lodestar calculation in line with fee rates approved in recent decisions in this District—which reflect the prevailing market rates in the community—and to prevent an excessive fee award. *See Blum*, 465 U.S. at 894 ("[A] reasonable

attorney's fee is one that is adequate to attract competent counsel, but that does not produce windfalls to attorneys." (cleaned up)).

**B.  Plaintiffs Should Not Recover for Time That Is Not Compensable.**

1.  Plaintiffs Should Not Recover Fees for Work Performed Opposing Intervenors.

By Defendants' calculations, and judging as best as Plaintiffs' counsel's billing records permit, Plaintiffs seek 462.3 hours for time spent litigating against the Intervenors in this case—both as to the propriety of their participation in the case and in opposing Intervenors' arguments on the merits. *See* Humphreys Decl., Ex. A-2 (excerpting relevant billing entries). Plaintiffs should not recover from the government the fees that they seek for such work.

The Fifth Circuit concluded as much in *Avoyelles Sportsmen's League v. Marsh*, 786 F.2d 631 (5th Cir. 1986), when interpreting an analogous fee shifting provision in the Clean Water Act, 33 U.S.C. § 1365(d) (authorizing courts to award fees "to any party, whenever the court determines such award is appropriate"). In *Avoyelles*, the government argued that it should not be responsible for fees related to "matters of dispute between the plaintiffs and the private defendants rather than between the plaintiffs and the government." 786 F.2d at 633–34. The Fifth Circuit agreed, concluding that a fee award is "not appropriate for expenses incurred . . . in a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties." *Id.* at 632; *see also id.* at 636 (explaining that Supreme Court precedent "precludes the court from forcing the government to pay the plaintiffs' expenses in litigating an issue on which they were opposed only by the private defendants" (citations omitted)). Courts interpreting other fee-shifting statutes, including 42 U.S.C. § 1988(b), have applied similar logic to preclude recovery of fees from defendants for hours spent on disputes between plaintiffs and intervenors. *See Stormans Inc. v. Selecky*, 906 F. Supp. 2d 1093, 1102–03 (W.D. Wash. 2012) (42 U.S.C. § 1988); *Love v. Reilly*,

924 F.2d 1492, 1495 (9th Cir. 1991) (EAJA) (citing *Avoyelles*, 786 F.2d at 632); *Hayes, Trustee for Paul B. Hayes Family Trust v. Chaparral Energy, LLC*, Case No. 14-CV-495-GKF-PJC, 2018 WL 10780611, at *8–9 (N.D. Okla. Mar. 21, 2018) (EAJA); *Judicial Watch v. U.S. Dep't of Commerce*, 470 F.3d 363, 373 (D.C. Cir. 2006) (Freedom of Information Act).

The Intervenors in this case, of course, are organizations wholly separate from Defendants, and Defendants did not support Intervenors' efforts to participate in the litigation.  *See* ECF Nos. 73, 141.  It would therefore be patently unfair to require the United States to pay for Plaintiffs' efforts to oppose Intervenors' participation.  *See Avoyelles*, 786 F.2d at 636; *Stormans*, 906 F. Supp. 2d at 1102–03.  Nor did Defendants join in the Intervenors' merits arguments, and therefore the fees incurred addressing those arguments are not "attributable to opposing [ ] government resistance."  *Stormans*, 906 F. Supp. 2d at 1103.  To the contrary, while Intervenors opposed Plaintiffs' February 2019 renewed summary judgment motion on the merits, *see* ECF No. 155, the Court had already remanded the challenged Rule to the agency—upon Defendants' request—for further rulemaking proceedings.  *See* ECF Nos. 92, 105.  Even more, in their response to Plaintiffs' summary judgment motion, Defendants acknowledged that the challenged provisions of the Rule were contrary to Section 1557 and that Plaintiffs were entitled to summary judgment.  *See* ECF No. 154.  Thus, the time Plaintiffs spent opposing the Intervenors' merits arguments are not the taxpayers' responsibility.

Defendants also note that their proposed reduction of 462.3 hours is likely underinclusive, because Defendants have counted toward that total only hours reflected in billing entries where it seems clear, based on the description or the timing, that the work performed was in opposition to Intervenors.  Presumably many other billing entries relate to work performed related to the Intervenors' participation.  For example, the Intervenors raised arguments during Plaintiffs' appeal

of this Court's denial of an injunction that Defendants did not.  Yet, Plaintiffs' billing records are insufficiently detailed to allow Defendants to identify when Plaintiffs were opposing Defendants (for which Plaintiffs can recover fees) or Intervenors (for which Plaintiffs cannot).  Defendants' proposed exclusion is therefore more than reasonable.

> 2.    Plaintiffs Should Not Recover Fees Related to Their Untimely Request to Modify Fee Petition Deadlines.

Plaintiffs also improperly seek to recover fees for 76.6 hours of work performed in support of their purported "Motion to Set Deadline for Filing Petition for Fees and Expenses," which Plaintiffs filed on January 17, 2022, ECF No. 184.  *See* Humphreys Decl., Ex. A-3 (excerpting relevant billing entries).  The deadline for seeking fees under Section 2412(b) was already apparent from Rule 54 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 54(d)(2)(B)(i).  By the time Plaintiffs filed their motion, that deadline had already passed, as the Court recognized.  *See* Order, ECF No. 193 at 6–7.  Although the Court ultimately granted Plaintiffs' motion and extended the deadline, it did so only because it concluded that Plaintiffs' error was due to "excusable neglect."  *Id*. at 8.  Litigation of Plaintiffs' fee-deadline motion would not have been necessary had Plaintiffs timely filed their fee petition—or otherwise sought an extension of deadline before it had passed—and therefore the United States should not be responsible for the unreasonable cost of that aspect of the litigation.  *See Hensley*, 461 U.S. at 434 (defendants responsible only for hours "reasonably expended").

3.    <u>Plaintiffs Should Not Recover for Time Spent Seeking Deadline Extensions</u>.

Plaintiffs also seek to recover for 21 hours of time spent on deadline extension requests for Plaintiffs' own purposes.  *See* Humphreys Decl., Ex. A-4 (excerpting relevant billing entries).[4] While Defendants understand that extension requests are commonplace and to be expected in litigation, and Defendants did not oppose those motions, time spent seeking extensions should not be recoverable from the government.  *See Hannon v. Nevitt*, Civ. A. No. 3:09-cv-66-N, 2013 WL 12290978, at *13 (N.D. Tex. Mar. 14, 2013) (reducing hours to account for, among other things, time spent on an extension request); *Brown v. Miss. Dep't of Health*, Case No. 3:11-cv-146-CRW-FKB, 2013 WL 12128785, at *2 (S.D. Miss. Mar. 5, 2013) (excluding time spent on a second motion for extension of time); *Beamon v. City of Ridgeland, Miss.*, 666 F. Supp. 937, 942 n.4 (S.D. Miss. 1987) (reducing hours spent drafting motions for extension of time to respond to discovery); *Sheppard v. U.S. Dep't of Justice*, Case No. 4:17-cv-1037-NKL, 2022 WL 245480, at *10 (W.D. Mo. Jan. 25, 2022) (eliminating hours spent on extension motions in FOIA litigation); *Cross v. Comm'r of Social Sec. Admin.*, Civ. A. No. 1:18-cv-5198-TCB, 2020 WL 9810009, at *9 (N.D. Ga. Sept. 29, 2020) (reducing fees sought under EAJA for time spent seeking extensions). Defendants therefore ask the Court to exclude from the calculation of Plaintiffs' fee award the time spent on such deadline extensions, or at least to reduce such hours in the Court's discretion.

---

[4] Defendants note that, to avoid double-counting of its proposed exclusions, Defendants have not included in Exhibit A-4 time Plaintiffs spent on extension requests made during the course of Intervenors' appeal of this Court's denial of permissive intervention and of the Court's preliminary injunction order.  However, to the degree the Court were to allow Plaintiffs to recover for time spent opposing Intervenors despite Defendants' arguments above, *see* Part I.B.1, *supra*, Defendants ask that the Court exclude time spent on extension requests contained in Exhibit A-2. *See* Humphreys Decl., Ex. A-2 (entries on 10/3/2016, 10/5/2016, 10/6/2016, 2/3/2017, 2/14/2017, 2/15/2017, 2/16/2017, 3/14/2017, 3/15/2017, 4/18/2017, 4/19/2017, 4/20/2017, and 6/19/2017 related to extension requests).

**C.      Plaintiffs Have Not Established Their Entitlement to Fees on Their APA Claims.**

The Court should also substantially reduce Plaintiffs' fee request because Plaintiffs are not entitled to fees, much less fees at market rates, on the time spent pursuing their APA claims.  As this Court explained previously, EAJA Section 2412(d) "applies 'in any civil action . . . including proceedings for judicial review of agency action,' such as those brought under the APA."  ECF No. 193 at 2 (quoting 28 U.S.C. § 2412(d)(1)(A)).  This case is such a challenge to agency action, and Plaintiffs' leading claims were brought under the APA.  Thus, to obtain fees for work performed on those claim, Plaintiffs must meet the requirements of EAJA Section 2412(d), including the filing of an application that meets the statute's procedural requirements.  *Id.* § 2412(d)(1)(B).

Plaintiffs have not even attempted to meet those requirements, despite previously suggesting to the Court that they intended to seek fees under Section 2412(d).  *See* ECF No. 184 at 6 ("[Plaintiffs] also seek fees directly under the EAJA itself as prevailing parties under the APA." (citing 28 U.S.C. § 2412(d)(1)(A)).  They have not demonstrated that either of the Plaintiff organizations is a "party" eligible for fees.  *Id.* § 2412(d)(1)(B), (2)(B).  Nor have they alleged that Defendants' position was not substantially justified.  *Id.* § 2412(d)(1)(B).  Accordingly, Plaintiffs are not entitled to fees for time spent advancing their APA claims.

Defendants anticipate that Plaintiffs will respond that, because their APA claims arise out of the same "common core of facts" as their RFRA claim, they are a prevailing party under 42 U.S.C. § 1988(b) for all of their claims, including their APA claims.  *See Hensley*, 461 U.S. at 435. The Court should reject any such argument.  Defendants recognize that, in *Hensley*, the Supreme Court explained that some civil rights cases will involve multiple related claims, and that such a lawsuit "cannot be viewed as a series of discrete claims."  *Id.*  However, that discussion in *Hensley*

18

was in the context of a proposed fee reduction for work on civil rights claims on which the plaintiff did not prevail, and the Court concluded only that, under the facts of that case, the fee amount should not be reduced on a proportional basis to account for the lack of success on particular civil rights claims. *See id.* ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.").

Here, by contrast, 42 U.S.C. § 1988(b) does not authorize fees for a party prevailing on APA claims. Thus, an entirely different fee-shifting provision (28 U.S.C. § 2412(d)) applies to Plaintiffs' APA claims. Allowing Plaintiffs to recover fees for their APA claims, including fees at market rates instead of the statutory rates established under 28 U.S.C. § 2412(d), merely because the First Amended Complaint also invokes RFRA, would be an end run around the statutory requirements and rates prescribed in EAJA Section 2412(d) for judicial review of agency action and would provide an inequitable windfall to Plaintiffs' counsel. Moreover, that the two avenues for obtaining fees are separate, with distinct requirements, is reflected in the different timing requirements for seeking fees under the two provisions that this Court has recognized. See ECF No. 193 at 6–7.

Unfortunately, Plaintiffs' billing records are not sufficiently detailed to determine the hours Plaintiffs' counsel worked specifically on the APA claims. However, Plaintiffs spent a substantial portion of their merits briefing on their APA claims, which was one of the two claims on which this Court entered judgment for Plaintiffs. To account for Plaintiffs' failure to establish their entitlement to fees for work performed on their APA claims, Defendants propose a 30 percent reduction of Plaintiffs' fee request.

19

**D.      Defendants Are Entitled to A Fee Reduction To Account for Plaintiffs' Counsel's Block Billing.**

Defendants further ask that the Court apply a 5 percent reduction in Plaintiffs' fee award to account for block billing entries in Plaintiffs' billing records.

"'Block billing' is a 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 n.23 (S.D. Tex. 2011) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1534 n.15 (10th Cir. 1996)).  Block billing prevents courts from accurately determining the numbers of hours spent on a particular task, thus "impair[ing] the required reasonableness evaluation." *Bramlett v. Med. Prot. Co. of Fort Wayne, Ind.*, Civ. A. No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (quoting *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-0913-D, 2005 WL 6789456, at *4 (N.D. Tex. Dec. 20, 2005), *aff'd*, 2007 WL 3085028 (5th Cir. Oct.23, 2007)) (internal quotation marks omitted); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) ("[D]ocumentation must be sufficient for the court to verify that the applicant has met its burden.").

A significant number of Plaintiffs' counsel's billing entries are block billed, making it impossible for Defendants and the Court to evaluate the reasonableness of Plaintiffs' overall fee request.  Defendants have identified 324.4 hours of work that Plaintiffs describe in block billing entries, without a separate time entry for the different activities listed.  *See* Humphreys Decl., Ex. A-5 (excerpting relevant billing entries).  Some of the activities described, moreover, are either unrelated to Plaintiffs' litigation of the case or should be excluded for the reasons provided above. *See, e.g.*, ECF No. 224-1 at 71, 7/25/2022, Daniel Chen (including work performed to "review media and comms assets"); *id.* at 13, 10/28/2016, Mark Rienzi (mingling work performed

responding to the ACLU and research regarding "HHS proposal").  Defendants' proposed 5 percent reduction of Plaintiffs' total fee request, after accounting for Defendants' proposed hour exclusions, is warranted to account for the deficiencies in Plaintiffs' billing descriptions.  *See, e.g.*, *Miller v. Raytheon Co.*, Civ. A. No. 3:09-cv-440-O, 2013 WL 6838302, at *10 (N.D. Tex. Dec. 27, 2013) (applying a 5 percent reduction in fees for very limited instances of block billing in the plaintiff's records); *see also Merrick v. Scott*, Civ. A. No. 3:10-cv-2172-D, 2011 WL 1938188 (N.D. Tex. May 20, 2011) (reducing fee claim by 20 percent to account for more pervasive block billing).

## II.    AN ENHANCEMENT OF FEES IS NOT WARRANTED.

Plaintiffs also suggest that an enhancement of their fees could be appropriate upon consideration of the factors the Fifth Circuit articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  Plaintiffs do not analyze those factors, however, or otherwise attempt to justify any enhancement.  Their conclusory request should be rejected for that reason alone.  In any event, no enhancement is warranted.

The *Johnson* factors include the following: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See id.* at 717–19.

When evaluating these factors, the court must not "double count" a factor "already considered in calculating the lodestar."  *Walker v. U.S. Dep't of Hous. and Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996).  In other words, a district court may adjust the lodestar amount in accordance

21

with those relevant *Johnson* factors that have not been considered in the lodestar calculation. *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).   Moreover, there is a strong presumption that the lodestar represents the reasonable fee, *see City of Burlington v. Dague*, 505 U.S. 557, 562 (1992), and courts may upwardly enhance the lodestar amount only in "certain 'exceptional' cases"—those in which there is a substantial risk of not prevailing, or in which the issues are so novel or complex that the lodestar amount awarded would not provide a reasonable fee that would adequately reflect the quality of the representation." *Von Clark v. Butler*, 916 F.2d 225, 260 (5th Cir. 1990).   The need for enhancing the award must be "readily apparent and supported by evidence in the record."   *Id.* (quoting *Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987)).

The circumstances of this case do not call for any sort of enhancement.   As discussed above, Defendants disputed the merits of Plaintiffs' claims only at the preliminary injunction stage of the litigation, and, even then, there was nothing particularly complex or novel about the APA or RFRA issues presented.   The case was stayed for a lengthy period while HHS reconsidered the Rule, and no discovery or trial took place.   Nor have Plaintiffs shown that their counsel were unable to handle other litigation while this case proceeded, that the case was "undesirabl[e]," or that Plaintiffs and their counsel have any sort of special relationship.   Other than Plaintiffs' victory in the case, the *Johnson* factors—which, again, Plaintiffs do not address—therefore weigh against enhancing Plaintiffs' fees.   *Compare Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 20-cv-1277, 2022 WL 2805527, at *5–8 (N.D. Tex. July 18, 2022) (awarding enhancement due in part to the complexity of the ERISA action; Plaintiff's counsel's "aggressive[] pursu[it] [of] necessary discovery, including third-party subpoenas"; counsel's "stand-up trial skills;" and the prosecution of "a very tough case that historically had little chance of recovery"), *appeal docketed*, No. 22-

10710 (5th Cir. July 25, 2022); *Shipes v. Trinity Indus.*, 46 F.3d 67, 1995 WL 29358, at *1 (5th Cir. 1995) (per curiam) (affirming enhancement based on district court findings specific to the Tyler Division that attorneys in that area customarily charged a premium for exceptional results).

## III.   PLAINTIFFS' REQUEST FOR FEES-ON-FEES SHOULD BE SIGNIFICANTLY REDUCED.

In addition to claiming fees for litigating the merits of this case, Plaintiffs also seek fees for 135.1 hours spent litigating fees, for which Plaintiffs' seek $105,436.  *See* Humphreys Decl., Ex. A-6 (excerpting relevant billing entries).  Defendants do not oppose a reasonable fee award for the time Plaintiffs' counsel spent compiling billing records and attempting to settle fees before filing their motion.  However, any fees-on-fees award should be reduced by an amount proportional to Plaintiffs' success (or lack thereof) on their fee request for the underlying litigation. *See, e.g.*, *Comm'r, Immigr. & Naturalization Serv. v. Jean*, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 878 F. Supp. 2d 225, 241 (D.D.C. 2012) (awarding plaintiff 5.3% of fees-on-fees request where plaintiff obtained 5.3% of fee request for underlying litigation).

Based on the arguments herein, Defendants propose that the Court award fees limited to $848,208.73 for the other portions of this litigation, which is 37.86 percent of what Plaintiffs request, excluding the time spent on fees.  *See* Humphreys Decl., Ex. A-7 (providing a summary of Defendants' proposed fee calculations).  Accordingly, Defendants propose that the Court reduce Plaintiffs' fees-on-fees request proportionally and award no more than $39,918.07 in fees on fees.

## CONCLUSION

For the foregoing reasons, the Court should award no more than $888,126.80 in total attorneys' fees.  Defendants do not oppose Plaintiffs' request for $4,209.28 in expenses.

23

Dated:   January 18, 2023

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE BENNETT
Assistant Branch Director, Federal Programs
Branch

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W
Washington, D.C. 20005
Telephone: (202) 305-0878
E-mail: Bradley.Humphreys@usdoj.gov

*Counsel for Defendants*

24