IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| FRANCISCAN ALLIANCE, INC. et al., § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 7:16-cv-00108-O |
| § | |
| XAVIER BECERRA, Secretary of the § | |
| United States Department of Health and § | |
| Human Services; and UNITED STATES § | |
| DEPARTMENT OF HEALTH AND § | |
| HUMAN SERVICES, § | |
| § | |
| Defendants. § | |

## ORDER AND OPINION

Before the Court are Plaintiffs' Motion for Attorney Fees (ECF No. 223), filed December 23, 2022; Defendants' Response (ECF No. 227), filed January 18, 2023; and Plaintiffs' Reply (ECF No. 228), filed February 1, 2023. For the reasons contained herein, Plaintiffs' Motion is **GRANTED in part** and **DENIED in part**.

### I.   Factual Background

This case was first filed on August 23, 2016. Plaintiffs brought the case to challenge a rule issued by the Department of Health and Human Services ("HHS") that would require doctors and hospitals across the country to perform and insure gender transitions and abortions — regardless of one's religious beliefs and experienced medical judgment.

After approximately six years of hard-fought litigation, the Fifth Circuit Court of Appeals issued a Judgment and Opinion dismissing Plaintiffs' Administrative Procedure Act ("APA") claim as moot and affirming this Court's decision to grant Plaintiffs their requested permanent

1

injunction as to Plaintiffs' Religious Freedom Restoration Act ("RFRA") claim.[1] Plaintiffs filed their Motion for Attorney Fees on December 23, 2022.[2] Defendants filed their Response on January 18, 2023.[3] Plaintiffs filed their Reply on February 1, 2023.[4] The motion is now ripe for the Court's review.

## II.     Legal Standard

To determine the propriety of an award of attorney's fees, district courts follow a two-step process. *Alexander v. City of Jackson Miss.*, 456 F. App'x 397, 399–400 (5th Cir. 2011) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). At step one, the court makes its "lodestar" calculation in which it determines the reasonable number of hours expended on the litigation and the reasonable hourly rate to be charged, then multiplies the hours expended by the hourly rate. *Id.* In determining the reasonable hours expended, courts may accept the attorneys' adequately documented billing records but must exclude any time deemed excessive, duplicative, or inadequately descriptive. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). At step two, the court exercises its broad discretion to determine whether the lodestar should be adjusted upward or downward, taking into consideration the factors set out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Alexander*, 456 F. App'x at 399–400. Those factors include:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney by acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[1] *See* ECF Nos. 221, 222.
[2] Pls. Mot., ECF No. 223.
[3] Defs. Resp., ECF No. 227.
[4] Pls. Reply, ECF No. 228.

*Johnson*, 488 F.2d at 717-19.

Though the district court has broad discretion to weigh these factors, "[t]he lodestar may not be adjusted due to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Importantly, there is a strong presumption that the requested lodestar amount is reasonable, meaning it should only be modified if exceptional circumstances warrant an adjustment. *Watkins*, 7 F.3d at 457.

### III.     Analysis

Plaintiffs contend, and Defendants do not dispute, that they are entitled to recover attorney's fees and expenses under 42 U.S.C. § 1988(b), which authorizes "reasonable" attorney's fees for the prevailing party "[i]n any action or proceeding to enforce … the Religious Freedom Restoration Act."[5] 42 U.S.C. § 1988(b). The Court agrees. The Court therefore must determine a reasonable attorney's fee award.

#### 1.     Lodestar Calculation

##### i.    Reasonable Number of Hours Expended on Litigation

To determine the reasonable number of hours expended on litigation, the Court must determine "whether the total number of hours claimed were reasonable and whether specific hours claimed were reasonably expended." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (citation omitted). The court must eliminate excessive or duplicative time. *Id.* (citing *Watkins*, 7 F.3d at 457). Contemporaneous billing records are an acceptable, and indeed a preferred, method of determining the hours reasonably expended. *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).

---

[5] Pls. Brief 2, ECF No. 224; Defs. Resp. 1, ECF No. 227.

In this case, Plaintiffs' counsel has provided contemporaneous billing records detailing the hours spent litigating this case.[6] In total, Plaintiffs' counsel contend they expended 3,805.6 hours litigating this lawsuit.[7] However, in the exercise of billing judgment, Plaintiffs' counsel state they reduced the total number of hours by 569.7, around fifteen percent, leaving a total of 3,235.9 hours.[8] Defendants aver that the number of hours claimed by Plaintiffs' counsel is not reasonable.[9] They claim that the litigation was straightforward and should not have required the great amount of effort claimed by Plaintiffs' counsel.[10] They contend that Plaintiffs should not be allowed to recover fees for work performed opposing intervenors.[11] They contend Plaintiffs should not recover fees related to their untimely request to modify fee petition deadlines.[12] Defendants further contend that Plaintiffs should not recover for time spent seeking deadline extensions.[13] Lastly, Defendants contend Plaintiffs are not entitled to fees for time spent pursuing their APA claim.[14]

As an initial matter, the Court rejects Defendants' contention that the number of hours billed was excessive as this litigation "involved straightforward APA, RFRA, and justiciability arguments" and should not have required an extreme amount of effort when performed by religious liberty litigation experts.[15] Plaintiffs' counsel spent six years litigating this case, both here in the district court and at the Fifth Circuit where they won two appeals—first on the preliminary injunction and then on the permanent injunction.[16] Plaintiffs' counsel expended a great amount of

---

[6] Pls. Ex. 1-C, 1-D, ECF No. 224-1.
[7] Pls. Brief 6, ECF No 224.
[8] *Id.*
[9] Defs. Resp. 10–21, ECF No. 227.
[10] *Id.* at 10–12.
[11] *Id.* at 14.
[12] *Id.* at 16.
[13] *Id.* at 17.
[14] *Id.* at 18.
[15] *Id.* at 11.
[16] Pls. Brief 1–2, ECF No. 224.

4

effort litigating this case, which was vigorously contested, and thereby the Court declines to find that the hours claimed by Plaintiffs' counsel were extreme. The Court shall address in turn each of Defendants' remaining arguments regarding the reasonable number of hours expended.

### a. Opposing Intervenors

Defendants contend that Plaintiffs should not be able to recover fees for the 462.3 hours spent litigating against the intervenors in this case.[17] Defendants aver Plaintiffs should not be able to recover for time spent litigating both as to the propriety of the intervenors' participation in the case and in opposing the intervenors' arguments on the merits.[18]

The Court first considers whether Plaintiffs can recover fees for time spent litigating against the intervenors' arguments on the merits. The Fifth Circuit has held that, while a prevailing litigant may not recover for hours devoted solely to claims against other parties, a prevailing litigant can recover when claims against multiple parties share a "common core of facts" or "related legal theories." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995); *accord, e.g., Stevenson v. Lasalle Corr. Transp., LLC*, No. 3:13-CV-2105-N, 2015 WL 11120525, at *2–3 (N.D. Tex. Apr. 21, 2015). Defendants cite to *Avoyelles Sportsmen's League v. Marsh*, wherein the government argued that it should not be responsible for fees related to "matters of dispute between the plaintiffs and the private defendants rather than between the plaintiffs and the government." 786 F.2d 631, 633–34 (5th Cir. 1986). The Fifth Circuit agreed, concluding that a fee award is "not appropriate for expenses incurred . . . in a phase of the litigation in which the party seeking an award was opposed only by other, non-governmental parties." *Id.* at 632.

Defendants contend that the intervenors in this case are organizations wholly separate from

---

[17] Defs. Resp. 14, ECF No. 227.
[18] *Id.*

Defendants, and that Defendants did not support the intervenors' merits arguments.[19]

In this case, the Court finds there was no point during the litigation where the government "did not oppose the plaintiffs on any issue on which the plaintiffs ultimately prevailed." *Avoyelles*, 786 F.2d at 633. Rather, Defendants—alongside the intervenors— resisted injunctive relief for Plaintiffs all the way through the Fifth Circuit's affirmance in August 2022. Further, the Court has already found that the intervenors' defense was directly related to the underlying controversy.[20] As noted by Plaintiffs, the sole basis for intervention in this case was to defend the same HHS actions challenged by Plaintiffs against the same legal theories Plaintiffs urged. Therefore, the claims against Defendants and the defenses put forth by the intervenors shared a "common core of facts" and "related legal theories." Accordingly, the Court finds Plaintiffs may recover for the hours spent litigating against the intervenor's merits arguments.

The Court holds that Plaintiffs cannot, however, recover for time spent opposing the intervenor's participation in the case. Defendants did not oppose or support the intervenor's participation in the lawsuit, but rather, they remained neutral on the issue. The Court concludes it would be inequitable to charge Defendants for time spent opposing intervention under such circumstances. *See Hopwood v. Texas*, 236 F.3d 256, 280 (5th Cir. 2000). However, in the exercise of billing judgment, Plaintiffs' counsel has already cut 138.4 intervenor-related hours.[21] The remaining hours incurred opposing intervenor participation equal 38.65 hours.[22] Therefore, the Court concludes Plaintiffs' claimed hours spent litigating against the intervenors should be reduced by 38.65 hours. Accordingly, Plaintiffs can recover for 423.65 hours spent litigating against the intervenors in this case.

---

[19] Defs. Resp. 15, ECF No. 227.
[20] Order 14, ECF No. 175.
[21] Pls. Reply 8, ECF No. 228.
[22] *Id.* (citing Goodrich Suppl. Decl. Ex. 4-D, ECF No. 228-1).

### b. *Fees Related to Plaintiffs' Request to Modify Fee Petition Deadlines*

Defendants next contend that Plaintiffs should not be able to recover fees for 76.6 hours of work performed in support of their "Motion to Set Deadline for Filing Petition for Fees and Expenses," which Plaintiffs filed on January 17, 2020.[23] Defendants highlight that Plaintiffs' filing of this motion was untimely under Federal Rule 54, which the Court recognized.[24] However, the Court ultimately granted Plaintiffs' motion, concluding that Plaintiffs' error was due to "excusable neglect."[25] Defendants aver that these hours would not have been incurred if Plaintiffs had timely filed their fee petition or had sought an extension of the deadline before its expiration.[26]

Plaintiffs counter that this motion for an extension and the accompanying briefing were necessary only because the government refused to agree to an extension and then vigorously contested it.[27] The Court, in its Order on Plaintiffs' motion, found that Defendants were not prejudiced by Plaintiffs' motion.[28] Ultimately the Court finds that Plaintiffs should be able to recover for the 76.6 hours spent litigating this motion.

### c. *Fees for Time Spent Seeking Deadline Extensions*

Defendants next contend that Plaintiffs should not be able to recover for 21 hours spent on deadline extension requests for Plaintiffs' own purposes.[29] Plaintiffs aver that there is no categorical rule stating that time spent on deadline extension requests is not recoverable.[30] The Court agrees with Plaintiffs that there does not appear to be a hard-and-fast rule regarding whether hours spent on deadline extension requests are or are not recoverable. The Court further notes that

---

[23] Defs. Resp. 16, ECF No. 227 (referring to ECF No. 184).
[24] *Id.* (citing Order 6–7, ECF No. 193).
[25] Order 8, ECF No. 193.
[26] Defs. Resp. 16, ECF No. 227.
[27] Pls. Reply 9, ECF No. 228 (citing Pls. Mot., ECF No. 184; Defs. Resp. to Pls. Mot., ECF No. 187).
[28] Order 8, ECF No. 193.
[29] Defs. Resp. 17, ECF No. 227.
[30] Pls. Reply 9, ECF No. 228.

Defendants admit such extension requests are "commonplace" and that Defendants make no argument the time spent on such extension requests was unreasonable.[31] The Court overall finds that Plaintiffs should be able to recover for the 21 hours spent on deadline extension requests.

### d. Fees on Plaintiffs' APA Claim

Defendants next aver that the Court should also substantially reduce Plaintiffs' fee request because Plaintiffs are not entitled to fees—much less fees at market rate—on the time spent pursuing their APA claim.[32] Defendants state that Plaintiffs must meet the requirements of Section 2412(d) of the Equal Access to Justice Act ("EAJA") to recover such fees.[33] Plaintiffs counter that all of their fees are recoverable under 42 U.S.C. § 1988.[34] Further, Plaintiffs argue that even if Plaintiffs' APA hours were separately subject to the EAJA, those hours still must be compensated at the EAJA rate.[35] Finally, Plaintiffs attest that since November 2019, all of Plaintiffs' fees were attributable solely to litigating the RFRA claim.[36] The Court agrees. The issue is therefore whether the pre-November 2019 fees can be recovered under § 1988(b).

Section 2412(d) of the EAJA applies to APA claims, "[e]xcept as otherwise specifically provided by statute." 28 U.S.C. § 2412(d)(1)(A). Meanwhile, 42 U.S.C. § 1988(b) explicitly states that it applies "[i]n any action or proceeding to enforce a provision of [RFRA]." 42 U.S.C. § 1988(b). The Department of Justice has emphasized § 2412(d)'s "subordinate status," explaining that when plaintiffs seek relief under two distinct claims that implicate two distinct fee-shifting mechanisms, § 2412(d) should be applied "only as a fall-back to other fee shifting provisions." *Payment of Att'y's Fees in Litig. Involving Successful Challenges to Fed. Agency Action Arising*

---

[31] *See* Defs. Resp. 17, ECF No. 227.
[32] *Id.* at 18.
[33] *Id.*
[34] Pls. Reply 4, ECF No. 228.
[35] *Id.*
[36] *Id.* at 5.

*Under the Admin. Proc. Act & the Citizen-Suit Provisions of the Endangered Species Act*, 24 U.S. Op. O.L.C. 311, 2000 WL 34474453, at *3–4 (2000) ("*OLC Op.*"). Applying this logic where there were claims under both the EAJA and the Endangered Species Act ("ESA"), a district court in Oregon stated that "only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to the EAJA." *Landwatch v. Jefferies*, No. 2:17-cv-01004-SU, 2020 WL 8172994, at *8 (D. Or. Aug. 7, 2020), *report and recommendation vacated after settlement*, No. 2:17-cv-1004-SU, 2021 WL 1022584 (D. Or. Mar. 16, 2021). The district court in that case rejected any allocation of APA fees to § 2412(d), as all fees were recoverable under another fee provision, the ESA. *Id.* at 8-9. While this case is not binding on the Court, the Court does find it persuasive and informative as to how § 2412(d) of the EAJA works in conjunction with other fee statutes.

The Supreme Court and the Fifth Circuit have held that a partially prevailing party may recover all reasonably incurred fees, even where the party did not prevail on all claims, as to all defendants, or as to all issues. *See Hensley*, 461 U.S. at 435–40; *Coleman v. Hous. Indep. Sch. Dist.*, No. 98-20692, 1999 WL 1131554, at *5 (5th Cir. 1999). In such cases, the Fifth Circuit has explained that, in deciding whether the prevailing party should be able to recover fees for time spent litigating unsuccessful claims, "the key is whether the successful and unsuccessful claims are based upon the same facts and legal theories, i.e., whether the claims are related." *Coleman*, 1999 WL 1131554, at *5. "When the successful and unsuccessful claims involve a 'common core of facts' or are based upon 'related legal theories,' then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiff's ultimate success." *Id.* Furthermore, where time spent on different claims is difficult to segregate, the Fifth Circuit has held that "no reduction of fees is required." *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d

9

1160, 1169 (5th Cir. 1991). The Department of Justice has explained that the above logic also applies when deciding whether a prevailing party can recover under one fee statute for time spent litigating claims governed by another, subordinate fee statute like the EAJA. *See OLC Op.*, 2000 WL 34474453, at *3–6.

Here, the Court agrees with the Plaintiffs' assessment that their RFRA and APA claims involve a common core of facts—HHS's interpretation of Section 1557 to require Plaintiffs to perform and insure gender transitions and abortions against conscience.[37] Further, the Court agrees that the RFRA and APA issues were briefed together at the preliminary-injunction and summary-judgment stages.[38] The Court also adjudicated the issues in tandem.[39] Accordingly, the Court finds that (1) the RFRA and APA claims share a common core of facts; and (2) segregating the time spent on the different claims would prove extremely difficult. Altogether, the Court concludes that Plaintiffs can recover under § 1988(b) for the time spent litigating their APA claim.

### e. Block Billing

Defendants next contend that the Court should apply a five percent reduction in Plaintiffs' fee award to account for block billing entries in Plaintiffs' billing records.[40] Defendants aver that a significant number of Plaintiffs' billing entries are block billed, making it impossible for Defendants and the Court to evaluate the reasonableness of Plaintiffs' overall fee request.[41] Specifically, Defendants state they have identified 324.4 hours of work that Plaintiffs describe in block billing entries, without a separate time entry for the different activities listed.[42] Plaintiffs

---

[37] Pls. Reply 5, ECF No. 228.
[38] *See id.*; *see also* ECF Nos. 25, 37, 136, 158.
[39] *See* Orders, ECF Nos. 62, 175.
[40] Defs. Resp. 20, ECF No. 227.
[41] *Id.*
[42] *Id.* (citing Humphreys Decl., Ex. A-5, ECF No. 227-1).

counter that the Defendants' arguments are meritless.[43] Plaintiffs contend that the "block billed" entries complained of by Defendants are not examples of "block billing," but rather, these entries properly itemize the time expended on specific tasks.[44] Furthermore, Plaintiffs highlight that they already cut 17.75 block billed hours from their total claimed amount.[45] Lastly, Plaintiffs state that even if there are some block billed entries remaining, fees for such entries are not precluded so long as "the evidence produced is enough to determine reasonable hours."[46] Plaintiffs contend that Defendants fail to identify any tasks for which supposed block billing prevented it from determining reasonable hours.[47]

"The term 'block billing' refers to the disfavored 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Hoffman v. L & M Arts*, No. 3:10-cv-0953-D, 2015 WL 3999171, at *4 n.5 (N.D. Tex. July 1, 2015) (quoting *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011)). However, "most courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate." *Wyndham Props. II, Ltd. v. Buca Tex. Rests., LP*, No. 4:22-cv-00166-BP, 2023 WL 2392090, at *3 (N.D. Tex. Mar. 7, 2023) (quoting *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010)). "Instead, many courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010).

---

[43] Pls. Reply 8, ECF No. 228.
[44] *Id.*
[45] *Id.* at 9.
[46] *Id.* (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 n.18 (5th Cir. 2000) (cleaned up)).
[47] *Id.*

Although counsel is "not required to record in great detail how each minute of his time was expended ... at least counsel should identify the general subject matter of his time expenditures." *Wyndham Props. II, Ltd.*, 2023 WL 2392090, at *4 (quoting *Thermotek, Inc. v. Orthoflex, Inc.*, Nos. 3:11-cv-870-D, 3:10-cv-2618-D, 2016 WL 6330429, at *9 (N.D. Tex. Oct. 27, 2016)).

Upon review of the entries deemed to be block billed by Defendants, the Court finds that the entries in question do include examples of block billing.[48] Therefore, the Court shall apply a five percent reduction in the total lodestar figure to account for the block billing.

### f.  Fees on Fees

Defendants lastly contend that Plaintiffs' claimed 135.1 hours spent litigating fees, for which Plaintiffs seek $105,436, should be reduced by an amount proportional to Plaintiffs' success on the underlying litigation.[49] Based on Defendants' prior arguments that the total number of hours should be significantly reduced (Defendants specifically request the Court reduce the total hours to 37.86 percent of the claimed hours), Defendants contend the hours spent on litigating fees should be reduced to an award of no more than $39,918.07.[50] As the Court declines to reduce the number of hours claimed by Plaintiffs, other than the 38.65 hours Plaintiffs' counsel spent opposing intervention, the Court likewise declines to reduce the award for time spent litigating fees.

***

Reducing the 3,235.9 hours claimed by Plaintiffs by 38.65 hours, the time Plaintiffs spent opposing intervention, the Court finds the remaining total of 3,197.25 hours reasonable.

### ii.  Reasonable Hourly Rate to be Charged

The Court next turns to the issue of whether the hourly rate charged by Plaintiffs' counsel

---

[48] *See* Humphreys Decl., Ex. A-5, ECF No. 227-1.
[49] Defs. Resp. 23, ECF No. 227.
[50] *Id.*

12

is reasonable. "[R]easonable" hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). Generally, the "relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002) (quoting *Scham v. Dist. Cts. Trying Crim. Cases*, 148 F.3d 554, 558 (5th Cir. 1998) (abrogated on other grounds)).

The Fifth Circuit has held that "under certain limited circumstances," counsel may be entitled to charge the prevailing market rate of his or her home district, as opposed to the district wherein the court sits. *McClain*, 649 F.3d at 381–82. The Fifth Circuit has stated that where "abundant and uncontradicted evidence" prove the necessity of turning to out-of-district counsel, the counsel's "home rates should be considered as a starting point for calculating the lodestar amount." *Id.* at 382 (quotation marks omitted). Turning to out-of-district counsel might be necessary, for example, where local counsel is not willing and/or able to assist or counsel have shown they participate in a market requiring more specialized and sophisticated legal services. *Id.* at 383; *Sierra Club v. Energy Future Holdings Corp.*, No. 12-cv-108, 2014 WL 12690022, at *6 (W.D. Tex. Aug. 29, 2014).

Plaintiffs contend that, given the extraordinary stakes of this litigation for the Plaintiffs, the unavailability of comparable counsel within the district, and the need for counsel's specialized services, counsel's "home" rates—Washington, D.C. rates— should be considered as the starting point for calculating the lodestar.[51] Plaintiffs highlight the high-stakes nature of this litigation for Plaintiffs: failing to comply with the HHS rule would result in multimillion dollar penalties while complying would require Plaintiffs to cast aside their deeply held religious beliefs.[52] Plaintiffs state

---

[51] Pls. Brief 10, ECF No. 224.
[52] *Id.*

13

that the issues of the case were complex and novel—no court had yet considered whether HHS's rule complied with the APA, or whether objecting religious entities were entitled to an exemption under RFRA.[53] Further, Plaintiffs are religious nonprofits and a membership organization composed of individual religious healthcare providers who could not afford large law firm rates.[54] Plaintiffs also point to the subject matter of the litigation—sex and gender identity—and highlight that most major law firms are hesitant to get involved in such cases.[55]

Plaintiffs' counsel further contends that they participate in a market requiring more specialized and sophisticated legal services.[56] They contend their specialized religious-liberty expertise is crucial for litigating these cases involving the intersection of RFRA and the Affordable Care Act.[57] Plaintiffs' counsel's firm is one of the leading firms in the country for litigating these kinds of cases.[58]

Defendants counter that Plaintiffs fail to show that engaging out-of-district counsel was a necessity.[59] Defendants highlight that Plaintiffs do not claim to have ever attempted to locate qualified counsel within the Northern District, or anywhere within the State of Texas.[60] Defendants dispute the assertion that this case presented novel or complex issues and aver that an "international law firm" was not required for a case such as this.[61] Defendants state that Plaintiffs fail to provide actual evidence that no local firm could have or would have been able to litigate this case.[62] Defendants state that the case law interpreting RFRA is well developed at this point, and therefore,

---

[53] *Id.*
[54] *Id.* at 10–11.
[55] *Id.* at 11.
[56] *Id.*
[57] *Id.*
[58] *Id.* at 12.
[59] Defs. Resp. 7, ECF No. 227.
[60] *Id.*
[61] *Id.* at 8.
[62] *Id.*

a firm with special expertise and experience litigating religious liberty matters was not necessary.[63] Lastly, Defendants aver that Plaintiffs should not be able to recover fees based on Washington, D.C. rates because Plaintiffs had the option of filing this case in the United States District Court for the District of Columbia.[64] The Plaintiffs chose to file the case in the Northern District of Texas, and therefore, according to Defendants, the Court should award fees based on the local prevailing rates.[65]

The Court finds that the attorney's fees in this case should be awarded under the "home" rates of Plaintiffs' counsel. First, the Court finds that Plaintiffs have provided evidence that local counsel would be unable or unwilling to litigate this case. Plaintiffs have provided the sworn declaration of Mr. Brian Robison, a Dallas lawyer with 25 years of experience in the Dallas legal market.[66] In his declaration, Mr. Robison states that a large international law firm would be the most likely candidate for having the resources to staff, litigate, and win a case such as this.[67] However, Mr. Robison goes on to say that it is highly unlikely that a large international firm would agree to take on a case like this due to the controversial subject matter, coupled with the longevity and complexity of the litigation.[68]

Secondly, the Court finds that Plaintiffs have provided ample evidence that shows they "participate in a market requiring more specialized and sophisticated legal services." *See Sierra Club*, 2014 WL 12690022, at *6. Plaintiffs emphasize that this litigation was complicated by a circuit split over the meaning of "sex discrimination."[69] Plaintiffs highlight that twenty government

---

[63] *Id.* at 9.
[64] *Id.* at 10.
[65] *Id.*
[66] Robison Decl., ECF No. 224-3.
[67] *Id.* at 3.
[68] *Id.*
[69] Pls. Reply 2, ECF No. 228.

attorneys appeared on the many briefs and motions filed throughout the case, evidencing the complexity and sophistication of the issues.[70] Furthermore, the Court finds that the case didn't involve merely a question of statutory interpretation, but rather, involved Plaintiffs' right to a religious exemption, with two appeals to the Fifth Circuit. Overall, the Court finds that this was a highly complex case wherein having counsel with specialized expertise in the subject matter was necessary. Therefore, the Court awards fees based on the Washington, D.C. rates.

*\*\*\**

The question is then whether the rates provided by Plaintiffs are reasonable compared to what similar attorneys charge in the Washington, D.C. area. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 568.

Plaintiffs detail their counsel's billing rates in the Brief accompanying their Motion for Attorney Fees.[71] Plaintiffs also provide the declaration of Mr. Gene Schaerr, a partner at a Washington, D.C.-based law firm.[72] In his declaration, Mr. Schaerr states that Plaintiffs counsel's proposed rates are reasonable for the D.C. area and are in fact "lower than the rates [Mr. Schaerr's] firm and other firms at which [he has] worked would charge their clients for attorneys of comparable seniority and expertise on a similar matter."[73] Mr. Schaerr goes on to state that the rates proposed by Plaintiffs' counsel "are also lower than rates charged by comparable practitioners."[74] The Court therefore agrees with Plaintiffs that the rates proposed by Plaintiffs' counsel are reasonable.

---

[70] *Id.* (citing Goodrich Supp. Decl. 1–2, ECF No. 228-1).
[71] Pls. Brief 14, ECF No. 224.
[72] *See* Schaerr Decl., ECF No. 224-2.
[73] *Id.* at 4.
[74] *Id.*

16

iii. Final Lodestar Calculation

As the Court finds that (1) 3,197.25 of the hours claimed by Plaintiffs in this case are reasonable; and (2) the hourly rates proposed by Plaintiffs are reasonable, the Court ultimately finds that the lodestar amount is $2,319,003.50.[75] Reducing the lodestar figure by five percent, to account for the block billed entries discussed above, the award amount before considering the *Johnson* factors is $2,203,053.32.[76]

**2. Whether the Court should enhance or reduce the reward**

The Court next turns to the second stage of the attorney's fees analysis and considers whether to enhance or reduce the fee award based on *Johnson* factors that were not considered in the lodestar calculation. *See Johnson*, 488 F.2d at 718-19. The district court is required to "'explain with a reasonable degree of specificity the findings and reasons upon which the award is based,' which includes an indication of how the *Johnson* factors were applied." *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)) (emphasis omitted). Excellent results in a case should usually result only in "a fully compensatory fee." i.e., the lodestar amount. *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016) (citing *Hensley*, 461 U.S. at 435). The lodestar amount should only be enhanced "in extraordinary circumstances." *Id.*

Plaintiffs cite to Northern District of Texas and Fifth Circuit cases wherein the courts granted 20–33% enhancements in situations where a plaintiff achieved exceptional results and the

---

[75] The lodestar amount claimed by Plaintiffs before reductions was $2,346,041. Pls. Brief 21, ECF No. 224. However, the Court reduces this number by the 38.65 hours Plaintiffs spent opposing intervention, which equates to $27,037.50, using Washington, D.C. rates. Goodrich Suppl. Decl. Ex. 4-D, ECF No. 228-1.
[76] Based on the Court's calculations, five percent of $2,319,003.50 is $115,950.18.

enhancement was needed to account for the market value of the plaintiff's counsel's services.[77] Defendants counter that an enhancement is not warranted.[78] Defendants highlight that Plaintiffs, in their brief, do not analyze the specific *Johnson* factors or otherwise attempt to justify an enhancement.[79] Further, Defendants aver that the circumstances of this litigation do not call for an enhancement.[80]

In this case, the Court finds that an enhancement of the fee award is not warranted. While Plaintiffs contend that they analyzed the *Johnson* factors throughout the motion for attorney's fees,[81] the Court highlights that it can only enhance or reduce the fee award based on factors not already considered in the lodestar calculation. *See Johnson*, 488 F.2d at 718-19. Therefore, any *Johnson* factors discussed by Plaintiffs in its lodestar calculation cannot be doubly accounted for through an enhancement. Accordingly, the Court declines to enhance the fee award.

### 3. Plaintiffs' Expenses

Plaintiffs lastly state that under 42 U.S.C. § 1988, they are entitled to their reasonable expenses—a sum of $4,209.28.[82] This amount consists of expenses for airfare, ground transportation, lodging, and meals incurred during attorney travel to in-person hearings and oral arguments in Dallas and New Orleans.[83] Defendants do not oppose the request for $4,209.28 in expenses.[84] Therefore, Plaintiffs are awarded $4,209.28 in expenses.

---

[77] Pls. Brief 21, ECF No. 224 (citing *Cloud v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, No. 20-cv-1277, 2022 WL 2805527, at *7 (N.D. Tex. July 18, 2022); *Shipes v. Trinity Indus.*, 46 F.3d 67 (5th Cir. 1995)).
[78] Defs. Resp. 21, ECF No. 227.
[79] *Id.*
[80] *Id.* at 22.
[81] Pls. Reply 10, ECF No. 228.
[82] Pls. Brief 22, ECF No. 224.
[83] *Id.*
[84] Defs. Resp. 23, ECF No. 227.

**IV.     Conclusion**

Accordingly, the Court awards Plaintiffs **$2,203,053.32** in attorney's fees plus **$4,209.28** in expenses.

**SO ORDERED** this **11th day** of **July, 2023**.

_Reed O'Connor_
**Reed O'Connor**
**UNITED STATES DISTRICT JUDGE**